UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.    Case No. 16-CR-21

SAMY MOHAMMED HAMZEH,

    Defendant.

**GOVERNMENT'S RESPONSE TO DEFENDANT'S PRETRIAL MOTIONS**

 Beginning in September of 2015 and continuing through late January of 2016, Defendant Samy Mohammed Hamzeh devised different plans to commit mass shootings. In the Fall of 2015, he planned to travel to the West Bank so he could attack Israeli soldiers who were living there. Due to a variety of financial, logistical, and other factors (none of which appeared to involve a determination by Hamzeh that the planned attack was wrong), Hamzeh did not follow through with that plan. Instead, he shifted his focus to an attack in the United States. In January 2016, Hamzeh carefully planned a mass shooting at Milwaukee's Humphrey Scottish Rite Masonic Center. He had numerous conversations with two confidential informants about the reasons he wanted to attack the Center and about how he wanted to conduct the attack. Hamzeh told the informants that the three of them would engage in the attack and that they would use machineguns equipped with silencers. On January 25, 2016, Hamzeh met with two undercover FBI agents and purchased two machineguns and a silencer from them. Law enforcement agents arrested Hamzeh shortly after the transaction.

A grand jury sitting in the Eastern District of Wisconsin returned a three-count indictment against Hamzeh. In Count One he is charged with knowingly receiving and possessing a 9 mm machinegun, serial number S93040, which was not registered to him in the National Firearms Registration and Transfer Record ("NFTR"), in violation of Title 26, United States Code, Section 5861(b). Count Two charges Hamzeh with knowingly receiving and possessing a separate 9mm machinegun, serial number 68-3049, which was not registered to him in the NFTR, in violation of Title 26, United States Code, Section 5861(d). And Count Three charges Hamzeh with knowingly receiving and possessing a silencer, serial number 93040, which was not registered to him in the NFTR, in violation of Title 26, United States Code, Section 5861(d).

Hamzeh now has filed motions (1) to dismiss the entire indictment; (2) to dismiss Counts Two and Three as multiplicitous; (3) to compel disclosure of *Brady* and *Giglio* material ninety days before trial; and (4) to compel the government to have translated every recorded conversation that was part of the investigation of Hamzeh. For the reasons that follow, the Court should deny each of these motions.

    **I.    Section 5861(d) is a valid criminal statute.**

Hamzeh argues that the Court should dismiss the indictment in this case because, for a number of alternative reasons, Title 26, United States Code, Section 5861(d) is not valid. More specifically, he contends (1) that § 5861(d) is fundamentally unfair because it "is impossible for a person to comply with it;" (2) that § 5861(d) has been "implicitly repealed" by Congress; and (3) that § 5861(d) is not a valid exercise of Congress' taxing power. None of these arguments has merit.

**A. Contrary to Hamzeh's contention, it clearly is possible to comply with § 5861(d).**

Congress enacted the current version of § 5861(d) in 1968. *See* P.L. 90-618 (1968). The statute provides that "[i]t shall be unlawful for any person . . . to receive or possess a [machinegun] which is not registered to him in the National Firearms Registration and Transfer Record. . . ." 26 U.S.C. § 5861(d).[1] Eighteen years later, in 1986, Congress enacted 18 U.S.C. § 922(*o*), which makes it "unlawful for any person to transfer or possess a machinegun." Both statutes prohibit possession of machineguns – as far as is relevant to machinegun charges like those in the present indictment, the only difference between the two statutes is that § 5861(d) requires proof of the additional element of nonregistration.[2]

Agreeing with the reasoning from a Tenth Circuit case, *United States v. Dalton*, 960 F.2d 121 (10th Cir. 1992), Hamzeh contends that the enactment of § 922(*o*) makes compliance with § 5861(d) impossible. As a simple matter of logic, the Tenth Circuit's reasoning is plainly flawed. It proceeds like this:

> 1. Section 5861(d) requires that a person who possesses a machinegun have the machinegun registered to him.
>
> 2. Section 922(*o*) imposes a blanket prohibition on possessing machineguns such that they cannot be registered.
>
> 3. It is therefore impossible to comply with § 5861(d).

The flaw in this reasoning is obvious. Because the registration requirement is only triggered for those who possess a machinegun, compliance with § 5861(d) has always been possible simply by *not possessing a machinegun*. Nothing about § 922(*o*) changes that. A person

---

[1] Earlier versions of the statute date back to 1934.

[2] Hamzeh has it backwards when he contends that § 922(*o*) "requires additional elements [and] can be more difficult for the government to prove." Def. Br. 2. He is correct, however, that the unit of prosecution is different for the two statutes. *See infra,* Part II.

3

can comply with both statutes simply by not possessing a machinegun. S*ee United States v. Carmel*, 548 F.3d 571 (7th Cir. 2008).

Hamzeh suggests that it is not only § 922(*o*), but also related administrative action by the Internal Revenue Service (IRS) and the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) that makes it impossible to comply with § 5861(d): "After Congress passed the ban in 1986, the ATF and the IRS refused to allow anyone to pay the firearm tax." Def. Br. 5. Hamzeh cites 27 C.F.R. § 179.05 in support of this assertion. So, too, did the Central District of Illinois in *United States v. Rock Island Armory*, 773 F. Supp. 117 (C.D. Ill. 1991), the reasoning of which has since been rejected by the Seventh Circuit, *see Carmel*, 548 F.3d at 571; *United States v. Ross*, 9 F.3d 1182, 1193-94 (7th Cir. 1993) (judgment vacated on other grounds, 511 U.S. 1124 (1994)). The regulatory provision cited by the Central District, and now by Hamzeh, does not exist. It appears that Hamzeh meant to cite 27 C.F.R. § 497.105, which governs the transfer and possession of machineguns. But Hamzeh is not correct in asserting that, under that provision or any other, the ATF and the IRS have since 1986 "refused to allow anyone to pay the firearms tax." Def. Br. 5. Section 479.105 simply provides that any application to transfer a machinegun will be denied if the transfer or possession of the machinegun would place the transferor or the transferee in violation of § 922(*o*). Partly mirroring § 922(*o*), the regulation then goes on to identify a number of circumstances under which the possession or transfer of machineguns *is* lawful and where, therefore, an application to transfer or register a machinegun is either unnecessary or will be approved. That is, the regulation identifies the circumstances under which possession is lawful under both criminal statutes. In addition, and perhaps more to the point in this prosecution, it remains possible to comply with both statutes – and with the regulation governing the transfer and

4

possession of machineguns – by *not possessing a machinegun*. *See United States v. Rogers*, 270 F.3d 1076, 1079 (7th Cir. 2001).

Due process requires that individuals be free to conform their conduct to the law. *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). An individual is deprived of his right to due process, therefore, when he is held criminally liable for failing to comply with a statutory duty when that duty is both unavoidable *and* legally impossible. There is nothing fundamentally unfair or "Kafka-esque," however, about a statutory construct that imposes a registration requirement on an act (machinegun possession) and leaves individuals entirely free to avoid the registration requirement simply by not engaging in that act.

### B. Section 5861(d) has not been "implicitly repealed."

Hamzeh also argues that, because § 922 (*o*) makes compliance with § 5861(d) legally impossible, Congress "implicitly repealed" the earlier statute. Def. Br. 6. "[R]epeals by implication are not favored and will not be presumed unless the intention of the legislature to repeal is clear and manifest." *Hui v. Castaneda*, 559 U.S. 799, 810 (2010) (internal quotation marks and citation omitted). "A new statute will not be read as wholly or even partially amending a prior one unless there exists a positive repugnancy between the provisions of the new and those of the old that cannot be reconciled." *Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 134 (1974) (internal quotation marks omitted). *See also United States v. Batchelder*, 442 U.S. 114, 122 (1979).

Sections 922(*o*) and 5861(d) are fully capable of coexisting. Again, an individual can comply with both provisions by not possessing machineguns. Similarly, an individual can violate both provisions simultaneously by engaging in conduct like that alleged in this case, and the government has the discretion to proceed under either statute. *United States v. Jones*, 976 F.2d 176, 187 (4th Cir. 1992).

5

### C. Section 5861(d) is a valid exercise of Congress's taxing power.

The Constitution grants Congress the power to lay and collect taxes and to make laws that are necessary and proper for exercising that taxing power. U.S. Const., Art. I, § 8. Acting pursuant to those powers, Congress has enacted a series of statutes, located in the Internal Revenue Code, that impose a tax on the transfer of machineguns and that aid in the collection of the tax. While it may appear to be part of a complex "web of regulations," *United States v. Ross*, 458 F.2d 1144, 1145 (5th Cir. 1972), the relevant statutory framework is fairly straightforward. The tax itself is imposed by § 5811, which requires the transferor to make a $200 payment for each machinegun transferred. Sections 5812 and 5841(b) require that each transferred machinegun be registered to the transferee by the transferor in the National Firearms Registration and Transfer Record ("NFTR"). Finally, § 5861(d) makes it a crime for any person to receive or possess a machinegun which is not registered to him in the NFTR. The tax imposed by § 5811 represents a valid exercise of Congress's power to lay and collect taxes, while the registration and criminal penalty provisions of §§ 5812, 5841(b), and 5861(d) are necessary and proper means of assisting the collection of the tax. *See Sonzinsky v. United States*, 300 U.S. 506, 513 (1937).

Courts have uniformly held that, under its taxing power, Congress may levy taxes on dealing and transferring firearms. The Supreme Court first addressed the issue in 1937, when it recognized the validity of a $200 annual excise tax imposed on gun dealers by a statute that was the forerunner to current § 5861(d). *Sonzinsky*, 300 U.S. at 511. After being convicted of engaging in a firearms-dealing business without paying the required tax, the defendant in that case argued that the tax provision was not a valid exercise of Congress's taxing power because the true purpose of the levy was to regulate behavior. The Supreme Court rejected the argument, concluding that because the annual $200 tax produced revenue and operated as a tax, it was within Congress's

6

taxing power regardless of any regulatory motive or effect, and that the attendant registration and criminal penalty provisions were "in aid of a revenue purpose" (that is, those provisions were "necessary and proper" means of carrying into effect Congress's taxing power). *Id.* at 513-514.

The Seventh Circuit and the other circuits that have addressed the issue have been bound by *Sonzinsky*, have agreed with its analysis, and have uniformly concluded that the tax, registration, and criminal enforcement provisions of the National Firearms Act, including § 5861(d), are valid exercises of Congress's power to levy taxes.

> [S]ection 5861(d) reasonably may be construed as part of the web of regulation aiding the aiding enforcement of the transfer tax provision in section 5811. Congress legitimately may target for punishment the recipient of an unregistered firearm as a means of discouraging the circumvention of the transfer tax: Having required payment of a transfer tax and registration as an aid in collection of that tax, Congress under the taxing power may reasonably impose a penalty on possession of an unregistered firearm. Although the transferee is not responsible for registering the firearm (and indeed cannot do so), the Act imposes on him an affirmative duty to ensure that the weapon is properly registered before taking possession of it. Indeed, unregistered firearms are as likely (if not more likely) to come to the attention of law enforcement in the hands of the transferee. Attaching criminal consequences to the possession of an unregistered weapon is thus a rational way of discouraging the transfer of untaxed firearms. Section 5861(d) in this way encourages registration and reinforces the revenue-generating purpose of the Act. *This is a constitutional exercise of Congress's taxing power.*

*United States v. Lim*, 444 F.3d 910, 914 (7th Cir. 2006) (emphasis added) (internal quotation marks and citations omitted). *See also United States v. Dodge*, 61 F.3d 142, 145 (2d Cir. 1995); *United States v. Oliver*, 208 F.2d 211 (Table) (4th Cir. 2000), *United States v. Gresham*, 118 F.3d 258, 261-62 (5th Cir. 1997); *United States v. Birmley*, 529 F.2d 103, 106-07 (6th Cir. 1976); *United States v. Village Center*, 452 F.3d 949, 950 (8th Cir. 2006); *United States v. Pelicano*, 135 Fed.Appx. 44 (9th Cir. 2005); *United States v. Houston*, 103 Fed.Appx, 346, 349-50 (10th Cir. 2004).

Hamzeh acknowledges that "[a]t the time that *Sonzinsky* examined § 5861, it was a legitimate revenue raising measure, and so it constituted a valid exercise of Congress's taxing

7

authority." Def. Br. 7. Nonetheless, he maintains that two post-*Sonzinsky* developments have rendered the statute unconstitutional. Def. Br. 7. First, Hamzeh again notes that the government does not collect tax revenue for the transfer of machineguns. But the government does collect tax payments for the transfer of some firearms under § 5811. In any event, the validity of § 5861 has never turned on whether taxes are being actively collected in practice. Even if the government is not currently approving registration applications and collecting transfer taxes for machineguns, those provisions have not been repealed. "Although [the ATF] chooses not to allow tax payments or registration, it still has the *authority* to do so." *United States v. Ardoin*, 19 F.3d 177, 180 (5th Cir. 1994) (emphasis added). The constitutionality of a statute like § 5861(d) is not affected by an agency's decision not to fully exercise power that it has been statutorily granted.

Hamzeh also contends that the Supreme Court's recent decision in *National Fed'n of Indep. Bus. v. Sebelius*, – U.S. – , 132 S.Ct. 2566 (2012) has changed the relevant taxing power analysis. Def. Br. 7. In *Sebelius* the Court upheld the individual mandate provisions of the Affordable Care Act, which required individuals to obtain a minimum level of health insurance or else pay an exaction that the statute labeled a "penalty." Employing what it characterized as a "functional" analysis, the Court found that the exaction was not a penalty but instead was a tax that Congress could lay and collect pursuant to its Article I, § 8 authority.

Hamzeh argues that under *Sebelius*, "§ 5861 is a regulation and not a legitimate tax. . . . That is, this is a pure prohibition and the taxing power is just a guise for an otherwise prohibited use of congressional power." Def. Br. 14. Hamzeh's argument is contrary to the Supreme Court's holding in *Sonzinsky* (as well as the Seventh Circuit's holding in *Lim*) that § 5861 is a legitimate tax. The Supreme Court has not overruled *Sonzinsky* – not explicitly and not, as Hamzeh essentially argues, implicitly in *Sebelius*. In fact, the Court in *Sebelius* cited *Sonzinsky* positively

8

for the latter's proposition that "[e]very tax is in some measure regulatory" and as an example of the Court properly upholding as a valid tax a measure that was obviously regulatory. *Sebelius*, 132 S.Ct. at 2596. In any event, *Sonzinsky* and *Lim* remain binding precedent, and this Court should adhere to that precedent and uphold § 5861(d) as a valid exercise of Congress's taxing power. *Cf. Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of [the Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, [lower courts] should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions.").

Applying the functional approach employed in *Sebelius* further demonstrates that § 5861(d) is a tax appropriately enacted pursuant to Congress's taxing power. As Hamzeh notes, the Court in *Sebelius* looked at three main factors in determining whether the exaction at issue was a tax: First, whether the exaction imposed an exceedingly heavy burden; Second, whether the exaction provision contained a *scienter* requirement; and Third, how the "tax" was enforced. None of these factors is dispositive, but together they provide a means of examining the nature of an exaction.

That functional analysis here demonstrates that the transfer tax is a tax and not a penalty. First, the $200 required payment is minimal. It is equal, for example, to only a small fraction of the financial penalties for federal criminal violations. A criminal violation of the federal prohibition on machinegun possession, for example, subjects a person to a $250,000 fine – an amount equal to more than 1,000 times the transfer tax. Second, § 5811 contains no *scienter* requirement – the $200 assessment applies equally to anyone seeking to transfer a machinegun, regardless of the person's intent. Hamzeh, in assessing this factor, stresses that § 5861 has a *scienter* requirement. That is not the correct point of analysis, however. Section 5861 establishes a crime. Like most criminal statutes, it contains a *scienter* element; it also establishes penalties

9

that include imprisonment as well as a $250,000 fine. Section 5861 does not impose the transfer tax. It makes it a crime to evade that tax. The underlying transfer tax itself contains no *scienter* requirement. Finally, as to how the exaction is enforced, the transfer tax payments are sent directly to ATF, where they are held until the Department of Treasury "sweeps" the funds at the end of the year. The balance of these factors underscores the nature of the $200 transfer tax and affirms that § 5861(d) is a valid exercise of Congress's taxing power.

### D. Section 5861(d) is also a valid exercise of Congress's power to regulate interstate commerce.

Hamzeh contends that if § 5861(d) is beyond Congress's taxing power, then it is "a pure prohibition of behavior that is traditionally reserved for the states, namely the regulation of firearms not in or affecting interstate commerce." Def. Br. 7. But the taxing power is not the only source of Congressional authority to enact § 5861(d).[3] The statute also has been upheld as a valid exercise of Congress's power to regulate interstate commerce under Art. I, Sec. 8. *See United States v. Ardoin*, 19 F.3d 177, 180 (5th Cir. 1994); *Jones*, 976 F.2d at 187. Although the Seventh Circuit has not directly addressed the constitutionality of § 5861(d) under the commerce clause, it has found that "regulation of machine guns is well within the scope of congressional authority over activities affecting commerce. . . ." *United States v. Kenney*, 91 F.3d 884, 890 (7th Cir. 1996). While *Kenney* dealt with the constitutionality of § 922(*o*), the court's underlying rationale could be applied with equal force to § 5861(d). The *Kenney* Court explained: "[T]here is a rational basis to regulate the local conduct of machine gun possession . . . to effectuate Section 922(*o*)'s purpose of freezing the number of legally possessed machine guns at 1986 levels, an effect that is closely

---

[3] The canon of constitutional doubt requires that "every reasonable construction must be resorted to, in order to save a statute from unconstitutionality." *Hooper v. California*, 155 U.S. 648, 657 (1895). Consistent with that canon, if there is doubt as to the constitutional underpinnings of a statute under one source of legislative power, courts must determine whether the statute is valid under another source. *See, e.g., Sebelius*, 132 S.Ct. at 2594 (upholding the individual mandate provisions of the Affordable Care Act under the Taxing Clause after concluding that the provisions were not a valid exercise of Congress's interstate commerce power).

10

entwined with regulating interstate commerce." *Id.* Similarly, there is a rational basis to employ the register-and-tax regime of § 5861(d) as a means of monitoring and controlling both interstate and local transfers of machineguns.

> **II. Because the appropriate unit of prosecution for the simultaneous possession of multiple non-registered firearms is each nonregistered firearm possessed, the indictment properly charges the silencer and each of the two machineguns in separate counts.**

Each count of the indictment charges Hamzeh with possessing a separate unregistered firearm on January 25, 2016, in violation of 26 U.S.C. § 5861(d). Hamzeh contends that the firearms all should be charged in the same single count. He argues that the separate counts are multiplicitous and violate his rights under the Double Jeopardy Clause.

Among other things, the Double Jeopardy Clause protects against multiple punishments for the same offense. *Ohio v. Johnson*, 467 U.S. 493, 498 (1984). An indictment violates the Double Jeopardy Clause when it is multiplicitous – that is, when it charges in separate counts conduct that amounts to only a single offense and that should therefore be charged in a single count. The issue turns on the appropriate "unit of prosecution" for conduct that violates one statute but may also constitute multiple violations of that statute.

It is well-established that, in prosecutions under § 5861(d), each nonregistered firearm or device constitutes a separate unit of prosecution. *See United States v. Moses*, 513 F.3d 727, 732 (7th Cir. 2008). The Seventh Circuit is among the courts that have addressed the issue and those courts "unanimously agree that the unit of prosecution for simultaneous and multiple violations of § 5861(d) is the number of non-registered firearms possessed." *Id.* (collecting cases). The courts have explained that, although a § 5861(d) offense involves possession of a firearm, the offense is essentially a form of tax evasion. *Id.* "Because that tax is evaded each time a firearm is not

11

registered, each non-registered firearm deprives the federal government of the proper tax due on that weapon. . . ." *Id.*

The indictment charges Hamzeh with possessing three separate nonregistered "firearms" – a term defined to include both machineguns and silencers. *See* 26 U.S.C. § 5845(a). Hamzeh argues that "[w]hen it comes to the gun charged in Counts one and three, only one gun was possessed, though it had two qualities that demanded registration. The gun was a machine gun but it also had built on to it a silencer – a silencer that according to the FBI, fell under the same serial number and could not be removed." Def. Br. 19. In fact, the silencer has a serial number separate from (but related to) that of the machinegun (the separate serial numbers are identified in the indictment). More significantly, the silencer can be – and has been – readily removed from the machinegun.[4] And, once removed, the silencer can be transferred separate from the machinegun. The government has a separate and distinct interest in recording transfers of each of these firearms by registering subsequent transfers of each and, relatedly, each firearm standing alone would clearly be subject to the transfer tax.

Hamzeh urges the Court to follow *United States v. Zalpala*, 509 U.S. 1060 (9th Cir. 2007) "and find that Hamzeh can only face charges for one violation of § 5861 for each firearm he possessed." Def. Br. 17. Again, under the controlling statutory definition, Hamzeh is alleged to have simultaneously possessed three firearms. The court in *Zalpala* confronted a different situation. There, the defendant possessed one item that qualified as a firearm because of two separate characteristics. That one item was a machinegun with a barrel shorter than sixteen inches, and the defendant was convicted of both possessing a machinegun and possessing a firearm with a barrel shorter than sixteen inches. Unlike Zalpala, who was convicted of possessing a single

---

[4] To the extent that the January 25, 2016, FBI report suggests that the silencer had no independent serial number and could not be physically removed from the machinegun, the report is not correct.

12

firearm with multiple qualifying *characteristics*, Hamzeh is charged with possessing multiple qualifying *firearms*. The characteristics of the firearm in *Zalpala* were indivisible from the gun itself in a way that is not the case here. Because each count of the present indictment charges a separate firearm, the indictment is not multiplicitous and does not violate the Fifth Amendment's Double Jeopardy Clause.

Hamzeh also argues that, even though the Seventh Circuit has held that the appropriate unit of prosecution for § 5861(d) offenses is one count for each nonregistered firearm, the rationale for that holding has evaporated as it applies to machineguns because such firearms cannot be registered and taxes are not collected on them. Hamzeh appears to suggest that the unit of prosecution under § 5861(d) should be different for machineguns than it is for other types of firearms – namely those that still can be registered and subjected to taxing under § 5811. Such an approach would be unworkable and clearly contrary to Congress's unambiguous intent that the unit of prosecution be each individual nonregistered firearm possessed, regardless of the type of firearm. *See Zalpala*, 509 F.3d at 1062. It also would require this Court to ignore the Seventh Circuit's holding in *Moses* that that is the appropriate unit of prosecution for § 5861(d) offenses.

### III. The government will disclose *Brady* and *Giglio* material 90 days before trial.

Hamzeh asks the Court to order the government to provide all *Brady* and *Giglio* material 90 days before trial. Because the government agrees to do so, the Court should deny Hamzeh's motion as moot.

### IV. The government has turned over, in various forms, *all* conversations that were recorded in connection with this investigation.

Hamzeh has filed a motion to compel discovery – more specifically, to compel the government to have transcripts created of "all of the recorded conversations in this case" and then to disclose those transcripts. Hamzeh makes his request pursuant to *Brady v. Maryland*, 373 U.S. 83, 87 (1963), and Fed. R. Crim. P. 16, the latter on the theory that the recordings constitute a defendant's recorded statement.

A defendant has a due process right under *Brady* to disclosure of material, favorable evidence. "The government's obligations under *Brady* only extend to information in its possession, custody, or control." *United States v. Hall*, 434 F.3d 42, 55 (1st Cir. 2006). *Brady* does not require the government to seek out material not within its possession, *United States v. Celestin*, 612 F.3d 14, 22 (1st Cir. 2010); much less does the government have a duty to actively create material to disclose under *Brady*.

The government is following its open-file policy and has disclosed literally every recording in its possession. It has disclosed the actual audio recordings of every conversation recorded as a part of this investigation. In addition, it has disclosed summary (not verbatim) translations of every recorded conversation, as well as verbatim translations of a substantial number of those conversations.

The government will continue to make disclosures of additional transcripts if and as those are produced. Because in following its open-file policy the government has met – and will continue to meet – its disclosure obligations under *Brady* and Rule 16, the Court should decline to order the government to create additional material and should deny Hamzeh's motion.

14

Case 2:16-cr-00021-PP   Filed 03/31/17   Page 14 of 15   Document 32

**Conclusion**

Based on the foregoing, the government requests that the Court:

(1) Deny Hamzeh's motion to dismiss the indictment;

(2) Deny Hamzeh's motion to dismiss Counts Two and Three

(3) Deny as moot Hamzeh's motion to compel disclosure of *Brady* and *Giglio* material 90 days before trial;

(4) Deny Hamzeh's motion to compel the government to have translated every recorded conversation that was part of the government's investigation of Hamzeh.

Dated at Milwaukee, Wisconsin, this 31st day of March, 2017.

        s/ Gregory J. Haanstad
        GREGORY J. HAANSTAD
        United States Attorney
        Attorney for the United States
        Wisconsin Bar: 1036125
        United States Attorney's Office
        Eastern District of Wisconsin
        517 E. Wisconsin Avenue, Room 530
        Milwaukee, Wisconsin 53202
        Telephone: (414) 297-1700
        e-mail: greg.haanstad@usdoj.gov