**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.** **Case No. 16-CR-21-PP**

**SAMY M. HAMZEH,**

**Defendant.**

---

## RECOMMENDATION & ORDER

---

On February 9, 2016, a grand jury in this district returned a three-count indictment against Samy M. Hamzeh, charging him with three counts of knowingly receiving an unregistered firearm in violation of 26 U.S.C. § 5861(d). (ECF No. 6.) In Count One he is charged with knowingly receiving and possessing a 9mm machinegun, serial number S93040, which was not registered to him in the National Firearms Registration and Transfer Record (NFTR). In Count Two he is charged with knowingly receiving and possessing a 10mm machinegun, serial number 68-3049, which was not registered to him in the NFTR. And Count Three charges him with knowingly receiving and possessing a silencer, serial number 93040, which was not registered to him in the NFTR. (*Id.*)

Hamzeh has brought the following pretrial motions: to dismiss the indictment (ECF No. 26); to dismiss Counts Two and Three as multiplicitous (ECF No. 27); and to order the government to produce all *Brady* and *Giglio* materials in its possession (ECF No. 28).[1] The motions have been fully briefed (ECF Nos. 29, 32, and 40) and are ready for resolution.

**<u>Recommendation on Motion to Dismiss Indictment (ECF No. 26)</u>**

Hamzeh argues that the statute under which he is charged, 26 U.S.C. § 5861(d), is unconstitutional in several respects. Hamzeh begins by preserving but not pursuing two arguments previously raised but rejected in this circuit. The first such argument is that, because 18 U.S.C. § 922(o) (passed in 1986, 50 years after Congress passed § 5861) bans the possession of all machineguns, it is impossible to comply with the registration requirements imposed by § 5861(d). Thus, the argument goes, convicting someone for failing to do the impossible violates notions of fundamental fairness. *See United States v. Dalton*, 960 F.2d 121, 126 (10th Cir. 1992). The second argument contends that Congress implicitly repealed § 5861(d) when it passed 18 U.S.C. § 922(o). As to these two arguments, Hamzeh acknowledges that the great weight of authority is against him and states that he "won't waste the Court's time with a fuller explication of what, in this Circuit, amounts to a dead point." (ECF No. 29, at 6.)

---

[1] Hamzeh's motion to compel the government to produce English-translated transcripts of all of Hamzeh's Arabic-language recorded conversations with confidential informants (ECF No. 31) will be addressed separately.

Hamzeh then attacks § 5861(d) as an unconstitutional exercise of Congress's taxing power. He asserts that § 5861(d) does not operate like a tax: it raises no revenue, contains a scienter requirement, and is administered by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") rather than the Internal Revenue Service. Thus, applying the Supreme Court's analysis in *National Federation of Independent Business v. Sebelius*, 132 S. Ct. 2566 (2012), § 5861(d) is a penalty rather than a "tax" and should be held to be an unconstitutional exercise of Congress's taxing power.

The government responds by noting that multiple cases from the Seventh Circuit Court of Appeals have rejected Hamzeh's first two arguments (a point Hamzeh does not seem to dispute). It argues that compliance with the registration requirement of § 5861(d) was not rendered "impossible" by the enactment of § 922(o); a person can comply with both statutes simply by not possessing a machinegun. *See United States v. Carmel*, 548 F.3d 571, 579 (7th Cir. 2008); *United States v. Rogers*, 270 F.3d 1076, 1079 (7th Cir. 2001). As to the argument that § 922(o) implicitly repealed § 5861(d), it says that "Congress may lawfully punish the same action under two separate statutes without running afoul of the Due Process Clause." *Carmel*, 548 F.3d at 579. And "repeals by implication are not favored and will not be presumed unless the intention of the legislature to repeal is clear and manifest." *Hui v. Castaneda*, 559 U.S. 799, 810 (2010).

In response to what Hamzeh characterizes as his "novel" argument, the government points out that the Supreme Court in *Sozninsky v. United States*, 300 U.S. 506

(1937), found constitutional a $200 excise tax set forth in the predecessor statute of § 5861(d) and that the attendant criminal penalty provisions were necessary and a proper means of carrying Congress's taxing power into effect. *Id.* at 513-14. The government argues that this court is bound by *Sozninsky* as well as *United States v. Lim*, 444 F.3d 910, 914 (7th Cir. 2006), which also held § 5861(d) to be a constitutional exercise of Congress's taxing power. In the alternative, the government argues that, even if § 5861(d) is held to exceed the scope of Congress's taxing power, the statute nonetheless should be upheld under Congress's commerce clause power.

The Constitution bestows upon the federal government certain enumerated powers, one of which is the "Power To lay and collect Taxes … ." U.S. Const. art. 1 § 8, cl. 1. "Put simply, Congress may tax and spend. This grant gives the Federal Government considerable influence even in areas where it cannot directly regulate. The Federal Government may enact a tax on an activity that it cannot authorize, forbid, or otherwise control." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 132 S. Ct. 2566, 2579 (2012) (citing *License Tax Cases,* 5 Wall. 462, 471, 18 L. Ed. 497 (1867)).

Hamzeh contends that, because Congress does not have the power to regulate machine guns outright, doing so under the guise of a tax impermissibly intrudes on rights reserved to the states: "Where the sovereign enacting the law has power to impose both tax and penalty, the difference between revenue production and mere regulation may be immaterial, but not so when one sovereign can impose a tax only,


Case 2:16-cr-00021-PP Filed 05/09/17 Page 4 of 11 Document 41

and the power of regulation rests in another." *Bailey v. Drexel Furniture Co.*, 259 U.S. 20, 38 (1922). And while "[e]very tax is in some measure regulatory[,]" *Sozninsky*, 300 U.S. at 513, "there comes a time in the extension of penalizing features of the so-called tax when it loses its character as such and becomes a mere penalty." *Bailey*, 259 U.S. at 38.

In *National Federation of Independent Business v. Sebelius*, 132 S. Ct. 2566, 2596 (2012), the Supreme Court examined its prior taxing power decisions and affirmed that the analysis should take a "functional approach" which focuses on the alleged tax's "practical operation." *Id.* at 2595. For the alleged tax in that case, the Supreme Court drew on three considerations: (1) whether the tax imposed an exceedingly heavy burden; (2) whether the tax had a state of mind (or "scienter") requirement such that it was imposed only on knowing violators; and (3) who enforced and administered the tax. 132 S. Ct. at 2596. Because the alleged tax imposed a relatively slight burden, did not use state of mind to distinguish between violators, and was administered by the IRS, the Court found the shared responsibility payment of the Affordable Care Act (a self-titled "penalty") to be a permissible use of Congress's taxing power. *Id.*

With regard to 26 U.S.C. § 5861(d), in *United States v. Carmel*, 548 F.3d 571 (7th Cir. 2008), the Seventh Circuit Court of Appeals rejected arguments that § 5861(d) is incompatible with or was repealed by implication by 18 U.S.C. § 922(o), which imposes a blanket ban on the possession and transfer of machineguns. It found that "Section 922(o) is reconcilable with § 5861(d): [defendant] could have complied with both

statutes simply by declining to possess sixty illegal machine guns." *Id*. at 579. Thus, as Hamzeh concedes, his arguments on these grounds amount to dead weight. *Carmel* controls, and the court will not dismiss Hamzeh's indictment on these grounds.

The Seventh Circuit Court of Appeals has also ruled on § 5861(d)'s constitutionality under Congress's taxing power. In *United States v. Lim*, 444 F.3d 910 (7th Cir. 2006), "[the plaintiff] contend[ed] that § 5861(d) exceeds Congress's taxing power because the purpose of the statute is not to tax, but instead to prohibit the possession of certain firearms." The court started its analysis by pointing out that the National Firearms Act, 26 U.S.C. § 5801, "establishe[d] a statutory framework to ensure that manufacturers, importers, and dealers of firearms pay a tax upon and properly register all firearms prior to transfer." *Id.* at 912. As part of this framework the Act requires the transferor to pay a tax on each firearm transferred (26 U.S.C. § 5811) and provides that "[i]t shall be unlawful for any person—(d) to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." (26 U.S.C. § 5861(d)). In reading the statute as a whole, *Lim* held that "section 5861(d) reasonably may be construed as 'part of the web of regulation aiding enforcement of the transfer tax provision in section 5811.'" 444 F.3d at 913 (quoting *United States v. Ross*, 458 F.2d 1144, 1145 (1972)). The court continued:

> Congress legitimately may target for punishment the recipient of an unregistered firearm as a means of discouraging the circumvention of the transfer tax: "Having required payment of a transfer tax and registration

> as an aid in collection of that tax, Congress under the taxing power may reasonably impose a penalty on possession of an unregistered firearm."

444 F.3d at 913 (quoting *United States v. Gresham*, 118 F.3d 258, 262 (5th Cir. 1997)).

Hamzeh does not attempt to distinguish his case from *Lim*. This court finds *Lim* determinative of the argument raised by Hamzeh and recommends that his motion to dismiss the indictment be **denied.**

**<u>Recommendation on Motion to Dismiss Counts as Multiplicitous (ECF No. 27)</u>**

Hamzeh moves to dismiss Counts Two and Three of the indictment as multiplicitous. His argument as to Count Three is premised on an FBI report which Hamzeh received in discovery that states:

> Item #2 is a Heckler & Koch 9mm MP5 SD fully automatic rifle with a factory manufactured sound suppressor. The suppressor is not a separate item for the weapon. As described by a FBI Firearms Instructor familiar with the weapon, the suppressor is manufactured as a part of that serial number weapon, not a separate item.

(ECF No. 29 at 17.) On the basis of this report, Hamzeh argues that he should not be charged with multiple violations of § 5861(d) where the "sound suppressor" that is the object of Count Three is not a separate firearm but rather a part of the firearm charged in Count One. Because § 5861(d) imposes a criminal penalty for failing to register the firearm and pay the attendant tax, it is not concerned with irremovable component parts. He should not be charged with both Counts One and Three.

In response to Hamzeh's motion to dismiss Count Three, the government contends that it is allowed to charge Hamzeh with Counts One and Three because the

sound suppressor *is* a separate component that can be removed from the machine gun. It has its own serial number and can be transferred independently of the machinegun. Thus, the government has an interest in registering the transfer. The government states that, "[t]o the extent that the January 25, 2016 FBI report suggests that the silencer had no independent serial number and could not be physically removed from the machinegun, the report is not correct." (ECF No. 32 at 12, fn. 4.)

The government's response seems to catch Hamzeh by surprise, who in reply says that he was unaware that the suppressor could be detached from the machinegun and that "[he] needs to receive the revised report before he can determine whether to proceed with this motion." (ECF No. 40 at 3.) However, he does not request a stay in order to make that determination. Because the facts upon which Hamzeh's motion to dismiss Count Three is based appear to be incorrect, the court will recommend that his motion to dismiss Count Three be **denied**, without prejudice. If Hamzeh later determines that, contrary to what the government says and consistent with what is set forth in the FBI report, the suppressor *cannot* be detached from the machinegun that is the object of Count One, he may renew his motion to dismiss Count Three.

As to Count Two, Hamzeh argues that the simultaneous possession of multiple unregistered firearms should only give rise to a single violation of § 5861(d). He states that, because machine guns cannot be registered and no taxes are actually collected, § 5861(d) operates as a ban on the possession of machine guns. Thus, the proper unit of

prosecution should be possession of machine guns (no matter how many) instead of the number of times the tax was evaded.

In response to Hamzeh's motion to dismiss Count Two, the government states that, "[i]t is well-established that, in prosecutions under § 5861(d), each nonregistered firearm or device constitutes a separate unit of prosecution," citing *United States v. Moses*, 513 F.3d 727, 732 (7th Cir. 2008). (ECF No. 32 at 11.) A § 5861(d) offense is essentially a form of tax evasion, and the tax is evaded each time a firearm is not registered. Thus, each nonregistered firearm is a separate violation of the statute.

"Although the government may prosecute an individual for every separate criminal act he commits, the Double Jeopardy Clause prohibits the government from prosecuting an individual more than once for the same criminal act." *Moses*, 513 F.3d at 731. In *Moses,* the Seventh Circuit Court of Appeals considered "whether multiple and simultaneous violations of § 5861(d) constitute one criminal act or several separate acts" and whether the government could prosecute the defendant separately for each of five non-registered destructive devises alleged to have been in his possession. *Id*. The court noted that "courts that have addressed the issue unanimously agree that the unit of prosecution for simultaneous and multiple violations of § 5861(d) is the number of non-registered firearms possessed." *Id* at 732 (citing *Jackson v. United States,* 826 F.2d 763, 764 (8th Cir. 1991) (per curiam); *United States v. Nichols*, 731 F.2d 545, 547 (8th Cir. 1984); *United States v. Alverson*, 666 F.2d 341, 347 (9th Cir. 1982); *United States v. Tarrant*, 460

F.2d 701, 704 (5th Cir. 1972); *Sanders v. United States*, 441 F.2d 412, 414-415 (10th Cir. 1971)). The court agreed with its sister circuits in finding that "the purpose of the statutory scheme from which § 5861(d) derives dictates that each non-registered firearm (and thus each instance of tax evasion) corresponds to one unit of prosecution." *Id*.

Hamzeh argues that the rationale set forth in *Moses* "falls apart as applied to machine guns because they cannot be registered and no taxes are collected." (ECF No. 29 at 21.) Thus, "the proper unit of prosecution should be the possession and not the number of guns involved." (*Id*. at 22.) Just as in § 922(o), Hamzeh's simultaneous possession of multiple firearms should only give rise to a single count.

Hamzeh offers no authority in support of his position that machine guns should be treated differently than other firearms with regard to their unit of prosecution. In the absence of such authority, *Moses* controls. Thus, the court shall recommend that Hamzeh's motion to dismiss Count Two be **denied.**

**Motion for *Giglio* and *Brady* Material (ECF No. 28)**

In response to Hamzeh's motion for *Giglio* and *Brady* material the government states that it shall disclose its *Brady* and *Giglio* materials 90 days before trial. (ECF No. 32 at 13.) The defense "agrees that so long as the *Giglio* and *Brady* materials are turned over 90 days before trial, we can adequately prepare." (ECF No. 40 at 1.) Hamzeh asks the court to grant the motion as unopposed, while the government requests that the court deny the motion as moot.

There is no conflict between the parties on this issue and no reason to enter an order. The government states that it will comply with its obligations. Thus, the court shall **deny** the motion **as moot.**

**IT IS THEREFORE RECOMMENDED THAT** Hamzeh's motion to dismiss the indictment (ECF No. 26) be **denied;**

**IT IS FURTHER RECOMMENDED THAT** Hamzeh's motion to dismiss Count Two as multiplicitous (ECF No. 27) be **denied** and Hamzeh's motion to dismiss Count Three as multiplicitous (ECF No. 27) be **denied without prejudice**.

**IT IS ORDERED THAT** Hamzeh's motion for the government to produce *Brady* and *Giglio* evidence before trial (ECF No. 28) is **denied as moot**;

Your attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C) and Fed. R. Crim. P. 59(b)(2), whereby written objections to any recommendation herein or part thereof may be filed within fourteen days of service of this recommendation or prior to the Final Pretrial Conference, whichever is earlier. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

Dated at Milwaukee, Wisconsin this 9th day of May, 2017.

WILLIAM E. DUFFIN
U.S. Magistrate Judge