UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

     *Plaintiff*,

    *vs.*                                Case No.  16CR21

SAMY HAMZEH,

     *Defendant*.

### SUPPLEMENTAL INFORMATION IN SUPPORT OF BOND

Samy Hamzeh, by counsel, files this short brief offering three additional considerations for the Court in support of granting bond.

This case is about what drove Hamzeh to buy a machine gun. To the extent that it was the product of the government's pressure, Hamzeh has a good case for entrapment; but government pressure also speaks to the defense's ability to show that Hamzeh is not a danger to the community and can be released on bond. That's because under pretrial supervision he will not be greeted daily by two FBI informants posing as his friends and trying to convince him to violate the law. Until recently, the defense's ability to establish daily contact between the informants and Hamzeh was limited to a single report where Steve reports as much. The reports and recordings of the informants' meetings with Hamzeh are sporadic and incomplete.

To supplement what the defense can glean from the sparse recordings and reports, the defense has obtained the phone records that establish the amount of contact between

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC

Hamzeh and the informants. In compiling this graph, the defense has used a conservative approach, taking out calls that may have been double counted between the records. But even taking out the now-questionable calls and possible texts, this chart accurately reflects the amount of phone contact between Hamzeh and the informants.



On average, there are about six calls a day between the informants and Hamzeh. And with the exception of January 4, there is daily contact between the days when Hamzeh adamantly shows *no* interest in a machine gun (December 14) and the first report of Hamzeh's desire to target the Masonic Temple (January 19). It's during this time period that 224 contacts are made between them (about 28% of the total contacts), and it's during this crucial period when Mike doesn't record a thing that he says to Hamzeh.

It's also during this crucial time period (and before it) that the influence of *both* confidential informants is working on Hamzeh and his resolve. In psychology, this is called social influence. The second new point for the Court to consider is a famous experiment on the issue of what happens when two or more people (with an agenda)

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC

influence a third. A well-known example of this is the *Solomon Asch Experiment*, which was conducted in the 50's at Swarthmore College. There, the experiment was to measure lines and decide which was longest—the answer was obvious and left alone more than 99% of people would get the right answer. But then actors were brought in and the subject would go last after others (the actors) spoke and universally picked the same wrong answer. The result: 37 of the 50 subjects conformed themselves to the "obviously erroneous answer." This lead the experimenter to observe: "The tendency to conformity in our society is so strong that reasonably intelligent and well-meaning young people are willing to call white black."[1]

Those Swarthmore students were not dumb, bad or morally corrupt people, they were just victims of social influence and conformity. This conformity to the group explains what the Magistrate Judge could not accept and ultimately cited for denying release: "It comes down to this: it should not take the spiritual guidance of two religious leaders to dissuade a person from committing mass murder. A person whose moral compass depends so heavily on the advice of others on such a fundamental question of human decency presents an unacceptable risk of violence." R.67:19.[2] But it wasn't

---

[1] http://www.age-of-the-sage.org/psychology/social/asch_conformity.html. This experiment is not alone, it is well accepted in the field of psychology, and it is explained elsewhere.
https://www.simplypsychology.org/asch-conformity.html, *see also*
https://www.simplypsychology.org/zimbardo.html; *see*
http://www.intropsych.com/ch15_social/sherif_1936_group_norms_and_conformity.html
[2] In addition to ignoring the social psychology research that demonstrates the susceptibility of humans to the influence of others, this conclusion also fails to take into account how extraordinarily unlikely it is that an FBI sting like this one will actually thwart a terrorist attack. *See* Jesse Norris, *Why the FBI and the Courts are Wrong about Entrapment and Terrorism*, 84 Miss. L.J. 1257, 1261 (2017) (arguing that probability theory demonstrates that "given the significant levels of pro-terrorist sympathy and the miniscule number of terror attacks, the typical target of terrorism sting operations has an infinitesimally small chance of

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC

Hamzeh's moral compass that pushed for the machine guns or anything else; it was the influence of two actors, every day, for a period of months pushing him toward the wrong answer--a situation that will not be repeated when Hamzeh is released on bond.[3]

The third new point that the Court can and should consider for purposes of bond concerns the *Brady* material in this case. The defense has still not received some of the *Brady* material. The deadline was set for November 13. But given the declassification process, we are told, that it is taking a longer time than previously anticipated; so the defense is not filing a motion to compel—yet. In discussing the *Brady* material, the defense has learned that Hamzeh was under FBI surveillance for 64 days. Meaning: there are reports that the defense has not received, and it can only be assumed by their absence in the initial discovery that they show nothing as far as Hamzeh having any ties to or meetings with extremist groups or anything to do with searching for weapons outside the informants' presence and persistent calls for him to get one. That is, two full months of FBI surveillance show nothing that points to Hamzeh being a risk to the community—beyond his words, with two informants, who posed as his friend and over the course of months encouraged and influenced his speech and actions.

---

engaging in terrorism without government inducement"). There is no showing that Hamzeh presents a risk of violence if released.

[3] Another notable study is Stanley Milgram's *Behavioral Study of Obedience* in which research subjects were told to administer what they thought were electric shocks to a person in an adjoining room if they gave wrong answers to a memory quiz. As the intensity of the supposed shocks increased, the recipient began banging on the wall. Then the recipient became unresponsive, which was deemed a wrong answer, and resulted in further increases in the intensity of the shocks. Two-thirds of subjects never refused to stop administering shocks even after they reached a level labeled "Danger: Severe Shock." *See* K. Smith, *Psychology, Factfinding, and Entrapment,* 103 Mich. L. Rev. 759, 772-74 (2005).

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC

Dated this 28th day of November, 2017.

Respectfully submitted,

*/s/      Craig Albee*      _
Craig W. Albee,
Joseph A. Bugni
FEDERAL DEFENDER SERVICES
  OF WISCONSIN, INC.
517 E. Wisconsin Ave - Rm 182
Milwaukee,  WI   53202
Tel.: (414) 221-9900
E-mail: craig_albee@fd.org

*Counsel for Defendant,* Samy M. Hamzeh

5