UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    *Plaintiff*,

*vs*.                                                                                        Case No. 16-CR-21 (PP)

SAMY M. HAMZEH,

    *Defendant*.

**FIFTH PRETRIAL MOTION:
MOTION TO DISMISS COUNT TWO**

Samy Hamzeh, by counsel, moves this Court for an order dismissing Count Two of the Indictment on the ground that the undisputed facts do not establish that Hamzeh violated 26 U.S.C. § 5861(d) as alleged in Count Two because the temporary handling of someone else's firearm, in their presence, does not give rise to a duty to register the firearm or pay a tax. Thus, Hamzeh's temporary handling of CI Steve's machine gun (carrying it to the car) was not unlawful. The defense is bringing this motion now because as it prepares for trial and begins drafting jury instructions and flagging issues, it is evident that under the law no jury can convict Hamzeh of Count Two.

**I.    The undisputed facts do not establish that Hamzeh's temporary possession of CI Steve's machine gun violated § 5861(d).**

The defense has repeatedly foreshadowed that this will be an entrapment case, but there are additional defenses to the charges that can be resolved short of trial. When it comes to the possession of the machine guns, there is no dispute on the facts. On January

*Federal Defender Services
of Wisconsin, Inc.*

25, 2016, Hamzeh and two confidential informants drove to Pleasant Prairie to meet supposed gun sellers, who were actually undercover FBI agents. The plan was that CI Steve would buy one machine gun and Hamzeh would buy the other. When the meet occurred in Pleasant Prairie, Steve, Mike, and Hamzeh negotiated with the undercover agents and arrived at a price of $570 for the two machine guns, one of which had an attached silencer. The guns normally run upwards of $20,000 each. Hamzeh paid $270 for the gun (with silencer) for himself and CI Steve paid $300 for the other gun, for himself. The undercover FBI agents put both guns into the same bag; and since everyone there was a government agent of some sort, Hamzeh was given the bag to carry to the informant's car. With CI Steve and CI Mike, Hamzeh then walked back to the car and put the bag in the trunk. He was arrested immediately.

After his arrest, he was charged with knowingly receiving and possessing both the machine gun he bought (with the attached silencer) and the one CI Steve bought, which were not registered to him. *See* 26 U.S.C. § 5861(d). That charge and (unit of prosecution) concerns the failure to register the firearm and pay the tax. *Haynes v. United States*, 390 U.S. 85, 93 (1968); *see also United States v. Moses*, 513 F.3d 727, 732 (7th Cir. 2008) (noting "although a violation of § 5861(d) necessarily involves the possession of a firearm, the crime is more aptly characterized as a form of tax evasion.").

The issue for purposes of Count Two is whether Hamzeh's temporary handling of someone else's firearm, in their presence, subjects him to prosecution for failing to register or pay the tax before handling the firearm. The answer is no. The temporary

2

*Federal Defender Services
of Wisconsin, Inc.*

Case 2:16-cr-00021-PP-WED    Filed 01/06/18    Page 2 of 12    Document 85

possession of another's firearm is not sufficient to trigger the requirements of tax and registration and does not give rise to criminal liability. Here's why:

### A. The term possession in § 5861(d) is not to be conflated with the way that term is used in § 922(g).

The machine gun charged in Count Two was purchased by CI Steve—it was for him to determine where to take the gun, whether to use it, or whether to dispose of it. And by purchasing that gun and taking possession of it, he had a duty to register the gun and pay the tax. *United States v. Tarrant*, 460 F.2d 701, 704 (5th Cir. 1972) ("Since Congress was interested in collecting the tax on each weapon, clearly separate offenses for each firearm were intended to provide incentive for sellers and buyers to declare their weapons and pay the tax."). The failure to do so exposed him to criminal liability—just as Hamzeh's failure to pay the tax and register the other firearms exposed him to criminal liability for Counts One and Three.

To prove a violation of § 5861(d), the government must show that the defendant knowingly possessed or received an unregistered NFA firearm and that he knew it had the qualities that had to be registered. *See Seventh Circuit Pattern Jury Instruction* 693 (2012). Because this case deals with a gun, it's easy to assume that "possession" as the term is used in § 5861(d) would be the same as it appears in § 922(g). The Court and the parties are, of course, most familiar with how that operates. *See United States v. Matthews*, 520 F.3d 806, 809 (7th Cir. 2008) ("momentary possession" of a gun sufficient to convict). But again, as the Seventh Circuit noted in *Moses*, "although a violation of § 5861(d) necessarily involves the possession of a firearm, the crime is more aptly characterized as

3

*Federal Defender Services*
*of Wisconsin, Inc.*

a form of tax evasion."513 F.3d at 732. So when it comes to a having taxable event with a person's possession of the machine gun, the term "possession" in § 5861 can't be given the generic form of constructive or actual possession in § 922(g) and stretch to momentary possession of a gun. Momentary possession would, of course, be enough for a conviction under § 922(g), but it would not be enough to require a person to pay a tax—especially one for $200—for just holding the gun, while in the owner's presence.

### i. The Seventh Circuit has distinguished between possession as the term is used in the context of drug cases from felon-in-possession cases.

It's worth pausing for a moment here to address the variants of "possession" that the law recognizes. In *United States v. Lane*, 267 F.3d 715, 717-19 (7th Cir. 2001), the court rejected the defendant's argument, that the momentary handling of a gun did not violate § 922(g). The defense based its argument on how "possession" was read in *United States v. Kitchen*, 57 F.3d 516, 520 (7th Cir. 1995). In *Kitchen*, the court had reversed the defendant's conviction for possession with intent to distribute cocaine where the defendant had picked up two kilograms of cocaine and held it for two or three seconds to inspect it, but he never agreed to complete the anticipated drug transaction. *Id.* Under those facts, the court found that there was no indication that the defendant had the authority or ability to exercise control over the contraband by handling it. *Id.* at 521 (noting "the essential point is that the defendant have the ultimate control over the drugs."). He need not have them literally in his hands or on premises that he occupies but he must have the right (not the legal right, but the recognized authority in his criminal milieu) to possess them, as the owner of a safe deposit box has legal possession of the

4

*Federal Defender Services*
*of Wisconsin, Inc.*

contents even though the bank has actual custody." *Id; see also United States v. Manzella*, 791 F.2d 1263, 1266 (7th Cir. 1986).

In *Lane*, the defense tried to extend the reasoning of *Kitchen* into the felon-in-possession context, but the court found that the term "possession" wasn't universally defined. With drugs there was a "meaningful distinction between physical contact and the ability or authority to control the drugs," so something beyond contact was necessary to show the defendant exerted authority or the ability to physically control the drugs. *Lane,* 267 F.3d at 718. In contrast, the purpose of the felon-in-possession statute was to prevent criminals "'from being able to purchase or in any way come in contact with firearms of any kind.'" *Id.* (citation omitted). This different purpose proved critical to the court's conclusion: "[W]e find that holding a firearm establishes possession as a matter of law in the context of a charge under 18 U.S.C. § 922(g)(1). . . This holding depends heavily on both the purpose of the law in question and on the physical nature of guns." *Id.*; *see also Matthews,* 520 F.3d at 810 ("Here, Mr. Matthews' conviction gives effect to this statutory purpose. Mr. Matthews, a convicted felon, willingly came into contact with the firearms, taking them into his hands and inspecting them for the purpose of arranging a sale. *The conduct in which Mr. Matthews engaged is precisely what section § 922 was meant to prevent*." (emphasis added)).

So the term "possession" is not universally defined as dominion and control. Instead, it has to be defined by reference to the statute at issue and the purpose of the law that's being enforced. *See Abramski v. United States*, __ U.S. __, 134 S. Ct. 2259, 2267 (2014)
5

*Federal Defender Services of Wisconsin, Inc.*

("In answering that inquiry, we must (as usual) interpret the relevant words not in a vacuum, but with reference to the statutory context, structure, history, and purpose." (quotation omitted)). And the registration requirement and possession at issue in § 5861(d), in contrast to the possession in § 922(g), is a tax offense that is concerned with regulation rather than prohibiting certain person's contact, in any way, with the firearms. That distinguishes it from *Lane* and makes clear that temporarily handling a gun in the presence of the person in control of the firearm does not give rise to the registration-and-tax requirement. *See also United States v. Ortega*, 44 F.3d 505, 507 (7th Cir. 1995) ("He could have picked up the bag of heroin and run. But the power to make off with someone else's property is not equivalent to a right to the property.").

    **ii.    In the context of § 5861, possession of a machine gun has to be read and understood in relation to the statute's aim and its other subsections.**

Coming back to the issue of "possession" as that term is used in § 5861(d), here's how the law works. In order to lawfully possess an NFA firearm (a machine gun), a person must first register the gun and pay a $200 tax. The statute also provides that a person who owns an NFA firearm may not knowingly transfer it to another person unless that other person has registered the gun and paid the tax. *See id.* § 5861(e). So the mere possession of an NFA firearm is not in itself illegal; rather, the possession is only illegal if the possessor has not registered the gun and paid the tax. Again, the gravamen of a § 5861 offense is whether the gun is registered—not merely the possession of it. Thus, § 5861(d)'s concern is not with mere receipt or possession, but with receipt or possession

*Federal Defender Services of Wisconsin, Inc.*

without registration and paying the tax. *See Moses,* 513 F.3d at 732. That requires that the receipt or possession of the gun be substantial enough to give rise to a taxable obligation.

The event that typically triggers tax liability (and the duty to register) is the transfer of the firearm. A transferee shall not "take possession" of the firearm unless the transfer has been approved and the firearm has been registered to the transferee. *See* 26 U.S.C. § 5812(b). A transfer is defined as including "selling, assigning, pledging, leasing, loaning, giving away, or otherwise disposing of." *Id.* § 5845(j). Those terms all require something more than just handing a gun to someone. And the possession of the firearm has to be read in light of how a transfer is defined. One section of § 5861 targets those who sell or give away the firearm, so the other section involving the person who received "or possessed" the firearm has to be read in light of the former. You can't possess a firearm (unless you steal it or find it abandoned and take it home) such that a tax would be required unless it's been transferred to you—i.e., sold, given away, leased, etc. *See id.* § 5845(j). That both fits with a complete understanding of the statute, common sense, case law, and the experience of how registered firearm dealers allow others to handle, use, and shoot the dealer's machine guns.

### iii. The behavior of dealers across the country with letting others use their machine guns shows that "possession" means something more than the ability to exercise dominion and control.

Beyond reading the statute as a whole and that "possession" must be defined in relation to what "transfer" means, the idea of possession being akin to actual control for purposes of § 5861 finds common-sense support. There are many reasons a person might handle an NFA firearm that would not amount to receipt or possession that subjects him or her to the tax. For example, a prospective buyer might handle an NFA firearm to examine it and determine its condition. A person might try out a shooting range's machine gun (at the range) for the thrill of seeing what it's like to shoot a machine gun. Or a person might carry another person's NFA firearm to the car because his hands are full or it's just really heavy. No one would reasonably contend that any of these temporary handlings of a firearm, in the presence of the owner, gives rise to a tax-and-regulation obligation. None of these facts would establish a transfer of the firearm. *See* 26 U.S.C. § 5845(j). And yet Hamzeh carrying CI Steve's gun to the car can't be seen as any different from those examples. Or any different from a bell boy carrying a guest's belongings to their room—which isn't "possession" of the belongings despite the bell boy's temporary custody of the bags.

The fact that temporary possession of a machine gun (unregistered to the possessor) is not a crime is illustrated by the widespread practice of shooting ranges allowing customers to use their machine guns at their ranges. Using a machine gun would necessarily entail "possessing" a machine gun as the term possession is used in § 922(g)

8

*Federal Defender Services*
*of Wisconsin, Inc.*

cases. *See Matthews,* 520 F.3d at 810 (noting "the purpose of the Federal Firearms Act was to prevent *criminals in any way from coming in contact with firearms of any kind*" (citation omitted)(emphasis added)). There is even a recent USA Today article highlighting the popularity of offering tourists the opportunity to shoot machine guns in Las Vegas.[1] One of these ranges, "Bullets and Burgers," was the site of the 2014 tragedy where a nine-year-old girl accidentally shot her instructor with the machine gun supplied by the range.[2]

But there's no need to travel to Vegas to try out a machine gun as opportunities are available in the Midwest—including in the Eastern District of Wisconsin.[3] And those aren't just three isolated cases, attached as exhibit A is a list of 20 such places in America where a person can use (read: possess) a machine gun at a modest cost, and at none of those places does the person using the gun have to pay the $200 tax and get the gun registered to him or her before doing so. Which, by the way, is a cumbersome process that takes months. That is, the customers trying out a machine gun don't go through the laborious registration process because it is recognized that even the temporary use of the machine gun, in the owner's presence, does not implicate the tax-and-registration requirement.

---

[1] See William Cummings, Tourists in Las Vegas like renting and firing machine guns, USA Today, Oct. 2, 2017, at www.usatoday.com/story/news/nation/2017/10/02/machine-guns-have-long-been-las-vegas-draw/725553001/.

[2] See Steve Almasy, et al, Child firing Uzi at Ariz. shooting range accidentally kills instructor, police say, Aug. 28, 2014, CNN.com,atwww.cnn.com/2014/08/26/us/arizona-girl-fatal shooting accident /index.html.

[3] See, e.g., Midwest Gun Exchange, at http://www.midwest gun and range.com/machine-gun-rentals.cfm ("Enjoy the 'Full-Auto' experience! Try one of these magnificent machine guns for yourself!"); www.fletcherarms.com/gun-rental/("Waukesha's best indoor range since 1978;" "Shoot a full Auto Machine Gun Today!").

9

*Federal Defender Services*
*of Wisconsin, Inc.*

### iv. The Eighth Circuit has recognized that the temporary handling of a machine gun does not require registration and the demand to pay the tax.

That point is reinforced by case law. As the Eighth Circuit has recognized, "Congress, by requiring payment of a tax and registration of the transfer, clearly intended to require that a transferor have more of a proprietary interest in the weapon than just the mere transitory physical possession of it." *United States v. Kiefer*, 694 F.2d 1109, 1114 (8th Cir. 1982). In *Kiefer*, that recognition led the court to hold that the evidence was insufficient to support the defendant's convictions for transferring a firearm on two occasions when he converted guns from semi-automatic to automatic weapons and then handed them to an undercover FBI agent on behalf of the gun dealer/owner. The court explained that the defendant hadn't controlled the disposition of the machine guns, hadn't treated them as his own, nor had he taken any action contrary to the owner/dealer's instructions. And when the defendant handled the weapons it was in the dealer's presence or at his behest. *Id.* at 1114. Further, the definition of transferor implies that it applies to one "controlling the ultimate disposition of the weapons, not a person without such control performing the simple act of physically handing the guns to another." *Id.* Given those points, the court concluded that Kiefer had not exercised control over the weapons by handing them from the owner to the undercover agents or even by converting them to automatic weapons.

Hamzeh recognizes that he is not charged as a transferor, but the reasoning of *Kiefer* applies equally here. If any transfer of CI Steve's gun was made, it was from the undercover FBI agent to Steve. But CI Steve didn't transfer the gun to Hamzeh by having
10

*Federal Defender Services*
*of Wisconsin, Inc.*

him carry it to the car, in his presence. Hamzeh's handling of the gun did not constitute taking possession that would trigger the registration requirement any more than does the person who uses a shooting range's machine gun or a person who picks up and examines a silencer that is offered for sale. And because none of those people could be charged and convicted under § 5861(d), then neither can Hamzeh.

## II. Conclusion

As this case nears trial, it's important to have a correct understanding of the law and what Hamzeh can be convicted of under Count Two. If Hamzeh were a felon then carrying Steve's gun to the car would be enough for a felon-in-possession charge, but he's not. And the charge is possessing a gun that he failed to register. Because Hamzeh didn't posses Steve's gun—i.e., have a recognized right to control Steve's gun—he couldn't be required to register it and pay the tax. Thus, given the undisputed facts that will be presented at trial, Hamzeh is not guilty and can never be guilty of Count Two, and the defense asks that the Court dismiss it.

Dated at Milwaukee, Wisconsin this 6th day of January, 2018.

 Respectfully submitted,

 /s/ *Craig W. Albee*
 Craig W. Albee,
 Joseph A. Bugni
 FEDERAL DEFENDER SERVICES
  OF WISCONSIN, INC.
 517 E. Wisconsin Ave. - Rm 182
 Milwaukee, WI  53202
 Tel. (414) 221-9900
 e-mail:  craig_albee@fd.org

 *Counsel for Defendant*, Samy M. Hamzeh