UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    *Plaintiff*,

*vs*.                                          Case No. 16-CR-21 (PP)

SAMY M. HAMZEH,

    *Defendant*.

**APPEAL FROM MAGISTRATE JUDGE'S ORDER PARTIALLY
DENYING HAMZEH'S REQUEST FOR BRADY MATERIAL**

On March 8, 2018, Magistrate Judge Duffin issued an Order (D.E. 107) granting in part and denying in part Hamzeh's request for Rule 16 and *Brady* material. Hamzeh hereby appeals portions of the order denying his requests. In support of this appeal, Hamzeh adopts his earlier discovery pleadings.

**A.    FBI Policy Manuals, etc.**

The government has declined Hamzeh's request for policy manuals, guidance, memoranda, training manuals and other documents [policy manuals] concerning terrorism investigations and/or the use of confidential informants. The reason behind Hamzeh's request is that these policy manuals will aid in determining the agents' compliance with protocol during this extended sting operation, including with respect to the instructions or lack of instructions given to informants and the documentation of the activities of the government and its informants. In an entrapment case like this one, the policies are designed to protect citizens from government overreaching. Violations of

these policies risk the integrity of the investigation, leave informants unaccountable, and leave the court and jurors guessing as to what happened. Deviations from protocol are probative of whether there was government inducement that overcame the defendant's lack of predisposition, and they also may show motive and bias on the part of the agents who have reason to protect themselves from claims they violated the rules. Accordingly, the policy manuals in effect during this investigation should be produced. They are exculpatory *Brady* material, as well as Rule 16(a)(1)(E) material because these items are in the government's possession and material to preparing the defense.

The magistrate judge properly rejected the government's claim that the policy manuals are not producible because they don't create enforceable rights. Nonetheless the magistrate judge concluded that the policy manuals didn't have to be produced because Hamzeh has not established that violations of protocol as set forth in the manuals are "material." D.E. 107 at 5. The magistrate judge's reasoning is that the compliance or noncompliance with policies by the agents neither renders the entrapment defense a nullity nor conclusively establishes predisposition or inducement. *Id.*

While it is true that the defense can establish entrapment without proof that agents deviated from government policy, that is not the question. The question is whether showing violations of protocol would assist Hamzeh in proving entrapment. If the agents were not compliant with their own policies, that is relevant to whether their actions

*Federal Defender Services*

*of Wisconsin, Inc.*

created a risk of entrapment. Likewise, if the agents didn't document what they should have, then Hamzeh should be able to demonstrate that to the jury to raise doubt about the government's version of events and conduct.

The Magistrate Judge's understanding of material also is too narrow. A document is material "as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993) (quotations omitted). In addition, the "helpful" information that Rule 16 requires to be disclosed includes inculpatory evidence because it is "just as likely to assist in the preparation of the defendant's defense as exculpatory evidence," since the preparation of the defense requires knowledge of its pitfalls as well as its strengths. *United States v. Marshall*, 132 F.3d 63, 67 (D.C. Cir. 1998) (citation omitted).

What's more, the Supreme Court has recognized the significance of the government's policy manuals in evaluating the entrapment defense. In *Jacobson v. United States,* 112 S. Ct. 1535, 1541 n. 2 (1992), the Court cited the Attorney General's Guidelines on FBI Undercover Operations to illustrate the relevance of the government's conduct in evaluating the entrapment defense. *Jacobson* also reiterated that "the government may not punish an individual 'for an alleged offense which is the product of the creative activity of its own officials' and that in such a case the government '*is in no position to object to*

3

*Federal Defender Services*

*of Wisconsin, Inc.*

*evidence of the activities of its representatives* in relation to the accused.'" *Id*. (quoting *Sorrells v. United States*, 287 U.S. 435, 451 (1932)).

The policy manuals are particularly important with respect to the handling of informants. Hamzeh specifically requested all information concerning instructions given to the informants by the agents. The government responded that the agents provided the following guidance: (1) the CHS's assistance was entirely voluntary; (2) the CHS must provide truthful information to the FBI; (3) the CHS must abide by the instructions of the FBI and must not take or seek to take any independent actions on behalf of the U.S. Government; and (4) the U.S. Government will strive to protect the CHS's identity but cannot guarantee it will not be divulged. See D.E. 93 at 3. The only other information about instructions to the informants that was produced was that CI Mike was admonished for making his own audio recording. *Id.* at 4.

However, recently turned over texts reveal that the FBI was providing additional instructions to informants. The following text was sent by an agent to CI Steve on October 18, 2015:

> We need to talk before you talk to Samy anymore in the future. We need to get stuff like last night recorded every time. If you need to push him off for a day or two before you can meet we have to do it. The bosses got a bit upset that last night wasn't recorded and said they want everything recorded from now on. Thank you for understanding.

4

*Federal Defender Services*

*of Wisconsin, Inc.*

These are the types of informant instructions that Hamzeh has been requesting and told that the government had provided. The incomplete information turned over about the instructions given makes disclosure of all policy manuals governing informants all the more important (material) to the defense.

Finally, the magistrate judge also raised the possibility that the information that Hamzeh seeks might not be admissible under Fed. R. Evid. 403. Such a determination would be both erroneous and premature but, more importantly, the law is clear that evidence material to the defense should be produced without a determination of admissibility.

**B.** **Agents' Rough Notes.**

The magistrate judge concluded that Hamzeh is not entitled to the agents' rough notes nor to an in camera review of those notes. That determination is consistent with prevailing law, but there are two significant issues with respect to the rough notes that should be addressed by this Court. At the discovery hearing on January 31, 2018, the government's attorneys made statements suggesting that the prosecutors themselves had not reviewed the agents' rough notes. So while the government says it is "aware of its present and ongoing discovery obligations and will comply with them," *see* D.E. 104 at 6, it actually has no idea whether the notes are exculpatory or producible because it has not reviewed them. Accordingly, Hamzeh requests an order requiring the prosecutors to

5

*Federal Defender Services*

*of Wisconsin, Inc.*

personally review the rough notes of the agents and to turn over everything that must be produced under Rule 16, *Brady*, *Jencks*, the open file policy, or some other provision.

Second, at that same hearing, the government noted that the rough notes would have to be declassified before being turned over. Given that rough notes often become an issue at trial, and are not infrequently ordered to be produced at that time, the government should be required to obtain declassification of these notes now so that there is no delay or conflict at trial concerning the production of these notes.

C.  **Specification of the Informant's Earlier Work**

The government disclosed that CI Mike has worked for the government as an informant periodically since 2011. Thus far it has not disclosed the nature of CI Mike's work outside of this case or the benefits he received, but the Magistrate Judge properly ordered the government to disclose what benefits were received by CI Mike in other cases. D.E. 107 at 11. Hamzeh, however, also believes he is entitled to information about the other cases in which CI Mike cooperated so that the defense can properly evaluate and contextualize those benefits for the jury and investigate his conduct in those cases. Payment information alone does not permit a determination as to a CI's incentive to curry favor with the government. The defense also should have the opportunity to investigate CI Mike's conduct in these cases, particularly since the government is likely to suggest it believed he was reliable based in part on past performance.

6

*Federal Defender Services*

*of Wisconsin, Inc.*

The nature of the cases Mike was working on and his rewards are particularly important given text messages that only recently were turned over by the government. These messages reveal that CI Mike at one point in this case suggested that he wouldn't work any longer if the government didn't start rewarding him more handsomely. On November 5, 2015, he texted an agent the following message:

> Hey buddy, idk if I'm gonna be able to do this any longer I'm already putting lots of miles on the car and with paying the gas also. I think I'm doing a good job on this case and its big. Not just only that, like my entire reputation and family reputation [REDACTED] is at risk once this is finished like once this kid is locked up. I just hope you'd understand where im coming from. I'm not making anything off this case I'm just barley[sic] breaking even.

The agent texted back telling CI Mike twice that they "want to make it right for you."

This dialogue illustrates that CI Mike expected to profit from his work. The details about what work he did will allow the defense to provide the necessary context to show his motivations in full.

### D. Remaining Issues

One issue addressed in the Magistrate Judge's "remaining issues" section is Hamzeh's request for an order directing the Government to provide information about any conversations about machine guns, the Masons and any plan to attack the Masons, or that falsely portrays the Masons in league with ISIS and as enemies of Islam. The

7

*Federal Defender Services*

*of Wisconsin, Inc.*

Magistrate Judge denied the request based on the Government's representation that it is not in possession of anything responsive. Hamzeh requests the Court to grant the request and to order the government to request this information from the FBI.

Hamzeh's request is based on consideration of the following: (1) as the recently produced texts demonstrate, the FBI has been in possession of exculpatory and Rule 11 material that has not been shared with prosecutors; (2) those texts also reveal that there are communications and instructions to informants that were not shared with the defense; (3) the text quoted on page 4 reveals the FBI's concern with the informants having unrecorded conversations with Hamzeh, but CI Mike didn't record conversations for 35 days in December/January; (4) according to the discovery, until January 19, 2016, no mention ever had been made of the Masons to the FBI, yet a plan allegedly was proposed between January 11 and January 19 to obtain machine guns and attack a Masonic Center; (5) given that the alleged plan required CI Mike to obtain machine guns, it follows that he solicited the FBI's input in manufacturing a story about how those guns allegedly were obtained (or he was on a rogue mission); (6) given that there is no evidence of Hamzeh ever previously mentioning the Masons and recorded conversations at the time state that CI Mike originated the plan, the FBI should have information about how he came up with this particular plan; (7) "information" doesn't have to be reduced to writing to be producible to the defense; and (8) it is exculpatory if the FBI or the informant

8

*Federal Defender Services*

*of Wisconsin, Inc.*

came up with the plan for machine guns, *e.g., United States v. Navarro,* 737 F.2d 625, 735 (7th Cir. 1984) (identifying as a predisposition factor "whether the suggestion of criminal activity was originally made by the Government").

Dated at Milwaukee, Wisconsin this 6th day of April, 2018.

Respectfully submitted,

/s/ Craig W. Albee
Craig W. Albee, WI Bar #1015752
Joseph A. Bugni, WI Bar #1062514
FEDERAL DEFENDER SERVICES
  OF WISCONSIN, INC.
517 E. Wisconsin Ave – Rm 182
Milwaukee, WI 53202
Tel.: (414) 221-9900
Email: craig_albee@fd.org

*Counsel for Defendant,* Samy M. Hamzeh

9

*Federal Defender Services*

*of Wisconsin, Inc.*