UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                  Case No. 16-cr-21-pp

SAMY M. HAMZEH,

    Defendant.

**ORDER ADOPTING MAGISTRATE JUDGE'S RECOMMENDATION (DKT. NO. 103), OVERRULING DEFENDANT'S OBJECTION (DKT. NO. 106), AND DENYING DEFENDANT'S MOTION TO DISMISS COUNT TWO OF THE INDICTMENT (DKT. NO. 85)**

On January 6, 2018, the defendant filed a motion to dismiss count two of the indictment, arguing that his temporary handling of a gun did not trigger the tax and regulation requirements that give rise to criminal liability under 26 U.S.C. §5861(d). Dkt. No. 85. Magistrate Judge William E. Duffin issued a report, recommending that this court deny the motion. Dkt. No. 103. The defendant objected to the recommendation, dkt. no. 106, the government responded, dkt. no. 108, and the defendant replied, dkt. no. 109. The court will adopt the recommendation, overrule the objection, and deny the motion to dismiss.

## I. Background

### A. Parties' Arguments to Judge Duffin

The indictment charges the defendant with two counts of knowingly receiving and possessing guns not registered to him, and one count of knowingly receiving and possessing a silencer not registered to him, in violation of 28 U.S.C. §5861(d). Dkt. No. 6. Count One charges the defendant with receiving and possessing an H&K MP-5 SD 9mm machinegun with serial number S93040. Id. at 1. Count Two charges him with receiving and possessing an H&K MP-5 10mm machinegun with serial number 68-3049. Id. at 2. The defendant's motion to dismiss asked the court to dismiss Count Two. Dkt. No. 85.

In the motion, the defendant phrased the underlying facts this way:

> On January 25, 2016, Hamzeh and two confidential informants drove to Pleasant Prairie to meet supposed gun sellers, who were actually undercover FBI agents. The plan was that CI Steve would buy one machine gun and Hamzeh would buy the other. When the meet occurred in Pleasant Prairie, Steve, Mike, and Hamzeh negotiated with the undercover agents and arrived at a price of $570 for the two machine guns, one of which had an attached silencer. The guns normally run upwards of $20,000 each. Hamzeh paid $270 for the gun (with silencer) for himself and CI Steve paid $300 for the other gun, for himself. The undercover FBI agents put both guns into the same bag; and since everyone there was a government agent of some sort, Hamzeh was given the bag to carry to the informant's car. With CI Steve and CI Mike, Hamzeh then walked back to the car and put the bag in the trunk. He was arrested immediately.

Id. at 1-2.

The defendant argued that Judge Duffin should conclude, from those facts, that the defendant did not "possess" the gun charged in Count Two of the

indictment, because it was someone else's gun (CI Steve's), and the defendant just handled it temporarily. Id. He made several arguments in support of that contention.

First, the defendant asked the court not to define possession under §5861(d) in the same way that courts define possession under 18 U.S.C. §922(g) (prohibited persons possessing firearms). Id. at 3. He referenced cases that have held that momentary possession is sufficient to convict someone under §922(g). Id. He argued, however, that because it prohibits a defendant from *knowingly* receiving or possessing an *unregistered* firearm, a §5861(d) offense was "more aptly characterized as a form of tax evasion." Id. at 3-4 (quoting United States v. Moses, 513 F.3d 727, 732 (7th Cir. 2008)). The defendant argued that, under this characterization, the court should define "possession" for the purpose of §5861(d) to be something more than temporary possession, because "[m]omentary possession . . . would not be enough to require a person to pay a tax . . . for just holding the gun, while in the owner's presence." Id. at 4.

Next, the defendant argued that in order to lawfully possess the kinds of guns covered by §5861(d), a person first must register the gun and pay the $200 tax. Id. at 6. Given this, the defendant reasoned, it is not illegal to possess the gun; it is illegal to possess the gun if the possessor has not registered it and paid the tax. Id. The defendant argued that "[this] requires that the receipt or possession of the gun be substantial enough to give rise to a taxable obligation." Id. at 7.

3

The defendant also argued that "[t]here are many reasons a person might handle an NFA firearm that would not amount to receipt or possession that subjects him or her to the tax." Id. at 8. For example, he argued that one might try out a machine gun at a shooting range, or carry someone else's machine gun for that person, and contended that "[n]o one would reasonably contend that any of these temporary handlings of a firearm, in the presence of an owner, gives rise to a tax-and-regulation obligation." Id. The defendant asserted that his carrying CI Steve's gun to the car was no different than those examples, or than a "bell boy carrying a guest's belongings to their room—which isn't 'possession' of the belongings despite the bell boy's temporary custody of the bags." Id.

In support of the defendant's argument that the court should construe "possession" under §5861(d) to be something more than "temporary" or "momentary" possession, the defendant cited the Eighth Circuit's 1982 decision in United States v. Kiefer, 694 F.2d 1109 (8th Cir. 1982). The defendant quoted the Eighth Circuit for the proposition that "'Congress, by requiring payment of a tax and registration of the transfer, clearly intended to require that a transferor have more of a proprietary interest in the weapon than just the mere transitory physical possession of it.'" Id. at 10 (quoting Kiefer, 694 F.2d at 1114).

In conclusion, the defendant asked the court to find, ahead of the trial date, that the defendant "is not guilty and can never be guilty of Count Two," and to dismiss that count. Id. at 11.

4

In response, the government pointed to the Seventh Circuit's decision in United States v. Taylor, 728 F.2d 864 (7th Cir. 1984). The Taylor court held that "[p]ossession may be either *actual or constructive* and it need not be exclusive but may be joint." Dkt. No. 92 at 2 (quoting Taylor, 728 F.2d at 868). The government also referred the court to the Seventh Circuit's pattern jury instruction on possession, noting that the definition was the same for any offense for which possession was an element. Id. at 2-3.

While noting that the Seventh Circuit had not directly addressed the question of whether momentary possession could give rise to liability under §5861(d), the government pointed to several other courts that had answered that question in the affirmative, including the Second, Fifth and Tenth Circuits. Id. at 3. The government asserted that "direct physical control over a firearm, even if momentary, is enough to establish the knowing possession element of §5861(d)." Id. at 4.

The government also referenced the legislative history of §5861(d), arguing that it did not support "reading into the otherwise unambiguous statute additional qualifications or modifications of the term 'possession.'" Id. at 5. The government asserted that, while Congress enacted §5861(d) under its taxing authority, it was also intended to protect public safety. Id.

Finally, as to the defendant's reference to the Eighth Circuit's decision in Kiefer, the government emphasized that Kiefer involved a different crime— transferring a gun under §5861(e), rather than receiving or possessing it under §5861(d). Id. at 6. The government asserted that five years after Kiefer, the

5

Eight Circuit rejected the argument the defendant made here, finding that the government satisfied the "possession" element of §5861(d) "if the defendant has 'knowledge of presence plus control[']  . . . . It is possession, not ownership, that is controlling on the issue of guilt." Id. at 7 (quoting United States v. Zrust, 835 F.2d 192, 193 (8th Cir. 1987).

The government concluded: "[w]hether the facts of this case establish knowing possession is a question for the jury, and the government asks that the defendant's motion to dismiss be denied." Id. at 7.

B.  Judge Duffin's Recommendation

As the court noted above, Judge Duffin has recommended that this court deny the defendant's motion.

Judge Duffin began by stating the standard for considering a motion to dismiss an indictment. He summarized that standard:

> An indictment survives a motion to dismiss if it: (1) identifies the elements of the crime; (2) fairly informs the defendant of the charge so he may prepare a defense; and (3) enables the defendant to evaluate any double jeopardy problems. *United States v. Phillips*, 645 F.3d 859, 861 (7th Cir. 2011). An indictment is reviewed on its face, regardless of the strength or weakness of the government's case. *United States v. White*, 610 F.3d 956, 958 (7th Cir. 2010). The inquiry is whether it is possible to view the conduct alleged as constituting the crime alleged. *United States v. Moore*, 563 F.3d 583, 586 (7th Cir. 2009). A portion of an indictment may be dismissed subject to a defense that may be decided solely on issues of law. *United States v. Labs of Virginia, Inc.*, 272 F.Supp. 764, 768 (N.D. Ill. July 22, 2003).

Dkt. No. 104 at 2.

After reviewing the facts and the parties' arguments, Judge Duffin briefly noted (as had the government) that other appellate courts "that have considered momentary possession under §5861(d) have found that 'possession' includes momentary possession." Id. at 4 (citing United States v. Parker, 566 F.2d 1304, 1306 (5th Cir. 1978); United States v. Serafin, 562 F.3d 1105, 1115 (10th Cir. 2009)).

Judge Duffin, however, shifted his focus back to the standard for dismissing an indictment. Citing United States v. Moore, 563 F.3d 583, 586 (7th Cir. 2009), he pointed out that if an indictment is sufficient on its face, a defendant cannot successfully challenge it on the ground that the government might not be able to meet its burden of proof. Dkt. No. 103 at 4. He conceded that he did not know what evidence the government would present at trial, and pointed out that the record did not contain a stipulation regarding what the defendant had characterized as "undisputed facts." Id. Given this, Judge Duffin reasoned that "the question of whether the government can prove that [the defendant]'s possession of the firearm that is the subject of Count Two gives rise to the obligations under §5861(d) is a matter for trial, not a motion to dismiss." Id. (citing United States v. Brown, No. 14-CR-82, 2015 WL 269205, at *3 (E.D. Wis. Jan. 21, 2015)).

On this basis, Judge Duffin recommended that the court deny the motion to dismiss.

C. Defendant's Objections

The defendant objected that the "problem" with Judge Duffin's decision was that "there was no dispute on the facts so [Judge Duffin] had a foundation on which to rule on the legal merits of the claim." Dkt. No. 106 at 3. The defendant asserted that Judge Duffin had not identified any facts in dispute, or any facts not in the record, that he would have needed to decide what the defendant characterized as a legal question, and insisted that the government had not argued against the defendant's recitation of the facts. Id. The defendant characterized his motion to dismiss as a pure question of law, and reminded the court that Fed. R. Crim. P. 12(b)(2) allows courts to entertain motions involving purely legal questions. Id. at 3-4. The defendant argued that the court should follow the procedure the Seventh Circuit had approved in United States v. Risk, 843 F.2d 1059, 1061 (7th Cir. 1988), where the Seventh Circuit upheld a district court's pretrial dismissal of an indictment "'not because the government could not prove its case, but because there was no case to prove.'" Id. at 4 (quoting Risk, 843 F.2d at 1061). The defendant asked this court to "conduct the analysis of the issue that the magistrate judge bypassed, and dismiss Count Two because the undisputed facts fail to establish the charged crime." Id. at 5.

The government proffered two arguments in support of Judge Duffin's recommendation. Dkt. No. 108. First, the government disagreed with the defendant's contention that Judge Duffin "bypassed" the question of how to define possession under §5861(d), quoting Judge Duffin's statement that the

8

Fifth and Tenth Circuits had concluded that "momentary possession" could qualify as "possession" under §5861(d). Id. at 3-4. Second, the government contended that the defendant's motion asks for the court to perform the criminal analog to civil summary judgment—and that no such analog exists. Id. (citing Brown, 2015 WL 269205, at *3). The government emphasized that the parties had not agreed to, or submitted to the court, a set of operative facts. Id. at 5. And the government made clear that it "does not agree or stipulate to the facts offered by the defendant, and '[u]nless there is a stipulated record . . . a pretrial motion to dismiss an indictment is not a permissible vehicle for addressing the sufficiency of the government's evidence.'" Id. (quoting United States v. DeLaurentis, 230 F.3d 659, 660-61 (3d Cir. 2000)).

Finally, the government commented that the defendant took some of his "undisputed" facts from *outside* the four corners of the indictment—internet articles about opportunities to fire machine guns at shooting ranges, lists of places that rent machine guns. Id. The government argued that the defendant could not rely on facts outside of the face of the indictment to challenge the sufficiency of the indictment. Id. at 5-6 (citing United States v. Di Fonzo, 603 F.2d 1260, 1263 (7th Cir. 1979)). The government conceded that the Risk court affirmed dismissal of an indictment in a case in which the lower court had considered facts outside of the indictment, but it did so only because the underlying facts were undisputed and the government had not objected to the court examining facts outside the indictment. Id. at 6.

9

In his reply, the defendant repeated that the government hadn't provided an alternative set of facts or formally disputed his "undisputed" facts, and asserted that the government had not explained the difference between the defendant's "momentary" possession of CI Steve's gun and a shooting range customer's "momentary" possession of a machine gun not registered to that customer. Dkt. No. 109 at 1-2. The defendant added one final point, arguing that the issue of whether momentary possession qualifies as "possession" under §5861(d) "will have to be settled by this Court and addressed by the government—whether it's done now or in the jury instructions or at the Rule 29. It makes little sense to expend further resources when the issue can (and should) be decided now." Id. at 2.

**II.   Analysis**

A.   Standard of Review

Federal Rule of Criminal Procedure 59(b) governs dispositive motion practice initiated before magistrate judges. Parties have fourteen days to file "specific written objections" to a magistrate judge's report and recommendation on a dispositive motion. Fed. R. Crim. P. 59(b)(2). When reviewing a magistrate's recommendation, the district judge reviews *de novo* the recommendations of the magistrate judge to which a party timely objects. 28 U.S.C. §636(b)(1); Fed. R. Crim. P. 59(b)(2), (3). The court can "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. §636(b)(1).

B. Procedural Posture of the Motion to Dismiss Count Two

The defendant claims that Judge Duffin "bypassed" the defendant's request to define the word "possession" in the context of §5861(d). Specifically, he disputes Judge Duffin's conclusion that, absent a formal agreement to a set of undisputed facts, Judge Duffin could not decide the question the defendant presented.

The defendant repeatedly has asserted that the facts he recounted in the motion to dismiss are "undisputed," and that the only issue for the court to decide is a legal one. As the government pointed out, this argument is similar to an argument for summary judgment under Federal Rule of Civil Procedure. 56. That rule allows a court to grant judgment in favor of a party if there are no disputes as to any issues of material fact, and the only issue to be decided is a question of law.

But Rule 56, as well as this court's local rules and the case law, lays out a rigorous process for parties to a civil case to demonstrate that there are no genuine disputes as to any issues of material fact. The moving party must provide, along with the motion for summary judgment, proposed findings of fact. A non-moving party must provide its own proposed findings, and must support its contentions with evidence.

The government is correct that there is no such process in the criminal system. In this case, the court has only the defendant's insistence that his version of the facts (which is sparse) is undisputed. And that isn't true—the government has made clear that it does not stipulate to the version of facts the

11

defendant has stated. The defendant replies that the government hasn't pointed out which of the defendant's facts it disputes, or why. But neither the Federal Rules of Criminal Procedure nor the case law require the government to identify those facts that it might dispute in the context of a motion to dismiss a count of the indictment. Rule 56 requires that of the non-moving party in a civil case, but there is no corollary in a criminal case.

There *is* a process in the criminal system that allows a court to dismiss an indictment, but it is not a process akin to the summary judgment process. As Judge Duffin recounted, a motion to dismiss an indictment requires the court to look at whether the indictment identifies the elements of the charged offense. This one does, and the defendant has not argued otherwise. It requires the court to determine whether the indictment fairly informs the defendant of what he's been charged with, so that he can defend against the charge—the very motion the defendant has filed shows that he understands the charge, and is defending against it. Finally, the court must look at whether the defendant can evaluate any double jeopardy issues; the defendant has not argued that he cannot. The court looks, not at whether the government can prove the charge, but whether the *face* of the indictment contains the above factors. White, 610 F.3d at 958 (emphasis added). This one does. Finally, in the context of a motion to dismiss an indictment, the court does not look at whether the government can prove its case beyond a reasonable doubt. The court looks only at whether it is possible that a factfinder could conclude that the conduct

alleged in the indictment could constitute a violation of the statute. Moore, 563 F.3d at 586.

The defendant relies heavily on the Seventh Circuit's decision in Risk to decide what he characterizes as a purely legal issue by dismissing Count Two. The defendant ignores the fact that, unlike this case, Risk truly did involve a set of undisputed facts.

In Risk, the indictment charged the defendant with violating 31 U.S.C. §§5313 and 5322, and alleged that the defendant—a branch manager of a bank—had failed to file a Currency Transaction Report (or "CTR") for several transactions involving more than $10,000. Risk, 843 F.2d at 1060-61. The district court dismissed the indictment, concluding that "the government's characterization of the *undisputed* facts did not constitute a violation of any statute. In other words, the government's own facts proffered to the defendant and the district court simply did not conform to the allegations in the indictment." Id. at 1061 (emphasis added).

In affirming the district court, the Seventh Circuit placed heavy emphasis on the undisputed nature of the facts. At the outset, the Risk court commented:

> Through voluntary discovery, the government provided Risk with the documentation presented to the grand jury that entered his indictment. The government filed a notice of its voluntary compliance with discovery and *Risk appended these discovery materials to his motion to dismiss*. These documents provided by the government, therefore, served as the foundation for Risk's motion to dismiss (and, ultimately, the district court's decision). In its response, the government *admitted* that these facts presented by Risk "essentially accurately summarizes the facts which give rise to the

indictment." The government *did not object* to Risk's submission of these facts, nor did it challenge the authority of the district court to consider the government's facts, as presented by Risk, upon deciding Risk's motion to dismiss.

Risk, 843 F.2d at 1060 (emphasis added). The court explained further:

The government did not challenge the district court's authority to consider the undisputed facts disclosed by the government until *after* the district court granted Risk's motion to dismiss. Even then, the government did not object but proffered *additional* facts which it urged the court to consider upon reconsideration of Risk's motion. It was not until this appeal that the government first objected to the district court's consideration of the undisputed facts voluntarily disclosed by the government to Risk during discovery. Now it is too late. Under the unusual circumstances of this case, we find that the district court acted properly.

Id. at 1061.

In contrast, here the defendant has not appended any of the government's discovery to his motion to dismiss. The government has not admitted the defendant's version of the facts. While the government did not expressly disavow the defendant's version of the facts in its arguments to Judge Duffin, the government *did* contend that the question of whether the evidence showed the defendant knowingly possessed the firearm in Count Two was a question for the jury. Now, in its response to the defendant's objection, the government has objected to the defendant's characterization that his version of the facts is "undisputed." Dkt. No. 108 at 5 ("the government does not agree or stipulate to the facts offered by the defendant[.]").

Other district courts that have considered whether to apply Risk have distinguished it on similar grounds. See United States v. Romo, No. 06-CR-335, 2007 WL 3026717, at *2, n.3 (E.D. Wis. Oct. 16, 2007) ("This is not a situation,

14

like that presented in *Risk*, where the government has acquiesced in the court's consideration of whether the undisputed facts state a violation of law."); United States v. Doyle, No. 04 CR 572, 2006 WL 951881, at *6 (N.D. Ill. Apr. 11, 2006) ("Here, the government has objected to a pretrial determination of the sufficiency of the evidence, taking this case outside the narrow exception, created by the Seventh Circuit in *Risk*, to the general rule that the district court should not consider the sufficiency of the government's evidence in ruling on a motion to dismiss an indictment."); Brown, 2015 WL 269205, at *10 ("In *Risk*, the Seventh Circuit made clear that the exception applies only where the underlying facts are undisputed and the government does not object to the court examining facts outside the indictment.").

In the context of a motion to dismiss a count of the indictment, the fact that the parties have not agreed to a set of undisputed facts is fatal to the defendant's motion.

C. The Defendant's Substantive Argument

While the court fully agrees with Judge Duffin that, absent an agreed set of undisputed facts, the court cannot grant the defendant's motion, the court notes that the defendant's motion fails for another reason.

Section 5861(d) makes it illegal to "receive or possess" an unregistered, untaxed firearm. The statute provides: "[i]t shall be unlawful for any person—(d) to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record[.]" The Seventh Circuit's Pattern Criminal Jury Instructions show that the offense has three elements:

1. The defendant knowingly [possessed; received] a firearm [as described in the indictment] that had (a) characteristic(s) which required it to be registered in the National Firearms Registration and Transfer Record, specifically, that it (list characteristic(s)); and

2. The defendant knew that the firearm had that/those characteristic(s); and

3. The firearm was not registered in the National Firearms Registration and Transfer Record.

<u>Seventh Circuit Pattern Jury Instructions Criminal</u> 26 U.S.C. §5861(d) (2012).

Count Two of the indictment alleges:

> On or about January 25, 2016, in the state and Eastern District of Wisconsin, Samy Mohammed Hamzeh, knowingly received and possessed a firearm, an H&L MP-5 10mm machinegun, serial number 68-3049, not registered to him in the National Firearms Registration and Transfer Record, in violation of Title 26, United States Code, Section 5861(d).

Dkt. No. 6 at 2.

The language of Count Two mirrors the language of the statute, and reflects all three of the elements of the offense. The indictment also includes the word "knowingly," which reflects the Supreme Court's holding in <u>Staples v. United States</u>. 511 U.S. 600, 619 (1994) (finding that Congress did not dispense with the *mens rea* element for a violation of §5861(d) and that "to obtain a conviction, the Government should have been required to prove that petitioner knew of the features of his AR-15 that brought it within the scope of the Act.").

The defendant does not object to the indictment on the ground that it fails to state an element of the offense. Nor does he object that it fails to inform him of the nature of the charge or that it fails to protect him from double

jeopardy prosecution. And even if the court accepts the facts as the defendant states them, it is possible for a factfinder to conclude that the defendant "received or possessed" a gun that he appears to concede was not registered and upon which the tax had not been paid. So it is possible that the facts alleged could constitute a violation of §5861(d).

The defendant asks the court to hold, as a matter of law and across all possible permutations of facts, that a defendant cannot "possess" an unregistered and untaxed NFA firearm under §5861(d) if (a) he isn't the owner of the gun; (b) he had it only because someone else gave it to him; and (c) he had physical possession of it for only a short period of time. The very phrasing of that request demonstrates that the court cannot make such a fact-bound holding as a matter of law.

The defendant asserts that the gun belonged to someone else—CI Steve—and thus that it was CI Steve who had the obligation to register and pay tax on the gun. He argues that in order to be liable for "possession" under §5861(d), a defendant ought to have some obligation relating to the registration and taxing requirements. But one can imagine a scenario in which a defendant knows full well that someone else's gun is unregistered and untaxed, and still knowingly receives and possesses it. A straw purchase is one example of a situation in which the "owner" of the gun is responsible for registering it and paying taxes, but the defendant possesses it. Another example is a defendant who steals a gun he knows to be unregistered from someone else. Under the interpretation the defendant suggests, those defendants would not be liable under §5861(d),

even if they were aware of the requirements of the statute, knew the gun they possessed didn't comply and possessed it anyway.

The defendant asserts that he had the gun only because the FBI agents put his gun and CI Steve's gun in the same bag, and gave that bag to him. This amounts to an entrapment argument—that the defendant wouldn't have had the gun in Count Two if the agents had just given it to CI Steve, rather than giving it to him. The defendant is free to argue entrapment with regard to Count Two (assuming he meets the prerequisites); that is not a basis for the court to hold as a matter of law that these circumstances cannot constitute "possession" under §5861(d).

The defendant asserts that his possession was "momentary." Even the defendant's version of the facts does not include a description of how long the defendant had the two guns. Unless the car was parked five miles from where the deal with the FBI agents took place, the court assumes that that the defendant means that he had the gun for only a matter of minutes. But the thief who steals a gun he knows to be unregistered and untaxed could be apprehended fifteen or twenty minutes from where he stole the gun. The straw purchaser could be arrested minutes after taking possession of the gun. Under the defendant's interpretation, those individuals would not liable under §5861(d), even though they knew the guns did not comply with the law and intended to convert the guns to their possession.

There will come a time when the facts in this case will be established. Perhaps, at that point, those facts will be legally insufficient to support a

finding that the defendant committed the offense alleged in Count Two. That time is not now, despite the defendant's argument that "[i]t makes little sense to expend further resources when the issue can (and should) be decided now." Dkt. No. 109 at 2.

**III. Conclusion**

The court **OVERRULES** the defendant's objection to Magistrate Judge Duffin's report and recommendation. Dkt. No. 106.

The court **ADOPTS** Judge Duffin's report and recommendation. Dkt. No. 103.

The court **DENIES** the defendant's motion to dismiss Count Two of the indictment. Dkt. No. 85.

Dated in Milwaukee, Wisconsin this 23rd day of April, 2018.

        **BY THE COURT:**

        _____
        **HON. PAMELA PEPPER**
        **United States District Judge**