UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

   Plaintiff,

v.                Case No. 16-cr-21-pp

SAMY HAMZEH,

   Defendant.

**ORDER OVERRULING DEFENDANT'S OBJECTIONS TO JUDGE DUFFIN'S ORDER FOR RELEASE OF <u>BRADY</u> MATERIALS (DKT. NO. 113)**

  The defendant is scheduled to go to trial on August 20, 2018, on charges of knowingly receiving and possessing unregistered machineguns. On January 3, 2018, he filed a motion asking the court to issue an order requiring the government to disclose certain materials under <u>Brady v. Maryland</u>, 383 U.S. 73 (1963) and Federal Rule of Criminal Procedure 16. Dkt. No. 82. At a January 31, 2018 hearing before Magistrate Judge William E. Duffin, the parties narrowed the scope of the defendant's request to five categories of materials. Dkt. No. 101. About a month later, on March 8, 2018, Judge Duffin granted the motion in part and denied without prejudice the remaining discovery requests. Dkt. No. 107. On April 6, 2018, the government filed a statement explaining how it would comply with Judge Duffin's order as well as the requirements of the Classified Information Procedures Act (CIPA). Dkt. No. 112.

1

The defendant filed an "appeal" from that portion of Judge Duffin's order that denied requests for certain materials. Dkt. No. 113.

Because the defendant has not demonstrated that Judge Duffin committed clear error, the court will overrule the defendant's objections.

## I. Background

On February 9, 2016, the grand jury returned an indictment, charging the defendant with three counts of possessing unregistered firearms (two machineguns and a silencer). Dkt. No. 6. During the first week of January 2018—with an impending trial date of February 12, 2018—the defendant filed two motions: (1) the current motion for release of Brady materials, dkt. no. 82, and (2) a motion to dismiss Count Two of the indictment, dkt. no. 85. Around the same time, the parties moved to adjourn the jury trial. Dkt. No. 87. At a hearing on January 10, 2018, this court referred the two new discovery/pretrial motions to Judge Duffin, and granted the motion to adjourn the trial. Dkt. No. 90. As indicated above, the trial is scheduled to begin August 20, 2018.

Judge Duffin heard argument on the defendant's motion for Brady materials. Dkt. No. 101. Post-hearing, the government (dkt. no. 104) and the defendant (dkt. no. 105) provided supplemental briefs.

### A. Judge Duffin's March 8, 2018 Order (Dkt. No. 107)

Judge Duffin's order noted that, of the original items requested in the defendant's motion, only five remained unresolved after the January 31, 2018

hearing. Dkt. No. 107 at 5. Specifically, the five "categories" of materials that remained were:

(1) "FBI policy manuals, guidance, memoranda, training manuals, or other documents concerning terrorist investigations and/or the use of confidential sources;"

(2) "Agents' rough notes;"

(3) "Receipts and other paperwork documenting payments to confidential sources;"

(4) "Specification of cases in which confidential sources provided assistance to the government;" and

(5) "Unredacted reports."

Id. at 3. Judge Duffin observed that the defendant's supplemental reply brief had made several additional requests that did not fall into any of those categories. Id. The supplemental reply brief asked the court to order the government "to indicate whether there were unpreserved text messages." Id. It asked the court to order the government "to identify efforts to link [the defendant] with terrorists." Id. And it asked the court to require the government "to provide all reports, memoranda, etc. concerning information about machine guns, the Masons, any plan to attack the Masons, or that falsely portray the Masons in league with ISIS and enemies of Islam." Id. at 3-4.

Judge Duffin granted part of the defendant's motion. Specifically, under categories three and four, Judge Duffin ordered the government to turn over "all underlying documentation regarding payments given to informants as part of their work in this case and the amount of compensation which CHS-2 has received assisting the government as a source of information during the time

3

period from March 28, 2011 to October 6, 2011." Id. at 15. He also granted one of the defendant's "additional requests," and ordered the government to "provide a response as to whether an inquiry has been made into non-preserved text messages." Id. Judge Duffin denied without prejudice all the defendant's other discovery requests, and referred the case back to this court for trial.

      B.      <u>Parties' Responses to Judge Duffin's Order</u>

           1.      *Government's Response to Judge Duffin's Order*

The government's response notified the court that "[i]n order to comply with the Court's order and complete provision of any related discovery, the government intends to file a classified ex parte, in camera, and under seal motion pursuant to Section 4 of the Classified Information Procedures Act (CIPA)." Dkt. No. 112 at 1. In a footnote, the government explained that technically, it objected to Judge Duffin directing it to "release all underlying documentation regarding payments given to informants," but stated that it "[sought] to comply pursuant to CIPA." Id. The government stated that it was going to file a classified, *ex parte*, *in camera* motion, under seal, under Section 4 of CIPA, and referred the court to an October 26, 2016 filing for information on CIPA itself. Id. at 1. The government also stated that it would be available to answer any questions about the *ex parte* motion process "in an ex parte hearing prior to filing its motion." Id.

The defendant filed a document responding to the government's pleading, calling it a response to the government's "appeal" of Judge Duffin's order. Dkt.

4

No. 119. In this pleading, the defendant construed the government's response as a "suggest[ion] that the Court impose some unknown limitation on the production of the material under CIPA." Id. at 1. The defendant objected to any such limitation, arguing that the government "must provide information concerning what benefits the informants have received from the government because it's probative of bias," and asserting that the "Court should reject the Government's appeal of the Magistrate Judge's order to produce documentation showing payments to the informants." Id. at 2.

It is not clear to this court that the government has "appealed" Judge Duffin's motion. The footnote in the government's pleading indicates that while it technically objects to Judge Duffin's order, it "seeks to comply pursuant to CIPA." Dkt. No. 112, 1 at n.1. This court has not been contacted about any *ex parte* hearing (perhaps the government has contacted Judge Duffin), and the government has not filed with this court its proposed motion. The court will take no action on the government's "response."

    2.  *Defendant's Objections to Judge Duffin's Order*

The defendant filed an objection contesting Judge Duffin's ruling declining to require the government to disclose (A) FBI policy manuals, *etc.;* (B) agents' rough notes; (C) specification of the informant's earlier work; and (D) information about conversations on machine guns, the Masons, or that falsely portrayed the Masons in leave with ISIS and as enemies of Islam. Dkt. No. 113. The court will address these objections.

## II. Analysis

### A. Standard of Review

Federal Rule of Criminal Procedure 59(a) allows a district judge to refer nondispositive matters—"any matter that does not dispose of a charge or defense"—to a magistrate judge for determination. Fed. R. Crim. P. 59(a). The defendant filed his motion under Brady v. Maryland, 373 U.S. 83 (1963) and/or Federal Rule of Criminal Procedure 16, asking the court to order the government to produce certain material that the defendant believes will aid in his defense. Dkt. No. 82. A discovery motion such as this one is non-dispositive; Judge Duffin appropriately issued an order, rather than a report and recommendation.

The rule allows parties to object to a magistrate judge's ruling on a non-dispositive motion within fourteen days of the order, but it restricts the district's ability to modify or set aside such an order (or part of such an order) to those instances in which the order is "contrary to law or clearly erroneous." Fed. R. Crim. P. 59(a). See also Hall v. Norfolk Southern Ry. Co., 469 F.3d 590, 595 (7th Cir. 2006); United States v. Bailey, No. 14-CR-78, 2015 WL 687490, at *1 (E.D. Wis. Feb. 18, 2015) (applying clear error standard of review to defendant's appeal of magistrate judge's order on motion for disclosure of Brady material).

The defendant does not claim that Judge Duffin misstated the applicable law, and the court finds that Judge Duffin accurately summarized what Brady, Fed. R. Crim. P. 16 and the "open file policy" of the Local Rules require in

6

terms of disclosure. The defendant does challenge Judge Duffin's application of that law to some of the categories of discovery materials he requested.

    B.    <u>FBI Manuals, etc.</u>

The defendant asked for an order requiring the government to produce "FBI policy manuals, guidance, memoranda, training manuals, or other documents concerning terrorist investigations and/or the use of confidential sources." Dkt. No. 113 at 1. Before Judge Duffin, the defendant asserted that the case against him is "an entrapment case." Dkt. No. 113 at 1. He argued that viewing the policy manuals would help him determine whether the investigating agents complied with protocol during the investigation. <u>Id.</u> He maintained that in entrapment cases, the FBI's policies "are designed to protect citizens from government overreaching," and that "[d]eviations from protocol" would be "probative of whether there was government inducement that overcame the defendant's lack of predisposition . . . ." <u>Id.</u> at 1-2. He also argued that deviations from protocol could show motive and bias on the part of the agents. <u>Id.</u> at 2. For these reasons, the defendant argued, the policy manuals and other similar materials were exculpatory and material to the defense. <u>Id.</u>

Judge Duffin found that "although [the defendant] may not know which particular policies or training materials, if any, were in place at the time of this investigation, he has access to materials describing best practices in conducting investigations with confidential informants and in conducting undercover activities." Dkt. No. 107 at 5. He also concluded that the defendant had not established that the FBI internal manuals for investigating terrorist

7

organizations or for handling confidential informants were material to his entrapment defense. Id. at 5-6. On this second point, Judge Duffin emphasized that the defendant's entrapment defense could be proven—or rendered a nullity—regardless of whether agents complied or failed to comply with the manuals. Id. He also expressed concern that any evidence based on the agents' compliance or failure to comply with the manuals would confuse the issues and would place "undue focus on whether the agents complied with a manual when the issue is whether [the defendant] was entrapped." Id. at 6 (citing Fed. R. Evid. 403).

The defendant objects to these conclusions, arguing that whether the agents complied with their own policies is relevant to whether their actions created a risk of entrapment. Dkt. No. 113 at 2. In his reply brief, the defendant argues that if he can show that the government agents violated their protocols, the government will have a harder time meeting its burden of showing that it did not entrap the defendant. Dkt. No. 120 at 2. For these reasons, and because the defendant believes that these FBI manuals would be helpful to the defendant, he argues that Judge Duffin conceptualized the term "material" in the context of Fed. R. Crim. P. 16(a)(1)(E)(i) too narrowly. Dkt. No. 113 at 4.

The defendant cites Jacobson v. United States, 503 U.S. 540 (1992) to demonstrate the importance of the FBI manuals to his entrapment defense. He contends that in Jacobson, the Supreme Court cited the Attorney General's Guidelines on FBI Undercover Operations "to illustrate the relevance of the

8

government's conduct in evaluating the entrapment defense." Dkt. No. 113 at 3 (citing Jacobson, at 503 U.S. at 549, n. 2). The defendant also argues that the government has not turned over all of the instructions that case agents gave to the informants, as evidenced by a text message from a case agent that tells the informant to record all of his future conversations with the defendant. Dkt. No. 113 at 4. Finally, the defendant says that Judge Duffin prematurely considered whether the information he sought would be admissible under Fed. R. Evidence 403. Id. at 5.

Nowhere in his nine-page appeal does the defendant acknowledge that this court applies apply a clearly erroneous standard of review to Judge Duffin's decision on a non-dispositive order. The appeal reads as if the defendant is asking this court to undertake a *de novo* review of Judge Duffin's decision, despite the fact that the *de novo* standard applies to a district court's review of a *dispositive* ruling. Hall, 469 F.3d at 594-595.

The defendant has not identified any clear error on Judge Duffin's part. He concedes Judge Duffin's point that he can prove his entrapment defense without the manuals. Dkt. No. 113 at 2. He does not address the fact that, as Judge Duffin pointed out, he already has access to materials describing the best practices for conducting investigation with confidential informants and for conducting undercover activities. Instead, he emphasizes his view that having access to the manuals would help him prove his entrapment defense. Id.

Specifically, the defendant contends that "[i]f [case agents] were not compliant with their own policies, that is relevant to whether their actions

9

created a risk of entrapment." Dkt. No. 113 at 2. As Judge Duffin noted, however, the defense of entrapment has two elements—lack of predisposition and government inducement. United States v. Mayfield, 771 F.3d 417, 442 (7th Cir. 2014).

As to the second element—government inducement—the Mayfield court stated:

> We hold that inducement means more than mere government solicitation of the crime; the fact that government agents initiated contact with the defendant, suggested the crime, or furnished the ordinary opportunity to commit it is insufficient to show inducement. Instead, inducement means government solicitation of the crime *plus* some other government conduct that creates a risk that a person who would not commit the crime if left to his own devices will do so in response to the government's efforts. The "other conduct" may be repeated attempts at persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward beyond that inherent in the customary execution of the crime, pleas based on need, sympathy, or friendship, or any other conduct by government agents that creates a risk that a person who otherwise would not commit the crime if left alone will do so in response to the government's efforts.

Id. at 434-35.

The Mayfield court did not mention, as a factor in determining whether a government agent's actions induced a defendant to act in a way he otherwise would not have, whether law enforcement officers followed, or violated, their own internal policies. It is not clear to this court, any more than it was clear to Judge Duffin, that compliance with agency protocol or practice should be a factor in determining whether agents' actions induced a defendant. If law enforcement agent unlawfully induces a defendant to commit a crime that defendant otherwise would not have committed, the fact that he was following

10

protocol when he did so does not save him. And if the law enforcement agent did not follow protocol, but did not induce the defendant to do something he otherwise would not have done, then the fact that he was not following protocol is irrelevant. See Dkt. No. 107 at 6 for Judge Duffin's similar reasoning.

In this regard, the defendant also reads Jacobson too broadly. To begin with, Jacobson was *not* an inducement case; the government had admitted that it induced the defendant to commit the crime. Jacobson, 503 U.S. at 549, n.2. The issue in Jacobson was whether the defendant was predisposed to commit the offense before he became the target of government suasion. Id. at 550. More to the point, the single reference to agency internal undercover guidelines appears in a footnote, in which the majority disagreed with the dissent that the requirement of predisposition prior to government intervention was a change in the law of entrapment. Id. at 549 n.2. In pointing out that the notion that "the accused must be predisposed prior to contact with law enforcement" was one that was "firmly established," the Jacobson majority referred to the fact that at oral argument, the government had conceded that point, referencing its own requirement that agents should not offer inducement unless there was an indication that predisposition already existed. Id.

The defendant characterizes this footnote as a recognition by the Supreme Court of "the significance of the government's policy manuals in evaluating the entrapment defense." Dkt. No. 113 at 3. It is hardly that. It is the majority pointing out to the dissent that the requirement of pre-existing

11

predisposition was so well established that even the government—who had admitted to inducement—recognized the requirement.

Finally, the defendant objects that in deciding that the defendant had not shown that the manuals were material to the entrapment defense, Judge Duffin prematurely conducted a Rule 403 relevance balancing. The court disagrees. A court determines "materiality" by looking to whether the evidence "would have significantly helped in 'uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment and rebuttal.'" United States v. Gaddis, 877 F.2d 605, 611 (7th Cir. 1989) (quoting United States v. Felt, 491 F.Supp. 179, 186 (D.D.C. 1979)). To decide whether the manuals were material to the entrapment defense, Judge Duffin necessarily had to consider whether, among other things, they would aid in uncovering *admissible* evidence. If the manuals would not lead to the production of relevant evidence, then they would not be material. It was not clear error for Judge Duffin to conclude that the issue was not whether the agents complied with policies or protocols, but whether they induced the defendant, and that the manuals were not relevant to that issue.

In sum, the court finds no clear error in Judge Duffin's decision not to require the government to turn over the manuals and related materials.

   C.   Agents' Rough Notes

In his supplemental reply, the defendant asked Judge Duffin to require the government to disclose the "rough notes." Dkt. No. 105 at 7. The defendant reasoned that, if there were inconsistencies between the agents' rough notes

12

and the reports they prepared, the notes are exculpatory and would constitute Brady material. Dkt. No. 107 at 6 (citing Dkt. No. 105 at 7).

Judge Duffin denied this request, correctly noting that the defendant did not have a constitutional right "to his own search of the government's files." Dkt. No. 107 at 7 (citing Pennsylvania v. Ritchie, 480 U.S. 39, 59 (1987)). Judge Duffin emphasized that the government has a continuing, independent obligation to turn over exculpatory information under Brady, and concluded that "absent any reason to believe that exculpatory evidence exists within the agents' rough notes that has been withheld, the prosecutor's decision on disclosure is final." Id. (citing Ritchie, 480 U.S. at 59).

The defendant admits that Judge Duffin's determination "is consistent with prevailing law." Dkt. No. 113 at 5. He argues, however, that this court should require the prosecutors to review all of the rough notes, because at the January 31, 2018 hearing, "the government's attorneys made statements suggesting that the prosecutors themselves had not reviewed the agents' rough notes." Id. As an aside, he notes that the prosecutors indicated that before they could turn over rough notes, the notes would have to be declassified, and he urges the court to require the prosecutors to begin that declassification process immediately. Id. at 6.

The defendant made both of these requests to Judge Duffin, dkt. no. 105 at 7, and for the reasons recounted above, Judge Duffin determined that no further order was necessary. The defendant has not identified any clear error in Judge Duffin's rulings. The United States Attorney's Office is bound to comply

13

with Brady, and it is aware of that fact, and the serious nature of its failure to do so. It was not clear error for Judge Duffin to decline to order the government to do what it is obligated by law to do.

D. Specification of the Informant's Earlier Work

The defendant asked Judge Duffin for an order requiring the government to identify all other cases in which the informants who were involved in this case assisted the government, and to identify the payments they received. Specifically, the defendant wanted to know

> how many cases the informants have worked on with the government, what their motivations were for working for the government, what benefits they have received for working for the government, what benefits they requested from the government, what benefits they expected to receive from the government, whether they expect to receive benefits in the future from the government, whether they feel insulated from civil or criminal liability as a result of their work for the government, and how much money they have received in total from the government.

Dkt. No. 107 at 10 (quoting Dkt. No. 105 at 9).

Judge Duffin denied most of the defendant's request, concluding that the defendant "ha[d] not established the need for all of the detail he seeks regarding the informants' work in other cases." Id. at 11. Because of the nature of an entrapment defense, however, Judge Duffin found that the defendant had demonstrated that the amount of compensation that Confidential Human Source-2 received while working for the FBI on other matters was material to establishing bias or motive. Judge Duffin ordered the government to disclose information regarding how much it had compensated Confidential Human Source-2 during his previous work as an informant for the government.

14

The defendant's objection states that "[p]ayment information alone does not permit a determination as to a CI's incentive to curry favor with the government." Dkt. No. 113 at 6. The defendant wants the ability to investigate Confidential Human Source-2's conduct in past cases "particularly since the government is likely to suggest it believed he was reliable based in part on past performance." Id. The defendant offers a text message from Confidential Human Source-2 to a case agent in November of 2015 as support for why the government should be required to produce further specification about the informant's 2011 work with the government. Id. The text states, in full:

> Hey buddy, idk if I'm gonna be able to do this any longer I'm already putting lots of miles on the car and with paying the gas also. I think I'm doing a good job on this case and its big. Not just only that, like my entire reputation and family reputation [REDACTED] is at risk once this is finished like once this kid is locked up. I just hope you'd understand where im coming from. I'm not making anything off this case I'm just barley[sic] breaking even.

Id. at 7.

This text message makes no reference to work with the government in 2011. Rather, it shows that the Confidential Human Source-2 hoped to profit from his involvement in the defendant's case—something the defense certainly can use to challenge his reliability. It is not clear to the court how this text establishes that this court should order the government to produce information regarding the *substance* of Confidential Human Source-2's previous work. It is not clear how the defense even would evaluate information about prior work the informant did for the government. Unless the informant has testified in other proceedings, and been found by a court to be untruthful—information

15

the government would be obligated to disclose—it is not clear how the defendant would, as he puts it, "contextualize" his prior payments.

It was not clear error for Judge Duffin to refuse to require the government to provide information about the substance of Confidential Human Source-2's work in 2011.

E. Information Regarding Machine Guns, Masons, and ISIS

As Judge Duffin characterized it, the defendant asked for "an order directing the government to provide documentation of any communication about machine guns, the Masons and any plan to attack the Masons, or that falsely portrays the Masons in league with ISIS and enemies of Islam." Dkt. No. 107 at 15. Judge Duffin denied this request, stressing that the government had responded by representing that it was not in possession responsive materials. Id.

The defendant now objects, saying that the "Magistrate Judge denied the request based on the Government's representation that it is not in possession of anything responsive. [The defendant] requests the Court to grant the request and to order the government to request this information from the FBI." Id. at 8. The defendant then lays out eight reasons why he is requesting this information. None of these reasons demonstrate clear error. The defendant's conclusion that recently-produced texts show that the FBI has exculpatory evidence that it did not previously produce is unavailing. The government has a continuing obligation to produce exculpatory information, and apparently it is producing that information as the information comes to light. The fact that

16

more information comes to light as trial preparation proceeds does not mean that the government is deliberately hiding exculpatory information. Speculation that the informant "must have" solicited agent input, or that the Bureau "should have" information about how the defendant formulated a plan to attack the Masonic Temple, is just that—speculation. The statement that information showing the FBI came up with the Masonic Temple plan would be exculpatory is true as far as it goes, but it assumes that such evidence exists and that the government deliberately is withholding that information.

In the absence of a showing of clear error, the court will not disturb Judge Duffin's ruling.

### III. Conclusion

The court **OVERRULES** the defendant's objections to Judge Duffin's March 8, 2018 order. Dkt. No. 113.

Dated in Milwaukee, Wisconsin this 8th day of June, 2018.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**United States District Judge**
