UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

   *Plaintiff*,

*vs*.

             Case No. 16-CR-21 (PP)

SAMY MOHAMMED HAMZEH,

   *Defendant*.

## SIXITH PRETRIAL MOTION: MOTION FOR SPOLIATION HEARING

Samy Hamzeh, by counsel, respectfully moves this Court to hold a hearing to determine the following: whether the FBI failed to preserve text messages with informants and between agents; the reasons for any such failure, including to determine whether texts were not preserved intentionally, recklessly, or negligently; whether informants were instructed to delete text messages; what phone numbers were used by informants and agents to communicate by text messaging; what means and methods were used to ensure that all text messages have been produced to the defense; to identify which text messages were deleted or not preserved; and, to determine what relief is appropriate for failing to preserve text messages.

In support of this motion, Hamzeh invites the Court's attention to the following circumstances.

  1.  The FBI used numerous agents in this investigation. Two informants, previously referred to as Mike and Steve, had nearly daily contact with Hamzeh for four

months under the supervision of FBI agents. At times, the informants and the agents communicated by text messages. Some of these texts have been turned over to the defense, and the Court has ordered the government to identify which other texts were not preserved. R. 107 at 14. The Court also ordered the government to provide as much information as the government has about unpreserved texts, such as the date text messages were sent and topics that were discussed through text message. *Id.* Hamzeh still has not received the government's identification of the unpreserved texts or the other information ordered by the Court. The government did indicate that Special Agent Jonathan Adkins' phone had a software issue that caused a gap in text messages capture and storage and that the FBI could not recover some of his texts, but it has not satisfactorily explained when and why this occurred.

2. An examination of telephone records for numbers associated with Mike reveals that there are many texts that have not been turned over to the defense. In addition, some of the text messages between agents and Steve that have been turned over do not match Steve's telephone records. That is the phone records provided by Steve's cell phone provider do not reflect a text being sent at the time of the message—or any time close. That leads the defense to conclude that Steve was using another phone to communicate with agents via text. In addition, there is an unexplained break in the texts between Agent 5 and Steve, where there were near-daily texts, seven weeks go by without a text. Again, the defense cannot match up Agent 5 with a particular number to see whether there are additional text messages between him and Steve on Steve's phone or whether there is an additional number. Further, the defense has provided the

2

*Federal Defender Services of Wisconsin, Inc.*
Case 2:16-cr-00021-PP   Filed 07/11/18   Page 2 of 6   Document 136

government with Steve's cell records and asked the government to explain why they do not match with the texts that have been provided.

4. Despite several requests, the government has not identified any other number used by Steve for texts with the agents. This number is essential so that the defense can subpoena the records for that telephone number and identify which other texts have not been received. That phone number also will lead to records that will show additional communications with agents and/or Hamzeh. Contemporaneous to the filing of this motion, the defense is also filing a motion to compel the government to produce the actual phone numbers that the agents used to communicate with the informants, both Steve and Mike. The actual phone numbers used will allow the defense to determine what additional text messages might exist or were not preserved.

5. On 64 occasions, the FBI conducted surveillance of Hamzeh. When conducting this surveillance, the FBI typically used 6-8 agents who watched Hamzeh for eight hours at a time. The defense has received no texts between the agents when the surveillance was conducted or (for that matter) after. During these lengthy, tedious exercises, it's inconceivable that agents wouldn't be texting each other. The government has not produced any such texts between the agents conducting the surveillance or confirmed their existence or nonexistence. Nor has the government produced other texts between agents during this investigation.

5. Of particular concern are the missing texts from the lead agent in this case, Jonathan Adkins, who is believed to have been the handler for the informants and had a 176 text communications with Mike. The last text between Adkins and Mike that has been

3

produced to the defense was from October 21, 2015. The investigation continued until Hamzeh's arrest on January 25—with several texts from other agents after October 21, referring to Adkins and Mike needing to communicate with Adkins. And Mike's phone records suggest that 132 texts were exchanged with Adkins after the last one that was produced by the government. The defense is entitled to the remainder of the texts. If these texts were not preserved, then there should be appropriate sanctions.

6. Also of concern is a text that was produced by the government from January 24, 2016. On that date Special Agent Buono texted Steve to say that Steve should delete the texts he received from the agent. This could've been done to reduce the risk of the informant being discovered, but given the missing texts that have not been produced or preserved, it also could suggest an intent to conceal these communications.

7. A particularly instructive case is *United States v. Suarez*, 2010 WL 4226524 (D.N.J. 2010), where the district court addressed the same problem here of the FBI not preserving or producing text messages between FBI agents and an informant. The court recognized that the text messages were made by prospective government witnesses and that what was said between the witnesses and the agents was "fertile ground for cross-examination." *Id.* at *5. In *Suarez*, the defense made discovery requests for the texts, but the government failed to provide specific information surrounding the retention and deletion of the text messages. In response, the district court held a hearing over the course of three days at which FBI agents testified about the contents of the texts and their efforts to preserve messages. Information technology specialists from the FBI also testified as to why messages weren't preserved.

4

*Federal Defender Services of Wisconsin, Inc.*

8.      In *Suarez*, the court determined that the text messages between the FBI and the informants were statements made by prospective government witnesses under the Jencks Act and Fed. R. Crim. P. 26.2. The court decided that the government had a duty to preserve these messages, but had failed to do so.

9.      The issue in *Suarez* was remedy. The court recognized that it had several options at its disposal, including dismissal, suppression of statements, fines, and an adverse jury instruction. *Id.* at *7. After evaluating the hearing evidence, the court determined that the government had not acted in bad faith, but that a sanction still was necessary. As a result, it gave the following instruction:

> During the course of this trial you heard evidence by way of stipulation and testimony that during the government's investigation of defendants, the cooperating witness, Solomon Dwek, exchanged numerous texts messages with FBI agents supervising the investigation. The government was obligated to preserve all these text messages, but they were either deleted by the agents themselves or not preserved by the government. Specifically, although some text messages were in fact preserved, the government failed to preserve other text messages, which pertained to Agent Russ and Agent McCarthy from two key time periods: March 1 through March 16, 2009, and the entire month of July 2009. You may infer from the government's failure to preserve these messages, or the fact that they were deleted by agents, that the missing text messages were relevant to this case and that they were favorable to both defendant Suarez and defendant Tabbachino. You are not required to make this inference, however, and you must consider any rebuttal evidence that has been offered by the government with regard to this issue. Whether you ultimately choose to make the inference is your decision as the finder of fact.

10.     The district court also recognized that it could have given a harsher instruction had it found that the government had acted intentionally or recklessly.

11.     In this case, the government has stonewalled the defense's efforts to obtain the text messages in this case, not provided phone numbers to allow adequate

5

*Federal Defender Services of Wisconsin, Inc.*

investigation, not provided information ordered by the Court, and has failed to adequately explain why texts have not been produced or preserved. A spoliation hearing like that in *Suarez* is appropriate to determine why the government has violated its duty to preserve statements, to explore the contents of the unpreserved text messages, and to determine what sanctions are appropriate. Accordingly, Hamzeh requests a hearing at which evidence will be produced on these issues and a determination made as to an appropriate sanction, if any.

Dated at Milwaukee, Wisconsin this 11th day of July, 2018.

Respectfully submitted,

/s/    *Craig W. Albee*
Craig W. Albee, WI Bar #1015752
Joseph A. Bugni, WI Bar #1062514
FEDERAL DEFENDER SERVICES
  OF WISCONSIN, INC.
517 E. Wisconsin Ave – Rm 182
Milwaukee, WI  53202
Tel. (414) 221-9900
E-mail:   craig_albee@fd.org
               joseph_bugni@fd.org

*Counsel for Defendant*, Samy M. Hamzeh