# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

   v.                             Case No. 16-CR-21

SAMY HAMZEH,

        Defendant.

## Government Response to Defendant's Fourth Motion to Compel

The United States of America, by its attorneys, Matthew D. Krueger, United States Attorney for the Eastern District of Wisconsin, and Benjamin Taibleson and Adam Ptashkin, Assistant United States Attorneys, hereby responds to the defendant's Fourth Motion to Compel.

Hamzeh's Fourth Motion to Compel is in parts meritless, in parts moot, and in parts both. It requests a court order regarding (1) "information concerning [Confidential Human Source ("CHS")] motivations for cooperating and what benefits were discussed, promised, or received,"(2) "identification of all instructions given by the agents," (3) documents regarding CHS recording devices, and (4) "identification of all surveillance that was used to investigate Hamzeh."

To the extent that this information is not classified and the subject of the government's August 8, 2018 and September 26, 2018 Classified Information Procedures Act ("CIPA") motions, the government has made a good faith effort to wade through the

defense's various overlapping discovery requests and either produce responsive documents or explain that it has no such documents in its possession. The government has responded to the best of its ability to every discovery request repeated here. *See, e.g.,* Attachment A (August 7, 2018 Government Discovery Letter), Attachment B (August 9, 2018 Defense Discovery Letter), and Attachment C (August 10, 2018 Government Discovery Response Letter).

Hamzeh's category (1) documents are largely addressed in the government's August 8, 2018 and September 25, 2018 CIPA motions (including for example, administrative CHS documents and CHS payment documentation). But these documents are characterized by the defense wildly differently at pages 1 and 2 of this same motion. At page 2 of the Defendant's Fourth Motion to Compel, the defense does not merely list documents that bear on the CHS's "motivations for cooperating and what benefits were discussed, promised, or received," Defense's Fourth Motion to Compel at 1, but instead expands that request such that: "Hamzeh now seeks an order requiring production of the initial suitability report, including the informants' motivations for cooperating, all written instructions, annual reviews of the CHSs, and identification of any violations or deviations from guidelines, instructions, or policies by any informant or agent. See R. 82 at 19 (sec. f). Hamzeh also continues to request specific identification of all benefits received, discussed, or promised to the informants." *Id.* at 2.

The government informed the defense that certain CHS documents would be the subject of a CIPA motion and have attempted to work with the defense, by telephone and letter, to get Hamzeh whatever other information it can. Thus, for example, the defense

Case 2:16-cr-00021-PP   Filed 09/26/18   Page 2 of 25   Document 182

has asked whether either CHS was terminated for cause, and the government responded that neither CHS has. Similarly, the defense asked whether either CHS had received any sanctions and the government responded that at one point Special Agent Adkins admonished a CHS not to text Adkins internet memes. But embedded in the defense's new request is a massively expansive and overbroad request for the "identification of any violations or deviations from guidelines, instructions, or policies by any informant or agent." *Id*. Not just by CHSs, to be clear, but "any agent" as well. The government has repeatedly informed the defense the government has produced all *Giglio* material in its possession. The defense has identified no reason to believe there is any such material it has not received. The government has been through this request and requests like it at length by telephone and letter and is at a loss for why it is repeated here before this Court once again.

Hamzeh's Category 2, which requests "identification of all instructions given by the agents" to CHSs, appears as a threshold matter to be redundant with Hamzeh's Category 1 (which requests "all written instructions" to CHSs). The government and defense have corresponded repeatedly on this topic. Hamzeh states that "what troubles [him] is that the government seems to believe that it need not provide instructions that are not memorialized." Fourth Motion to Compel at 4. Beyond being facially confusing (how can the government produce something that does not exist?) the government attempted to work through this issue with Hamzeh, and, in the spirit of putting these discovery issues to bed, even produced a report regarding Special Agent Adkins's reminder to a CHS to record his conversations with Hamzeh. *See* Defense Fourth Motion

3

to Compel at 4 (discussing July 30, 2018 Adkins Report). The government has produced every instruction it can that was given to a CHS. It has no obligation to *create* anything for production to Hamzeh, and Hamzeh has stated no basis and cited no authority for the proposition that he is entitled to anything beyond what he has received.

Categories 3 and 4 address recordings and surveillance and are largely covered by the government's August 8, 2018 and September 26, 2018 CIPA motions.[1] The government points out, though, that Hamzeh claims that Category 3 "information is discoverable because it is *Brady* material" on a theory that "part of the defense's concern in this case is that for 35 days one CHS did not record any conversations with Hamzeh, despite meeting with him nearly daily." Defense Fourth Motion to Compel at 6. That is not correct. The defense does not explain why this absence of recordings is exculpatory. Giving Hamzeh the benefit of the doubt, he did set out a theory in a different filing that the absence of inculpatory recordings is itself exculpatory – i.e., if Hamzeh had conversations during which he was not discussing slaughtering people with machine guns, that would be exculpatory. Defense Third Motion to Compel (September 4, 2018) (Dkt. No. 174) at 6. But that argument has been universally rejected, including by the Seventh Circuit. *See, e.g.*, *United States v. Baker*, 1 F.3d 596, 598 (7th Cir. 1993) (rejecting defendant's "theory that anything the government comes upon in its investigation that is not inculpatory must be exculpatory." (citing *Brady v. Maryland*, 373 U.S. 83 (1963)); *see*

---

[1] The government notes that embedded in Category 3 is the same CHS-instruction issue Hamzeh included in his Categories 1 and 2 ("The defense is seeking an order requesting the government to identify . . . what instructions were given as to when to record Hamzeh").

4

*also United States v. Kennedy*, 819 F. Supp. 1510, 1519 (D. Colo.), *aff'd sub nom. United States v. Byron*, 994 F.2d 747 (10th Cir. 1993) ("Citing *Brady*, many defendants have made broad metaphysical requests for the production of the absence of evidence inculpating them in the crimes charged. *Brady* requires the production of material information which is 'favorable to the accused,' that is, exculpatory information, not information which is merely, 'not inculpatory' and might therefore form the groundwork for some argument for the defendant.") (citations omitted).

The government remains committed to working with Hamzeh to resolve all outstanding discovery issues and to ensure he receives the fair and orderly trial to which he is entitled. That effort is not advanced by discovery requests and motions for court orders that are redundant with, or variations of, previous requests to which the government has already responded in good faith, which this Court has already addressed, and which are otherwise already resolved.

5

CONCLUSION

For the reasons set forth above and in the government's August 8, 2018 and September 25, 2018 CIPA motion, Hamzeh's Fourth Motion to Compel should be denied.

Dated at Milwaukee, Wisconsin this 26th day of September, 2018.

Respectfully submitted,
MATTHEW D. KRUEGER
United States Attorney

By:     */s/ Benjamin Taibleson*

Benjamin Taibleson
Adam Ptashkin
Assistant United States Attorneys
United States Attorney's Office
Eastern District of Wisconsin
517 East Wisconsin Avenue
        Milwaukee, Wisconsin 53202
Telephone: (414) 297-1700
E-Mail: benjamin.taibleson@usdoj.gov

# ATTACHMENT A



**U.S. Department of Justice**

*United States Attorney*
*Eastern District of Wisconsin*

*517 E. Wisconsin Ave*          *(414)297-1700*
*Milwaukee WI 53202*       *Fax (414)297-1738*
                    *www.justice.gov/usao/wie*

August 7, 2018

Craig W. Albee and Gabriela A. Leija
Federal Defender Services of Wisconsin Inc.
517 E Wisconsin Ave - Rm 182
Milwaukee, WI 53202

Joseph A. Bugni
22 E Mifflin St - Ste 1000
Madison, WI 53703

   Re: United States v. Samy Hamzeh, Case No. 16-CR-21

Counsel,

   We write regarding our production of discovery in response to your discovery requests and Magistrate Judge Duffin's July 25, 2018 Order. The July 25th Order directed the government to disclose to the defense twenty-four categories of materials, "to the extent responsive information is within the government's possession, custody, or control." To the best of our understanding, there are no materials within the government's possession that have not already been produced, if there ever was any such material, for categories 1, 2, 4, 5, 7, 11, 12, 13, 14, 15, 16, 17, 18, 19, and 21.

   You should receive today, via e-mail and hand-delivered discs, materials responsive to categories 3 and 20 (including emails and trainings, respectively). You should also receive materials responsive to additional discovery requests not addressed in the Order including surveillance photos, surveillance video, Agent cell phone numbers, and a report regarding the substance of inadvertently unretained text messages from Agent Adkins to a Confidential Human Source.

   In addition, and in keeping with the July 25th Order, the government will file tomorrow a motion pursuant to the Classified Information Procedures Act regarding materials that may be responsive to the July 25th Order's categories 6, 8, 9, 10, 22, 23, and 24.

       Very truly yours,

       MATTHEW D. KRUEGER
       United States Attorney
   By: *s/Benjamin Taibleson*
       Benjamin Taibleson
       Gregory Haanstad
       Assistant United States Attorneys

# ATTACHMENT B

# FEDERAL DEFENDER SERVICES
## LEGAL COUNSEL OF WISCONSIN, INC.

Craig W. Albee, Federal Defender
Krista A. Halla-Valdes, First Assistant

Joseph A. Bugni, Madison Supervisor
John W. Campion
Shelley M. Fite
Anderson M. Gansner
Gabriela A. Leija
Peter R. Moyers
Ronnie V. Murray
Tom Phillip
Joshua D. Uller
Kelly A. Welsh

517 E. Wisconsin Avenue
Suite 182
Milwaukee, Wisconsin 53202

Telephone 414-221-9900
Facsimile 414-221-9901

August 9, 2018

**Hand Delivered and by e-mail:**
**benjamin.taibleson@usdoj.gov**
**paul.kanter@usdoj.gov**
**greg.haanstad@usdoj.gov**

AUSA Benjamin P. Taibleson
U.S. Department of Justice (ED-WI)
Office of the US Attorney
517 E. Wisconsin Avennue – Rm 530
Milwaukee, WI   53202

RE:   *United States v. Samy M. Hamzeh*
       Case No. 16-CR-21

Dear Ben:

Thank you for the discovery your office produced this week. After reviewing that discovery, your most recent correspondence, and the government's submissions to the Court, there are several matters on which we still are seeking clarification or that we believe have not yet been addressed. These are outlined below.

**A.      Judge Duffin's March 8, 2018 Order**

There still are several items that we believe have not been produced in compliance with Judge Duffin's order. These are as follows:

1.   The underlying documentation regarding the payments to the informants. These are necessary so that Hamzeh can identify which funds were paid for reimbursement and which related to expenses;

2.   The amount of compensation paid to the informants in other cases (the government has agreed to provide this information, *see* R. 116 at 9);

3.   Identification of any unpreserved texts. I realize that this will be part of the spoliation hearing, but note that there still has not been compliance with the Court's order; and

4.   The government stated in its response to Hamzeh's first *Brady* motion that it would provide the report detailing what took place when the agents first told the CI's about each other and gave them instructions as to how to approach Hamzeh. The government stated that this report would be provided once it was declassified, but the government hasn't produced the report. *See* R. 93 at 9.

**B.    Judge Duffin's July 25 Order.**

With respect to the government's recent response to Judge Duffin's July 25 order we still have a number of concerns which I will try to outline below:

1.   Your August 7, 2018, letter asserts that there are 15 categories of materials that have either been produced or the government doesn't have. We need clarification as to which materials were produced and which don't exist. I'm not trying to make extra work for you, but we want to ensure there is no misunderstanding regarding the government's position and we want to ensure that we received all the evidence the government produced.

2.   The August 7 discovery production included 82 surveillance photos and 2 videos, but we believe there are additional photos and videos. Joe Bugni's letter of July 26 identified 202 surveillance photos and 12 videos that were mentioned in reports but had not been produced. Thus, there are still other photos and videos that are documented but haven't been produced.

3. The government produced 11 pages of emails, but those emails are redacted. They don't identify the sender or receiver, and the names of the persons mentioned in the email are also redacted. That makes these emails practically worthless. We are requesting unredacted copies of those emails.

4. With respect to category 5 (updated *Giglio* material), to my knowledge we have not received any updated *Giglio* material, although I am certain that such material exists.

5. With respect to category 7 (post-conviction benefits), we are seeking certainty on this question. Is the government asserting that CHS 2 never received benefits, including post-conviction benefits in any other case? *See* July 24 Tr. at 35-36.

6. With respect to category 11 (criminal history), we have not received an updated records check regarding the criminal history of the informants. But this is obviously something that exists.

7. With respect to category 17 (CHS testing), the government's position is nonresponsive because no such information has been produced and to say this information is not in the government's possession doesn't directly answer whether testing was done. Please indicate whether the required CHS testing was done and, if so, the result.

8. Likewise, with respect to categories 18 and 19 (recording equipment), the government's position is nonresponsive. Please identify whether the CHSs had recording equipment and when that recording equipment was in their possession.

9. The same problem exists with category 21 (undercover proposals) in that the government's position is nonresponsive.

10. The government's August 7 letter also identifies seven categories of material that it is filing under seal under CIPA. We have the following concerns regarding that filing.

a. With respect to category 6 (immigration benefits), the government has previously indicated that there was only one immigration benefit sought or conferred in this case. *See* R. 93 at 5. If that is not correct, the government has an obligation to correct the information it previously provided.

b. With respect to categories 8 and 9, we understood that the government objected to providing the underlying documentation relating to these payments, but had not objected to identifying how much the informants were paid in expenses versus how much for services. R. 112 at n. 1. We are requesting that breakdown immediately.

c. With respect to category 10, it is hard to imagine that an informant's criminal history could be classified information. We are requesting an updated criminal history as required by the Court's previous orders as well as the July 25 order.

d. With respect to categories 22 and 23, I appreciate your reaching out to me to determine whether there is some summary that could be provided regarding these items that would resolve the issue. We are still exploring that.

e. With respect to category 24, it is hard to imagine how chain-of-custody documentation constitutes classified material. Without chain-of-custody, there's no foundation to admit the recordings.

f. Judge Duffin's July 25 order also reiterated his prior order requiring the disclosure of all payments that CHS 2 received as an informant. We are again requesting that information.

## C. Other Discovery Issues.

1. We still have not received any response whatsoever to our request that the government explain how it obtained the calls on disc 118.

2. We are requesting notice of whether the government intercepted communications or used GPS, stingray, pole cameras, or other surveillance or interception techniques in this case that have not been disclosed. We are also requesting notice as to whether a wiretap or other form of surveillance was used on Hamzeh's phone.

3. Thank you for providing the phone numbers for Zuraw, Adkins, and Bisswurm. And previously your office had provided the numbers for Buono, Momciolovic, and Simons. But as Joe Bugni previously explained, we were seeking the numbers for all the agents who assisted in handling the informants, which also would include: Parker Shipley, Erroll Martin, Corey Baumgardner, Ronald Mosback, and Eric Fraser. Please provide those as well.

4. The informants' phone records reflect that both informants called 414.221.9716 and 888.221.9575. Please confirm that these numbers were assigned to the FBI. Also, please provide any information the FBI has regarding who these calls were with, including any call logs, call records, or text messages.

5. Previously we expressed great skepticism about the claim that the informants only had been given four instructions by the agents. *See* R. 93 at 3. Our skepticism appears to have been well-founded as Adkins' July 27, 2018, statement indicates that he instructed the informant to: "be inquisitive;" "not to lead Hamzeh into any plan or ideology;" and told him "every time to ask open ended questions such as who, what, when, where, and why." We are again requesting identification of *all* instructions given to the informants and any memorialization of those instructions.

6. Adkins' July 27, 2018 statement also asserts that at no time did he ever violate FBI policies concerning CHS handling. We renew our request for production of those governing policies in light of this claim.

7. It is clear that there is additional information maintained by the government regarding the informants that should be produced, particularly regarding their motives. At a minimum we are requesting all documentation required to be maintained under The Attorney General's

Guidelines Regarding the Use of FBI Confidential Human Sources, including, but not limited to:

a. The initial suitability report for each informant, to include biographical information, personal information, motivation for becoming an informant, and criminal history;

b. All written instructions reviewed with the informant upon registration and thereafter;

c. All annual or other reviews of each informant;

d. All authorities for any informant to engage in illegal activity and supporting documentation;

e. Identification of any violations or deviations by any informant;

f. Identification of any violation or deviation from any guidelines or policies by any government agent.

8.  Please indicate whether either CHS has been closed for cause and, if so, the reasons for that determination.

9.  Please provide notice of any failure by an informant to pay taxes on benefits received for cooperation.

10. Please provide updated information concerning payments to CHS1, including itemized summaries of money paid for travel associated with this case.

11. In our June 11 letter, we requested that the government: Identify at least 45 days in advance of trial any data the government intends to introduce from the Mac book, PlayStation, and cell phone seized from Hamzeh. Because these electronic devices contain such voluminous data, and may require the use of experts to evaluate the data, it is unreasonable to require the defense to discern what material, if any, the government may use at trial. *Cf. United States v. Anderson*, 416 F. Supp. 2d 110, 113 (D.D.C. 2006); *United States v.*

> *Poindexter*, 727 F. Supp. 1470, 1484 (D.D.C. 1989). Accordingly, to preserve Hamzeh's rights to due process and a fair trial, we are requesting identification of whatever data, if any, the government intends to use from these devices.
>
> Is that acceptable to the government or should we file a motion?

12. On or about November 19, Hamzeh is reported to have said that the FBI interviewed him. Please confirm that this is false to your knowledge or provide all statements made in any such interview.

Thank you for your consideration. Please let me know if you have any questions.

Sincerely,

Craig W. Albee

CWA/cm

# ATTACHMENT C



**U.S. Department of Justice**

*United States Attorney*
*Eastern District of Wisconsin*

517 E. Wisconsin Ave                                    *(414)297-1700*
Milwaukee WI 53202                                    *Fax (414)297-1738*
                                                      *www.justice.gov/usao/wie*

August 10, 2018

Craig W. Albee and Gabriela A. Leija
Federal Defender Services of Wisconsin Inc.
517 E Wisconsin Ave - Rm 182
Milwaukee, WI 53202

Joseph A. Bugni
22 E Mifflin St - Ste 1000
Madison, WI 53703

Re: *United States v. Samy Hamzeh*, Case No. 16-CR-21

Counsel,

We write in response to your August 9, 2018 letter. Your letter comprises several dozen requests, and I will try to address all of them here. I also attempt to use a similar organizational structure to yours to make things as clear as possible. Finally, I address reciprocal discovery in Part D below. I am certain that all parties want to get these issues resolved as soon as we possibly can.

A.   *Magistrate Judge Duffin's March 8, 2018 Order*

Your Requests A.1 and A.2 regarding CHS payment information are covered by the government's Classified Information Procedures Act ("CIPA") motion. We informed you in the government's August 7, 2018 letter that "in keeping with the July 25th Order, the government will file tomorrow a motion pursuant to the Classified Information Procedures Act regarding materials that may be responsive to the July 25th Order's categories 6, 8, 9, 10, 22, 23, and 24." Those categories 8 and 9 seem to cover precisely the same information as your new Requests A.1 and A.2.

As to Request A.3, Judge Duffin's July order states clearly that "the court concludes that the following requests, to the extent they are not moot, should be addressed at the spoliation hearing." Because, to our understanding, *whether* we will respond to those requests will be addressed at the hearing, we have not yet responded to those requests. Having said that, a list of the text messages that were not preserved due to a glitch and so are not in the government's possession is not in the government's possession. Are you asking that we create such a list for you or simply that we produce what we have? If the latter, we have done so, as we do not have anything.

As to Request A.4, my understanding was that the government produced this soon after the March Order, but I believe you when you say you do not have the report. So, we will produce it to you early next week.

B.  *Magistrate Judge Duffin's July 25, 2018 Order*

Your Request B.1 asks for more clarity regarding what material has been produced to you and what material has not been produced to you merely because the government does not have it. I have attempted to break that out below, using the numbering employed by Judge Duffin in his July Order:

1. Produced. Please share any basis for believing the government is in possession of materials you do not have, and we will make sure nothing was missed.

2. Produced. Please share any basis for believing the government is in possession of materials you do not have, and we will make sure nothing was missed.

3. Produced. Please share any basis for believing the government is in possession of materials you do not have, and we will make sure nothing was missed.

2

4. Not in the government's possession, custody, or control. Please share any basis for believing the government is in possession of such materials, and we will make sure nothing was missed.

5. Produced. Please share any basis for believing the government is in possession of materials you do not have, and we will make sure nothing was missed.

7. No post-conviction benefits awarded. Please share any basis for believing that such benefits were awarded, and we will make sure nothing was missed.

11. My understanding was that the government produced this, but I believe you when you say you do not have the report. So, we will produce it to you early next week.

12. Not in the government's possession, custody, or control. Please share any basis for believing the government is in possession of such materials, and your basis for believing such "periodic indices/sentinel inquires related to the CHS" occurred, and we will make sure nothing was missed.

13. Produced. Please share any basis for believing the government is in possession of materials you do not have, and we will make sure nothing was missed.

14. Produced. Please share any basis for believing the government is in possession of materials you do not have, and we will make sure nothing was missed.

15. Not in the government's possession, custody, or control. Please share any basis for believing the government is in possession of such materials, and your basis for believing there were any "third party benefit agreements," and we will make sure nothing was missed.

16. Not in the government's possession, custody, or control. Please share any basis for believing the government is in possession of such materials, and your basis for believing such a deferral, declination, or benefit was promised, and we will make sure nothing was missed.

3

17. Not in the government's possession, custody, or control. No such testing was done. Please share any basis for believing the government is in possession of such materials, and your basis for believing such CHS testing is required or was, in this case, failed by a CHS, and we will make sure nothing was missed.

18. Neither CHS "had recording equipment routinely assigned to him for extended periods of time." Please share any basis for believing this occurred, and we will make sure nothing was missed.

19. Not applicable, as neither CHS "had recording equipment routinely assigned to him for extended periods of time."

21. Not in the government's possession, custody, or control. Please share any basis for believing the government is in possession of such materials, and we will make sure nothing was missed.

Request B.2 is a follow up on surveillance photos and videos that the government did not believe were material but agreed to produce nonetheless. I appreciate you taking the time to identify the photos and videos you are requesting. But your July 26 letter seems to reflect a good faith misunderstanding of the underlying reports. Where, for example, a report states that there are three photos on three discs, that does not necessarily mean there are nine different photos; it often means there are three identical copies of a disc with three photos. We believe we have produced every surveillance photo and video in our possession, but we will comb through our files and produce any additional photos and videos by early next week.

Request B.3 is that we unredact personal identifying information from emails. I do not know why the email address of the sender of an administrative email is relevant and helpful to you, but we will do so.

Request B.4 is duplicative of B.1.5 above. On what basis are you "certain that such material exists"? Please share any basis for believing the government is in possession of materials you do not have, and we will make sure nothing was missed.

Request B.5 is duplicative of B.1.7 above. No post-conviction benefits were awarded. Please share any basis for believing that such benefits were awarded, and we will make sure nothing was missed.

Request B.6 is duplicative of B.1.11 above. My understanding was that the government produced this, but I believe you when you say you do not have the report. So, we will produce it to you early next week.

Request B.7 is duplicative of B.1.17 above. No such testing was done. Please share any basis for believing the government is in possession of such materials, and your basis for believing such CHS testing is required or was, in this case, failed by a CHS, and we will make sure nothing was missed.

Request B.8 is duplicative of B.1.18 and B.1.19. This did not occur. Please share any basis for believing this occurred, and we will make sure nothing was missed.

Request B.9 is duplicative of B.1.21 above. Please share any basis for believing the government is in possession of such materials, and we will make sure nothing was missed.

Request B.10 includes sub-categories "a" through "f," and those subcategories address the substance of a pending Classified Information Procedures Act motion. Given that the CIPA motion is pending, it seems to be the best course to wait for the court to rule on the motion and then sort out the defense's remaining requests. To the extent I can work with you to get you material, unclassified substitute information, please just tell me as much.

5

### C. Other Discovery Issues

If the defense insists it is entitled to discovery regarding Request C.1, that will likely necessitate an additional CIPA motion. So too the bulk of our response to the defense's Request C.2, with the exception of your request for pole camera footage. The government did use a pole camera and will produce to you pole camera footage early next week.

As to Request C.3, we will send you the agent phone numbers you have requested early next week.

As to Request C.4, we cannot confirm that information given the sensitivity and our discovery obligations. I do not want to burden the Court with additional discovery litigation, but if you believe you are entitled to a confirmation of your supposition under Rule 16, it may make sense for you to take that request to the Court.

As to Request C.5, every memorialized instruction given to the informants that is within the government's possession, custody, and control has been produced. The defense did not previously have Agent Adkins's July 27, 2018 statement because it did not yet exist.

As to Request C.6, Magistrate Judge Duffin recommended that Judge Pepper reject this request the last time you made it. And, in her June 8, 2018 Order, based on nearly six pages of analysis on the topic, Judge Pepper rejected this defense request the last time the defense made it and stated that "The court OVERRULES the defendant's objections to Judge Duffin's March 8, 2018 order. Dkt. No. 113." Making this request given that posture strains the bounds of good faith.

As to Request C.7, do you have a basis for believing it is "clear that there is additional information maintained by the government regarding the informants that should be produced"? To my understanding, the government has produced everything it can, and much of this is redundant

with other parts of your letter (*e.g.*, C.7.b (informant instructions) with C.5 (informant instructions)).

As to Request C.8, neither CHS has been "closed for cause."

As to Request C.9, no such information is within the government's possession, custody, or control. So, we have no basis to provide any such notice.

As to Request C.10, which appears to be redundant with A.1, B.1, and B.10.b, this information is covered by the government's Classified Information Procedures Act motion. And again, I was surprised you asked for this once again, given that we informed you in the government's August 7, 2018 letter that "in keeping with the July 25th Order, the government will file tomorrow a motion pursuant to the Classified Information Procedures Act regarding materials that may be responsive to the July 25th Order's categories 6, 8, 9, 10, 22, 23, and 24." Those categories 8 and 9 seem to cover precisely the same information as your new Requests A.1 and A.2 and your Request C.10.

As to Request C.11, we will certainly share that information with the defense as soon as we have it finalized. Should I take it from that request that the defendant is willing to stipulate to authenticity of the data recovered via forensic examination from the defendant's Mac book PlayStation, and cell phone?

As to Request C.12, this is false to our knowledge.

D. *The Defendant's Discovery Obligations*

On a related subject, we request all discovery to which we are entitled pursuant to Federal Rules of Criminal Procedure 12.1, 12.2, 12.3, 16, 26.2, and Local Criminal Rule 16, and including but not limited to:

1. The opportunity to inspect and copy any tangible item or document that may be offered as an exhibit at trial, pursuant to Rule 16(b)(1)(A), including materials you intend to use as impeachment for government witnesses.

2. The results of any examination or test that may be introduced by the defendant at trial, pursuant to Rule 16(b)(1)(B).

3. A written summary of any expert testimony that the defendant intends to use, including the expert's opinions, the bases and reasons for those opinions, and the expert's qualifications, pursuant to Rule 16(b)(1)(C). You have produced some such notice but my understanding is that additional materials are forthcoming.

4. Notice of any defense, or of an intent to offer expert testimony, concerning a mental condition or defect inconsistent with the state of mind required for the offense charged, pursuant to Rule 12.2.

5. Given that interviews have undoubtedly been conducted by the defense but no reports have been produced, any witness's statement pursuant to Rule 26.2, including but not limited to attorney notes of witness interviews and investigator notes of witness interviews; to the extent you believe you need not produce any such statements for any reason, including a claim of privilege, please identify those statements and the basis upon which you have withheld them.

Very truly yours,

MATTHEW D. KRUEGER
United States Attorney

By:     *s/Benjamin Taibleson*

Benjamin Taibleson
Gregory Haanstad
Adam Ptashkin
Assistant United States Attorneys

8