UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

           Plaintiff,

      v.                          Case No.  16-CR-21

SAMY M. HAMZEH,

           Defendant.

## UNITED STATES' PRE-HEARING MEMORANDUM AND RESPONSE TO DEFENDANT'S MOTION REGARDING SPOLIATION

The Defendant moved for, and this Court scheduled, a spoliation hearing regarding FBI Special Agent text messages. Spoliation is not typically at issue in a criminal case – and instead, for example, a defendant might pursue possible Jencks Act or *Brady* violations. Here, there is no evidence of a *Brady* or Jencks act violation.  This spoliation claim instead appears to be the product of the defendant's request for certain materials (including text messages) to which the defense is not otherwise legally entitled, the government's agreement to voluntarily provide these materials to the extent those items are within the government's possession, and then the Court's resulting July 25, 2018 order that the government do so. This sequence then led to the defense claiming that it is entitled to additional documents, i.e., text messages, even if those documents are not in the government's possession.

In his motion, the defendant does not request any particularized relief. He does, however, cite with apparent approval the adverse inference jury instruction given in *United States v. Suarez*, 2010 WL 4226524 (D.N.J. 2010). This pre-hearing memorandum is meant to give this Court context for the testimony the government expects at the hearing and to clarify the governing case

law at issue. In the Seventh Circuit, bad faith is a requirement for the defendant's implicitly requested adverse inference instruction at trial. The defendant has failed to inform the Court that the Seventh Circuit explicitly refused to follow the less stringent requirement in *United States v. Suarez*, 2010 WL 4226524 (D.N.J. 2010), the only case citied by the defendant in his Motion. The defendant has also failed to make even a prima facie showing of bad faith by producing any evidence thereof. That is not surprising, as no evidence of bad faith exists. Should the defendant move for sanctions of any kind with regard to spoliation, including via a request for an adverse inference instruction, that motion should be denied. Further, direct and cross examination that would not elicit testimony relevant to the analysis set out below should be precluded.

I.     Procedural Disposition and Factual Background

On July 11, 2018, the defendant filed a Motion for Spoliation Hearing. R. 136. The hearing is scheduled for December 12, 2018. On November 9, 2018, this Court conducted a status conference, and that same day the United States informed the defendant that, in regards to the spoliation hearing,

> The government expects that Joshua Baer, an Information Technology specialist with the FBI's Enterprise Security Operations Center, will testify, essentially, as follows:
>
> The FBI uses a piece of software on its phones that allows the FBI to retain text message content. And because that software is installed on the phone, anything that affects the ability of that phone to collect or transfer data will affect the software. That necessarily means there are logging and retention gaps. It is not knowable what precisely caused the retention failure on FBI Special Agent Jonathan Adkins's phone from approximately October 25, 2015 to April 25, 2016. All that is known is that it cannot have been caused voluntarily or manually by the user of the phone. No person can manually prevent logging. Users cannot even see the relevant software, let alone interact with it. The retention outages that occurred in late 2015 and early 2016 occurred nationwide, for the reasons described above, and were not unique to Adkins's phone.

2

> In addition, the initial process of setting up a phone and providing it to an employee is a manual, human process; and if certain steps are not followed in precisely the right order, it can have long-term downstream retention consequences later without warning. Retention may occur, and then stop, and then commence again without warning. Data may also fail to transfer properly when a device attempts to send data for retention. The status of the phone operating system and software also can also be a problem. If the carrier updates the operating system, that can cause the retention software to fail.

On November 29, 2018, the defendant informed the United States that he wanted the United States to produce several additional FBI Special Agents for the hearing in addition to the witnesses the government intended to call. The United States does not intend to call any of these agents at the hearing. The United States will nonetheless make those agents available if at all possible for the defendant to call at the hearing. Based on the defendant's motion, the United States presumes the defendant seeks to examine the agents and ask them if they intentionally deleted text messages that could have been used to aid the defendant's stated defense of entrapment.

While the Special Agents did not preserve all of their text messages by taking screenshots of the text messages on their cellular telephones, the FBI has an IT procedure in place that retains all text messages on Special Agents' cellular telephones irrespective of whether the Special Agent individually preserves his texts. As indicated above, FBI Special Agents cannot interfere with this IT procedure. Unfortunately, as the United States' witness will testify, there were nationwide IT issues that caused Special Agent text messages to be lost in 2015-2016. The government also intends to call an FBI witness to discuss efforts to retrieve text messages from individual cell phones.

As an example of the complete lack of evidence in this case to support a bad faith argument, the defendant's Motion questions why a Special Agent instructed a CHS to delete text messages on 1/24/2016. The explanation has nothing to do with bad faith or, as the defendant suggests, an

3

"intent to conceal these communications." Spoliation Motion at 4. For operational security purposes, FBI CHSs, including the CHS in this situation, are always instructed to delete text messages with Special Agents for their protection and to maintain the covert relationship with the FBI. The CHS could be endangered if the target of the investigation discovered undeleted text messages with law enforcement on the CHS's phone.

## II.    The Defendant Cannot Show Bad Faith Spoliation

The defendant's motion implicitly requests an adverse inference instruction, or harsher sanctions. The only case the defendant's attorneys cite in their motion is *Suarez*, 2010 WL 4226524. R. 136 at 4-5. The court in *Suarez* found that even though the agents did not act in bad faith, an adverse inference instruction was appropriate. *Id*. at *9-10. But the defendant failed to inform the Court that the Seventh Circuit has explicitly rejected the conclusion of this unpublished case out of the District of New Jersey. In *Bracey v. Grondin*, the Seventh Circuit rejected the appellant's claim that an adverse inference instruction was appropriate, referred to *Suarez*, and stated,

> Some circuits have adopted less stringent standards than we require for issuing an adverse inference instruction. . . . Simply establishing a duty to preserve evidence or even the negligent destruction of evidence does not automatically entitle a litigant to an adverse inference instruction in this circuit. [The defendant] has not made the requisite showing of bad faith . . ."

712 F.3d 1012, 1020 (7th Cir. 2013).

In *Bracey,* a civil prisoner abuse case, the Seventh Circuit affirmed denial of spoliation sanctions when the prison security cameras tape that recorded an excessive force incident was taped over three days later. *Id*. at 1015, 1020. Under Seventh Circuit law, "A party destroys a document in bad faith when it does so 'for the purpose of hiding adverse information.'" *Id*. at 1019 (internal citation omitted). Also, the burden is on the party that moves for spoliation

4

sanctions to establish bad faith. *Id. See also Mathis v. John Morden Buick, Inc.*, 136 F. 3d 1153, 1155–56 (7th Cir. 1998) (finding that no adverse inference instruction could issue where the appellant did not show bad faith – i.e., where the appellant had made no showing that the owner had destroyed the documents "for the purpose of hiding adverse information"); *Trask–Morton v. Motel 6 Operating.,* 534 F.3d 672, 681–82 (7th Cir. 2008) (affirming denial of spoliation sanction where no evidence of bad faith); *Park v. City of Chicago,* 297 F.3d at 615–16 (affirming denial of spoliation sanction when records destroyed under routine record expungement policy); *Coates v. Johnson & Johnson,* 756 F.2d 524, 551 (7th Cir. 1985) (affirming denial of spoliation sanction when records destroyed under routine procedures); *Fass v. Sears, Roebuck & Co.,* 532 F.3d 633, 644 (7th Cir. 2008) (stating bad faith is a requirement for an adverse inference instruction in regards to a spoliation issue).

The *Bracey* court could not have been clearer: "Nothing in any of Bracey's filings shows defendants destroyed the video because of any damaging content it may have contained. Without that showing, *Mathis* forecloses Bracey's entitlement to an adverse inference instruction." 712 F.3d at 1020.

Any request for sanctions should, therefore, be denied. The government's July 2018 agreement to produce text messages in its possession (and the resulting July 25, 2018 court order to do so) does not create a retroactive constitutional or statutory duty to produce text messages that no longer exist on an FBI server or phone. Nor do they justify a spoliation sanction. Further, FBI Special Agents did not intentionally delete text messages in bad faith. The fact that an FBI IT malfunction resulted in Special Agent text messages, to which the defendant was not otherwise entitled in any event, not getting retained does not warrant any sanction. The United States' IT

5

specialist witness will testify no agent could possibly interfere with the retention of text messages on the FBI's system.

The defendant's Motion appears to be rooted in his speculation that a text message that could be helpful to his entrapment defense might have existed and might have been destroyed in bad faith, but he offers no evidence of any such thing. Ultimately, the defendant's attempt to examine law enforcement agents on this issue is a fishing expedition. Attempts at the scheduled hearing to elicit testimony that is not relevant to the analysis above, and any subsequent motion for sanctions, should be denied.[1]

Respectfully submitted this 5th day of December, 2018.

MATTHEW D. KRUEGER
United States Attorney

*/s/ Adam Ptashkin*
ADAM PTASHKIN
BENJAMIN TAIBLESON
Assistant United States Attorneys
United States Attorney's Office
Eastern District of Wisconsin
517 East Wisconsin Avenue, Room 530
Milwaukee, Wisconsin 53202
Telephone: (414) 297-1700

---

[1] The United States notes it also intends to request a trial date the conclusion of this hearing.

6