UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF WISCONSIN

------------------------------------------------------------

 UNITED STATES OF AMERICA,           )
                                     )
                   Plaintiff,        )   Case No. CR 16-21
                                     )   Milwaukee, Wisconsin
      vs.                            )
                                     )   September 5, 2018
 SAMY M. HAMZEH,                     )   10:04 a.m.
                                     )
                   Defendant.        )

------------------------------------------------------------


**TRANSCRIPT OF IN COURT HEARING**
BEFORE THE HONORABLE WILLIAM E. DUFFIN
UNITED STATES MAGISTRATE JUDGE


 U.S. Official Transcriber:    JOHN T. SCHINDHELM, RMR, CRR,
 Transcript Orders:            WWW.JOHNSCHINDHELM.COM

Proceedings recorded by electronic recording,
transcript produced by computer aided transcription.



1

APPEARANCES


For the Government:          US Department of Justice (ED-WI)
                             Office of the US Attorney
                             By: ADAM H. PTASHKIN
                                 BENJAMIN P. TAIBLESON
                             517 E Wisconsin Ave - Rm 530
                             Milwaukee, WI 53202
                             Ph: 414-297-1700
                             Fax: 414-297-1738
                             adam.ptashkin@usdoj.gov
                             benjamin.taibleson@usdoj.gov
For the Defendant
SAMY M. HAMZEH:              Federal Defender Services of
(Not Present)               Eastern Wisconsin, Inc.
                             By: CRAIG W. ALBEE
                             517 E Wisconsin Ave - Rm 182
                             Milwaukee, Wisconsin 53202
                             Ph: 414-221-9900
                             Fax: 414-221-9901
                             craig_albee@fd.org

                             Federal Defender Services of
                             Eastern Wisconsin, Inc.
                             By: JOSEPH A. BUGNI
                             22 E. Mifflin Street - Ste 1000
                             Madison, WI 53703
                             Ph: 608-260-9900
                             Fax: 608-260-9901
                             joseph_bugni@fd.org

2

1              TRANSCRIPT OF PROCEEDINGS

2            Transcribed From Audio Recording

3                    *      *      *

4          THE CLERK:  [Indiscernible] Case No. 16-CR-21, in

5    court hearing [Indiscernible].

6          MR. TAIBLESON:  Good morning, Your Honor.  Benjamin

7    Taibleson and Adam Ptashkin for the United States.

8          THE COURT:  Good morning to you both.

9          MR. ALBEE:  Good morning, Your Honor.  Craig Albee and

10   Joe Bugni on behalf of Samy Hamzeh.

11         THE COURT:  Good morning, Mr. Albee, and good morning,

12   Mr. Bugni.

13         We're here for several matters that are kind of on the

14   table.  At the last scheduling conference the government said --

15         Let me see the date of that.  It was on August 2nd,

16   2018.

17         The government said it believed that the translation

18   of the 29 transcripts would be turned over to the government by

19   last Monday, August 27th, and then the government would review

20   them and be able to turn them over to the defense.

21         So let's start there.  Where are we with the

22   transcripts?

23         MR. TAIBLESON:  They were turned over to the defense

24   yesterday.

25         THE COURT:  Okay.  And let me ask Mr. Albee and

1    Mr. Bugni, what's next?  I'm assuming the defense is going to
2    review the translations?
3            MR. ALBEE:  Yes, Judge.  We -- sometime yesterday
4    afternoon they were delivered to our office.  Needless to say we
5    haven't looked at them in the slightest bit so -- and that'll
6    take some time.
7            The -- what we need to do is go through those
8    transcripts closely, compare them to the ones that we've had,
9    probably have Mr. Hamzeh and our translator listen to portions
10   of those transcripts to go through them and confirm their
11   accuracy, the accuracy of the speakers who are identified, make
12   sure that we know how each translation was recorded.
13           What we propose, Judge, is -- it's difficult to say.
14   I know Mr. Bugni will be largely doing this task.  He has
15   several trials and -- he has three trials and five sentencings
16   in the next five or six weeks.  So we'd ask for eight weeks to
17   review those transcripts.
18           Our real hope is at that point we'll -- our hope is
19   we'll be able to say we're stipulating to a whole bunch of
20   transcripts here and we only have a few disputes.  I think eight
21   weeks is realistic.
22           As the Court knows, the government had up to eight
23   translators working over the last month on the transcripts in
24   this case and had been working on them since providing drafts
25   last November.  So it is oftentimes more time consuming and

4

1    detailed than expected.  We're not working with that kind of --

2    those kind of resources, but our hope would be to finish in two

3    months and if not, we'd have a really good handle on what kind

4    of tasks we still would need to do.

5        THE COURT:  So what are you thinking, Mr. Albee?  In

6    eight weeks you'll -- the defense will have gone through the

7    translations, or that the defense will have not only gone

8    through the translations but to the extent that there are any

9    disputes about any of the translations you'll have had a dialog

10   with the U.S. Attorney's Office to identify what is actually at

11   issue if anything?

12       MR. ALBEE:  Our goal will be the latter.  And we'll do

13   everything to get to that point.  And again, my worry is given

14   how long it took the government -- I guess I always have worries

15   that it could take longer but that's --

16       THE COURT:  How voluminous are these?  Now that you

17   have them --

18       MR. ALBEE:  1600 pages?

19       MR. TAIBLESON:  It's about 1200 transcript pages.  So

20   the page measure is a little misleading because the number of

21   words on a page is, you know, not very great on many of these

22   pages.  But, you know, it's fairly voluminous.  It takes a

23   couple days to read them top to bottom.

24       THE COURT:  Okay.  Any objection to what he's

25   proposing from the government?

1    MR. TAIBLESON:  No.  No, if that's the -- we credit

2    the defense's position that's the amount of time it's going to

3    take them to do everything.  I would like for the parties to be

4    able to eventually reach that stipulation by the eight-week

5    period.

6         THE COURT:  I suspect you're not the only one.  I know

7    Judge Pepper, before this case goes to trial -- I mean, ideally

8    what you'd like is to -- I think everybody would like to at

9    least know what we're -- what is at issue, if anything.  I mean,

10   ideally everybody agrees that the translations are accurate and

11   that who is supposedly speaking is, in fact, the person who is

12   speaking and who the -- what the transcript says the person said

13   everybody agrees that that's what was said.

14        But if we can't get there prior to trial, then at

15   least what we'd like to know is -- I mean, is the trial going to

16   be spent with tedious disputes on a regular basis over every

17   translation or are there a handful of words or phrases that

18   people disagree what they mean.  That's where we would like to

19   get.

20        MR. ALBEE:  And, Judge, I believe that this is -- I

21   believe that this is a case where there should be only entirely

22   agreement.  You know, once both sides can devote proper time to

23   this case, that we'll be in agreement.  I don't think that it's

24   going to be a matter of a lot of fight over meaning.  And the

25   Court's right, there could be a few words or a phrase here and

1   there, but we certainly don't want this to be dueling experts on

2   translations before the jury.  And I think we do reach a point

3   where we're largely in agreement, we just want to make sure

4   before we stipulate to anything that we do have the right

5   speakers and everything's been translated.

6           THE COURT:  All right.  Well, let's keep an eye.

7   We'll -- at the end of this we'll look for a date roughly two

8   months out.  We can reconvene to talk about where we're at with

9   the translations.  So that's the -- that's that issue.

10          Issue no. 2.  On July 13th, 2018, the defendant filed

11  an ex parte motion for a subpoena duces tecum under Rule 17(c).

12  And the defendant sought from the Milwaukee County Behavorial

13  Health Facility the medical records of a witness.  I granted the

14  motion and issued the subpoena, but I ordered that the records

15  be provided to me for in-camera review.

16          I received those records and reviewed them, and

17  concluded that it was appropriate to disclose them in their

18  entirety to the defense to permit the defense to assess their

19  relevance, if any.  But I also raise the question of whether it

20  was appropriate to disclose the records to the government as

21  well.

22          And before disclosing to either party I invited the

23  defense to provide its view on that issue, and the defense

24  responded that it has no objection to disclosing the records to

25  both the defense and the prosecution.  So that's what I'm going

1    to do.

2         And here is a box of the records that I received from

3    Milwaukee County.  I'm going to give those to the defense today,

4    now, and I'm going to instruct the defense to either scan or

5    copy those and provide them to the government.  So I'll give

6    those to you at the conclusion of this.

7         All right, that's issue 2.

8         Issue or matter 3 relates to CIPA.  The defense filed

9    something saying it wanted to respond to the government's filing

10   of August 8th, and I believe it said it needed -- it thought it

11   could do so by September 24th; is that correct?

12        MR. ALBEE:  Correct, Your Honor.  And I believe that

13   the government has indicated that it anticipates filing another

14   CIPA request --

15        THE COURT:  Yes.

16        MR. ALBEE:  -- some other material.

17        THE COURT:  So that was going to be my next point was

18   related -- the defendants also filed a motion to compel.  And

19   according to the motion, the defense has discussed the matter

20   with the government and the government indicates that it's going

21   to be responding under CIPA.  Is that correct, Mr. Taibleson?

22        MR. TAIBLESON:  That is correct.  We withdrew nearly

23   every discovery dispute that was the subject of a previous

24   hearing, with the exception of a few things that the government

25   believes will be covered by this CIPA motion.  Those were the

8

1    subject of the defense's motion to compel.

2         And the defense indicated there would be a couple

3    other varieties of discovery it was going to seek a motion to

4    compel on.  The government expects that we'll respond under the

5    Classified Information Procedures Act to those requests too.

6    And so we do expect to file an additional CIPA motion.

7         And for purposes of efficiency would ask that should

8    this court ultimately schedule a hearing for the second CIPA

9    motion, that it consolidate both those CIPA hearings into one.

10        THE COURT:  Yeah, that makes sense to me and I think

11   that's what I was planning on doing.  So if the defense is

12   responding to the first CIPA motion by September 24th, will the

13   government be in a position to respond to the motion to compel

14   by September 24th?

15        MR. TAIBLESON:  Yes, I think so.

16        THE COURT:  So we'll set that as the deadline for both

17   responses to both issues.  Both motions.  So just to be clear,

18   September 24th will be the defendant -- the deadline for the

19   defendants to respond to the government's August 8th filing, and

20   September 24th will also be the government's -- the deadline for

21   the government to respond to the defendant's most recent motion

22   to compel.

23        And then we will probably at that point schedule a

24   hearing -- we could do it today, but I think we'll probably need

25   the classified information security officer's schedule to be

1    able to schedule that so -- but I think that it makes sense to

2    do it all at one time.

3              Anything else on that issue?

4              MR. ALBEE:  Judge, two things.  First of all, I think

5    as Mr. Taibleson was suggesting, we've talked through most of

6    the remaining discovery issues from the Court's July I think

7    25th order, and there will be -- there will be a few things that

8    we'll need to file another discovery motion on which we hope to

9    do by the end of next week.  So we're trying to sort out the

10   last remaining things with the government, but we will be filing

11   another motion to compel as to a few scattered things.

12             And then next on the CIPA issue, while we'll file our

13   memorandum on -- by September 24th explaining why we think we

14   should be entitled to these materials, we would request the

15   opportunity for some oral argument on that issue.

16             THE COURT:  Yeah, I agree, and I will accommodate

17   that.  My thought is that perhaps we'll have one hearing with

18   the defense present for the first part to offer its thoughts on

19   the CIPA, and then after the defense leaves we'll just proceed

20   directly with the CIPA hearing.

21             MR. ALBEE:  Okay.

22             THE COURT:  So we'll schedule that after we get

23   everything filed.

24             And next is the spoliation motion.  Does it make sense

25   to schedule that -- wait until we have the CIPA hearing to

1    schedule that?  Will the CIPA hearing possibly moot some of the

2    issues raised by the spoliation motion?

3            MR. ALBEE:  I wouldn't think that it would moot any of

4    those issues.  I know the Court had ordered a number of things

5    relating to the texts.  I haven't seen the government

6    responding -- the government thinks its responded to those

7    requests, but as we've pointed out in previous pleadings we

8    don't think that there's been a satisfactory response which is

9    the need for the hearing.

10           I think we need a hearing on:  What the nature of the

11   texts were; why they weren't preserved; what efforts were made

12   at preserving them; what efforts have been made to recreate

13   them; whether there are any rough notes summarizing what could

14   be in texts; any efforts to recover texts from CI phones; what

15   instructions were given to the CIs.

16           So, I mean, there are a number of things to deal with

17   at the spoliation hearing that I think would not be mooted by

18   anything that would happen with respect to CIPA.

19           THE COURT:  At the spoliation hearing I'm wondering

20   whether it makes sense to just do that all at the same time if

21   we're having oral argument on the CIPA issue, whether we roll

22   the spoliation hearing in part of that discussion as well,

23   followed by the CIPA hearing with just the government.

24           MR. TAIBLESON:  That's fine with the government.

25           MR. ALBEE:  I wouldn't have any problem with that, but

1   I do think that the spoliation hearing will be maybe somewhat

2   lengthy.

3           THE COURT:  Meaning what?  What's your best estimate?

4           MR. ALBEE:  Well, I mean we're planning on suggesting

5   a morning or afternoon and hoping it could get done in that

6   period of time.

7           One thing in connection with the spoliation hearing

8   that we would ask the Court to require of the government is

9   we've been told simply that there were some -- I think the words

10  were a "software glitch" that prevented the government from

11  recovering texts, but we haven't gotten any information as to

12  what the nature of that problem was.

13          So we would ask that the government be required to

14  present somebody with knowledge as to why it couldn't be

15  recovered and what efforts were made to recover it from the FBI

16  servers, and that we get identification of who that person is --

17  who that witness would be and a summary of their testimony two

18  weeks before a hearing so that we'd be in a position to respond

19  with our own expert testimony if needed.

20          THE COURT:  Okay.  Any objection to that,

21  Mr. Taibleson?

22          MR. TAIBLESON:  No.

23          THE COURT:  At the end of the day, though, what I'm

24  hearing from the defense is we're ready to schedule the

25  spoliation hearing.  I mean, there's nothing that would prevent

1   us from scheduling that right now.

2           MR. ALBEE:  I think that's right.

3           THE COURT:  All right.  So we'll -- I'll think about

4   that and we'll get you a date for the spoliation hearing and the

5   CIPA hearing.

6           What else has to be done to get this ready for trial?

7           MR. TAIBLESON:  I think we've made a lot of progress,

8   candidly, in the last month.  The discovery issues were

9   substantial, but I think mostly resolved -- are now mostly

10  resolved and I have no reason to think we're not working

11  together pretty well that we can't get them entirely resolved

12  quickly.  The defense has the transcripts that we have had

13  prepared.  I guess within eight weeks hopefully we can come to

14  some stipulation with regard those transcripts.

15          The government is waiting now on the defense

16  transcripts to the extent there are any additional ones.  So

17  once we have those obviously we'll have to review them and

18  hopefully we can come to some sort of stipulation maybe by that

19  same eight-week deadline.

20          The government's also made reciprocal discovery

21  requests of the defense.  I expect us to hopefully be able to

22  work through those.  But in my view at least, that's about it.

23  And then the spoliation issue, obviously.

24          THE COURT:  Okay.

25          MR. ALBEE:  I think -- I largely agree with that.  I

1    think if the issues in the pending motions and the other motions

2    to compel and probably some particular concerns with respect to

3    whether there are intercepted communications, GPS, those kind of

4    things, if the government did indeed intercept communications as

5    they did or if they have GPS or other kinds of surveillance

6    activities, I don't know what kind of volume would be there.  I

7    think that those things should be produced.

8         It would be our view that all of that would be

9    exculpatory.  We presume it would have been turned over if it

10   was incriminating to Mr. Hamzeh.  And any surveillance that

11   doesn't uncover any illicit activities by him during this period

12   of time is exculpatory to us.  It shows he's not in

13   communications with terrorist organizations; that he's not doing

14   things on his own; that this is entirely generated by the

15   confidential informants in the case.

16        So I guess that's one thing that we think is

17   potentially significant.  But, of course, we don't know what the

18   scope -- the scope might be.

19        A minor -- a relatively minor thing, Judge.  I'll just

20   raise it here in case we can settle it on the record.  If not,

21   we'll just file a written request.

22        At the time of -- or shortly after Mr. Hamzeh's arrest

23   his home was searched.  The government seized I think three

24   electronic devices, a MacBook, a PlayStation, and a cell phone.

25   And as the Court knows, there can be a significant volume of

1    material on these kind of electronic devices.  We would just ask

2    that the government give us 45 days' notice of anything it

3    intends to use from those devices.

4           I mean, it's needle-in-a-haystack kind of thing.  So

5    if the government intends to, you know, whether it be a text or

6    whatever it is that they find on the -- that they might intend

7    to use, we'd just like 45-day notice.

8           The other thing is a couple weeks ago we received I

9    think several hundred hours -- I'm not sure of the exact

10   amount -- of pole camera footage.  And we would like 45 days'

11   notice if the government intends to use anything from those

12   several hundred hours of pole cam.

13          Again, we can't possibly go through it and scrutinize

14   it and decide what the government might use.  It truly is a

15   needle in the haystack.  So we don't think that's a particularly

16   onerous requirement.  We'd ask for 45 days' notice of its intent

17   to use anything from seized electronic devices or from the pole

18   cams.

19          THE COURT:  Mr. Taibleson?

20          MR. TAIBLESON:  The government intends to produce an

21   exhibit list when ordered by the court.  Because this is a

22   Judge Pepper case, that's going to be substantially before

23   trial.  If the defense believes there is some authority

24   supporting the idea that they should get our exhibits 45 days

25   ahead of trial, maybe the best approach would be for them to

**15**

1  submit a written filing and citing that authority because the

2  government is aware of none.

3          THE COURT:  There you go, Mr. Albee.

4          MR. ALBEE:  I guess I'll file a motion.  I know

5  Judge Pepper's frequently done it so -- thank you.

6          THE COURT:  Okay.  Anything else?

7          MR. ALBEE:  No, Your Honor.

8          THE COURT:  All right.  Let me make a speedy trial

9  finding.

10          The Court's satisfied that this case is so unusual and

11  complex due to the nature of the charges being prosecuted that

12  it's unreasonable to expect adequate preparation for pretrial

13  proceedings and for the trial itself within the time limits

14  established by 18 U.S.C. § 3161, such that the ends of the

15  justice served by taking such action outweigh the best interests

16  of the public and the defendant in the speedy trial.

17          Therefore, the time from today until blank -- we need

18  to pick the blank -- how about we'll want to pick another date

19  roughly two months out, how about Tuesday, November 6th at 10:00

20  a.m.?

21          MR. TAIBLESON:  That works for the government.

22          MR. ALBEE:  Yeah, that's fine.

23          THE COURT:  All right.  From today until on November

24  6th, 2018 is excluded under the Speedy Trial Act, under

25  18 U.S.C. § 3161(h)(7)(B)(ii).

16

1          All right.  That's it.  And we'll get you, Mr. Bugni,

2     the documents.

3               (Proceedings concluded at 10:26 a.m.)

4                         *       *       *

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

17

C E R T I F I C A T E


        I, JOHN T. SCHINDHELM, RMR, CRR, Official Court
Reporter and Transcriptionist for the United States District
Court for the Eastern District of Wisconsin, do hereby certify
that the foregoing pages are a true and accurate transcription
of the audio file provided in the aforementioned matter to the
best of my skill and ability.


Signed and Certified December 19, 2018.

/s/John T. Schindhelm

John T. Schindhelm


                    John T. Schindhelm, RPR, RMR, CRR
                    United States Official Reporter
                    517 E Wisconsin Ave., Rm 236,
                         Milwaukee, WI 53202
                    Website: WWW.JOHNSCHINDHELM.COM

