UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

   *Plaintiff*,

              Case No. 16-CR-21

*vs*.

SAMY M. HAMZEH,

   *Defendant*.

**FIFTH MOTION TO COMPEL BRADY AND RULE 16 MATERIAL**

Samy Hamzeh, by counsel, moves this Court, for the entry of an order requiring the government to produce the discovery and *Brady* material identified below. With this pleading, the defense withdraws its motion for sanctions. As expressed below, the text messages that were the subject of the spoliation hearing have now (for the most part) been produced.

Although the government has now produced the texts that were ordered produced by this Court in March, and the parties have worked together to resolve other disputes, there still remain some disputes over what must be produced. The defense also remains concerned about the government's failure to produce information that relates to the credibility, bias, and motive of the informants on whose word the government's case rests. Some of these issues relating to the informants may be intertwined with the Court's resolution of pending CIPA issues. This motion briefly lays out some relevant history concerning the discovery in order to provide context for this current request.

*Federal Defender Services*
*of Wisconsin, Inc*

**A.     Text Messages**

On January 3, 2018, the defense moved for the production of text messages, including those between the informants and agents and between the agents themselves. R. 82 at 13-15. The government agreed to disclose those messages that were in its possession, but when it became clear that there were many unpreserved messages, Hamzeh requested identification of all unpreserved messages. This Court granted that request on March 8, 2018, and ordered the government to provide as much information as the government could about the missing texts. When that information wasn't provided, Hamzeh renewed his motion in July and also asked for a spoliation hearing to determine why the texts had not been preserved. The Court granted both of those requests.

At the spoliation hearing, the defense identified a number of texts that had not been preserved by comparing the texts that had been received to the informants' phone records. The government presented witnesses to establish that texts had not been preserved due to a technical malfunction and that these texts could not be recovered.

Following the spoliation hearing the government found a way to recover Adkins' missing texts and it has produced numerous texts between Adkins and CI Mike and Adkins and the other agents. The government also produced additional agent-to-agent texts not involving Adkins. Thus, most of the issues concerning the text messages have been resolved, but a few loose ends remain. Hamzeh is still seeking the following:

### 1. Zuraw's texts with Mike and other agents

Telephone records reflect that Agent Zuraw exchanged 301 texts with Steve (296 of these were produced) and that he exchanged 11 texts with Mike (none of those texts were produced). At the spoliation hearing, Special Agent Neil Lee testified that another agent used Cellebrite to recover the 296 texts with Steve, but it was unknown whether Cellebrite had been used to try to recover the texts with Mike. Tr. 51-53. According to the testimony, Zuraw's phone apparently is still available for Cellebrite analysis. The government indicated in a follow-up email on January 17, that Special Agent Lee did not produce his own Cellebrite report on Zuraw's phone, and he only reviewed another agent's report. Since the phone is available, and there is no indication that there was an attempt to obtain texts with Mike using Cellebrite, the defense requests that the government recover those texts and produce them. If additional agent texts can be recovered using Cellebrite, those also should also be produced.

### 2. Unredacted texts

As noted, the government has produced many additional agent texts. To the government's credit, few are redacted, and some of the redacted texts appear likely to legitimately obscure sensitive information. But other redacted texts may potentially conceal the identities of witnesses, other useful or exculpatory information, or information necessary to understand the text. Hamzeh requests that the Court review the unredacted texts and determine whether additional information should be produced. The texts at issue are attached under seal as Exhibits A, B, and C.

### 3. Screenshot of Department of Revenue notice

One thing revealed by the newly produced texts is that Mike raised concerns with Agent Adkins on November 23 about continuing to work as a CI because he received a notice that he owed over $7,000 to the Department of Revenue. Mike sent a screenshot of the notice to Adkins. Hamzeh requested a copy of the screenshot, but the government is declining to produce it because it contains Mike's personal financial information. The context of the conversation between Mike and Adkins suggests that Mike not only was seeking help from the FBI with his Department of Revenue issues, but also shaking the FBI down for additional compensation–both of which are relevant to his bias and motive. In addition, Mike's explanation for the Department of Revenue debt is potentially relevant to his character for honesty. Hamzeh requests production of the screenshot, but doesn't object to personal identifying information, such as a social security number, being redacted.

### 4. Fraser and Zuraw texts

There still are 19 missing Fraser texts and five missing Zuraw texts with Steve that Hamzeh understands the government is trying to obtain/recover. To the extent that these are available, Hamzeh requests an order requiring their production.

5. **Emails**

This Court's prior order in August ordered that all emails among the agents and the agents and other staff concerning this investigation be turned over. To date, the defense has received a mere 11 pages of emails. Given the breadth of this investigation

4

*Federal Defender Services*
*of Wisconsin, Inc*

and the number of agents and logistics and the allusions to speaking to superiors in other texts and reports, the defense is incredulous that *all* of the emails have been turned over. From the spoliation hearing, there seemed to be little to no effort on the FBI's part to find and turn over the emails. *See* Trans. 35 (not asked to recover emails), 53 (not asked to recover emails), 83 (not asked to recover emails); 106 (10-15 emails sent by that agent). Thus, we would again ask that the Court order that the FBI find and the government disclose all emails sent between the agents concerning this case.

B.      Credibility of Informants, Including Instructions and Admonishments

From the outset of this case, Hamzeh has stressed the importance of the informants' credibility and sought production from the government of information bearing on that, including: each informant's initial suitability report; instructions given to the informants; benefits given to or requested by the informants; the underlying documentation relating to any such benefits (ordered produced by the Court on March 8, 2018, but never turned over based on a CIPA claim); any admonishments to the informants; annual or other reviews of the informants; and violations of policies and instructions by the informants. *E.g.*, R. 82: 17-20, 22-24; R. 135: 7-9; R. 177: 1-5; R. 185: 11-12.

One thing Hamzeh has repeatedly requested is identification of all instructions given to the CI's by FBI agents. The government initially insisted that there were just four

instructions given. R. 93: 3. [1] Hamzeh expressed skepticism over that claim. R. 82: 16-19; R. 177: 2-4. And that skepticism has turned out to be well-founded. Throughout these proceedings additional instructions have trickled out. Yet the government continues to maintain that no other instructions were given. The government also has suggested that it need not identify instructions that were given if the agent never memorialized those instructions in a written report.

In addition to the four instructions initially identified, over time the defense has learned that the following additional instructions were given to the informants: (1) CHSs "are always instructed to delete text messages with special agents for their protection and to maintain the covert relationship with the FBI." R. 199: 4, R. 135: 5; (2) Agent Zuraw instructed CHS1 that he needed to record all conversations with Hamzeh even if it required pushing off a meeting with Hamzeh for a day or two, R. 135: 4; (3) Adkins told CHS2 every time he met with him to be inquisitive and not to lead Hamzeh into any plan or ideology, R. 177: 4; (4) Adkins told CHS2 every time to ask open-ended questions, such as who, what, when, where, and why, R. 177: 4; and (5) Adkins instructed CHS2 to stop texting Adkins any memes and that text messages had to be professional and work related, R. 177: 4. The spoliation hearing revealed three other instructions: (6) the informants were told to record every contact they had with Hamzeh, if feasible, Tr. 62; (7) the informants were not to conduct any substantive case conversations by text, Tr. at

---

[1] The four instructions that the government initially identified were: (1) the informant's assistance was voluntary; (2) the informant must be truthful to the FBI; (3) the informant must abide by the FBI's instructions and not take any independent action on behalf of the U.S. government; and (4) the government will strive to protect the informant's identity. R. 82:16.

57, 68-69; and (8) Adkins admonished Mike for supplying the plan of action to get machine guns from Texas, Tr. at 79-80.

The government has chafed at Hamzeh's request for all instructions, but in doing so it has revealed an apparent misunderstanding of its obligation to supply information whether memorialized or not. *See, e.g.*, R. 182 at 3-4 (calling Hamzeh's request for instructions that were not memorialized "confusing" and rhetorically asking how the government could produce something that does not exist, before stating that the "government has produced every instruction it can that was given to a CHS"); R. 182: 23 (protesting that every "memorialized" instruction had been turned over). Those lines parrot the government's initial protest after the defense expressed skepticism over there being just four instructions.

The spoliation hearing also exposed several matters that might not have violated the specific language of prior orders of this Court, but violated the intent of the orders. On July 25, 2018, this Court ordered the government to produce "copies of any admonishments to the CHS file evidencing the CHS having violated rules, violated polices, etc." R. 150: 3. That same order required notice if any CHS had recording equipment routinely assigned to him as well as notice if recording equipment was in the CHS's possession while he was having unrecorded conversations with Hamzeh. *Id*. We know from the spoliation hearing that the CHS was admonished, but Agent Adkins apparently didn't document it. Perhaps that doesn't violate the literal language of the Court's order, but that information should have been produced as the admonishment

7

*Federal Defender Services of Wisconsin, Inc*

Case 2:16-cr-00021-PP-WED    Filed 01/25/19    Page 7 of 10    Document 209

and failure to document it reflect on both the informant's credibility and the agent's diligence. What's more, that is not a trifling matter; rather, Mike's suggestion of the plan to obtain machine guns from Texas also supports Hamzeh's theory of defense. Likewise we know from the hearing that the CHS's had the ability to record every telephone conversation, but that information wasn't produced either. And that's true, even though it was clear that Hamzeh was seeking information regarding the informants' ability to record conversations.

As Agent Adkins acknowledged at the spoliation hearing, Mike met regularly with Hamzeh over a lengthy period of time without recording their conversations, which meant that the agents had to rely solely on Mike's word, unless Steve was present. Tr. 70-72. And Steve frequently wasn't present. Thus, the credibility of both informants is critical.

Further bearing on the informants' credibility, Hamzeh still doesn't have full information about benefits negotiated and received. The defense still hasn't received the underlying documentation corresponding to payments to the CHSs. And that *Brady* material goes beyond the payments received, there is additional information that the defense has not received. For instance, Mike is known to have been arrested for felony activity after the events in the case. Given the significance of informants' credibility and that full and complete information about the informants was not initially provided and should be in the government's hands (if the FBI's policy was followed) and that

8

*Federal Defender Services of Wisconsin, Inc*

credibility issues have been exposed, Hamzeh requests an order requiring production of all of the following:

1. Identification of all instructions or admonishments given to the informants, whether or not reduced to writing. *See also* R. 182: 3-5; R. 185: 11-12.

2. The information previously ordered to be produced by the Court on July 25, 2018, including those seven items requested in Hamzeh's CIPA motion at pages 7 and 8. R. 185.

3. The file for each informant, to include, the initial suitability report, the informant's reported motivations for cooperating, identification of all benefits, including travel to and from the United States, the documentation underlying those benefits, annual reviews of the informants and identification of any violations or deviations from guidelines, instructions, or policies by any informant or agent.

Hamzeh recognizes that the production of some of these items may still be dependent on the Court's resolution of the CIPA dispute. And Hamzeh previously explained why CIPA should not impede his access to this information but if the Court requires further argument on this point, the defense requests oral argument about our right to access this material. *See* R. 185.

*Federal Defender Services of Wisconsin, Inc*

### C.     Other Recordings

Based on information disclosed at the spoliation hearing, the defense believes there may be recordings of telephone conversations that have not been produced. A list of recorded phone conversations that should be available has been sent to the government to follow up on—by the defense's count, there are 48 missing. At this time, it would be premature to request any action from the Court as there may be an explanation for the discrepancies between the phone records and the recorded conversations produced. Hamzeh merely wanted to flag and preserve this potential issue.

Dated at Milwaukee, Wisconsin this 25th day of January, 2019.

Respectfully submitted,

/s/     Craig W. Albee
Craig W. Albee, WI Bar # 1015752
Joseph A. Bugni, WI Bar #1062514
FEDERAL DEFENDER SERVICES
  OF WISCONSIN, INC.
517 E. Wisconsin Ave - Rm 182
Milwaukee, WI  53202
Tel. (414) 221-9900
E-mail:  craig_albee@fd.org

*Counsel for Defendant*, Samy M. Hamzeh