UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    *Plaintiff*,

*vs*.

Case No. 16-CR-21

SAMY M. HAMZEH,

    *Defendant*.

# REPLY MEMORANDUM IN SUPPORT OF
# HAMZEH'S SUPERSEDING DISCOVERY MOTION

Samy Hamzeh, by counsel, files this reply brief in support of the discovery demands that remain outstanding. In the opening brief, the defense provided the citations and references in support of each argument so this brief addresses only the most salient points raised in the government's response.

**1.    Redacted Texts**

The texts most recently produced by the government have redactions that make them confusing about who or what is being referred to. Accordingly, Hamzeh attached copies of the redacted texts to his motion and has asked the Court to review them in camera or to order them produced unredacted. Hamzeh believes the Court will understand his position simply by reviewing the redactions, which don't appear to be confined to confidential personal information.

Federal Defender Services
of Wisconsin, Inc.

**2. CHS Information**

  **a. CHS Instructions**

With respect to the instructions/admonishments the agents gave to the CHSs, the government says that it "has produced every document it can regarding instructions given to a CHS," and that Hamzeh has "cited no authority for the proposition that he is entitled to anything beyond what he has received." R.217:3. But that's not accurate. First, Hamzeh has articulated why the instructions/admonishments should be turned over. And second, the law is clear on the value of this information: These types of documents are exculpatory because they are admissible in whole or part, could lead to admissible evidence, or would "be an effective tool in disciplining witnesses during cross-examination by refreshment of recollection or otherwise." *United States v. Gil*, 297 F.3d 93, 104 (2d Cir. 2002) (emphasis added).

What's more, for well over a year, the government told the defense (and this Court) that all the instructions that were given had been turned over—this, of course, began when there were only four. That representation was taken at face value until more instructions turned up—now we have seven. Consistent with *Brady*, the government and the agents need to identify what instructions/admonishments were given, whether that's information from the CHS files (which we still don't have), or simply information known to the agents, even if not documented in a memo or file. The government continues to maintain that it has no obligation to turn over information that has not been memorialized, but it must produce *Brady* information even if it's not memorialized and it must produce information if necessary to correct an earlier representation by the

2

government. *See*, *e.g.*, *United States v. Rodriguez*, 496 F.3d 221 (2d Cir. 2007) (holding that the government's failure to make a written record of a witness's inconsistent statement does not exempt the government from turning over the information); *See also* Cary, Singer, Latcovich, Federal Criminal Discovery, at 30 (ABA 2011) ("the government cannot avoid its *Brady* obligations by choosing not to memorialize favorable information in writing").

### b. Information about whether the CHSs had recording devices

Regarding whether the CHSs had recording devices, the government says that Hamzeh's claim that the absence of recordings is exculpatory "has been universally rejected, including by the Seventh Circuit." R.217:4. That's both an overstatement and incorrect. To the extent that the CHSs had recordings devices and didn't record Hamzeh for 35-days, that speaks to three points. First, the failure to record violated the instructions of the agents to record all conversations with Hamzeh and undermines the credibility of the CHSs, the agents, and the investigation itself. That policy of recording everything exists to ensure accountability and the reliability of the evidence obtained. Second, it was during this 35-day period that the government claims Hamzeh came up with the Masonic plot. The absence of recordings corroborating this claim (particularly if the CHSs had recording devices) lends credence to the defense theory that the CHSs created the plot and were trying to induce Hamzeh to break the law. Third, undoubtedly the CHSs would have recorded Hamzeh if he were talking about getting machine guns so it's reasonable to assume he wasn't—which goes to predisposition.

3

In addition to those principal points, before accepting the government's argument that courts have "universally rejected" Hamzeh's argument, it's best to check the government's cites. In *United States v. Baker* (the government's first case), the argument the defense made was that "the government served a subpoena on CyberTel in order to obtain information regarding the pager police had seized. Because of conflicting identification and access numbers, CyberTel apparently never responded to the subpoena. Baker believes that the government was obliged to disclose the 'failed' subpoena, apparently under the theory that anything the government comes upon in its investigation that is not inculpatory must be exculpatory." 1 F.3d 596, 598 (7th Cir. 1993). In rejecting the *Brady* claim, the Seventh Circuit noted: "Although the defendant would have us draw only negative inferences from this conduct, one perfectly plausible explanation is that the government elected not to pursue the CyberTel registration records after it had Baker's stipulation in hand that the pager belonged to him." *Id.* at 598. The facts and principles in play in *Baker* are a far cry from what we have here.

On top of that, the only other case that the government cites in support of the "universal rejection" of the defense's argument is a district court case where (in the very next sentence from the one quoted by the government) the Court notes situations when there would be such a duty to disclose. *See United States v. Kennedy,* 819 F. Supp. 1510, 1519 (D. Co. 1993). There, the court cited a Sixth Circuit case and noted: "In *Jones* the prosecution failed to disclose the statement of an eyewitness to a crime which made no reference to the defendant or his participation. I find *Jones* to be distinguishable based on its facts in that the court found the negative exculpatory evidence in that case to be a

4

Federal Defender Services
of Wisconsin, Inc.

'potentially powerful exculpation.'" *Id.* (citing *Jones v. Jago,* 575 F.2d 1164 (6th Cir. 1978)). And so the court distinguished *Jones* and held: "Defendants' requests here fall far short of such evidence. Hence, I will deny their request for negative exculpatory information." Those cases hardly constitute a "universal" proclamation that evidence pertaining to the CHSs recording devices would not be discoverable.

Indeed, the reason we want to know when the CHSs had the recording devices and could record (but didn't) is because the defense is attempting to show that not only was Hamzeh not predisposed to commit this crime, the CHSs were creating a crime and inducing Hamzeh to commit it while refusing to record because they didn't want their actions disclosed. After all, the in-person recordings stop after Hamzeh responds with apathy to Mike's discussions about getting a machine gun on December 14th and the recordings only resume after the Masonic plot is developed. The information sought is relevant and exculpatory to establish that the CHSs had the ability to record during their daily meetings with Hamzeh but chose not to.

### 3. The missing recordings and emails

When it comes to the recordings and what's missing from our chart, there are two points worth making: first, this will be mooted if there was a tap on Hamzeh's phone and those calls are turned over. Second, the government's explanation rings hollow. For one, the government is only parroting what the FBI has told it. There are no reports or any other information that substantiate that the system didn't record when there wasn't an answer. In addition, the evidence doesn't support that view of the recordings. That is, there are days we know about when there are longer calls (a minute or more) and there

is no recording. The calls wouldn't be of that length if there was no answer. On top of that, the other problem with accepting the government's representation is that the system recorded calls when there was just a voicemail and a hang up. We have those in discovery. So there is good reason for the defense to question the claim that there aren't recordings for additional calls.

A final point worth making on the calls that also applies to the missing emails is this: the defense has been fighting over discovery for well over a year now. In that time, we've been assured of many things that seem to be contradicted by experience and common sense. And the defense's suspicions have been validated. Here, the defense is dubious that only 11-pages of emails exist given the scope of this investigation and the number of people involved. That's supported by the fact that agent Zuraw said he probably sent 10-15 emails and received 10 or 15, but none were turned over. *See* R.205:106. And we are dubious of that claim because the case agent, Adkins, testified that he never looked for or tried to retrieve emails. R.205:53. Not only is there the testimony at the hearing that supports there being more emails out there, it's just common sense: in an investigation this massive, it's hard to imagine that only 11 pages of emails were sent between agents or agents and prosecutors. All of that is to say that this Court has entered an order and to ensure that it's complied with, a hearing would ensure that there are no missing emails or recordings and is warranted.

### 4. Identification of Exhibits from Pole-Cam or Electronic Devices

To be clear, Hamzeh is not requesting early identification of all the government exhibits, just those from the pole camera or the electronic devices seized from Hamzeh.

The request is specific to these items because they contain so much information that Hamzeh cannot reasonably determine whether there is anything the government might use on them. Hamzeh notes that he hasn't received any reports indicating that the government found any evidence of significance from these sources, and frankly he has no reason to believe the government will present any evidence from these sources. But in case the defense is mistaken, Hamzeh seeks reasonable notice of any needles in the haystacks that the government wants to use so that he has adequate time to investigate or retain an expert if needed. Finally, Hamzeh notes that even the cases cited by the government recognize that early disclosure of exhibits is a matter of discretion for the Court. This is an appropriate case to exercise that discretion.

Dated at Milwaukee, Wisconsin this 8th day of March, 2019.

Respectfully submitted,

/s/     Craig W. Albee
Craig W. Albee, WI Bar #1015752
Joseph A. Bugni, WI Bar #1062514
FEDERAL DEFENDER SERVICES
  OF WISCONSIN, INC.
517 E. Wisconsin Ave – Rm 182
Milwaukee, WI  53202
Tel.: (414) 221-9900
Email:  craig_albee@fd.org
            joseph_bugni@fd.org

*Counsel for Defendant*, Samy M. Hamzeh