UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    *Plaintiff*,

                                Case No. 16-cr-21-PP

*vs*.

SAMY M. HAMZEH,

    *Defendant*.

## FOURTH MOTION IN LIMINE: TO EXCLUDE TESTIMONY OF DR. MATTHEW LEVITT

Samy Hamzeh, by counsel, moves the Court for the entry of an order excluding the testimony of Dr. Matthew Levitt because it is not relevant to the issues in this case, does not satisfy Rule 701 and 702, and any minimal probative value of the evidence is substantially outweighed by the risks of unfair prejudice, confusion of the issues, misleading the jury, and waste of time.

In support of this motion, Hamzeh invites the Court's attention to the following:

1.     By letter dated June 7, 2019, the government provided a three-page notice that it intends to call Dr. Matthew Levitt as an expert and lay witness at trial on the subjects of Hamas, terrorism, and Israel. The letter also indicated that Levitt "will testify about the content of the recorded conversations between the defendant and the confidential informants."

2.     On August 30, 2019, the government produced a single-spaced, 54-page report by Levitt providing more detail regarding his anticipated testimony. R.259, Ex. 2.

Roughly, the report devotes the first five pages to Dr. Levitt's credentials; the next seventeen pages to Hamas; the next three pages to the geography of Israel, the West Bank, and Gaza Strip; twenty pages to the Islamic State; four pages to "Masonic Conspiracy Theories and the Middle East;" and the last five pages reviewing "key segments of transcripts of defendant's recorded conversations." All of the conversations that Levitt proposes to discuss take place between October 13, 2015, and November 19, 2015. They deal mostly with Israel. None of the conversations are about acquiring a machine gun.

3. The testimony regarding Hamas is inadmissible because it is irrelevant and any minimal probative value is outweighed by unfair prejudice, confusion of the jury, and waste of time. Hamzeh was not affiliated with Hamas, there is no evidence he communicated with Hamas, he took no actions in furtherance of Hamas, and the charged offense has nothing to do with Hamas. The fact that Hamzeh mentioned Hamas on a few occasions (out of the hundreds of conversations he had with the informants over four months) doesn't open the door to presenting seventeen pages of Levitt's viewpoints about Hamas. Those seventeen pages highlight a selective history of Hamas, and identify the most radical activities and statements by the organization without any mention of the activities and policies of Israel that have created resentment amongst Palestinians. Further, Dr. Levitt has not demonstrated the application of reliable historiographical principles or methods in reaching his opinions. Nonetheless, this case is not about Hamas.

4. In addition to the absence of information connecting Hamzeh to Hamas, there can be no reasonable claim that Hamzeh was acquiring the machine guns on behalf of Hamas. Even Dr. Levitt notes that "Hamas has not historically carried out attacks

2

Federal Defender Services
of Wisconsin, Inc.
Case 2:16-cr-00021-PP   Filed 09/13/19   Page 2 of 8   Document 278

targeting Western targets other than Israel." Report at 20. In addition, the informants reported to their FBI handlers in early January that Hamzeh appeared disinterested in any overseas attack. On January 19, Hamzeh, told both informants that he has "nothing to do with Hamas." And, during Hamzeh's post-arrest interview, he told the FBI he was not affiliated with Hamas, that he believes they are a terrorist group, and that their actions harm Palestinians by promoting Israeli attacks.

5. Here are just a few examples that show how irrelevant and wasteful Levitt's proposed testimony would be. Among the topics he proposes to discuss are: Hamas engages in a campaign of radicalizing Palestinian youth, *id*. at 7; the methods Hamas uses to fund its operation and to funnel money from charitable organizations to terrorist activities, *id*. at 7-11; Hamas produces a TV show with a Mickey Mouse look-alike character who preaches Islamic domination, *id*. at 11; descriptions of multiple terror attacks that have been attributed to Hamas, *id*. at 13; the details of the kidnapping of three Israeli boys in 2014, *id*. at 13-15; the number of injuries and deaths to Israelis during the 2014 hostilities between Israel and Hamas (but reporting none of the Palestinian casualties), *id*. at 15; Hamas's "terror tunnels" from Gaza into Israel; Hamas activities in 2016 (after Hamzeh's arrest), *id*. at 18; discussion of a large Jordanian protest against Israeli control over the Golan Heights and Eastern Jerusalem in March 2019, *id*. at 21; and discussions about a personal statement made by a Hamas member in 2019 about killing Jews (a statement made after Hamzeh's arrest that was disavowed by Hamas), *id*. at 20.

6. Recall that Hamzeh wasn't part of Hamas and there is no claim that he obtained these guns for any reason having anything to do with Hamas. And even Levitt

acknowledges that there has been no violent activity in the United States in the name of Hamas. At bottom, Levitt's proposed testimony on Hamas constitutes seventeen pages that is entirely irrelevant to the issues in this case.[1]

7. With respect to his anticipated testimony regarding the Islamic State (ISIS), Levitt provides 20-pages of information about ISIS. As one would naturally expect, the report recounts atrocities committed in the name of ISIS. But there is zero evidence that Hamzeh was affiliated with ISIS. On January 24, 2016, when Hamzeh told the informants they could not attack the Masons, he also told them that if they wanted to fight they should go to Syria and fight against—yes, *against* – ISIS. Hamzeh also expressed at the time of his arrest that he had been led to believe that the Masons were ISIS and that's why he was concerned about them. Levitt's testimony about ISIS is both irrelevant and confusing in how it would relate to Hamzeh.

8. Levitt also proposes to discuss "Masonic conspiracy theories in the Middle East." This section suggests that Arabs are more susceptible to conspiracy theories and seek to blame the Masons or anyone else for their problems. As way of example, Levitt

---

[1] In addition to being irrelevant, the proffered testimony about Hamas is unfairly prejudicial, confusing, misleading, and will waste the time of the parties in debating the responsibility for a protracted foreign conflict. It's hard to understand what purpose the government has for presenting this evidence other than to inflame the jury. What does the kidnapping of three Israeli boys have to do with this case? Needless to say, there is much material that could be presented that puts Palestinian resentment of Israeli policies in perspective. *See, e.g.*, Human Rights Watch, World Report 2016: Israel/Palestine Events of 2015, (2016) ("Israel continued in 2015 to enforce severe and discriminatory restrictions on Palestinian's human rights" and "Israeli security forces killed at least 120 and injured at least 11,953 Palestinian civilians in West Bank, Gaza, and Israel as of [November 27, 2015], including bystanders, protestors, and suspected assailants.") https://www.hrw.org/world-report/2016/country-chapters/israel/palestine; Jodi Rudoren, Amnesty International Says Israel Showed 'Callous Indifference' in Gaza, N.Y. Times (Nov. 4, 2014). https://www.nytimes.com/2014/11/05/world/middleeast/amnesty-international-says-israel-showed-callous-indifference-to-gaza-civilians.html

4

Federal Defender Services
of Wisconsin, Inc.

has this choice line: "[a]s long as there are events that are difficult to digest or explain and threats to Arab society identified, the freemasons will likely continue to be accused of being one of the sources of the trouble, much like the other Zionist and *Western boogeymen the Middle East have repeatedly blamed for its problems*." Report at 50 (emphasis added). The statement is both telling and inappropriate on many different levels.

9. There are a remarkable number of other claims that are made without support or citation regarding Levitt's theories about the Arab world and Masons. Another claim that doesn't follow from his discussion and for which there is no citation is that the "fear of freemasonry has manifested to the point now where anything that is perceived as a threat to Arab societies can be associated with the nefarious freemasons." *Id*. But even Levitt concedes he has no idea how many Arab adherents there are to the conspiracy theories about freemasons. *Id.* at 49 ("it is difficult to determine how many people in the Middle East and beyond adhere to these theories about freemasons"). Nor does Levitt explore how many Arab people reject these conspiracy theories about Masons. He simply relies on the statements of a handful of Muslims quoted in news accounts to form his opinion that as "long as there are events that are difficult to digest or explain and threats to Arab society identified, the freemasons will likely continue to be accused of being one of the sources of the trouble." *Id.* at 50.

10. In addition to not citing support for his broad statements or directly supporting them with data, Levitt has not published his thesis on Palestinian or Arab conspiracies regarding Freemasonry; he has not authored any studies at all on such conspiracies; and he has yet to conduct any empirical analysis on this matter. *See Daubert*

5

Federal Defender Services
of Wisconsin, Inc.
Case 2:16-cr-00021-PP    Filed 09/13/19    Page 5 of 8    Document 278

*v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) (providing a non-exhaustive list of factors with which courts are to determine the reliability of expert testimony, including whether the relevant theory or technique has been subjected to peer review and publication); s*ee also Bradley v. Brown*, 42 F.3d 434, 437 (7th Cir. 1994). Although the so-called "soft sciences" occasionally employ less empirically rigorous analyses, experts in those fields still expect one another to apply intellectually rigorous and honest standards, methods, and principles. Indeed, those tools, coupled with the experience and education appertaining thereto, are what separate the work of historians, sociologists, and the like from the musings of laypersons. Thus, the reliability of Dr. Levitt's testimony is fairly challenged and should be appropriately evaluated by this court. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) (noting that, where expert testimony's "factual basis, data, principles, methods or their application are called sufficiently into question . . . the trial judge must determine whether the testimony has a 'reliable basis in the knowledge and experience of [the relevant] discipline.'") (quoting *Daubert*, 509 U.S. at 592).

11. Further, Levitt's assumption that there is one Arab mind that can be stereotyped in this fashion is reason enough to disallow his testimony on the subject. But more importantly, regardless of whether there are a few, some, many, or most Arabs who believe what Levitt claims, the only thing that might matter here is what Hamzeh and the informants believed or were exposed to. Levitt has no admissible insights into that subject and he should be prevented from testifying about what he perceives as the supposed traits or beliefs of all Arabs in an effort to claim that a trait or belief applies to Hamzeh.

It's no more valid than suggesting that an inflammatory statement from a political leader or candidate in America represents the "American mindset."

12. Levitt also proposes to testify that after reviewing transcripts of the recorded conversations he is of the opinion that the conversations "point to [Hamzeh's] careful consideration of engaging in violent conduct." Report at 50. This testimony is inadmissible because it is improper opinion testimony, irrelevant to the issues of guilt or entrapment, Levitt is not qualified to provide such an opinion, it's not helpful to the jury, and it is unfairly prejudicial and likely to confuse the issues, mislead the jury, and waste time.

13. First, it is improper for a witness to opine about another witness's reliability or state of mind. Fed. R. Evid. 704(b); *See, e.g., United States v. Hill*, 749 F.3d 1250, 1258 (10th Cir. 2014) (holding that an expert testifying under Rule 702 may not address the credibility of a witness because it usurps the function of the jury and is not helpful to the jury, which can make its own credibility determinations). Levitt's opinion also is irrelevant to the issue of Hamzeh's predisposition to obtain illegal machine guns. As explained elsewhere, predisposition must relate to the specific offense charged. And even thoughts about engaging in violent conduct, if they ever existed, don't show that Hamzeh was predisposed to purchase machine guns before his exposure to the informants. *United States v. Pillado*, 656 F.3d 754, 767 (7th Cir. 2011) (noting "prosecutors will bear the burden to prove beyond a reasonable doubt that Lara was predisposed to committing the crime by identifying 'preinvestigation evidence' bearing on this issue").

7

Federal Defender Services
of Wisconsin, Inc.

14. Levitt's opinion is also unfairly prejudicial for the reasons stated in Hamzeh's third motion in limine seeking to exclude testimony about conversations relating to Israel. This is just one more area in which the admission of those conversations would threaten to explode into a debate about the righteousness of the Israeli or Palestinian cause. That can of worms should not be opened.

15. As a final reason for excluding Dr. Levitt's testimony, his report is at times unreliable, particularly with regard to opinions concerning Freemasonry, Palestinian society, and Arab psycho-political dynamics, as it lacks sufficient facts or data (Rule 702(b)) and fails to apply reliable principles and methods (Rule 702(c)). In sum, the government has not met its burden to demonstrate that Dr. Levitt's testimony would be relevant and reliable. And the Court should, at the very least, hold a *Daubert* hearing concerning his ability to render the opinions offered in his report and curtail the admissibility of others.

Dated at Milwaukee, Wisconsin this 13th day of September 2019.

Respectfully submitted,

/s/ *Craig W. Albee*
Craig W. Albee, WI Bar No. 1015752
Joseph A. Bugni, WI Bar No. 1062514
FEDERAL DEFENDER SERVICES
 OF WISCONSIN, INC.
517 E. Wisconsin Ave - Rm 182
Milwaukee, WI 53202
Tel. (414) 221-9900
E-mail: craig_albee@fd.org

*Counsel for Defendant*, Samy M. Hamzeh

8
Federal Defender Services
of Wisconsin, Inc.
Case 2:16-cr-00021-PP   Filed 09/13/19   Page 8 of 8   Document 278