UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

      *Plaintiff*,

                                              Case No. 16-cr-21-PP

*vs*.

SAMY M. HAMZEH,

      *Defendant*.

## HAMZEH'S REPLY IN SUPPORT OF ATTORNEY CONDUCTED VOIR DIRE AND PROPOSED CONFIDENTIAL JURORY QUESTONNAIRE

### I.    Background

In July 2018, Hamzeh submitted a proposed juror questionnaire after providing a draft to the government and making some modifications at the government's request. R.133. In a cover letter, Hamzeh identified for the Court the handful of disagreements remaining between the parties on the questionnaire. R.134. The government objected to the questions about religious involvement, to some but not all of the questions about attitudes toward Muslims, and to two questions about Israeli-Palestinian relations. The government also proposed a couple of questions asking whether any of the jurors' beliefs would affect their ability to be fair. The letter also included a short response by Hamzeh to each of the government's objections.

On August 22, 2019, this Court issued an order requiring the defense to submit a revised questionnaire because the clerk's office had indicated that its policy was to only send three pages (double-sided) to prospective jurors. R.242. Hamzeh understood that

Federal Defender Services
of Wisconsin, Inc.

Case 2:16-cr-00021-PP   Filed 09/16/19   Page 1 of 10   Document 280

this Court's order was prompted by the clerk's concerns about the amount of paper involved, so he reformatted the questionnaire to keep most of the questions and to allow jurors to expand on their answers on a blank last page while keeping to the six-page limit imposed by the Court.

At roughly the same time, the defense filed a request for attorney-conducted voir dire given the high profile of this case, concerns about prejudice against Muslims, and the possible significance of jurors' feelings about guns, terrorism, and law enforcement in this case. R.257. The motion provided specific reasons and supporting research as to why Hamzeh believed that attorney-conducted voir dire in combination with the questionnaire and questioning by the Court would be the most effective procedure. The government has now filed a response to both the motion for attorney-conducted voir dire and the jury questionnaire.

II.     **Attorney-conducted voir dire.**

In the motion for attorney conducted voir dire, Hamzeh's explained why defense counsel thought that allowing some attorney-conducted voir dire was appropriate and he backed up that position with case law, law review articles, social science research, anecdotal information from counsel's own experience, and studies showing that prejudice against Muslims is a significant problem in this country. The government's primary response is to say that's not how things have been done in the past, the Court doesn't have to, and the defense will abuse the process. The first two things are true, but not persuasive, and the third is a regrettable accusation and one made without foundation. The goal here is to learn about the biases of prospective jurors so appropriate

2

Federal Defender Services
of Wisconsin, Inc.

strikes for cause can be made and both parties can intelligently exercise their preemptory strikes.

Hamzeh's motion explains why the defense believes that allowing attorney-conducted voir dire will help better accomplish that goal, including the greater familiarity the parties have with the case, the parties' incentive to uncover the biases of the jurors, and social science research showing that jurors may be more likely to openly disclose information to lawyers than to the court. *See also* Hon. Mark W. Bennett, *Unraveling the Gordian Knot of Implicit Bias in Jury Selection: The Problem of Judge-Dominated Voir Dire, the Failed Promise of Batson, and Proposed Solutions,* 4 HARV. L. & POL'Y REV. 149, 160 (2010). (2010). Based on these reasons, Hamzeh believes that allowing some attorney-conducted voir dire would be more effective at uncovering bias, particularly regarding attitudes about Muslims.

The government also makes a number of accusations that the defense will abuse the voir dire process, including: the defense is "merely seek[ing] to avoid the Court's determination that certain questions are inappropriate," that the defense intends to present "an opening statement masquerading as an inquiry into their biases," and that the "defendant's attorneys [will] turn voir dire into a multi-day circus during which they harangue potential jurors and attempt to push a narrative that the defendant was investigated and charged with a crime for some other reason than that he purchased and possessed machine guns and silencers so that he could commit a mass killing." R.269:2–4. And because it's not enough to just accuse the defense of wanting to turn these proceedings into a circus based on the filing of a reasoned request for attorney-conducted

3

Federal Defender Services
of Wisconsin, Inc.

voir dire, the government also tells the Court that the defense suggestion to use a procedure that is routine in state court and used in many federal courts really is "one long implied allegation" that the Court's not doing its job during voir dire. R.269:6.

Hamzeh's lawyers can assure the Court that it won't be presenting an opening statement in voir dire or turning the process into a circus because that wouldn't be effective advocacy, it would be counterproductive and against our entire ethos. Beyond that, the Court, of course, is perfectly capable of overseeing attorney-conducted voir dire in the same way it oversees every other aspect of trial:

> If a trial judge concludes that a lawyer is abusing the process by either prejudicing the jury or abusing time limitations, the judge can effectuate reasonable rules of procedure to curtail the abuse. Proper and experienced judicial oversight is exercised continually in the course of a trial. The Court provides reasonable control in discovery, and opening statements, excessive and repetitive direct examination, abuse of cross-examination, and in limitation of content and time of closing argument. The conduct of voir dire is no different.

*Harold v. Corwin*, 846 F.2d 1148, 1153 (8th Cir. 1988) (Lay, J., concurring). That should put to rest any concerns the government has about the conduct of defense counsel.

When it comes to the government's concerns about the consumption of time, those too are overblown. Hamzeh's motion identified one study showing that attorney-conducted voir dire doesn't add appreciable time to voir dire. A study of state courts found that attorney-conducted voir dire on average might add perhaps forty-five minutes to the process on average. *See* Gregory E. Mize, et al., *The State-of-the-States Survey of Jury Improvement Efforts: A Compendium Report* (2007).[1] The alternative of submitting

---

[1] http://www.ncsc-jurystudies.org/~/media/microsites/files/cjs/sos/soscompendiumfinal.ashx

4

written follow-up questions also takes additional time as the parties prepare the questions, debate them, and the Court then has to reorient the jurors to questions that the judge might have been asking at some much earlier point in the voir dire process. And presumably there's an opportunity to submit written follow-up questions to the written follow-ups if necessary, which also takes time.

Beyond its argument about length, the government also suggests that there really is no need to explore prejudice against Muslims because there's no legitimate allegation of racial bias in this prosecution. Hamzeh does not concede that, and notes that Hamzeh is Arab-Muslim while the group the government claims was a potential victim, the Masons, is majority white. *See Rosales-Lopez v. United States*, 451 U.S. 182, 196 (1981) (federal courts must inquire into racial prejudice "when requested by a defendant accused of a violent crime and where the defendant and the victim are members of different racial or ethnic groups"). But that's also beside the point. As the studies Hamzeh presented in his motion indicate, many Americans are prejudiced against Muslims and have preconceptions about them, implicit or explicit, that might interfere with Hamzeh's ability to get a fair trial. And the Court should consider that in *Pena-Rodriguez v. Colorado*, 137 S.Ct 855 (2017), the issue was not that the prosecution was racially biased, but that a juror expressed strong feelings about Hispanics that affected deliberations and required a new trial—something that should have been smoked out in jury selection. That's what we don't want to happen here.

### III. Juror Questionnaire.

As noted in defense counsel's letter to the Court last July, the government agreed to the majority of the questions in the questionnaire. Despite that, it apparently is taking a different view now. The defense believes that the questionnaire asks relevant questions, will take far less time ultimately than if the questionnaire is not used, and the parties are likely to get much more valuable information from jurors to intelligently exercise preemptory strikes if a more comprehensive questionnaire is used. To be fair, the government does make one very good suggestion: numbers should be added to the revised questionnaire.

In terms of specific complaints about the questions on the questionnaire, the most important issue is the government's objections to questions about attitudes about Muslims. As noted above and in the initial motion for attorney-conducted voir dire, many Americans are prejudiced against Muslims. Simply asking whether a juror will be fair is likely to result in the juror giving what she perceives as the socially acceptable answer. The questions proposed by the defense are designed to promote fuller and more honest disclosures about potential biases against Muslims. With those fuller and more honest disclosures, strikes for cause or preemptory strikes can be intelligently exercised. That is the whole goal of voir dire and the questionnaire is an effective tool at making sure that happens. That same point holds for the government's objections to questions that seek to elicit feelings about other subjects important to this case such as views about guns, law enforcement and constitutional principles. These questions, preferably in a questionnaire initially, are more likely to result in the jurors expressing honest feelings on these subjects.

6

Federal Defender Services
of Wisconsin, Inc.
Case 2:16-cr-00021-PP   Filed 09/16/19   Page 6 of 10   Document 280

The government also objects to questions about attending religious services and whether the juror has a leadership position within their religious community. The defense previously explained its view that questions regarding a juror's degree of involvement in religious organizations and their leadership roles in the organization may provide insights about the prospective juror that are helpful in deciding whether to exercise preemptory strikes. Hamzeh is in full agreement that an exercise of a strike based on a juror's religion violates the constitution, although the Supreme Court has not yet reached that conclusion. He also agrees that a person's religion cannot disqualify that person from serving on a jury, including when the juror is a Jehovah's Witness. And Hamzeh certainly will not be striking any jurors on the basis of their religion.

But there is a big difference between striking based on the simple fact that they are Catholic or Baptist or Jewish and gaining insight into a juror based on the degree of involvement in their church or leadership in it might provide relevant information to exercising preemptory strikes. *Cf. United States v. DeJesus*, 347 F.3d 500, 510 (3d Cir. 2003) ("Even assuming that the exercise of a preemptory strike on the basis of religious affiliation is unconstitutional, the exercise of a strike based on religious belief is not"). Indeed, the Deacon who heads his or her church's jail ministry might be a relevant fact and one that both sides could glean a lot from. It's not the fact that the juror holds religious beliefs that matter, it is how he or she exercises a commitment to that belief. And while it would be intrusive to ask deeply personal questions, asking what leadership role a person holds doesn't cross that line—for many, that could be learned from a little time on google.

Putting that point aside, the government has made several arguments about asking whether someone is Jewish. From the pleadings in this case, the defense believes that the government intends to argue that Hamzeh wanted to target Jews. If the government presents such evidence, there's a need to inquire of members of the Jewish faith whether that allegation or any derogatory statements about Jews would interfere with their ability to fairly judge the case. Now asking about whether that could interfere with a juror's ability to judge the case by no means assumes that it does; it simply recognizes that it could—just as Hamzeh's and the informant's statements could affect the partiality of someone who identifies themself as a Mason. Of course, much of this may be mooted by the defense's third motion in limine, precluding or curtailing the introduction of those statements. For now, its worth proceeding in caution that the evidence will be admitted.

In addition, the government objects to questions about visiting Israel and Palestine. Here's the problem: The juror's familiarity with the region and the conflict and their interest in the conflict or its people certainly is relevant to potential biases given what the government wants to present at trial. What's more, the government wants to present evidence about Israel and Palestinians through an expert. So there can be no harm in asking about the juror's familiarity.

That addresses the government's principal arguments, but there is one additional point to add; the government rhetorically asks: "Are any of the American citizens in the jury pool that think terrorists attacking innocent civilians is morally wrong going to be questioned extensively on their beliefs and made to feel as if they are racist because they

8

Federal Defender Services
of Wisconsin, Inc.

Case 2:16-cr-00021-PP   Filed 09/16/19   Page 8 of 10   Document 280

oppose terrorism?" R.269:7. It's hard to understand how opposition to terrorism would cause the jurors to feel that they are racists because terrorism is universally condemned as despicable and unfortunately some members of all races and religions engage in terrorism—indeed, most of the recent attacks on the United States have been borne at the hands of white males.

## IV. Conclusion

As the Supreme Court recognized in *Pena-Rodriguez*, this country can't tolerate jurors who are predisposed on the basis of race in determining the fate of someone they are prejudiced against. We don't do that by pretending it's not a problem or by asking only a leading question that is unlikely to get anyone to disclose their true feelings on a sensitive issue. And while no one has any interest in making jurors uncomfortable, the constitutional obligation is to Mr. Hamzeh to ensure that his jury is not biased against him. The best and most effective way to combat that and ensure that Hamzeh receives a fair and unbiased jury is to provide the proposed juror questionnaire in conjunction with allowing for attorney-conducted voir dire. Indeed, both steps acting in tandem are the best way to accomplish that shared and undeniable objective.

Dated at Milwaukee, Wisconsin this 16th day of September, 2019.

>
> Respectfully submitted,
> /s/     *Craig W. Albee*
> Craig W. Albee, WI Bar #1015752
> Joseph A. Bugni, WI Bar #1062514
> FEDERAL DEFENDER SERVICES
>   OF WISCONSIN, INC.
> 517 E. Wisconsin Ave - Rm 182
> Milwaukee, WI  53202
> Tel. (414) 221-9900
> E-mail:  craig_albee@fd.org
>
> *Counsel for Defendant*, Samy M. Hamzeh