UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    *Plaintiff*,

*vs*.

    Case No. 16-CR-21 (PP)

SAMY M. HAMZEH,

    *Defendant*.

**RESPONSE TO GOVERNMENT'S BRIEF REGARDING RELEVANCE
OF EVIDENCE OF POSITIONAL PREDISPOSITION R.300**

Samy Hamzeh, by counsel, files this response to the government's supplemental memorandum in support of its arguments concerning Hamzeh's positional predisposition. *See* R.300.

In expert reports and the briefs in support of raising entrapment, the defense has proffered that machine guns (like the ones at issue in the indictment) were not available on the streets of Milwaukee and, even if they were, the cost would have been prohibitive. Notably, the government hasn't disputed that proffer. Instead, it responds that Hamzeh could have instead bought cheap devices like Glock switches and bump stocks to convert regular, legal guns to illegal automatic weapons. As this Court already recognized, the government's claim that Hamzeh theoretically could have converted the handgun in which he expressed interest into an illegal weapon "stretches the predisposition argument to the breaking point." R.295:35-36. Despite that, the government sought permission to file an additional brief on the matter.

Federal Defender Services
of Wisconsin, Inc.

There are two problems with the government's position—both as originally presented and supplemented. First, the Seventh Circuit in *United States v. Hollingsworth*, 27 F.3d 1196, 1206 (7th Cir. 1994) (en banc) made it clear that positional predisposition focuses on the specific allegation against the defendant, rather than a hypothetical offense. That's the law and it has to be followed. And second, even if *Hollingsworth* wasn't the law, the government hasn't even presented any facts that would support its claim that Hamzeh could get the conversion kits that it cites. Accordingly, and for the reasons more fully expressed below, this Court should exclude the government's misleading and irrelevant evidence and arguments about the supposed availability of devices to convert firearms into automatic weapons that have nothing to do with what actually happened here.

### A. *Hollingsworth* controls and it addresses the exact argument the government seeks to make.

The primary issue here is whether positional predisposition requires the jury to examine the actual allegations in the case or whether it may just consider whether the defendant could have committed the same violation of the U.S. Code without government involvement. When given the opportunity to argue its position in supplemental briefing, the government failed to cite a single case in support of its argument that positional predisposition relates to the type of offense and not the specific facts of the case. To resolve this issue, the Court only has to read *Hollingsworth* for confirmation that positional predisposition is fact-specific and context-dependent.

2

Federal Defender Services
of Wisconsin, Inc.

There, the Seventh Circuit found that the two defendants, a dentist-businessman and a farmer-businessman, lacked the positional predisposition to commit the money laundering offenses for which they were convicted. In reaching that conclusion, the Court addressed (and rejected) the very same type of argument that the government is making here. In doing so, the Court emphasized that the issue was not whether the defendants could have committed the crime of money laundering (generally), but whether they could have committed money laundering (in the manner alleged) and without the government's help: "The point is not that Pickard and Hollingsworth were *incapable* of engaging in the act of money laundering. Obviously they were capable of the act. All that was involved in the act was wiring money to a bank account designated by the government agent. *Anyone can wire money.*" *Id.* at 1202 (emphasis added). Rather, the Court framed the question around the specific allegations of that case: "But to get into the international money-laundering business you need underworld contacts, financial acumen or assets, access to foreign banks or bankers, or other assets. Pickard and Hollingsworth had none. . . . Even if they had wanted to go into money laundering before they met Hinch—and there is no evidence that they did—the likelihood that they could have done so was remote." *Id.* Those two quotes say it all.

That is, the en banc Court in *Hollingsworth* did not frame the issue of positional predisposition around whether the defendants could hypothetically commit *any* money-laundering scheme. Of course they could—"anyone can wire money." *Id.* Instead, the Court considered the specific scheme that the government concocted. *Id.* Again, the issue is whether Hamzeh was entrapped into committing *this* crime and not some other

3

Federal Defender Services
of Wisconsin, Inc.

offense. *Cf. United States v. Mayfield*, 771 F.3d 417, 442 (7th Cir. 2014) (noting "the fact that Mayfield committed a different kind of robbery in the past is not conclusive evidence that he was predisposed to commit *this crime*—a stash-house robbery—when Potts first proposed it" (emphasis in original)).[1] And the evidence must show that "[t]he defendant must be so situated by reason of previous training or experience or occupation or acquaintances that it is likely that if the government had not induced him to commit the crime then some criminal would have done so." *Hollingsworth*, 27 F.3d at 1200.

Nothing in *Hollingsworth* (or any other case) requires the defense to rebut not just the specific allegation against him, but also any hypothetical manner of committing the crime the government's lawyers devise—years after the fact. Rather, given that "predisposition is chiefly probabilistic, not psychological," the jury must look at the case's actual facts and not speculate about an alternative, hypothetical set of facts. *Mayfield*, 771 F.3d at 428. Indeed, that's why *Hollingsworth* was resolved the way it was: since the money-laundering scheme (the one charged) was almost certainly beyond the defendants' capacity, the Court found entrapment as a matter of law. *Hollingsworth,* 27 F.3d at 1206. In sum, there is no basis for the government to argue that all it has to show is that Hamzeh could have committed *any* violation of § 5845 but instead it must show that Hamzeh was positionally predisposed to commit the violation it charged.

---

[1] It's worth noting that Counts One and Two each charge possession of a specific machine gun. The government's evidence must establish proof beyond a reasonable doubt of Hamzeh's guilt as to those guns, including proof he wasn't entrapped, and a conviction cannot be based on proof relating to any other gun or part or frame or receiver. *See United States v. Leichtnam*, 948 F.2d 370 (7th Cir. 1991) (improper constructive amendment of indictment where government charged possession of a specific rifle but government introduced evidence of possession of two other guns as well).

4

Federal Defender Services
of Wisconsin, Inc.
Case 2:16-cr-00021-PP   Filed 10/01/19   Page 4 of 7   Document 301

### B. Beyond being foreclosed by *Hollingsworth,* the government's position also lacks evidentiary support

There are two additional points to stress about the government's argument. First, there is absolutely no evidence that Hamzeh sought the devices the government has argued are readily available—glock-switches and bump stocks.[2] There are no internet searches, nothing stored on his phone or his computer. There is nothing in his intercepted texts or phone calls that would signal such a desire—nothing to suggest his knowledge of them or that he'd even searched for them. It's all purely hypothetical and speculative. So the government's proffered evidence would create problems under Rules 402 and 403 because it's not relevant and likely to confuse the jury.

Second, the government's expert notice says that it will call an ATF agent to testify about "the availability of machine guns, silencers, and other equipment that make firearms function as automatic weapons. We expect that he will testify about ATF seizures of machine guns and silencers." R.259. That notice (which is insufficient for Rule 16 purposes) says almost nothing about what evidence the government might seek to introduce on this topic. The government's briefs, however, identify the information that it presumably intends to rely on. And it's based primarily on simple online research.

That research indicates that more than three years after Hamzeh's arrest, the ATF seized 3000 conversion kits, and that Amazon and Wish.com had these conversion kits for sale momentarily at some point. And the government relies on the number of seizures of machine guns, without specifying type, between 2016 and 2018. But all this research

---

[2] The government initially relied on the availability of bump stocks as well, which were not illegal in 2016. *See* R. 255 at 35.

post-dates Hamzeh's arrest. The government identifies no affirmative evidence that shows how available these devices were in January 2016 or (for that matter) August and September 2015, when the Court measures Hamzeh's predisposition. *Jacobson v. United States*, 503 U.S. 540, 549 (1992) (noting "the prosecution must prove beyond reasonable doubt that the defendant was disposed to commit the criminal act prior to first being approached by Government agents").

What's more, defense counsel's minimal internet research raises questions about the supposed ubiquity of these devices during the operative time. According to U.S. Customs and Border Protection, they first encountered these conversion devices in 2016 when they seized 22 full-auto pistol conversion kits during that year at American ports of entry. They seized just seven kits the following year (2017) and then they seized 301 kits in 2018. *See* Alex Yablon, *Border Officials Seized a Record Number of Illegal Machine Gun Kits in 2018*, The Trace (June 19, 2019).[3] According to that same article, in 2017 the conversion kits were sold on Amazon, but the website then removed the listings. *Id.* So even if the Court were to allow the government to use the internet as an end-round for evidence of Hamzeh's positional predisposition, the government can't meet its burden and the argument should be excluded.

### C. Conclusion

In sum, the Court's observation in the entrapment order was correct—the government's argument about glock-switches "stretches the predisposition argument to

---

[3] https://www.thetrace.org/2019/06/border-officials-seized-a-record-number-of-illegal-machine-gun-kits-in-2018/

the breaking point." R.295:35-36. And nothing in the government's brief calls that observation into question. In fact, the government has not produced one case in support of its argument. Instead, the defense stands on *Hollingsworth,* which firmly rejects the government's position. Thus, the defense would ask that the Court exclude any argument about Hamzeh's positional predisposition to get weapons other than what the government has charged.

Dated at Milwaukee, Wisconsin this 1st day of October, 2019.

Respectfully submitted,

/s/     *Craig W. Albee*
Craig W. Albee, WI Bar #1015752
Joseph A. Bugni, WI Bar #1062514
FEDERAL DEFENDER SERVICES
  OF WISCONSIN, INC.
517 E. Wisconsin Ave - Rm 182
Milwaukee, WI  53202
Tel. (414) 221-9900
E-mail:  craig_albee@fd.org

*Counsel for Defendant*, Samy M. Hamzeh