UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                                    Case No. 16-CR-21

SAMY MOHAMMED HAMZEH,

      Defendant.

---

**Brief Regarding the Admissibility of Hamzeh's Statements About Acquiring Weapons Abroad; Israel and Hamas; ISIS; and Dr. Levitt's Testimony**

---

The United States of America, by its attorneys, Matthew D. Krueger, United States Attorney for the Eastern District of Wisconsin, and Benjamin Taibleson and Adam Ptashkin, Assistant United States Attorneys, hereby file this brief regarding the relevance of the defendant's statements about wishing to commit a mass killing, Hamas, Israel, and ISIS, and the intertwined expert testimony of Dr. Levitt.

Hamzeh will argue he was not predisposed to illegally possess machineguns and a silencer. Mr. Hamzeh's own statements are relevant evidence that is not true. His statements regarding his wish to possess machineguns and silencers in order to commit an attack – *i.e.*, one of his motives to possess them – is highly relevant to show his predisposition. Similarly, defendant's stated plan to work with Hamas and murder people abroad is probative of the fact that he was predisposed to possess the machineguns and silencer that would allow him to commit a mass casualty attack. The

plan to murder a group of people eventually shifted to American soil, but the fact that mere months prior to possessing the machineguns, the defendant said he wanted to kill as many people as possible abroad, with illegal weapons including automatic firearms, is relevant and necessary evidence to prove predisposition.

Hamzeh argues that his statements that he wanted to acquire a machinegun abroad is not probative of his predisposition to acquire a machinegun in the United States. But that geographical distinction does not go to admissibility. Hamzeh's plain statements that he wanted to use a firearm to commit an illegal mass shooting is probative of his predisposition to illegally possess weapons he could use to do it. So too his wish to join Hamas, a designated foreign terrorist organization. Each such statement may not prove his predisposition outright on its own, but each is probative.

His statements must be viewed in context of one another. Given that Hamzeh repeatedly says he wants machineguns, it is no surprise he also repeatedly says he wants to "spray" bullets into people and that he wants to acquire weapons to commit a mass attack. Hamzeh sometimes specifies he wishes to use a machinegun, he sometimes specifies he wishes to spray bullets, he sometimes says he wants to commit a mass killing with a weapon, and he sometimes states he just wishes to commit a mass killing. Wishing to possess a legal weapon might not be probative of a person's predisposition to possess an illegal weapon – but wishing to possess a generic "weapon" to commit an illegal mass killing is. In light of his ultimate possession of automatic weapons and a silencer, each category of those statements is highly probative of his motive to possess the weapons

2

suited to do those things. Keeping this evidence from the jury would neither comport with the Federal Rules of Evidence nor help them find the truth.

Hamzeh has stated he intends to introduce statements he made that, at one point, he wanted a handgun for food deliveries in order to try to show he was not predisposed to possess a machinegun. Thus, it will be necessary for a jury to hear the balance of his statements in order to determine Hamzeh's true and overriding intentions. The volume and intensity of his statements indicate his predisposition. A simplified example makes this clear: If Hamzeh said, "I want a machinegun today" on days 1, 2, 3, and 4; said "I don't want a machinegun today" on day 5; and then said "I want a machinegun today" on days 6, 7, 8, 9, and 10 before buying the machinegun on day 10, it would mislead the jury to only show them the statements he made on days 1, 5, and 10. That false appearance of balance might make it falsely appear he was not generally predisposed to want a machinegun. The jury will believe those were the only statements he made and might think he was ambivalent when he was actually enthusiastic. Instead, if the jury is to determine his predisposition, they must hear every statement that is probative of his predisposition and motive to acquire illegal weapons.

Hamzeh's statements about Israel and Hamas are not intended to start a debate about Israel. No one wants that. They are intended to show the defendant's stated predisposition. In addition, it will be difficult if not impossible for laypeople to understand the defendant's statements about Israel, Hamas, and ISIS without the dry,

3

academic background information Dr. Levitt will provide.¹ At the pretrial hearing, the Court expressed concern that Dr. Levitt will testify for 60-90 minutes. If necessary, the United States can present Dr. Levitt's testimony in under one hour (of the two-week trial). That would include the time it will take to introduce him to the jury and establish his expertise. In light of the defense providing notice of its nine expert witnesses, the United States hopes the Court will allow this limited expert testimony from the United States.

Dr. Levitt will provide facts that will allow jurors to understand the nature and sophistication of the defendant's statements. He will not testify about Hamas financing or recruitment. But to understand the defendant's statements on Hamas, the Gaza Strip, the West Bank, and ISIS, the jurors will need an expert to answer the following questions:

1. What is Hamas?
2. What are the Gaza Strip and West Bank?
3. Why do the different security situations in the Gaza Strip and West Bank have different appeals to someone that wants to commit mass killing there?
4. How is it possible a person would sympathize with one designated foreign terrorist organization in the Middle East (Hamas), but oppose the values of another designated terrorist organization in the Middle East (ISIS)?
5. Do Masonic conspiracy theories exist in the Middle East (the United States anticipates asking Dr. Levitt this one question on this topic)?

The jurors need to be able to answer these questions in order to understand the defendant's statements and determine if he was induced to, and predisposed to, possess illegal weapons. Dr. Levitt will answer these background questions for the jurors.²

---

¹ *United States v. Ibrahim*, 529 F. App'x 59, 63 (2d Cir. 2013) (Stating "to the extent that [defendant] argues that the testimony was unfairly prejudicial, we described Levitt's testimony at the co-defendants' trial as 'dry and academic, [and] devoid of vivid imagery that might excite the jury.' 718 F.3d at 121. The same was true here.") (citations omitted).
² Dr. Levitt's his methodology is "the gold standard in the field of international terrorism." *United States v. Damrah*, 412 F.3d 618, 625 (6th Cir. 2005) (upholding and

4

Below, the United States summarizes why the jury should not be deprived of hearing important, relevant, and probative evidence of the defendant's statements.

Statement

On November 2, 2015, Hamzeh said in regards to Israeli soldiers, "you shoot both of them, take their weapons and leave. They carry the best kind of weapons. Jews carry the best Kalashnikovs. So if we shoot two and get two Kalashnikovs, it will be it." Exhibit A at 46 lines 10-12 (Discovery Disc 22 (FBI 24) page 54).

Kalashnikovs are machineguns. Hamzeh says he wants to possess them. His statement that he wants to possess machineguns is highly relevant to proving the defendant was predisposed to possess machineguns. He now argues this was not a realistic plan, but they are his statements about what he wants to possess – *i.e.*, machineguns. His predisposition is at issue in this trial in light of his entrapment defense.

Statement

On October 13, 2015, Steve asks Hamzeh: "If you cannot go to Gaza, you would get a machine gun and start shooting….," Hamzeh responds "I will start spraying them. Yes I will be a suicide attacker [Laughing]" and Steve says "That is difficult, man."

This statement by Hamzeh goes to his predisposition to possess a machinegun, the absence of any pressure by Steve to do these things, and context for Hamzeh's use of the word "spray" regarding machinegun fire throughout the investigation.

---

quoting from the district court's denial of a challenge to Dr. Levitt's testimony in a case involving Palestinian Islamic Jihad, another Palestinian terror group).

Statement

On November 6, 2015, the defendant discusses his plan to murder worshippers in Jerusalem. He refers to the "Al-Buraq Wall." He states, "If both us go in with handguns and shoot the four, we will take the Kalashnikovs and go in, spray as much as you can. A lot of people are inside . . . ." Exhibit A at 51 line 13-53 lines 9 (Discovery Disc 25 (FBI 1A15) page 17).

This statement is relevant to whether Hamzeh was predisposed to possess machineguns. He explicitly discusses wanting to possess machineguns and to use them to kill a large number of people at a religious site. His description of the fact that one "spray[s]" bullets with an automatic weapon (a Kalashnikov) is probative of the fact that when he describes spraying bullets elsewhere, he is referring to the continuous fire of an automatic weapon – *i.e.*, a machinegun. The jury needs Dr. Levitt's testimony to know what the Al-Buraq Wall is, and why there would likely be many soft targets there.

Statement

On October 13, 2015, the defendant states "I will buy a weapon and start hunting them. I am going there to do something. I am not going there to fool around . . . you cannot get to Gaza, [Steve]. You need someone who knows how to get you there. Someone who knows about such things, instead of falling in the hands of spies. All of them are spies over there. The whole county cooperates with Israel there." Exhibit A at 5 lines 1-10 (Discovery Disk 11 (FBI 11) page 7).

Again, this statement shows predisposition not just to obtain any gun, but a weapon that will allow the defendant to hunt innocent civilians. A reasonable juror could

6

find this relevant to their inquiry of whether he was induced or predisposed to illegally possess machineguns and silencers. Dr. Levitt's background information on the different political and security realities in Gaza and the West Bank will put the defendant's statements in context. Dr. Levitt will explain, for example, that Hamas, a designated foreign terrorist organization, controls Gaza, but does not control the West Bank.

## Statement

On October 13, 2015, the defendant stated "From Jordan, I will go to the [West] Bank, to Bethlehem . . . have a passport, an American passport and they would let me in. Then I will go to Bethlehem and look for someone who would get me a weapon, God willing . . . I am telling you, I will get a weapon and hunt as many as I can by the will of God, I mean a number…till I die, I'll keep on doing that till I die." Exhibit A at 2 lines 20-40 (Discovery Disk 11 (FBI 11) page 4).[3]

October statements like this one demonstrate the defendant's desire to "get a weapon and hunt as many as I can" in Israel. This statement is relevant to the defendant's predisposition to purchase a machinegun to "hunt as many as I can" in the Masonic Temple mere months later. Dr. Levitt will explain to the jurors what the West Bank is,

---

[3] The defendant purchased a one-way ticket to Jordan in the fall of 2015. Based on the defendant's own statements, it appears his mother's hospitalization (See Exhibit A at 27-31) and disapproval resulted in the defendant not flying to Jordan in the fall of 2015, and later altering his plan to commit the attack in Milwaukee in January of 2016. Hamzeh objects to the admission of all of these statements involving his mother on Discovery Disk 14 as irrelevant. However, given Hamzeh will argue the earlier plan for an attack in Israel is irrelevant to what happened in Milwaukee, these statements are necessary to show why the defendant delayed the attack by a few months and relocated it. The defendant never lost his predisposition to acquire a machinegun and commit an attack. This was a long term, continuous goal, and it was only the details of where and when that changed.

7

and the critical importance of having an American passport when crossing from Jordan to the West Bank. Only then will the jurors be able to completely understand the sophistication, context, and meaning of this statement.

Statement

On October 13, 2015, the defendant states, "Yes but it is a cover up, it is all cover up. I'll be pretending that I am staying and visiting my relatives. Then I will start, I will start searching here and there amongst the people you totally trust. [For those] who are able to get me to Gaza and those who can. If I cannot get to Gaza, I will do it in the [West] Bank. I mean I am not going to return empty handed. I mean, I am 100% sure that I am not coming back; do you follow me? As if I am seeing death with my own eyes, God willing. I swear by God Almighty, as if I see death with my own eyes." Exhibit A at 6 lines 1-9 (Discovery Disc 11 (FBI 11) page 8). The defendant later stated, "the first option, which I like the best, is to get to Gaza and join the fight with the guys there." Exhibit A at 9 lines 7-8 (Discovery Disc 11 (FBI 11) page 11).

Relatedly, on November 2, 2015, the defendant states, "if they suspect you at the airport, they can put you under surveillance. Jews are sons of bitches, man. So the first two weeks . . . For at least two weeks you need to show the Jews that you are a tourist, do you understand." Exhibit A at 49 lines 11-13 (Discovery Disc 22 (FBI 24) page 79).

These statements about posing as a tourist visiting relatives in order to evade being thwarted before committing a mass shooting shows Hamzeh's sophistication. He had plans to conceal his plot from anyone who could stop him. Understanding the advance planning and sophistication of these plans in Israel will allow the jurors to understand

8

the continued sophistication and predisposition that went into the defendant's decision to acquire machineguns to launch an attack in Milwaukee. The advanced thought and sophistication displayed in these statements is also critical to rebutting the defense that Hamzeh is mentally deficient and susceptible to being influenced by others. Again, Dr. Levitt's background on the Gaza Strip and the West Bank is necessary for a layperson to understand these statements.

These statements also provide corroboration for the fact that the defendant's post-arrest false exculpatory statements are lies. For instance, in the post-arrest interview he claims to be a patriotic American who wants to join the Army. However, in earlier recorded statements, the defendant discusses how he will use a fraudulent interest in the Army to hide his plans. Exhibit A at 57 lines 8-23 (Discovery Disc 30 (FBI 29) page 29).

Similarly, his false post-arrest statements that he did not know what a silencer is harken back to his statements to the confidential informants that possessing silencers made them look guilty and like terrorists. For example, the defendant states "Because if we bring a silencer, this will only increase, increase doubts about us. . . ." If he says he just bought a weapon because he is a gun guy, by contrast, he only "would be imprisoned for six months rather than being imprisoned because of a silencer for I intended to do something." Exhibit A at 182 lines 15-16 (Discovery Disc 104 (FBI 105) page 16).

Hamzeh tells the informants that if they are caught with automatic weapons, they should just say they are gun guys. But if they are caught with silencers, it would be clear they were going to commit a mass attack, and they "will be considered as terrorists." *Id*. Sure enough, when Hamzeh is caught, he says that he just wanted to practice shooting

9

with the guns, and pretends he does not know what silencers are for (despite numerous recorded statements wherein he describes silencers). In light of his entrapment defense and claims of mental deficiency, these statements are all relevant and helpful to the jury's inquiry into Hamzeh's sophistication and the extent of his planning. These statements also prove the defendant had the mens rea to illegally acquire unregistered machineguns. The jury cannot analyze Hamzeh's post-arrest false exculpatory statements, and determine his mens rea, without his statements.

Statement

On October 13, 2015, the defendant states, "Yeah, the idea is, if I am with Hamas, there is an army behind me, an army that fights with me, but if I go to Palestine, it's like I'm fighting against a whole army." Exhibit A at 16 lines 9-11 (Discovery Disc 11 (FBI 11)).

Dr. Levitt's testimony is needed to give context to this statement. Hamas controls the Gaza Strip, but not the West Bank, so the desire to go work with Hamas in the Gaza Strip as opposed to working by one's self in the West Bank is sophisticated and relevant. Statements like these also provide context for Hamzeh's related statements about his plans to kill people in Israel.

Statement

On October 13, 2015, the defendant states, "Oh, yeah. I'll be under surveillance by the whole world. I mean, if you leave the country, you'll be chased either by the Jordanian Government, or Egypt, or chased by . . . The bastard Arabs help them. The Arabs themselves help them out, and this is what upsets you nowadays: How do you as an Arab

10

and a Muslim help out the Jews?!! How? I don't know." Exhibit A at 17 line 45-18 lines 3 (Discovery Disc 11 (FBI 11) page 19).

Dr. Levitt will explain the unhappiness with the Jordanian government amongst some members of the Palestinian Diaspora community in Jordan. It will be extremely confusing to laypeople to hear the defendant criticizing the governments of Jordan and Egypt, but simultaneously expressing a desire to join Hamas, if the jury does not receive expert background information on Hamas from Dr. Levitt. Relatedly, the defendant later expresses his disapproval of ISIS. Again, people that are not experts on the Middle East will not understand the defendant's thought process, unless the differences between ISIS and Hamas, or Hamas and the Jordanian government, are explained to them by an expert.

These are not the nonsensical ramblings of a mental deficient. They are the rational, sophisticated (if murderous) statements of a person motivated by a coherent (if misguided) world view and predisposed to acquire weapons of war to commit a killing.

Statement

On November 2, 2015, the defendant states, "To the extent that should Hamas tell me to go and detonate myself, I will go and detonate myself. I will tell them if you do not believe me, put a belt on me and I will go." Exhibit A at 40 lines 18-20 (Discovery Disc 22 (FBI 24) page 39). The defendant later continues, "Blow up myself in Tel Aviv. But it is better to be with Hamas because you can kill the largest number." Exhibit A at 23 lines 31-32 (Discovery Disc 11 (FBI 11) page 26).

Relatedly, the defendant later states "you got to be with the resistance [groups] to get them. Meaning should you want to join a resistance [groups], they will give it to you.

11

If you want to go on your own, you won't get more than a pistol." Exhibit A at 44 lines 44-46 (Discovery Disc 22 (FBI 24) page 52). Later the same day the defendant states "you spray five or six at the same time . . . I am telling you, when you shoot . . . they walk in groups, the Jews." Exhibit A at 45 lines 34-42 (Discovery Disc 22 (FBI 24) page 53).

These statements shows the defendant's desire to commit an illegal mass casualty attack. He argues his statements about suicide bombing have "no bearing on the trial, it is inflammatory, very cumulative, and confuses the issues." However, the fact that Hamzeh says he wants a suicide bomb belt to kill people is relevant evidence that he was predisposed to acquire a mass killing weapon - a machinegun – to kill people. Hamzeh is predisposed to acquire weapons of war that will allow him to kill a large number of people. He considered a suicide belt, and then later decided on a weapon that would not immediately take his life when he used it, a machinegun.

Further, Hamzeh's negative observation that "if you want to go on your own, you won't get more than a pistol" is a sign that he was predisposed to want a gun with more firepower than a pistol. This is highly relevant evidence to rebut his entrapment defense. His statement about "spray[ing] five or six at the same time" also demonstrates his desire to obtain a gun that fires automatically.

Statement

On November 12, 2015, the defendant states "We will not go to prison . . . we will go and kill 20 to 30 people . . . I really wish to reach this level." Exhibit A at 54 lines 6-9 (Discovery Disc 30 (FBI 29) page 25).

12

The defendant's desire to avoid prison, and the reason it took several months for him to actually choose the Masonic Center as a target, are also expressed on January 19, 2016, when he again demonstrates his advance planning and states "Everything needs to be planned. You have to go see, you need to think, and nothing should be rushed . . . Nothing works when it's rushed." Exhibit A at 75 lines 31-37 (Discovery Disc 73 Parts 1-5 (FBI 72) page 19). He then makes a sophisticated plan, recruits accomplices, tours his attack site, and acquires weapons. Statements like these are relevant to prove the amount of thought Hamzeh put into his plans, which ultimately included acquiring machine guns; again, these issues bear directly on Hamzeh's predisposition.

Statement

On November 2, 2015, the defendant states, "So once we shoot someone, you need to keep shooting and shooting as much as you can, do you understand? And escape, shoot and escape . . . keep escaping till you get caught. Once you are caught, that is it. You don't let anyone catches you until you get shot at." Exhibit A at 35 lines 16-20 (Discovery Disc 22 (FBI 24) page 20).

The defendant's desire to quickly murder as many people as possible is strong circumstantial evidence of a desire to obtain a fully automatic weapon. A fully automatic weapon allows a person to fire more bullets faster, and thus kill more people. The United States needs to be able to show the jury statements like this one in order to prove predisposition. Whether the attack would take place in the Middle East in the fall of 2015, or Milwaukee mere months later, the defendant's desire to murder a large number of people in a short amount of time is relevant evidence that rebuts his entrapment defense.

13

Statement

On November 2, 2015, the defendant states "My thing is postponed, my thing is postponed . . . I was going last year but what did they do, the sons of bitches in Egypt! They destroyed the borders, all the tunnels and things that go to Gaza . . . and flooded the tunnels… This postponed the matter for me. I was going to go via Egypt." Exhibit A at 37 lines 4-25 (Discovery Disc 22 (FBI 24) page 36).

The defendant's statements that a year earlier (2014) he also planned on going to the Middle East to murder people is further evidence of predisposition. Also, Dr. Levitt will explain that Hamas has tunnels between the Gaza Strip and Egypt that have been destroyed. The jury will only understand this statement via Dr. Levitt's testimony.

Statement

On November 12 2015, Hamzeh asks Mike a question about committing attacks abroad, and Mike says "You figure it out. It is your planning, how would I know?" Exhibit A at 54 line 14 (Discovery Disc 30 (FBI 29) page 25). Hamzeh then explains his plan for killing people in Jerusalem: "We kill two and two. You kill two and I kill two; you take their machineguns and go inside . . . You go in, take out the Kalashnikov and go: bang, bang, bang and fuck them all up; all of them." *Id*. at 55 lines 16-21.

This is relevant evidence of Hamzeh's predisposition. First, it rebuts his defense that the confidential human sources are the ones coming up with the murderous plans and Hamzeh is just going along with them. And second, it shows that he is predisposed to possess machineguns.

14

Statement

On January 21, 2016, the defendant states "Do you know that Da'ish [ISIS] is Masonic? . . . They destroyed the world, *man* . . . They destroyed us; they destroyed Islam; they destroyed the world. It is all written in the Qur'an: 'Your bitter enemy is the devil.'" Exhibit A at 132 lines 28-37 (Discovery Disc 84 Part 2 (FBI 44) page 17).

This statement is integral evidence that shows the defendant's own independent motivation to possess the machineguns and silencer he purchased four days later. It proves it was not an accident, and that the defendant was not tricked or induced into possessing the machineguns he bought on January 25. The defendant wanted to acquire machineguns to murder Masons because of his belief that the Masons were connected to ISIS. It also rebuts his claim that it was the informants who told him about this purported connection, not the other way around.

Given that the jurors will not be terrorism experts, they will not know the fundamental doctrinal and operational differences between Hamas and ISIS. Dr. Levitt can quickly explain these differences. If the jury is deprived of the background knowledge of ISIS and Hamas that only a terrorism expert can succinctly provide, the jury will be unable to understand these statements, which demonstrate the defendant's determination to acquire machineguns and commit a mass casualty attack.

Legal Principles

Relevant evidence may be excluded if the probative value is outweighed by adverse considerations such as the danger of unfair prejudice, confusion, or waste of time under FED. R. EVID. 403. Because the law favors the admission of all relevant evidence,

15

exclusion under Rule 403 "is 'an extraordinary remedy [that] should be used sparingly.'" *United States v. Watson*, 766 F.3d 1219, 1241 (10th Cir. 2014). The more probative the evidence, the more a court will tolerate prejudice. *United States v. Earls*, 704 F.3d 466, 471 (7th Cir. 2012) (citing *Whitehead v. Bond*, 680 F.3d 919, 930 (7th Cir. 2012)); *United States v. Curry*, 79 F.3d 1489, 1496 (7th Cir. 1996).

Most "relevant evidence is, by its very nature, prejudicial." *United States v. Boswell*, 772 F.3d 469, 476 (7th Cir. 2014). That is true of the evidence described above: It is prejudicial to Hamzeh because it demonstrates his predisposition and motive to possess machineguns and a silencer. As a matter of common sense, Hamzeh's own statements on these topics, dating back to the earliest evidence available, provide the best and most reliable indications of what Hamzeh himself was predisposed to do. The fair and appropriately prejudicial effect of these statements in proving Hamzeh's predisposition and motive are a reason to admit the evidence, not to exclude it.

Evidence is only *unfairly* prejudicial – and therefore excludable under Rule 403 – if "it will induce the jury to decide the case on an improper basis rather than on the evidence presented." *Id.* It is true that Hamzeh's statements about committing mass killings are disturbing. But any risk of unfair prejudice that would result from admitting these statements is far outweighed by their probative value, particularly in the context of Hamzeh's entrapment defense. Excluding these statements would hide from the jury Hamzeh's long-standing desire to commit a mass killing, but it would also hide from the jury some of the best evidence of Hamzeh's predisposition to obtain the weapons of war required to do so.

16

"[I]f the defendant seeks acquittal by reason of entrapment he cannot complain of an appropriate and searching inquiry into his own conduct and predisposition as bearing upon that issue. If in consequence he suffers a disadvantage, he has brought it upon himself by reason of the nature of the defense." *Sorrells v. United States*, 287 U.S. 435, 451–52 (1932). Particularly in entrapment cases, courts have routinely admitted evidence of a defendant's other acts and statements to prove predisposition. The same result should obtain here. *See, e.g.*, *United States v. Parkin*, 917 F.2d 313, 316 (7th Cir. 1990) (approving admission of evidence of other drug transactions, including those occurring after the charged offense); *United States v. Young*, 916 F.3d 368, 379 (4th Cir. 2019) (approving the district court's admission of defendant's Nazi and white supremacist paraphernalia); *United States v. Joost*, 133 F.3d 125, 130 (1st Cir. 1998) (evidence of defendant's "motive for possessing the weapon clearly was relevant to rebutting his entrapment claim" and properly admitted).

## Conclusion

The defendant's own statements about acquiring weapons and committing an attack abroad are extremely probative of his predisposition, and the jury needs to hear this evidence in order to analyze the facts of this case. The factfinders will have a misleading and incomplete view of the defendant's predisposition if they do not see this evidence. This evidence will not result in the jury making a decision on an improper basis. It will allow the jury to decide precisely the issues raised by Hamzeh's entrapment defense: whether the defendant was induced and not predisposed to want machineguns and a silencer. Relatedly, Dr. Levitt's explanations of Hamas, the Gaza Strip, the West

17

Bank, and ISIS are highly probative because without this background knowledge, the jurors will not understand the defendant's statements on this topics. These statements need to be put in context in order to be understood. Dr. Levitt is one of the most respected, if not the most respected, professional terrorism expert in the country. His limited testimony is necessary for the United States to try its case and for the jury to understand the facts, but it is not so prejudicial that it is inadmissible under Rule 403.

If the Court disagrees and will exclude (1) the defendant's statements regarding acquiring weapons and committing an attack in Israel (or the United States), (2) the defendant's statements about his wish to join Hamas, or (3) Dr. Levitt's expert testimony, the United States respectfully requests that it issue a formal holding pretrial before jeopardy attaches.

Dated at Milwaukee, Wisconsin this 2nd of October, 2019.

Respectfully submitted,
MATTHEW D. KRUEGER
United States Attorney

By: */s/ Benjamin Taibleson*

Benjamin Taibleson
Adam Ptashkin
Assistant United States Attorneys
United States Attorney's Office
Eastern District of Wisconsin
517 East Wisconsin Avenue
Milwaukee, Wisconsin 53202
(414) 297-1700
benjamin.taibleson@usdoj.gov
adam.ptashkin@usdoj.gov