UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

            Plaintiff,

     v.                                          Case No. 16-CR-21

SAMY MOHAMMED HAMZEH,

            Defendant.

## United States' Response Regarding Post-Arrest Recorded Statements

The United States of America, by its attorneys, Matthew D. Krueger, United States Attorney for the Eastern District of Wisconsin, and Benjamin Taibleson and Adam Ptashkin, Assistant United States Attorneys, hereby files this Response regarding Hamzeh's Sixth Motion in Limine.

On Friday, October 11, 2019, the defense asked the United States if it objected to including six brief additional segments of Hamzeh's post-arrest statement to the portions on the United States' initial exhibit list, under the rule of completeness. Counsel for the United States responded, about an hour later, "I think we can just agree to most of that blue text; we may push back on one addition. Let me get back to you (soon) on that." But yesterday, Monday, October 14, 2019, the defense filed a 16-page brief stating that the law requires many multiples of additional text be admitted for cross-examination under the rule of completeness. The final pretrial conference is tomorrow, so the United States has sought to respond to yesterday's defense filing as quickly as possible.

I.     *Excerpts Of Post-Arrest Statements and the Rule of Completeness*

Many of the proposed additions do not clarify, modify, or provide meaningful context for the portions of Hamzeh's post-arrest statements that the United States seeks to admit. Indeed, as the defendants' exhibits reflect, these statements are often temporally disconnected from any statements the United States plans to admit. Rather than providing "completeness," these statements largely set forth Hamzeh's attempts to self-exculpate, which the defense (understandably) seeks to introduce for the truth of the matters asserted. These statements are quintessential hearsay when offered by the defense, and they must be excluded. *See, e.g.*, *United States v. Lewis*, 641 F.3d 773, 785 (7th Cir. 2011) (rule of completeness did not permit defendant to present evidence of his own additional post-arrest statements, when "what Billingsley wished to have admitted was merely explanatory of his theory of the case"). "[A] party cannot use the doctrine of completeness to circumvent Rule 803's exclusion of hearsay testimony." *United States v. Vargas*, 689 F.3d 867, 876 (7th Cir. 2012) (abrogated on other grounds).

With respect to several of the defense's proposed additions, however, the United States has no objection, as these additions are tied to statements that the United States plans to admit into evidence.

In an effort to facilitate the Court's review, the United States will attempt to follow the defendant's format.

**A.  Audio Statements in Car**

The United States plans to introduce limited excerpts from Hamzeh's statements in a vehicle with two FBI agents (Ex. 15):

2

- Page 3 (14 lines): Brief introductory remarks, for scene setting

- Page 11 (17 lines): Hamzeh states that he "just like[s] weapons," that he and his friends just want to "hav[e] fun" by "shooting range and stuff like that," and that they only illegal thing they did was buy the weapons.

- Page 15 (6 lines): Hamzeh states that they money he paid was "all the money we had."

- Page 22 (16 lines): Hamzeh states that he carried the gun to the trunk of the car, and then the FBI came.

- Page 25-26 (15 lines): Hamzeh explains how he knows his two friends.

- Page 35-36 (8 lines): Hamzeh discusses his work-out routine.

Citing the rule of completeness, Hamzeh now seeks to introduce portions of this statement that dwarf the sections the United States proposed admitting – specifically, Hamzeh seeks to introduce "page 9, line 6, through page 25" (approximately 400 lines of text, to the Government's proposed 76).[1] With respect to the audio statement (unlike the video statement, addressed below), Hamzeh does not attempt explain how his proposed excerpts "explain or qualify" any specific statements being offered by the United States. *United States v. Lewis*, 954 F.2d 1386, 1391 (7th Cir. 1992).

Indeed, the majority of the excerpt proposed by Hamzeh (pages 12-18, 20-22) simply describes the transaction in which Hamzeh acquired the machineguns, which is not an issue that Hamzeh even suggests requires clarification here. Much of the rest of

---

[1] The blue highlighting on Hamzeh's Exhibit A reflects a slightly shorter range, but Hamzeh's brief repeatedly describes the range as such.

this excerpt focuses on Hamzeh's and Mike's plans to go target shooting "up north" with the guns, which is fully consistent with the excerpt offered by the Government at page 11 (Hamzeh states that he "just like[s] weapons," that he and his friends just want to "hav[e] fun" by "shooting range and stuff like that," and that they only illegal thing they did was buy the weapons). Nothing about the excerpts offered by the Government would be "incomplete, misleading, or distorted" without the additional statements proffered by Hamzeh. *United States v. Price*, 516 F.3d 597, 605 (7th Cir. 2008).

One of Hamzeh's excerpts, however, does provide context for one of the excerpts proposed by the United States: at page 11, lines 18-23, Hamzeh explains his desire to purchase a gun illegally because it is cheaper. This statement is immediately adjacent to a statement offered by the United States, and it does provide context for a later statement (offered by the United States) in which Hamzeh explains that he paid "all the money we had" for the guns (page 15). As a result, the United States does not object to the admission of this testimony.

The remaining statements that Hamzeh seeks to add are self-serving ones in which Hamzeh generally paints Mike as the only one who knows anything about weapons (*e.g.*, page 9, 17). It is true that those statements are consistent with Hamzeh's current theory of his case. But that does not make them admissible under the rule of completeness. *See Lewis*, 641 F.3d at 785 (rule of completeness did *not* permit defendant to present evidence of his own additional post-arrest statements, when "what Billingsley wished to have admitted was merely explanatory of his theory of the case"). Instead, these statements

4

are only admissible if Hamzeh can point to a specific excerpt proffered by the United States that would be misleading or incomplete in their absence. He cannot.

**B. Video Statements in FBI Office**

With respect to the video statements, Hamzeh does provide charts that link his proposed additions to specific statements proffered by the United States. The United States will attempt to track those charts here, for the Court's convenience.

**Responses to Defense's "Statements about weapons that need to be added."**

| Ex it relates to | Pages To add | Reason |
|---|---|---|
| 16D | 3 | *Defense: This statement puts Hamzeh's statements about why he was getting the gun into context. It's not enough to put in "I told you I like weapons. That's all." And then leave out the paragraph that follows where he talks about why and what he planned to do with them.*<br><br>No objection.<br><br>This appears to also be the rationale for the blue highlighted text at page 2, and the response is the same. |
| 16E | 4:19–5:6 | *Defense: The statement is necessary so that the jury doesn't believe that the weapons were only going to his house but also to Mike.*<br><br>Response: This is a false exculpatory statement that Hamzeh wishes to admit for the truth of the matter asserted. Indeed, in this statement Hamzeh first claims that Mike will keep all the guns, and then quickly changes his story to admit that he plans to keep his own weapon in his basement. It is not necessary to understand any other statement: None of the statements offered by the Government are clarified or contextualized by this short-lived lie. |
| 16D, 16E, 16N | 20:21–22:6 | *Defense: This excerpt goes directly to how the idea for the gun developed and Mike's introduction of guns into Hamzeh's life and how it was that they decided to get these weapons, which goes to qualifying* |

5

| | | |
|---|---|---|
| | | *and giving context to Hamzeh's statements about what he planned to do with the guns and why he tried to buy this particular gun.*<br><br>Response: This is a false exculpatory statement – that, as he puts it above, "Mike's introduction of guns into Hamzeh's life" – that Hamzeh wishes to admit for the truth of the matter asserted. It is not necessary to understand the Government's proffered statements, none of which contradict or bear directly on this issue. Hamzeh's statements about liking weapons and seeking to acquire them at a low cost are not "incomplete, misleading, or distorted" without these additional statements about Mike. |
| 16D<br>16E<br>16N | 57:17–58:11 | *Defense: How he got idea to get gun from Mike. It goes to Hamzeh's statements in response to Adkins's statements about the availability of firearms and why he choose these.*<br><br>Response: Again, this is a false exculpatory statement – that, as he puts it above, "he got the idea to get gun from Mike" – that Hamzeh wishes to admit for the truth of the matter asserted. It is not necessary to understand any other statement, certainly not a statement 55 transcript pages earlier (16D), or 50 transcript pages earlier (16E). And it is not necessary context for the statement at 16N that is separated from the defendant's proposed addition by an extended bathroom break. Again, Hamzeh's statements about liking weapons and seeking to acquire them at a low cost are not "incomplete, misleading, or distorted" without these additional statements about Mike. |
| 16D<br>16E<br>16N<br>16P<br>16W | 65:3–6 | *Defense: This goes to why he wanted to get the guns and his plan. It is also the full answer to the question Hamzeh was posed in 16P, concerning going up north and where the idea originated: Mike.*<br><br>Response: No objection. |
| 16W | 114:11–17 | *Defense: The government's excerpt is simply leading (clarifying and damning) questions and the six lines that precede it show why Hamzeh would agree that he was willing to spend his "hard-earned money" on these weapons.*<br><br>Response: No objection. |

6

| **Responses to "statements about the Masons that need to be added":** | | |
|---|---|---|
| 16O<br>16Q<br>16S | 76:19–<br>78: 13;<br>79:2–<br>79:12 | *Defense: Without this information about going to see the Imam, the government is putting in only the excerpt where he says they targeted Masons because devil worship, giving a misleading impression that Hamzeh remained on board with attacking Masons and didn't express the compelling reasons he had for backing out; also it's necessary to understand why he took responsibility because it was within broader narrative about how he abandoned the plan after talking to the Imam – he took responsibility for devising and withdrawing. Imam info is also necessary to put Ex. 16S excerpt into context about if Imam said ok because it shows that Hamzeh had grave concerns and reservations about the plan that were unlikely to be overcome.*<br><br>Response: Hamzeh's characterization of his conversation with his uncle is not necessary to understand Hamzeh's statements at 16O ("HAMZEH:   We have nothing to do; like, we never planned for anything"), 16Q (stating masons believe in the devil), and 16S (saying that no one else gave him these ideas or directed him to do anything). This is a completely different hearsay statement that the defense would like to introduce as independent, substantive evidence.  The fact that he is claiming it "completes" three different statements speaks to the fact that it is not necessary to "complete" any of them. |
| 16R<br>16S<br>16U | 85:7–<br>86: 8 | *Defense: This gives context to Hamzeh's statements about what he was doing with respect to the Masons, how Hamzeh stopped it, and the conversations with the Imam.*<br><br>Response: This is a long hearsay statement that is not close in time or context to any United States exhibit. This is a completely different hearsay statement that the defense would like to introduce as independent, substantive evidence.  The fact that he is claiming it "completes" three different statements speaks to the fact that it is not necessary to "complete" any of them. |
| 16Q<br>16R<br>16S<br>16U | 88:16<br>to<br>90:13 | *Defense: This is Hamzeh explaining how he went to the Imam for guidance about the Masons and what he told him. Again, this is critical for understanding the context of Hamzeh's actions and that this was not a slight or trivial choice and his thought process. It goes directly to the partial explanation that the government wishes to introduce and qualifies the most inflammatory (and irrelevant) statement in 16S.* |

| | | |
|---|---|---|
| | | Response: No objection to this portion if it begins at 88:24. The eight preceding lines are unrelated hearsay. |
| 16S | 96:20–97:10 | *Defense: This statement is necessary, so the jury is not misled by statement about if Imam said ok. Again, this statement is objected to below.*<br><br>Response: No objection to including this statement with the United States' proposed Exhibit 16S. |
| 16Q<br>16R<br>16S<br>16U | 95, line 18 to 96 line 16 | *Defense: This goes to the statements about the Masons and the evolution of the idea. It also pertains specifically to the idea that his impetus for being against the Masons lied solely in the Quran and why he choose to talk to the Imam.*<br><br>Response: This is a long hearsay statement that is not close in time or context to any United States exhibit. This is a completely different hearsay statement that the defense would like to introduce as independent, substantive evidence. The fact that he is claiming it "completes" four different statements speaks to the fact that it is not necessary to "complete" any of them. The defense seeks to in |
| 16R<br>16U | 82:7–16; 82:22–83:8 | *Defense: Provides context to statement "all three of us" because his narrative explains that the other two influenced him and how he thought they were joking and they said man let's do this; and that he thought he rejected "group" decision. See Ex. 16R. This also puts in context to Ex. 16U about him controlling them. The entirety of Hamzeh's explanations reveal he was fooled into believing he actually made decisions.*<br><br>Response: This is a quintessential false exculpatory statement that he was just "joking" that the defense wishes to admit for the truth of the matter asserted. It is not necessary to understand the straightforward pair of questions and answers that follow. The fact that he is claiming it "completes" two different statements speaks to the fact that it is not necessary to "complete" any of them. |
| 16T | 98:12–99:1 | *Defense: This statement provides necessary context for Adkins's question that "nobody told you to do this" and Hamzeh's response that "nobody told me anything." It's clear by the paragraph that followed* |

| | | |
|---|---|---|
| | | *that he was told by someone, someone who directed him to watch these videos on YouTube.*<br><br>Response: No objection. |
| 16U | 104:15 to 106:7 | *Defense: This gives the necessary context to understand what Hamzeh meant by his statement that "they were listening to me" and "I'm always controlling them." The statement in blue shows why he says that and the underlying context to explain what he precisely meant.*<br><br>Response: This is a long hearsay statement – multiples longer than the excerpt it purportedly completes – that the defense would like to introduce as independent, substantive evidence. 16U is brief and self-contained. |

**Responses to Defense's "General Statements that need to be added"**

| Ex it relates to | Pages To add | Reason |
|---|---|---|
| 16G | 13:21-22 | *Defense: So that jury understands he wasn't actually successful in his studies.*<br><br>Response: No objection. |
| 16G | 14–15:3 | *Defense: So that jury understands he didn't complete CDL*<br><br>Response: No objection |
| 16I | 25:15–25 | *Defense: So that jury understands he didn't just stay with his aunt which would be misleading impression from page 24*<br><br>No objection. |

Hamzeh also adds blue text at Ex. B page 109. Although he does not provide an explanation in his brief, the United States does not object.

9

II.    *Hamzeh's Statements About Committing An Attack (Exhibit 16S) Must Be Admitted.*

Hamzeh has raised an entrapment defense and put to the jury the question: was Hamzeh predisposed to possess – to hold in his hands – a machinegun with a silencer attached to it? Hamzeh's willingness to commit an attack that would require machineguns and silencers bears directly on this question. The inquiry into whether he seriously wanted to commit a mass shooting is, therefore, among the most probative, important evidence in this case. Hamzeh's interest in committing an attack with a machinegun is direct evidence of his predisposition to commit the lesser included crime of possessing that machinegun.

The exchange that Hamzeh seeks to exclude bears directly on this question: Had the Imam approved, Hamzeh would have committed the attack. That is the entirety of Exhibit 16S. The United States has no objection to including some of the text the defense proposes accompany Exhibit 16S, *see supra*. But there is no legal basis to exclude this exhibit. It is plainly relevant to Hamzeh's predisposition and motive to acquire weapons. That Hamzeh is "speculating about something that didn't happen" does not undermine that relevance; Hamzeh's desires and plans (even if not brought to fruition) are central to this case. And it is not "too inflammatory for trial" in a case where Hamzeh himself has placed at issue his own predisposition and motives. *See generally Sorrells v. United States*, 287 U.S. 435, 451–52 (1932) ("[I]f the defendant seeks acquittal by reason of entrapment he cannot complain of an appropriate and searching inquiry into his own conduct and predisposition as bearing upon that issue.").

10

The statement is appropriately probative in other ways as well: It shows that Hamzeh lied earlier in his post-arrest interview when he said he was never planning to commit an attack. That lie shows consciousness of guilt. Further, the defense will claim that Hamzeh had borderline cognitive function; they plan to put that issue to the jury. The United States should be permitted to offer Hamzeh's attempts to cover up his true intention as contrary evidence. The defense also intends to put on expert testimony that Hamzeh was not serious when he discussed committing an attack. Hamzeh's post-arrest statement is highly relevant to rebut that claim.

Ultimately, Hamzeh argues that this Exhibit is "inherently offensive" because of the suggestion that an Imam might ever approve an attack. In making this argument, the defense seems to lose sight of the fact that it was *Hamzeh* who asked the Imam this question. No matter who Hamzeh asked whether his plans were permissible, it would be fair to have asked him: "how serious were you about this? Would you have done this if they had said it was okay?" Those questions, and Hamzeh's answers, are relevant, highly probative, and not unfairly prejudicial. They should be admitted.

Dated at Milwaukee, Wisconsin this 15th day of October, 2019.

Respectfully submitted,
MATTHEW D. KRUEGER
United States Attorney

By:    */s/ Benjamin Taibleson*

Benjamin Taibleson
Adam Ptashkin
Assistant United States Attorneys
United States Attorney's Office
Eastern District of Wisconsin

11

517 East Wisconsin Avenue
Milwaukee, Wisconsin 53202
(414) 297-1700
benjamin.taibleson@usdoj.gov
adam.ptashkin@usdoj.gov