UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

                Plaintiff,

     v.                                     Case No. 16-cr-21-pp

SAMY MOHAMMED HAMZEH,

                Defendant.

**CRIMINAL TRIAL MATERIALS RELATING TO JURY *VOIR DIRE*,
JURY SELECTION, AND PRELIMINARY INSTRUCTIONS**

Honorable Pamela Pepper
October 21, 2019

October 17, 2019 DRAFT

1

## I. PRELIMINARY MATTERS:

### A. Introduction

Welcome to the federal courthouse, and to Room 222. My name is Pam Pepper, and I'm a district court judge. Today, we begin a criminal trial in United States v. Hamzeh, Case No. 16-cr-21. To my right is **Kris Wrobel**, my courtroom deputy, who'll be helping me during the trial. To my left is Sue Armbruster/Tom Malkiewicz, one of our court reporters. Tom/Sue also will be working with us during the trial. You've also met our courtroom security officer, **Ed Graham**. We hope to complete jury selection this morning. If, during the process, you need to use the restroom, or need water, **Mr. Graham** will be happy to help you with any issues you may have.

### B. Jury Selection Process

We begin the trial by selecting a jury. For this trial, we'll be selecting **14** jurors. There are several steps to the jury selection process.

In the first part of the jury selection process (called the *voir dire*), I will ask you questions. Your answers to these questions will allow the parties to get to know you, and to determine whether any of you have had experiences or feelings that might interfere with your ability to be fair and impartial in this case.

This is a criminal case. Each party in a criminal case has a right to a fair, impartial and unbiased jury. The jury selection process is designed to preserve and ensure that right. Each of us, because of our experiences,

2

background, education, and relationships with others, has developed certain attitudes, opinions, philosophies, biases, sympathies and prejudices. No two of us think alike.

What we do, where we work, where we live, all tell something about who we are. I'm going to ask you questions about those things. The reason that we ask those questions is so that the parties and their attorneys may decide whether they believe there is anything about you or your background or experience that might influence you in the case.

In this country, we all have the right to believe whatever we like and to make decisions as we see fit. Outside of this courthouse, you can make decisions and judge people on any basis you choose—opinions about wealth, occupation, political party, religious affiliation, hair color, race, size, sex, national origin—whatever you think is important. As a human being, I have deeply-held opinions, and I suspect you have them, too. But I have taken an oath that says that as a judge, I will, to the very best of my ability, put my private views aside and decide cases on the facts and the law, and not on my personal views or biases.

If you are selected as a juror in this case, you must take an oath to do the same. The question that the parties and I must answer in jury selection is whether any of you have particular biases, such that you should not sit on the jury in this particular case. That is what we are trying to find out. So through your answers to my questions, the lawyers and I get to know you a little bit, so

3

that we can determine whether we believe you can be fair and impartial in this case. And you need to know a little about the case, so that you can make your own judgment about whether you should sit as a juror in it. As I tell you what I believe the case is about, I ask that you think about whether you feel there is any reason that you should not serve on this jury.

Many, if not all of us, have biases that we do not even recognize—"implicit biases." We are influenced by information without even realizing it. It is hard to recognize these biases, and to set them aside. But it helps to be aware that, while I do not believe that I am biased against a person of a particular gender or race, I may unknowingly be influenced by those factors. Being aware helps us guard against making decisions based on implicit bias. I ask you to be aware, throughout this trial, that you may be influenced by implicit, or unconscious biases, and try to set those biases aside. [The court highlights this language because the defense asks the court to repeat this language in the opening instructions. Is defense counsel suggesting the court state this *twice* at the beginning of trial?]

The second part of the jury selection process is the challenges for cause. That means that either of the lawyers can ask me to excuse a potential juror from service because the lawyer believes juror cannot or will not be fair and impartial in deciding the facts and applying the law in this case. A lawyer who wants to challenge a juror for cause will provide me with the reasons that he or she believes that particular juror can't be fair and impartial. I, myself, may

4

suggest excusing a juror, if I believe the juror's answers show that he or she cannot be fair and impartial to both parties.

The third part of the process involves what are called peremptory challenges. Each side gets a certain number of peremptory challenges. When a party makes a "peremptory" challenge to a juror, that means the lawyer does not have to state a reason for the challenge. The law allows parties to use peremptory challenges to excuse jurors, not only to insure that there will in fact be a fair jury, but also to insure that each side *believes* that the jury is a fair jury. The lawyers will make their challenges, and discuss them with me, outside your hearing.

Please don't feel insulted, or upset, if you are excused from service. As I indicated, each of us has certain attitudes, opinions, biases, etc. Each of us would find it hard to be fair in a particular kind of case. Even if I excuse you in this case, you may be perfectly qualified to sit on another case. On the other hand, even if you end up on the jury in this case, you may be excused from service in some future case.

Now—for your general information, the name of this case is <u>United States of America v. Hamzeh</u>. As I said before, this is a criminal case. The party who brought the lawsuit—the plaintiff—is the United States. The defendant is Samy Hamzeh. The case arose out of an indictment. An indictment is a formal document used by the government to start a criminal case, and to bring that case to court. The indictment also advises and informs a defendant of the

nature of the crime the government alleges that he committed. An indictment is *not* evidence against the defendant, and the fact that an indictment exists does not give rise to an inference of the defendant's guilt.

This indictment contains three allegations, or counts. Those counts allege that on or about January 25, 2016, in the State and Eastern District of Wisconsin, **Samy Hamzeh** knowingly received and possessed two machineguns—one of which was an H&K MP-5 SD 9mm machinegun, the other which was an H&K MP-5 10mm machinegun—and an H&K silencer, none of which were registered to him in the National Firearms Registration and Transfer Record, in violation of Title 26, United States Code, Section 5861(d).

**Mr. Hamzeh** has pled not guilty to these charges. Because he has pled not guilty, the jury selected to try this case must find the relevant facts, and determine whether those facts prove that he is guilty of any of the charges in the indictment. In a criminal case, the government has the burden to prove that the defendant is guilty, and the government must prove the defendant's guilt beyond a reasonable doubt.

I'm going to start by asking **Ms. Wrobel**, to administer an oath to you, in which you promise to answer the questions I ask you truthfully. Your obligation to answer truthfully is a powerful one. At this point, the lawyers know little about you, and your answers to my questions help us determine whether you are qualified to serve as a fair juror in this case. It is critical that you answer candidly and completely, because your answers bear on the

parties' right to a fair trial. If you would prefer to answer any question outside the hearing of your fellow jury panel members, please let me know, and you can give your answer to the lawyers and me privately at sidebar.

[**Ms. Wrobel** administers the oath.]

## II. VOIR DIRE

A. The parties and I understand that jury service disrupts your usual routine, and is inconvenient to many of you. But it is a service that our government asks of us as citizens, and it is critical to a fair and just legal system. There are peIople who feel they are too busy, or are sick, or have moral or religious objections to serving, regardless of what the case is about, or who the parties are. Those are not necessarily reasons for me or the parties to excuse a juror, but it is important that the parties know if you are not willing to serve.

Is there anyone here who believes that he or she should not be on the jury no matter what the case is about, or who the parties or witnesses are?

B. Before I start asking you questions about your qualifications to serve as jurors, I'll ask each of you to stand and provide a little background information about yourself. You see that we have several questions on the screens in the courtroom—you can refer to the screens as a reminder of the information I ask each of you to provide. That information includes:

1. Your juror number—not your name;

2. Your age;

3. The community or neighborhood where you live (not your street address), and if you've lived there less than ten years, any other places you've lived during that time;

4. Your marital status;

5. Your occupation, as well as that of your spouse or significant other, if you have one. If you're retired, share with us what you did before you retired; and

6. Your educational background—how far you went in school.

C. **Mr. Ptashkin/Mr. Taibleson**, could you please introduce yourselves and any representative seated with you at counsel table. Does anyone here know Mr. Ptashkin? Mr. Taibleson? **[Representative]**? Does anyone know anyone employed at the United States Attorney's Office? At the [representative's agency—FBI?]

D. **Mr. Albee/Mr. Bugni**, could you please introduce yourselves, tell us where you work, and introduce your client? Does anyone know Mr. Albee? Mr. Bugni? Does anyone know **Samy Hamzeh**?

E. Do any of you know any of the other members of the jury panel here in the courtroom today?

F. Mr. Ptashkin/Mr. Taibleson, could you tell the jurors the names of the witnesses you may possibly call in the case and their employers? Does anyone know any of these individuals?

G.     Mr. Albee/Mr. Bugni, could you tell us the names of witnesses you may possibly call in this case? Does anyone know any of these individuals?

H.     Have any of you ever served on a grand jury, either in federal or state court? If so, when and for how long? Was there anything about that experience that would make it difficult for you to serve as a juror at a trial?

I.     Has anyone ever served on a jury before—either in state or federal court?

    1.     Was it a criminal case or a civil case?

    2.     Were you the foreperson?

    3.     Did the jury reach a verdict?

    4.     Is there anything about that experience that would make it difficult for you to be fair and impartial in this case?

[**The court includes the highlighted questions in its standard *voir dire*. If the parties think any are unnecessary, we can remove them.**]

J.     Has anyone ever been a party to a lawsuit—in other words, have you ever sued anyone, or had someone sue you? If so, please tell us what kind of lawsuit it was, and how long ago it took place. Was there anything about that experience that would make it difficult for you to be fair in this case?

K.     Have any of you ever been a witness, or an expert witness, in any kind of proceeding where you testified under oath (including a deposition)? If so, please tell us about that experience.

L.      Is there anyone who, because of particular feelings about our judicial system—including judges and lawyers—would not be able to serve as a fair and impartial juror in the case?

M.      Is there anyone who has strong feelings about the federal government—including government agencies like the U.S. Attorney's Office or the F.B.I.—that might affect your ability to listen fairly and impartially to the evidence in this case, and to render a verdict in accordance with that evidence and with the law that I provide you?

N.      Do you have any relatives or close friends who are lawyers? What is your relationship with that person, and what kind of law do they practice? Do they talk to you about their work? Is there anything about your relationship with that person which would make it difficult for you to be fair and impartial in this case?

O.      Do you have any relatives or close friends who work in law firms or legal offices—perhaps as paralegals, administrative assistants, investigators? Who are they, and what kind of work do they do? Do they talk to you about their work? Is there anything about your relationship with that person, or anything they've told you, that would make it difficult for you to be fair and impartial in this case?

P.      Have you, or any close family member or friend, ever been employed in the court system, either municipal, state or federal? If so, please describe the job.

Q.     Have any of you, a close family member or a close friend ever had any experience with federal, state or local government that might affect your ability to be fair and impartial in this case?

R.     Is there anyone who has strong feelings about the police or law enforcement—positive or negative—that might affect your ability to serve as a fair and impartial juror in a case involving investigation or testimony by law enforcement officers?

S.     Is there anyone who would find it difficult to assess the testimony or credibility of a law enforcement officer the same way you would assess the testimony or credibility of any other witness?

T.     Have you, a close family member or a close friend ever been arrested? [Follow-ups: How long ago? What law enforcement agency? Anything about that experience that would make it difficult for you to be fair in this case?]

U.     Have you, or any close family members or friends been convicted of a crime? [Follow-ups: State or federal court? Anything about that experience that would make it difficult for you to be fair in this criminal case?]

V.     Have you, or any close family members or friends, ever been the victim of a crime? [Follow-ups: Who was the victim? Anything about that experience that would make it difficult for you to be fair in this case?]

W.     Have any of you, or any close family members or friends, been a witness to a crime? [Follow ups, if necessary.]

11

X. Have any of you, or any close family members or friends, ever had a direct interest in the outcome of a criminal case? [Follow-ups, if necessary.]

**FOLLOW-UP ON QUESTIONNAIRES:**

Questionnaire 11: Follow up with military—what branch, what rank, honorable discharge?

Questionnaire 13: Follow up on any people who've received training?

Questionnaire 25-29: Follow up with anyone left who expressed concerns about Muslims, people of Arab descent, or racial stereotyping/bias.

Questionnaire 31-38: Follow up with people who've heard about the case or heard others talk about the case.

Questionnaire 42: Follow up with any people left who have issues regarding sitting on the jury.

Questionnaire 42: Follow up with anyone left who says they are leaning one way or the other.

Questionnaire 43-44: Follow up with anyone left who answered these general questions.

Y. Do any of you have any moral or philosophical objections to sitting in judgment of another person or entity?

Z. At both the beginning and the end of the trial, I am going to give you instructions on the law that governs this case. Is there anyone who is unable to follow that law, and those instructions, even if you do not agree with them?

12

AA.   Is there anyone who, if you were selected to serve as a juror, would not be able to render a verdict based on the evidence (which consists of the testimony of the witnesses and the exhibits that I admit at trial) and on the law that I will provide you?

BB.   Is there anyone who would like to tell me or the parties anything outside the hearing of the other jurors that might impact your ability to be a fair and impartial juror to both the government and the defendant in this case?

CC.   Is there anything about this case that reminds you of something in your own life? Is there anything about that similarity that would make it hard for you to be fair to both the government and the defendant in this case?

DD.   Do any of you have any reason at all—perhaps something I haven't asked you about—why you could not sit as a fair and impartial juror in this case?

EE.   Here's my final question: If you were the government, or the defendant, in this case, is there any reason that you would not want someone with your views or frame of mind sitting on your jury?

III.   **POST-VOIR DIRE PROCEDURE**

A.   The court consults with the lawyers and excludes from consideration any jurors challenged for cause.

B.   The government has six (6) peremptory challenges and the defendant has ten (10) peremptory challenges. Fed. R. Crim. P. 24(b)(2). **14** jurors will serve. From the first or last 28 remaining jurors, the parties will

13

make their peremptory strikes by alternating—the government will start with one strike, and the defense will make two, for the first four rounds. In the last two rounds, each side will make one strike. This should result in twelve (12) remaining jurors.

C.   Once the lawyers have exercised their peremptory strikes and selected twelve (12) jurors, each side will exercise one (1) additional strike out of the next four (4) jurors. The two (2) remaining jurors will be the alternates.

D.   The court gets the final list. If, for any reason, either side has not exercised all its strikes, the court will eliminate the appropriate number of juror's names from the bottom of the list.

E.   The court hands the list back to **Ms. Wrobel**, who reads the numbers of the jurors and the alternates (not distinguishing between them). The court then instructs the *venire* as follows:

1.   If **Ms. Wrobel** called your number and you are in the jury box, please remain seated.

2.   If **Ms. Wrobel** called your number and you are in the back of the room, please move into the jury box.

3.   If **Ms. Wrobel** did not call your number at all, please move to the back of the room and stay there until I excuse you.

F.   The jurors get settled. **Ms. Wrobel** calls the roll of the jurors' numbers, and asks each to respond with "here" and to raise his or his hand.

G.   **Ms. Wrobel** administers the oath to the jury. The balance of the *venire* are excused or instructed to report elsewhere.

14

H.     The court thanks the jury panel for their time and cooperation.

IV.    **PRELIMINARY INSTRUCTIONS:**

A.     FUNCTIONS OF COURT AND JURY (7th Cir. Pattern 10.01)

Ladies and gentlemen: You are now the jury in this case. I would like to take a few minutes to describe your duties as jurors and to give you instructions concerning the case.

As the judge in this case, one of my duties is to decide all question of law and procedure. In these preliminary instructions, during the trial, and at the end of the trial, I will instruct you on the rules of law that you must follow in making your decision. The instructions I give you at the end of the trial will be more detailed than the instructions I am giving you now, and I will give you a copy of the detailed end-of-trial instructions before you begin your deliberations.

You have two duties as jurors. Your first duty is to decide the facts from the evidence that you see and hear in court. Your second duty is to take the law as I give it to you, apply it to the facts, and decide if the government has proved the defendant guilty beyond a reasonable doubt. [Government bears the burden of proving beyond a reasonable doubt that the defendant was predisposed to commit the criminal acts prior to first being approached by government agents, or to prove that the government did not induce the defendant to commit the criminal acts. Mayfield, 771 F.3d at 439. The court proposes leaving the highlighted language out in opening instructions.]

You must perform these duties fairly and impartially. Do not sympathy, prejudice, fear, or public opinion influence you. In addition, do not let any person's race, color, religion, national ancestry, or gender influence you.

You should not take anything I say or do during the trial as indicating what I think of the evidence or what I think your verdict should be.

B.    THE CHARGES (7th Cir. Pattern 10.02)

The charges against the defendant are in a document called an indictment. You will have a copy of the indictment during your deliberations.

The indictment in this case charges that the defendant committed the crimes of knowingly receiving and possessing two machineguns and a silencer that were not registered to him in the National Firearms Registration and Transfer Record, in violation of Title 26, United States Code, §5861(d). The defendant has pled not guilty to the charges.

The indictment is simply the formal way of telling the defendant what crimes he is accused of committing. It is not evidence that the defendant is guilty. It does not even raise a suspicion of guilt.

C.    OPENING STATEMENTS

When I have completed these opening instructions, the government may make an opening statement. After that, the defense may do so. But neither party is required to make an opening statement. If the lawyers do make opening statements, what they say in those statements is not evidence. The

statements are introductions—road maps—to the evidence the parties intend to produce.

D.    EVIDENCE

Evidence is:

    1.    Testimony of witnesses given in the court, both on direct and cross-examination, regardless of who called the witness;

    2.    Exhibits that I admit into the trial record; and

    3.    Any facts to which the parties agreed or stipulated, or which I have directed you to find.

Anything you may have seen or heard outside the courtroom is not evidence. You must decide the case solely on the evidence offered and received at trial.

E.    ORDER OF PROOF

Normally, the government presents its witnesses and exhibits supporting its case first, but sometimes we make exceptions to accommodate a witness.  If that happens in this case, I will alert you that a witness is testifying out of order.  After the government presents its case, the defendant may—but is not required to—present witnesses or present any evidence. If the defendant presents evidence, the government then may offer additional evidence to rebut the defendant's case. The party or lawyer who called the witness to testify first asks that witness questions, and then the opposing party may cross-examine that witness.

17

F. TESTIMONY PRESENTED THROUGH INTERPRETER (7th Cir. Pattern 10.05)

Languages other than English, and specifically Arabic, may be used during the trial. When that happens, you should consider only the evidence provided through the official interpreter. Although some of you may know Arabic, it is important for all jurors to consider the same evidence. For this reason, you must base your decision on the evidence presented in the English translation.

G. OBJECTIONS

At times during trial, one of the lawyers may object to another lawyer's effort to introduce evidence. That is okay—it is part of a lawyer's job to object if the lawyer believes I should not admit the evidence. I don't allow the lawyers to argue about objections to evidence in your presence. I'll base my ruling on objections solely on the law, which is why you, as jurors, are not involved in that process. You must not infer from any ruling that I make or from anything that I say during the trial that I hold any views for or against either party.

During the trial, I will sustain objections to questions, which means I won't allow the witness to answer, or if the witness already has answered, I will instruct you that you must disregard the answer and dismiss it from your minds. You should not draw any inference from an unanswered question, and you may not consider that testimony in reaching your decision. This is because

the law requires that you make your decision solely upon the competent evidence before you.

H. CREDIBILITY OF WITNESSES (7th Cir. Pattern 10.08)

Part of your job as jurors will be to decide how believable each witness was, and how much weight to give each witness' testimony. I will give you additional instructions about this at the end of the trial.

I. NUMBER OF WITNESSES (7th Cir. Pattern 10.09)

Do not make any decisions by simply counting the number of witnesses who testified about a certain point. What is important is how believable the witnesses were and how much weight you think their testimony deserves.

J. RULES FOR CRIMINAL CASES

As I've indicated before, this is a criminal case. There are three critical rules you must follow in a criminal case.

First, you must presume that the defendant is innocent of each charge unless, and until, the government proves that he is guilty of that charge. The defendant begins the trial with a clean slate. Earlier I mentioned that the defendant has been charged in an indictment; an indictment is the formal document that brings a criminal case into federal court. It contains allegations. It is not evidence or proof of the defendant's guilt or anything else. You must presume the defendant innocent of the charges in the indictment unless and until the government proves her guilty of them.

Second, the burden of proof remains with the government throughout the trial; it never shifts to the defendant. In other words, a defendant does not have the burden to prove his/her innocence, or to present any evidence or to testify on his/her own behalf. In fact, because the defendant has the absolute right to remain silent, the law prohibits you from considering the fact that the defendant may not have testified in arriving at your verdict.

Third, the government must prove the defendant's guilt as to each charge beyond a reasonable doubt.

K.     CONDUCT DURING TRIAL

As far as your own conduct during the trial, I must caution you that you may not discuss this case, either among yourselves or with anyone else, during the trial. In fairness to the parties, you must keep an open mind throughout the trial, reaching your conclusion only during final deliberations after all the evidence is in, and you have heard the attorneys' closing arguments and my instructions on the law. Only then will you then be in a position to intelligently and fairly exchange your views with the other jurors in trying to reach a decision.

It is a normal human tendency to talk with people with whom you come into contact each day about what is going on in your life. I appreciate that it is tempting when you go home in the evening to discuss this case with your spouse or significant other, or other members of your household, or friends. Do not give in to this temptation. Do not let any third person to discuss this case

in your presence. If anyone tries to talk to you about the case, despite you telling them not to, you should report that fact to me, through **Mr. Graham**, as soon as you are able.

Also, during the time you serve on this jury, do not speak, whether in or out of the courtroom, with any of the parties, their lawyers or any witnesses. I don't just mean that you cannot talk to them about the case; you may not speak to them at all, even to pass the time of day. They won't talk to you, either—if they see you in a hallway or on the sidewalk, they will not greet you or acknowledge you. They are not being rude. They are following my instructions, just like you must follow them, to insure the absolute impartiality they are entitled to expect from you as jurors.

Because you will be deciding this case solely on the evidence received along with my instructions on the law, you must not make any independent investigation of the facts or the law.

This means, for example, you must not read or listen to media accounts, including anything on social media. You may not visit a location you hear about during the testimony, or conduct experiments. You may not Google or otherwise look up things you've heard about at the trial online, or research anything you've heard about in books or magazines or other resources.

L.    CLOSING ARGUMENTS

After the parties have introduced all the evidence and both parties have rested (or finished their cases), the parties will have an opportunity to present

you with closing arguments, or summations. I will talk more about the function of a closing argument after you've heard all the evidence. For now, I will tell you that while the closing arguments are very important, they are not evidence, and you are not bound by them. The function of a closing argument is to give the parties the opportunity to explain their view of the evidence, and to tell you what conclusions they believe you should draw from the evidence.

After the lawyers finish their closing arguments, I will instruct you on the rules of law applicable to the case, and you then you will go back to the jury room to deliberate. Your function as jurors is to determine what the facts are, and to apply the rules of law I give you to the facts. The conclusion you reach will be your verdict. You will determine what the facts are from all the testimony that you hear and from the exhibits that I admitted into evidence. You are the sole and exclusive judges of all the facts—not me, not the lawyers, not anyone else. I will make every effort to preside impartially during this trial and not to express any opinion concerning the facts. If, from something I say or do, you believe that I have expressed an opinion, you must disregard it. Any views I may have on the facts are completely irrelevant.

I do caution you that under your oath as jurors, you are duty bound to accept the rules of law that I give you, whether you agree with them or not. As the sole judges of the facts in this case, you must determine which of the witnesses you believe, what portion of their testimony you accept, and what weight you attach to it.

M.    TAKING NOTES

I've already introduced Sue Armbruster and Tom Malkiewicz, our official court reporters, who will be making a record of the trial. They will not, however, type up a transcript of each day's testimony; you will not have transcripts available to refer to when you are deciding the case.

If you would like to, you may take notes to help you remember what witnesses said. If you do take notes, please keep them to yourself until you and your fellow jurors go to the jury room to decide the case. Do not let note-taking distract you so that you do not hear other answers by witnesses. When you leave the courtroom during breaks, you will leave your notebooks on your chairs; **Mr. Graham** will make sure they are there for you when we resume.

Notes are not entitled to any greater weight than the memory or impression of each juror as to what the testimony may have been. Whether you take notes or not, each of you must form and express your own opinion as to the facts of the case.

If you do not take notes, you should rely upon your own memory of what was said and not be overly influenced by the notes of other jurors.

V.    **OTHER MATTERS:**

Before the lawyers present their opening arguments, there are a few matters that I would like to discuss with you:

A.    Hours;

B.    Promptness;

C.   Publicity (avoid the internet, media coverage);

D.   Court facilities (jury room, washroom, and corridors);

E.   Smokers/Outside breaks for non-smokers;

F.   No cafeteria—will need to leave for lunch each day, or bring with;

G.   Cannot come back into courtroom without **Mr. Graham** from this point forward;

I.   If necessary to communicate with me, do so through **Mr. Graham**.

**COURT'S NOTE:**

The defense asked the court to include the following in the preliminary instructions:

"You are here to determine whether **Mr. Hamzeh** is guilty or not guilty of the specific charge in the indictment. **Mr. Hamzeh** is not on trial for any act or any conduct not specifically charged in the indictment. **Mr. Hamzeh** also is not on trial for any opinions or beliefs, whether religious, political or otherwise, that he may have expressed orally or in writing. As all Americans do, **Mr. Hamzeh** has a constitutional right to think, read, and express opinions as he wishes. The First Amendment guarantees the rights to freedom of speech, freedom of press, freedom of religion, and freedom of association to all persons in the United States."

The court will not include this statement in the preliminary instructions. Counsel is free to make these arguments in opening, and if events at trial

indicate that there is a need for a similar instruction at the trial's end, the court will consider that at the jury instruction conference.

