# United States District Court
## Eastern District of Wisconsin (Milwaukee)
## CRIMINAL DOCKET FOR CASE #: <u>2:16−cr−00021−PP−WED</u>−1

Case title: USA v. Hamzeh
Magistrate judge case number: 2:16−mj−00025−DEJ

Date Filed: 02/09/2016

Assigned to: Judge Pamela Pepper
Referred to: Magistrate Judge
William E Duffin

**<u>Defendant (1)</u>**

| | | |
|---|---|---|
| **Samy Mohammed Hamzeh**<br>*also known as*<br>Samy Mohamed Hamzeh | represented by | **Craig W Albee**<br>Federal Defender Services of Wisconsin Inc<br>517 E Wisconsin Ave − Rm 182<br>Milwaukee, WI 53202<br>414−221−9900<br>Fax: 414−221−9901<br>Email: craig_albee@fd.org<br>*ATTORNEY TO BE NOTICED*<br>*Designation: Federal Public Defender* |
| | | **Gabriela A Leija**<br>Federal Defender Services of Wisconsin Inc<br>517 E Wisconsin Ave − Rm 182<br>Milwaukee, WI 53202<br>414−221−9900<br>Fax: 414−221−9901<br>Email: gabriela_leija@fd.org<br>*ATTORNEY TO BE NOTICED*<br>*Designation: Federal Public Defender* |
| | | **Joseph A Bugni**<br>Federal Defender Services of Wisconsin Inc<br>22 E Mifflin St − Ste 1000<br>Madison, WI 53703<br>608−260−9900<br>Fax: 608−260−9901<br>Email: joseph_bugni@fd.org<br>*ATTORNEY TO BE NOTICED*<br>*Designation: Federal Public Defender* |

| **<u>Pending Counts</u>** | **<u>Disposition</u>** |
|---|---|
| 26:5861(d) − UNLAWFUL TO<br>RECEIVE A FIREARM NOT | |

REGISTERED
(1–3)

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

**Highest Offense Level
(Terminated)**

None

| **Complaints** | **Disposition** |
|---|---|
| 18:922O.F – Unlawfully possessing a machine gun | |

---

**Plaintiff**

| **USA** | represented by | **Adam H Ptashkin** |
|---|---|---|

United States Department of Justice
(ED–WI)
Office of the US Attorney
517 E Wisconsin Ave – Rm 530
Milwaukee, WI 53202
414–297–1700
Fax: 414–297–1738
Email: adam.ptashkin@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

**Jennifer Burke**
United States Department of Justice (DC)
Civil Rights Division
950 Pennsylvania Ave NW – Rm 4017
Washington, DC 20530
202–353–0023
Fax: 202–514–0849
Email: Jennifer.Burke@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

**Paul L Kanter**
United States Department of Justice
(ED–WI)

Office of the US Attorney
517 E Wisconsin Ave – Rm 530
Milwaukee, WI 53202
414−297−1700
Fax: 414−297−1738
Email: paul.kanter@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

**Benjamin P Taibleson**
United States Department of Justice
(ED−WI)
Office of the US Attorney
517 E Wisconsin Ave – Rm 530
Milwaukee, WI 53202
414−297−1727
Fax: 414−297−1738
Email: benjamin.taibleson@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

**Gregory J Haanstad**
United States Department of Justice
(ED−WI)
Office of the US Attorney
517 E Wisconsin Ave – Rm 530
Milwaukee, WI 53202
414−297−1700
Fax: 414−297−1738
Email: greg.haanstad@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 01/26/2016 | 1 | | COMPLAINT signed by Magistrate Judge David E Jones as to Samy Mohamed Hamzeh (1). (kah) [2:16−mj−00025−DEJ] |
| 01/26/2016 | 2 | | Minute Entry for proceedings held before Magistrate Judge David E Jones: Initial Appearance as to Samy Mohamed Hamzeh held on 1/26/2016. Govt seeking detention. Deft is ordered DETAINED w/option to readdress. Preliminary Hearing/A&P set for 2/9/2016 02:30 PM in Courtroom 254, 517 E. Wisconsin Ave., Milwaukee, WI 53202 before Magistrate Judge David E Jones. (Tape #2:17:00−2:44:20) (kah) [2:16−mj−00025−DEJ] (Entered: 01/27/2016) |
| 01/27/2016 | 3 | | NOTICE OF ATTORNEY APPEARANCE: Craig W Albee appearing for Samy Mohamed Hamzeh (Albee, Craig) [2:16−mj−00025−DEJ] |
| 01/28/2016 | 4 | | Warrant Returned Executed on 1/25/16 as to Samy Mohamed Hamzeh. (kah) [2:16−mj−00025−DEJ] |

| | | | |
|---|---|---|---|
| 01/28/2016 | 5 | | ORDER OF DETENTION Pending Trial as to Samy Mohamed Hamzeh. Signed by Magistrate Judge David E Jones on 1/28/16. (cc: all counsel) (kmf) [2:16–mj–00025–DEJ] |
| 02/09/2016 | 6 | | INDICTMENT as to Samy Mohamed Hamzeh (1) counts 1–3. (Attachments: # 1 Information Sheet) (kmf) |
| 02/09/2016 | 7 | | Minute Entry for proceedings held before Magistrate Judge David E Jones: Arraignment and Plea hrg. held on 2/9/16 as to Samy Mohammed Hamzeh (1). Defendant advised of rights, charges, penalties and fines. Not Guilty plea entered by deft. Case referred to Magistrate Judge Willaim E. Duffin for pretrial purposes. Crt. designates case as complex. A Status Conference, for counsel only, set for 3/29/2016 at 10:00 AM before Magistrate Judge William E Duffin. Court orders GJ materials disclosed no later than 1 business day prior to trial. Crt. makes a finding under the Speedy Trial Act. The period of time from today until 3/29/16 is deemed excludable. Detention continued as previously set. (Tape #2:30:47–2:49:08) (kmf) (Entered: 02/10/2016) |
| 03/29/2016 | 8 | | Minute Entry for Status Conference held on 3/29/2016 before Magistrate Judge William E Duffin as to Samy Mohammed Hamzeh. Court discusses with counsel the status of discovery. Status Conference (**COUNSEL ONLY**) set for 5/13/2016 10:00 AM in Courtroom 242, 517 E Wisconsin Ave., Milwaukee, WI 53202 before Magistrate Judge William E Duffin. Court makes a Speedy Trial finding. The time from today until 5/13/2016 is excluded under the Speedy Trial Act. (Tape #10:01:23 – 10:09:53) (mlm) |
| 03/30/2016 | 9 | | MOTION for Protective Order by USA as toSamy Mohammed Hamzeh. (Attachments: # 1 Text of Proposed Order)(Kanter, Paul) |
| 03/31/2016 | 10 | | ORDER signed by Magistrate Judge William E Duffin on 3/31/16 granting 9 Motion for Protective Order as to Samy Mohammed Hamzeh (1). (cc: all counsel) (mlm) |
| 05/13/2016 | 11 | | Minute Entry for Status Conference as to Samy Mohammed Hamzeh held on 5/13/2016, before Magistrate Judge William E Duffin. Court discusses with the parties the availability of translated transcripts. Court makes speedy trial finding. Status Conference (Counsel Only) set for 6/28/2016 at 10:00 AM in Courtroom 242, 517 E Wisconsin Ave., Milwaukee, WI 53202 before Magistrate Judge William E Duffin. (Tape #10:01:30–10:19:16) (asc) |
| 06/28/2016 | 12 | | Minute Entry for Status Conference held on 6/28/2016 before Magistrate Judge William E Duffin as to Samy Mohammed Hamzeh. Court discusses with the parties the status of discovery. Court makes a speedy trial finding. Status Conference (COUNSEL ONLY) set for 8/26/2016 10:00 AM in Courtroom 242, 517 E Wisconsin Ave., Milwaukee, WI 53202 before Magistrate Judge William E Duffin. Excludable started 6/28/16 – 8/26/16. (Tape #10:07:02 – 10:17:04) (mlm) (mlm). (Entered: 06/29/2016) |
| 08/15/2016 | 13 | | NOTICE OF ATTORNEY APPEARANCE: Joseph A Bugni appearing for Samy Mohammed Hamzeh (Bugni, Joseph) |
| 08/23/2016 | 14 | | Unopposed MOTION to Produce *Defendant for Hearing* by Samy Mohammed Hamzeh.(Albee, Craig) |
| 08/24/2016 | 15 | | |

| | | |
|---|---|---|
| | | ORDER signed by Magistrate Judge William E Duffin on 8/24/16 as to Samy Mohammed Hamzeh (1). IT IS THEREFORE ORDERED that the United States Marshals Service shall produce Mr. Hamzeh for the status conference on Friday, August 26, 2016, at 10:00 a.m. (cc: all counsel) (mlm) |
| 08/26/2016 | 16 | Minute Entry for Status/Scheduling Conference held on 8/26/2016 before Magistrate Judge William E Duffin as to Samy Mohammed Hamzeh. Court discusses with counsel the status of discovery. Status/Scheduling Conference (COUNSEL ONLY) set for 10/28/2016 11:00 AM in Courtroom 242, 517 E Wisconsin Ave., Milwaukee, WI 53202 before Magistrate Judge William E Duffin. Court makes a Speedy Trial finding. The time from today until 10/28/2016 is excluded under the Speedy Trial Act. (Tape #10:00:42 – 10:09:39) (mlm) |
| 10/26/2016 | 17 | MOTION for Hearing : *Pretrial Conference Pursuant to the Classified Information Procedures Act and Supporting Memorandum of Law* by USA as toSamy Mohammed Hamzeh.(Kanter, Paul) |
| 10/26/2016 | 18 | NOTICE OF ATTORNEY APPEARANCE: Paul L Kanter appearing for USA *(Co−Counsel Attorneys − Kiersten Korczynski and Alicia Cook)* (Kanter, Paul) |
| 10/28/2016 | | Set/Reset Hearings. (mlm) (Entered: 11/01/2016) |
| 10/28/2016 | 19 | Minute Entry for Scheduling Conference held on 10/28/2016 before Magistrate Judge William E Duffin. Court discusses with the parties the status of discovery. Motions due by 1/10/2017; Responses due by 2/7/2017; Replies due by 2/17/2017. Court grants the govt's motion for a pretrial conference and addresses that motion pursuant to Section 2 of CIPA in court today. The govt's CIPA Section 4 Motion is due 12/1/2016. Court makes a speedy trial finding. The time from 10/28/2016 until 1/10/2017 is excluded under the STA. (Tape #11:03:28 – 11:16:02.) (mlm) (Entered: 11/01/2016) |
| 12/01/2016 | 21 | MOTION FOR AN ORDER PURSUANT TO SECTION 4 OF THE CLASSIFIED INFORMATION PROCEDURES ACT AND RULE 16(d)(1) OF THE FEDERAL RULES OF CRIMINAL PROCEDURE by USA as toSamy Mohammed Hamzeh.(Kanter, Paul) |
| 12/21/2016 | 22 | PROTECTIVE ORDER signed by Magistrate Judge William E Duffin on 12/21/16 granting the government's 21 Motion for an Order Pursuant to Section 4 of the Classified Information Procedures Act and Rule 16(d)(1) of the Federal Rules of Criminal Procedure as to Samy Mohammed Hamzeh (1). (cc: all counsel) (mlm) |
| 01/04/2017 | 23 | First MOTION for Extension of Time to File *Pretrial motions* by Samy Mohammed Hamzeh.(Bugni, Joseph) |
| 01/05/2017 | 24 | ORDER signed by Magistrate Judge William E Duffin on 1/5/17. The defendant's Motion for Extension of Time to File Pretrial Motions (ECF No. 23 ) as to Samy Mohammed Hamzeh (1) is GRANTED. All pretrial motions are due no later than 2/24/2017. Responses are due no later than 3/24/2017. And any replies are due no later than 4/7/2017. The court makes a speedy trial finding. The period from 1/10/2017 until 2/24/17 is excluded under the Speedy Trial Act. (cc: all counsel) (mlm) |

| 02/24/2017 | 25 | | Unopposed MOTION for Extension of Time to File *Additional Pretrial Motion* by Samy Mohammed Hamzeh.(Bugni, Joseph) |
|---|---|---|---|
| 02/24/2017 | 26 | | First MOTION to Dismiss *Indictment* by Samy Mohammed Hamzeh.(Bugni, Joseph) |
| 02/24/2017 | 27 | | Second MOTION to Dismiss *Count Two as Multiplicitous* and MOTION to Dismiss Count Three as Multiplicitous by Samy Mohammed Hamzeh.(Bugni, Joseph). |
| 02/24/2017 | 28 | | Third MOTION to Produce *Giglio and Brady Material* by Samy Mohammed Hamzeh.(Bugni, Joseph) |
| 02/24/2017 | 29 | | MEMORANDUM by Samy Mohammed Hamzeh in Support re 27 Second MOTION to Dismiss *Counts as Multiplicitous*, 26 First MOTION to Dismiss *Indictment*, 28 Third MOTION to Produce *Giglio and Brady Material* (Bugni, Joseph) |
| 02/27/2017 | 30 | | ORDER signed by Magistrate Judge William E Duffin on 2/27/17. The defendant's Unopposed Motion for Extension of Time (ECF No. 25 ) as to Samy Mohammed Hamzeh (1) is GRANTED. The defendant shall file his fourth pretrial motion no later than March 3, 2017. The government shall respond to all four motions no later than March 31, 2017, and the defense shall file any reply no later than April 14, 2017. (cc: all counsel) (mlm) |
| 03/03/2017 | 31 | | MOTION to Compel by Samy Mohammed Hamzeh.(Bugni, Joseph) |
| 03/31/2017 | 32 | | RESPONSE by USA as to Samy Mohammed Hamzeh re 31 MOTION to Compel , 27 Second MOTION to Dismiss *Counts as Multiplicitous*, 26 First MOTION to Dismiss *Indictment*, 28 Third MOTION to Produce *Giglio and Brady Material* (Haanstad, Gregory) |
| 04/07/2017 | 33 | | MOTION to Seal Document by Samy Mohammed Hamzeh. (Attachments: # 1 Proposed Order)(Albee, Craig) |
| 04/07/2017 | 34 | | SEALED DOCUMENT This document is not available electronically and must be served in paper format upon opposing counsel. Modified on 4/11/2017 (mlm). |
| 04/11/2017 | 35 | | ORDER signed by Magistrate Judge William E Duffin on 4/11/2017 as to Samy Mohammed Hamzeh (1). Finding good cause, the defendant's submission filed on April 7, 2017 (ECF No. 34), be sealed until further order of this court. (cc: all counsel) (mlm) |
| 04/18/2017 | 37 | | MOTION To File Out–of–Time Reply Brief by Samy Mohammed Hamzeh.(Bugni, Joseph) |
| 04/18/2017 | 38 | | NOTICE *of Additional Facts* by Samy Mohammed Hamzeh (Bugni, Joseph) |
| 04/18/2017 | | | TEXT ONLY ORDER signed by Magistrate Judge William E Duffin on 4/18/2017. For good cause, the defendant Samy Mohammed Hamzehs unopposed motion for an extension of time to file a reply brief 37 is GRANTED. Defendant shall file a reply no later than 4/20/2017. (cc: all counsel) (lz) |
| 04/20/2017 | 39 | | NOTICE OF ATTORNEY APPEARANCE: Gregory J Haanstad appearing for USA (Haanstad, Gregory) |

| | | | |
|---|---|---|---|
| 04/20/2017 | 40 | | REPLY TO RESPONSE to Motion by Samy Mohammed Hamzeh re 31 MOTION to Compel , 27 Second MOTION to Dismiss *Counts as Multiplicitous*, 26 First MOTION to Dismiss *Indictment*, 28 Third MOTION to Produce *Giglio and Brady Material* (Bugni, Joseph) |
| 05/09/2017 | | | NOTICE OF HEARING as to Samy Mohammed Hamzeh. Hearing on defendant's Motion to Compel (COUNSEL ONLY) set for 5/12/2017 11:00 AM in Courtroom 242, 517 E Wisconsin Ave., Milwaukee, WI 53202 before Magistrate Judge William E Duffin. (cc: all counsel)(mlm) |
| 05/09/2017 | 41 | | ORDER signed by Magistrate Judge William E Duffin on 5/9/17, as to Samy Mohammed Hamzeh (1). IT IS ORDERED THAT Hamzeh's motion for the government to produce Brady and Giglio evidence before trial (ECF No. 28 ) is denied as moot. **(continued below)**... (cc: all counsel) (mlm) |
| 05/09/2017 | 42 | | **...(continued from ECF 41 )** REPORT AND RECOMMENDATIONS signed by Magistrate Judge William E Duffin on 5/9/2017 as to Samy Mohammed Hamzeh. IT IS THEREFORE RECOMMENDED THAT Hamzeh's motion to dismiss the indictment (ECF No. 26 ) be denied. IT IS FURTHER RECOMMENDED THAT Hamzeh's motion to dismiss Count Two as multiplicitous (ECF No.[ 27]) be denied and Hamzeh's motion to dismiss Count Three as multiplicitous (ECF No. 27 ) be denied without prejudice. (cc: all counsel) (mlm) |
| 05/12/2017 | 43 | | Minute Entry for Hearing on Motion to Compel (COUNSEL ONLY) held before Magistrate Judge William E Duffin. Parties have resolved the motion to compel (ECF No. 31 ). Parties to turn over 90 days prior to trial, transcripts of conversations they each intend to produce at trial. Court notes that this will complete the pretrial aspect of this case and parties to contact Judge Pepper to get a trial date. (Tape #11:02:06 – 11:04:56.) (mlm) (Entered: 05/15/2017) |
| 05/18/2017 | | | NOTICE OF HEARING as to Samy Mohammed Hamzeh. The court will hold a status conference for counsel ONLY on 6/6/2017 at 11:00 AM by telephone. The parties may appear for the hearing by calling the court's conference line at 888–557–8511 and entering the access code 4893665#. (cc: all counsel)(pwm) |
| 05/23/2017 | 44 | | OBJECTION TO REPORT AND RECOMMENDATIONS 42 by Samy Mohammed Hamzeh (Bugni, Joseph) |
| 06/06/2017 | 45 | | Minute Entry and Order for proceedings held before Judge Pamela Pepper: Status Conference as to Samy Mohammed Hamzeh held on 6/6/2017. 42 Magistrate Judge Duffin's Report and Recommendations as to Defendant ADOPTED. 26 Defendant's Motion to Dismiss Indictment DENIED. 27 Defendant's Motion to Dismiss Count Two as Multiplicitous DENIED; 27 Defendant's Motion to Dismiss Count Three as Multiplicitous DENIED WITHOUT PREJUDICE. By 11/13/2017, Government to turn over to defendant all *Giglio* and *Brady* materials and parties to notify opposing counsel of the transcripts they propose to use at trial. By 12/1/2017, parties to notify the court of their proposed disclosure date for witness lists, exhibit lists, proposed *voir dire*, proposed jury instructions and proposed form of verdict. Motions in limine due by 1/16/2018. Final Pretrial Conference set for 1/24/2018 at 12:30 PM in Courtroom 225, 517 E. Wisconsin Ave., Milwaukee, WI before Judge Pamela Pepper. Jury Trial, estimated to last two weeks, set for 2/12/2018 at 9:00 AM in Courtroom 225, 517 E. Wisconsin |

| | | | |
|---|---|---|---|
| | | | Ave., Milwaukee, WI before Judge Pamela Pepper. (cb) (Entered: 06/12/2017) |
| 06/22/2017 | 46 | | MOTION for Bond by Samy Mohammed Hamzeh.(Albee, Craig) Modified on 10/26/2017 (kah). Added MOTION for Hearing on 10/26/2017 (kah). Modified on 10/26/2017 (kah). |
| 06/22/2017 | 47 | | MEMORANDUM by Samy Mohammed Hamzeh in Support re 46 MOTION for Bond *REDACTED* (Albee, Craig) |
| 06/22/2017 | 48 | | MOTION to Seal Document *Unredacted Version of Memo in Support of Bond and Attachments* by Samy Mohammed Hamzeh. (Attachments: # 1 Proposed order)(Albee, Craig) |
| 06/22/2017 | 49 | | SEALED DOCUMENT This document is not available electronically and must be served in paper format upon opposing counsel. |
| 06/22/2017 | 50 | | SEALING ORDER signed by Magistrate Judge David E Jones on 6/22/17 granting 48 Motion to Seal Document as to Samy Mohammed Hamzeh (1). (cc: all counsel) (kah) (Entered: 06/23/2017) |
| 06/26/2017 | | | NOTICE OF HEARING re: 46 MOTION for Bond as to Samy Mohammed Hamzeh. Bond Hearing set for 7/12/2017 at 10:00 AM in Courtroom 254, 517 E. Wisconsin Ave., Milwaukee, WI 53202 before Magistrate Judge David E Jones. (cc: all counsel, PTS, USM, FDS)(amb) |
| 07/10/2017 | 51 | | RESPONSE by USA as to Samy Mohammed Hamzeh re 46 MOTION for Bond (Haanstad, Gregory) |
| 07/11/2017 | 52 | | NOTICE OF ATTORNEY APPEARANCE: Gabriela A Leija appearing for Samy Mohammed Hamzeh (Leija, Gabriela) |
| 07/11/2017 | 53 | | PRETRIAL SERVICE REPORT – BOND STUDY (Sealed) filed by US Pretrial Office as to Samy Mohammed Hamzeh (NOTICE: Counsel for defendant is required to provide a copy of this document to the defendant. To view this document use your e–filing log–in and password.) (at) |
| 07/11/2017 | 54 | | REPLY TO RESPONSE to Motion by Samy Mohammed Hamzeh re 46 MOTION for Bond (Albee, Craig) |
| 07/12/2017 | 56 | | Minute Entry for proceedings held before Magistrate Judge David E Jones re 46 Motion for Bond. Bond Hearing as to Samy Mohammed Hamzeh held on 7/12/2017. Government seeking detention. Defense proffers release. Court directs parties to submit specific times to focus on when viewing the video. The Court will issue decision in writing. (Tape #10:02:08 – 11:14:56.) (amb) (Entered: 07/14/2017) |
| 07/13/2017 | 55 | | MEMORANDUM by Samy Mohammed Hamzeh in Support re 46 MOTION for Bond *Post–Hearing* (Albee, Craig) |
| 07/25/2017 | 57 | | LETTER from United States Attorney Gregory Haanstad re: three discs containing the post arrest interview of the Defendant. **Three discs are located in Chambers only.** (amb) |
| 07/25/2017 | 58 | | MOTION to Seal Document */Discs submitted on July 13, 2017* by USA as toSamy Mohammed Hamzeh. (Attachments: # 1 Text of Proposed Order)(Haanstad, Gregory) |

| 07/26/2017 | 59 | | LETTER from RE/Requested Discovery Documents (Albee, Craig) |
|---|---|---|---|
| 07/26/2017 | 60 | | MOTION to Seal Document by Samy Mohammed Hamzeh. (Attachments: # 1 Proposed Order)(Albee, Craig) |
| 07/26/2017 | 61 | | SEALED DOCUMENT This document is not available electronically and must be served in paper format upon opposing counsel. |
| 07/26/2017 | 62 | | ORDER signed by Magistrate Judge David E Jones on 16–21 GRANTING 58 Motion to Seal Document as to Samy Mohammed Hamzeh (1). IT IS ORDERED that the three discs (marked Disc 98; Disc 99 Part 1; and Disc 99 Part 2) submitted by the government under cover of a letter dated July 13, 2017, ECF No. 57 , be SEALED until further order of this Court. (cc: all counsel) (amb) (Entered: 07/27/2017) |
| 07/27/2017 | 63 | | ORDER signed by Magistrate Judge David E Jones on 07/27/2017 GRANTING 60 Motion to Seal Document as to Samy Mohammed Hamzeh (1). IT IS ORDERED that pursuant to Rule 79.4 of the Local Rules of the United States District Court for the Eastern District of Wisconsin, the attachments, ECF No. 61 , referenced in Hamzehs letter filed on July 26, 2017, ECF No. 59 , be SEALED until further order of this Court. (cc: all counsel) (amb) |
| 07/31/2017 | 64 | | TRANSCRIPT of BOND HEARING as to Samy Mohammed Hamzeh held on 7/12/2017, before Judge David Jones. Court Reporter/Transcriber John Schindhelm, Contact at WWW.JOHNSCHINDHELM.COM to order directly... Or. Transcripts may be purchased using the Transcript Order Form found on our website or viewed at the court public terminal. **NOTICE RE REDACTION OF TRANSCRIPTS:** If necessary, within 7 business days each party shall inform the Court of their intent to redact personal identifiers by filing a Notice of Intent to Redact. Please read the policy located on our website  www.wied.uscourts.gov Redaction Statement due 8/24/2017. Redacted Transcript Deadline set for 9/5/2017. Release of Transcript Restriction set for 11/2/2017. (Schindhelm, John) |
| 09/11/2017 | 65 | | LETTER *RE/Bail Hearing* (Albee, Craig) |
| 10/19/2017 | 66 | | REQUEST for Status Conference by Samy Mohammed Hamzeh. (Albee, Craig) |
| 10/26/2017 | 67 | | ORDER signed by Magistrate Judge David E Jones on 10/26/2017. IT IS ORDERED that Defendant's Motion for Release on Bond, ECF No. 46 , is DENIED. (cc: all counsel) (amb) |
| 11/22/2017 | 68 | | MOTION for Bail Review by Samy Mohammed Hamzeh.(Bugni, Joseph) |
| 11/28/2017 | 69 | | MOTION for Expedited Briefing on the Defense's Motion for Bail Review by Samy Mohammed Hamzeh.(Albee, Craig) |
| 11/28/2017 | | | NOTICE OF HEARING as to Samy Mohammed Hamzeh RE: 68 MOTION for Bail Review : Motion Hearing set for 12/4/2017 02:00 PM in Courtroom 222, 517 E. Wisconsin Ave., Milwaukee, WI 53202 before Judge Pamela Pepper. (cc: all counsel)(kgw) |
| 11/29/2017 | 70 | | MOTION to Seal Document by Samy Mohammed Hamzeh. (Attachments: # 1 Proposed Order)(Albee, Craig) |

| 11/29/2017 | 71 | | SEALED DOCUMENT This document is not available electronically and must be served in paper format upon opposing counsel. Modified on 12/7/2017 (mlm). |
|---|---|---|---|
| 11/29/2017 | 72 | | SEALED DOCUMENT This document is not available electronically and must be served in paper format upon opposing counsel. Modified on 12/7/2017 (mlm). |
| 11/29/2017 | 73 | | TEXT ONLY ORDER signed by Judge Pamela Pepper on 11/29/2017 as to Samy Mohammed Hamzeh re 69 MOTION for Expedited Briefing on the Defense's Motion for Bail Review filed by Samy Mohammed Hamzeh: The court **GRANTS** the defendant's motion for expedited briefing of his appeal of Judge Jones' detention decision. The court has scheduled a hearing for Monday, December 4, 2017 at 2:00 p.m. The court notes, as the defendant indicated in his motion, that the parties have filed extensive pleadings on this issue in connection with Judge Jones's rulings, and asks the parties to confine any pre–December 4 pleadings to issues they have not already addressed or covered previously. The court **ORDERS** that any party wishing to supplement briefing on the issue of bond pending trial shall do so no later than **10:00 a.m. on Monday, December 4, 2017**. **NOTE: There is no document associated with this text–only order.** (cc: all counsel) (Pepper, Pamela) |
| 11/29/2017 | 74 | | TEXT ONLY ORDER signed by Judge Pamela Pepper on 11/29/2017 as to Samy Mohammed Hamzeh re 70 MOTION to Seal Document filed by Samy Mohammed Hamzeh: The court **GRANTS** the defendant's motion to seal. The court **ORDERS** that the documents at Dkt. Nos. 71 and 72 shall remain **SEALED** until further order of the court. **NOTE: There is no document associated with this text–only order.** (cc: all counsel) (Pepper, Pamela) |
| 12/01/2017 | 75 | | STIPULATION – *Joint Stipulation as to filing date of trial documents* by USA by Samy Mohammed Hamzeh (Haanstad, Gregory) |
| 12/01/2017 | 76 | | BRIEF by Samy Mohammed Hamzeh in Support re 68 MOTION for Bail Review (Albee, Craig) |
| 12/04/2017 | 77 | | TEXT ONLY ORDER signed by Judge Pamela Pepper on 12/04/2017as to Samy Mohammed Hamzeh re 75 Stipulation filed by USA: The court **Approves** the parties' stipulation, and **ORDERS** that the parties shall submit the documents listed in the stipulation by the end of the day on January 16, 2018. **NOTE: There is no document associated with this text–only order.** (cc: all counsel) (Pepper, Pamela) |
| 12/04/2017 | 79 | | Minute and Order Entry for proceedings held before Judge Pamela Pepper: Motion Hearing as to Samy Mohammed Hamzeh held on 12/4/2017. 68 Defendant's MOTION for bail review GRANTED, defendant's MOTION for release on bond DENIED. Defendant to remain in custody until trial. (cb) (Entered: 12/07/2017) |
| 12/06/2017 | 78 | | SEALED ORDER as to Samy Mohammed Hamzeh signed by Judge Pamela Pepper on 12/6/2017. (cc: all counsel) (cb) |
| 12/11/2017 | 81 | | CRIMINAL PRETRIAL ORDER as to Samy Mohammed Hamzeh signed by Judge Pamela Pepper on 12/11/2017. The final pretrial report is due no later than January 17, 2018. (cc: all counsel) (kgw) |

| 01/03/2018 | 82 | | MOTION for Release of Brady Materials by Samy Mohammed Hamzeh.(Albee, Craig) |
|---|---|---|---|
| 01/03/2018 | 83 | | SEALED DOCUMENT This document is not available electronically and must be served in paper format upon opposing counsel. |
| 01/04/2018 | 84 | | TEXT ONLY ORDER signed by Judge Pamela Pepper on 01/04/2018 as to Samy Mohammed Hamzeh: The court **ORDERS** that the government shall file a response to the defendant's motion to disclose Brady materials (dkt. no. 82) by the end of the day on Friday, January 12, 2018. Once the government has filed a response, the court will, if necessary, schedule a hearing. **NOTE: There is no document associated with this text–only order.** (cc: all counsel) (Pepper, Pamela) |
| 01/06/2018 | 85 | | MOTION to Dismiss Count *Two* by Samy Mohammed Hamzeh. (Attachments: # 1 Exhibit List of Machine Gun Rental Places)(Bugni, Joseph) |
| 01/08/2018 | 86 | | TEXT ONLY ORDER signed by Judge Pamela Pepper on 01/08/2018 as to Samy Mohammed Hamzeh re 85 MOTION to Dismiss Count *Two* filed by Samy Mohammed Hamzeh: The court **ORDERS** that by the end of the day on Tuesday, January 16, 2018, the government shall file a response to the defendant's motion to dismiss Count Two. The defendant shall file his reply in support of his motion (if any) by the end of the day on Monday, January 22, 2018. **NOTE: There is no document associated with this text–only order.** (cc: all counsel) (Pepper, Pamela) |
| 01/09/2018 | 87 | | Unopposed MOTION to Adjourn *Jury Trial* by Samy Mohammed Hamzeh.(Albee, Craig) |
| 01/10/2018 | 88 | | LETTER from RE/Supplement to Unopposed Motion to Adjourn Jury Trial (D.E. #87) (Albee, Craig) |
| 01/10/2018 | 89 | | TEXT ONLY ORDER signed by Judge Pamela Pepper on 01/10/2018 as to Samy Mohammed Hamzeh re 87 Unopposed MOTION to Adjourn *Jury Trial* filed by Samy Mohammed Hamzeh: The court **GRANTS** the defendant's unopposed motion to adjourn the jury trial. The court **ORDERS** that the jury trial, currently scheduled to begin on February 12, 2018 and to run for two weeks, is **REMOVED** from the hearing calendar. The court **ORDERS** that the January 24, 2018 pretrial conference scheduled for 12:30 p.m. in Room 222 will remain on the hearing calendar, but is **CONVERTED** to a status/scheduling conference. If counsel for the defendant wishes the defendant to be present for this status conference, counsel should notify the court and the Marshals service of that fact. **NOTE: There is no document associated with this text–only order. (cc: all counsel) (Pepper, Pamela)** |
| 01/10/2018 | | | Set/Reset Hearings as to Samy Mohammed Hamzeh: Status Conference set for 1/24/2018 09:00 AM in Courtroom 222, 517 E. Wisconsin Ave., Milwaukee, WI 53202 before Judge Pamela Pepper. (This hearing was originally scheduled as a final pretrial conference at 12:30 p.m. but changed to a status conference at 9:00 a.m.) (kgw) |
| 01/10/2018 | 90 | | ORDER signed by Judge Pamela Pepper on 01/10/2018, REFERRING MOTION as to Samy Mohammed Hamzeh 85 MOTION to Dismiss Count *Two* filed by Samy Mohammed Hamzeh, 82 MOTION for Release of Brady Materials filed by Samy Mohammed Hamzeh: Ahead of the trial, the |

| | | | |
|---|---|---|---|
| | | | defendant has filed two motions––a motion for an order requiring the government to produce materials the defense categorizes as <u>Brady</u> materials (Dkt. No. 82), and a motion to dismiss the second count of the indictment (Dkt. No. 85). The parties have asked to adjourn the trial (originally scheduled for February 12, 2018); the court has granted that motion, and will discuss possible new trial dates with the parties at a status/scheduling conference on January 24, 2018. Given that the trial has been adjourned, the court **ORDERS** that these two motions are **REFERRED** to Magistrate Judge William E. Duffin for disposition or recommendation, whichever is appropriate. The deadline for the government to respond to the <u>Brady</u> motion is January 12, 2018; the deadline for the government to respond to the motion to dismiss is January 16, 2018. **NOTE: There is no document associated with this text–only order.** (cc: all counsel) (Pepper, Pamela) |
| 01/12/2018 | <u>91</u> | | MOTION for Extension of Time to File *Response* by USA as to Samy Mohammed Hamzeh.(Haanstad, Gregory) |
| 01/12/2018 | | | TEXT ONLY ORDER: The court finding good cause, the government's motion for extension of time to file (ECF No. <u>91</u> ) is granted. It shall respond to the defendant's Motion for Release of Brady Materials not later than January 19, 2018. Once the government has filed a response, the court will, if necessary, schedule a hearing or order the defendant to reply. Signed by Magistrate Judge William E Duffin on 1/12/18. (cc: all counsel) (mlm) |
| 01/16/2018 | <u>92</u> | | RESPONSE by USA as to Samy Mohammed Hamzeh re <u>85</u> MOTION to Dismiss Count *Two* (Haanstad, Gregory) |
| 01/19/2018 | <u>93</u> | | RESPONSE by USA as to Samy Mohammed Hamzeh re <u>82</u> MOTION for Release of Brady Materials (Haanstad, Gregory) |
| 01/22/2018 | <u>94</u> | | TRANSCRIPT of BAIL REVIEW HEARING as to Samy Mohammed Hamzeh held on 12/4/17, before Judge PAMELA PEPPER. Court Reporter/Transcriber EXCEPTIONAL REPORTING, Contact at 361 949–2988. Tape Number: 12/4/17. Transcripts may be purchased using the Transcript Order Form found <u>on our website</u> or viewed at the court public terminal. **NOTICE RE REDACTION OF TRANSCRIPTS:** If necessary, within 7 business days each party shall inform the Court of their intent to redact personal identifiers by filing a Notice of Intent to Redact. Please read the policy located on our website <u>www.wied.uscourts.gov</u> Redaction Statement due 2/15/2018. Redacted Transcript Deadline set for 2/26/2018. Release of Transcript Restriction set for 4/26/2018. (Exceptional Reporting Services, ) |
| 01/22/2018 | <u>95</u> | | REPLY TO RESPONSE to Motion by Samy Mohammed Hamzeh re <u>85</u> MOTION to Dismiss Count *Two* (Albee, Craig) |
| 01/23/2018 | | | NOTICE OF HEARING as to Samy Mohammed Hamzeh. Status Conference (COUNSEL ONLY) re: Motion for Release of Brady Materials set for 1/31/2018 10:00 AM in Courtroom 242, 517 E Wisconsin Ave., Milwaukee, WI 53202 before Magistrate Judge William E Duffin. (cc: all counsel)(mlm) |
| 01/23/2018 | | | Set/Reset Hearings as to Samy Mohammed Hamzeh: Status Conference set for 1/24/2018 09:00 AM By Telephone before Judge Pamela Pepper. Parties wishing to appear by phone may do so by calling the courts conference line at 888–557–8511 and using the access code 4893665#. (kgw) |

| 01/24/2018 | 96 | | Minute and Order Entry for proceedings held before Judge Pamela Pepper: Status Conference as to Samy Mohammed Hamzeh held on 1/24/2018. Status Conference set for 3/21/2018 at 12:30 PM by telephone before Judge Pamela Pepper. Parties wishing to appear by phone may do so by calling the court's conference line at 888–557–8511 and using access code 4893665#. Jury Trial (expected to last 2 weeks) set for 6/18/2018 at 8:30 AM in Courtroom 222, 517 E. Wisconsin Ave., Milwaukee, WI before Judge Pamela Pepper. The period of time between 1/24/18 and 3/21/18 is EXCLUDED from computation of speedy trial deadline. (cb) Modified on 1/29/2018 (kmf). (Entered: 01/25/2018) |
|---|---|---|---|
| 01/30/2018 | | | **NOTICE OF COURTROOM CHANGE** as to Samy Mohammed Hamzeh. The Status Conference (COUNSEL ONLY) set for 1/31/2018 10:00 AM before Magistrate Judge William E Duffin will be in Courtroom 225. (cc: all counsel)(mlm) |
| 01/30/2018 | 97 | | SUPPLEMENT by Samy Mohammed Hamzeh *Notice of Supplemental Information* (Albee, Craig) |
| 01/30/2018 | 98 | | MOTION to Seal Document by Samy Mohammed Hamzeh. (Attachments: # 1 Proposed Order)(Albee, Craig) |
| 01/30/2018 | 99 | | SEALED DOCUMENT This document is not available electronically and must be served in paper format upon opposing counsel. |
| 01/31/2018 | 100 | | NOTICE *of Additional Authority* by Samy Mohammed Hamzeh (Albee, Craig) |
| 01/31/2018 | 101 | | Minute Entry for Status Conference held on 1/31/2018 before Magistrate Judge William E Duffin as to Samy Mohammed Hamzeh. Court hears the parties arguments as to the pending discovery disputes. Government's supplemental response to defendant's Motion for Release of Brady Materials is due by 2/9/2018. Defendant's Reply is due by 2/16/2018. (Tape #10:14:14 – 11:14:30) (mlm) |
| 02/02/2018 | 102 | | ORDER signed by Magistrate Judge William E Duffin on 2/2/18, granting 98 Motion to Seal Document as to Samy Mohammed Hamzeh (1). (cc: all counsel) (mlm) |
| 02/08/2018 | 103 | | REPORT AND RECOMMENDATIONS signed by Magistrate Judge William E Duffin on 2/8/2018 as to Samy Mohammed Hamzeh. IT IS THEREFORE RECOMMENDED that Hamzeh's Motion to Dismiss Count Two of the Indictment be denied. (ECF No. 85 .) (cc: all counsel) (mlm) |
| 02/09/2018 | 104 | | BRIEF in Opposition by USA as to Samy Mohammed Hamzeh re 82 MOTION for Release of Brady Materials (Haanstad, Gregory) |
| 02/16/2018 | 105 | | REPLY TO RESPONSE to Motion by Samy Mohammed Hamzeh re 82 MOTION for Release of Brady Materials (Albee, Craig) |
| 02/22/2018 | 106 | | OBJECTIONS by Samy Mohammed Hamzeh. *To Recommendation On Motion To Dismiss Count Two* (Albee, Craig) |
| 03/08/2018 | 107 | | ORDER signed by Magistrate Judge William E Duffin on 3/8/2018 granting in part 82 Motion for Release of Brady Materials as to Samy Mohammed Hamzeh. The government is ordered to release all underlying documentation regarding the payments given to informants as part of their work in this case |

| | | | |
|---|---|---|---|
| | | | and the amount of compensation which CHS−2 has received assisting the government as a source of information during the time period from March 28, 2011 to October 6, 2011. The government is further ordered to provide a response as to whether an inquiry has been made into non−preserved text messages. Defendant's remaining discovery requests are denied without prejudice. (cc: all counsel) (lz) |
| 03/08/2018 | 108 | | RESPONSE by USA as to Samy Mohammed Hamzeh *Objection to Magistrate Judge Recommendation* (Haanstad, Gregory) |
| 03/12/2018 | | | Set/Reset Hearings as to Samy Mohammed Hamzeh: Status Conference set for 3/21/2018 12:30 PM in Courtroom 222, 517 E. Wisconsin Ave., Milwaukee, WI 53202 before Judge Pamela Pepper. (kgw) |
| 03/12/2018 | | | Case as to Samy Mohammed Hamzeh no longer referred to Magistrate Judge William E Duffin. (mlm) |
| 03/14/2018 | 109 | | REPLY by Samy Mohammed Hamzeh *In Support of Hamzeh's Objection to Magistrate Judge's Recommendation to Deny Motion to Dismiss Count Two* (Albee, Craig) |
| 03/21/2018 | 110 | | PRETRIAL ORDER as to Samy Mohammed Hamzeh signed by Judge Pamela Pepper on 3/21/2018. The final pretrial report is due no later than July 30, 2018. (cc: all counsel) (kgw) |
| 03/21/2018 | 111 | | Court Minutes and Order for proceedings held before Judge Pamela Pepper on 3/21/2018: Status Conference as to Samy Mohammed Hamzeh. Any party wishing to appeal Judge Duffin's order (Dkt. No. 107) shall do so no later than the end of the day on 4/6/2018. The government shall file expert disclosures no later than 7/2/2018. The defendant shall file expert disclosures no later than 7/20/2018. The government shall disclose any Rule 404(b) materials no later than 7/23/2018. Motions in limine due by 7/30/2018. The government shall turn over grand jury transcripts no later than the end of the day on 8/13/2018. Final Pretrial Conference set for 8/6/2018 09:00 AM in Courtroom 222, 517 E. Wisconsin Ave., Milwaukee, WI 53202 before Judge Pamela Pepper., Jury Trial set for 8/20/2018 08:30 AM in Courtroom 222, 517 E. Wisconsin Ave., Milwaukee, WI 53202 before Judge Pamela Pepper. (Parties estimate the trial will take two weeks.) (kgw) (Entered: 03/26/2018) |
| 04/06/2018 | 112 | | RESPONSE by USA as to Samy Mohammed Hamzeh *as to Magistrate Judge's Order Concerning the Disclosure of Brady/Giglio Material* (Kanter, Paul) |
| 04/06/2018 | 113 | | OBJECTIONS by Samy Mohammed Hamzeh. *Appeal From Magistrate Judge's Order Partially Denying Hamzeh's Request For Brady Material* (Albee, Craig) |
| 04/16/2018 | 114 | | TRANSCRIPT of STATUS CONFERENCE as to Samy Mohammed Hamzeh held on 1/31/18, before Judge WILLIAM E. DUFFIN. Court Reporter/Transcriber EXCEPTIONAL REPORTING, Contact at 3619492988. Tape Number: 1/31/18. Transcripts may be purchased using the Transcript Order Form found on our website or viewed at the court public terminal. **NOTICE RE REDACTION OF TRANSCRIPTS:** If necessary, within 7 business days each party shall inform the Court of their intent to redact personal identifiers by filing a Notice of Intent to Redact. Please read the |

| | | | |
|---|---|---|---|
| | | | policy located on our website www.wied.uscourts.gov Redaction Statement due 5/10/2018. Redacted Transcript Deadline set for 5/21/2018. Release of Transcript Restriction set for 7/19/2018. (Exceptional Reporting Services, ) |
| 04/20/2018 | 115 | | MOTION for Extension of Time to File *Response* by Samy Mohammed Hamzeh.(Leija, Gabriela) |
| 04/20/2018 | 116 | | RESPONSE by USA as to Samy Mohammed Hamzeh *to Defendant's Appeal of Magistrate Judge's Disclosure Order* (Haanstad, Gregory) |
| 04/23/2018 | 117 | | ORDER signed by Judge Pamela Pepper on 4/23/2018. 103 Judge Duffin's Report and Recommendations as to Samy Mohammed Hamzeh ADOPTED. 106 Defendant's objection to report and recommendation OVERRULED. 85 Defendant's motion to dismiss Count 2 of indictment DENIED. (cc: all counsel) (cb) |
| 04/23/2018 | 118 | | TEXT ONLY ORDER signed by Judge Pamela Pepper on 04/23/2018 as to Samy Mohammed Hamzeh re 115 MOTION for Extension of Time to File *Response* filed by Samy Mohammed Hamzeh: The court **GRANTS** the defendant's motion for an extension of time to file his reply in support of his appeal of Judge Duffin's discovery order. The court **ORDERS** that the defendant shall file his reply by the end of the day on **Thursday, April 26, 2018**. **NOTE: There is no document associated with this text–only order.** (cc: all counsel) (Pepper, Pamela) |
| 04/23/2018 | 119 | | RESPONSE by Samy Mohammed Hamzeh *to Government Appeal of Magistrate Judge Order* (Albee, Craig) |
| 04/27/2018 | 120 | | REPLY by Samy Mohammed Hamzeh (Albee, Craig) |
| 05/22/2018 | 121 | | MOTION for Release from Custody – *Temporary Release* by Samy Mohammed Hamzeh.(Albee, Craig) |
| 05/29/2018 | | | NOTICE OF HEARING ON MOTION as to Samy Mohammed Hamzeh re: 121 MOTION for Release from Custody – *Temporary Release* : Motion Hearing set for 6/6/2018 at 01:30 PM in Courtroom 254, 517 E. Wisconsin Ave., Milwaukee, WI 53202 before Magistrate Judge David E Jones. Defendant required to be present.(cc: all counsel, PTS, USM)(amb) |
| 06/06/2018 | 122 | | Minute Entry for proceedings held before Magistrate Judge David E Jones: Motion Hearing as to Samy Mohammed Hamzeh held on 6/6/2018 re: 121 MOTION for Release from Custody – *Temporary Release*. Parties came up with plan that does not require court order. Court will keep motion open. (Tape #1:30:37 – 1:40:31) (amb) (Entered: 06/07/2018) |
| 06/08/2018 | 123 | | ORDER signed by Judge Pamela Pepper on 6/8/2018 OVERRULING 113 Defendant's Objections to Judge Duffin's Order for Release of Brady Materials. (cc: all counsel) (cb) |
| 06/20/2018 | 124 | | MOTION for Bond *(Renewed) or Temporary Release from Custody* by Samy Mohammed Hamzeh.(Albee, Craig) |
| 06/21/2018 | | | NOTICE OF HEARING ON MOTION as to Samy Mohammed Hamzeh re: 124 MOTION for Bond *(Renewed) or Temporary Release from Custody* : Bond Review set for 6/25/2018 at 02:00 PM in Courtroom 254, 517 E. Wisconsin Ave., Milwaukee, WI 53202 before Magistrate Judge David E |

| | | | |
|---|---|---|---|
| | | | Jones. (cc: all counsel, PTS, USM)(amb) |
| 06/25/2018 | 125 | | RESPONSE by USA as to Samy Mohammed Hamzeh re 124 MOTION for Bond *(Renewed) or Temporary Release from Custody* (Haanstad, Gregory) |
| 06/25/2018 | 126 | | Minute Entry for proceedings held before Magistrate Judge David E Jones: Bond Review Hearing as to Samy Mohammed Hamzeh held on 6/25/2018 re: 124 MOTION for Bond *(Renewed) or Temporary Release from Custody*. Court DENIES 121 Motion for Release from Custody Temporary Release. Court GRANTS in part and DENIES in part 124 Motion for Bond (Renewed) or Temporary Release from Custody. Defendant to remain in detention status. Defendant will be transported every Tuesday and Thursday to defense counsel office in order to allow him to assist in his own defense. (Tape #2:00:37 – 2:11:37.) (amb) (Entered: 06/26/2018) |
| 06/26/2018 | | | NOTICE OF HEARING as to Samy Mohammed Hamzeh. Status Conference set for 6/26/2018 at 03:00 PM in Courtroom 254, 517 E. Wisconsin Ave., Milwaukee, WI 53202 before Magistrate Judge David E Jones. Defendant required to be present for hearing. (cc: all counsel)(amb) |
| 06/26/2018 | 127 | | Minute Entry for proceedings held before Magistrate Judge David E Jones: Status Conference as to Samy Mohammed Hamzeh held on 6/26/2018. Parties discuss plan to allow defendant to meet with defense counsel. (Tape #3:02:05 – 3:27:14) (amb) (Entered: 06/27/2018) |
| 06/28/2018 | 128 | | MOTION to Seal Document by Samy Mohammed Hamzeh. (Attachments: # 1 Text of Proposed Order)(Bugni, Joseph) |
| 06/28/2018 | 129 | | SEALED DOCUMENT  This document is not available electronically and must be served in paper format upon opposing counsel. |
| 07/02/2018 | 130 | | WITNESS LIST by USA as to Samy Mohammed Hamzeh (Haanstad, Gregory) |
| 07/03/2018 | 131 | | NOTICE OF ATTORNEY APPEARANCE: Benjamin P Taibleson appearing for USA (Taibleson, Benjamin) |
| 07/05/2018 | | | Case as to Samy Mohammed Hamzeh Referred to Magistrate Judge William E Duffin for pretrial matters including 128 Motion to Seal and 129 Sealed Document. (lz) |
| 07/06/2018 | 132 | | SEALED DOCUMENT. (cc: all counsel) (mlm) |
| 07/11/2018 | 133 | | LETTER *RE/Proposed Juror Questionnaire* (Albee, Craig) |
| 07/11/2018 | 134 | | PROPOSED VOIR DIRE by Samy Mohammed Hamzeh. (Albee, Craig) |
| 07/11/2018 | 135 | | Second MOTION for Discovery by Samy Mohammed Hamzeh.(Albee, Craig) |
| 07/11/2018 | 136 | | MOTION for Spoliation Hearing by Samy Mohammed Hamzeh.(Albee, Craig) |
| 07/13/2018 | 137 | | MOTION to Seal Document by Samy Mohammed Hamzeh. (Attachments: # 1 Text of Proposed Order)(Albee, Craig) |
| 07/13/2018 | 138 | | SEALED DOCUMENT  This document is not available electronically and must be served in paper format upon opposing counsel. |

| | | | |
|---|---|---|---|
| 07/13/2018 | <u>139</u> | | MOTION to Seal Document by Samy Mohammed Hamzeh. (Attachments: # <u>1</u> Text of Proposed Order)(Albee, Craig) |
| 07/13/2018 | <u>140</u> | | SEALED DOCUMENT  *This document is not available electronically and must be served in paper format upon opposing counsel.* |
| 07/13/2018 | | | NOTICE OF HEARING as to Samy Mohammed Hamzeh. Hearing re: Second Motion for Discovery and Motion for Spoliation Hearing (COUNSEL ONLY) set for 7/17/2018 01:00 PM in Courtroom 242, 517 E Wisconsin Ave., Milwaukee, WI 53202 before Magistrate Judge William E Duffin. (cc: all counsel)(mlm) |
| 07/16/2018 | <u>141</u> | | SEALED DOCUMENT. (cc: all counsel) (mlm) |
| 07/16/2018 | | | NOTICE OF HEARING as to Samy Mohammed Hamzeh. Hearing re: Second Motion for Discovery and Motion for Spoliation Hearing (COUNSEL ONLY) set for 7/17/2018 01:00 PM **HAS BEEN RESCHEDULED TO** 7/24/2018 at 09:30 AM in Courtroom 242, 517 E Wisconsin Ave., Milwaukee, WI 53202 before Magistrate Judge William E Duffin. (cc: all counsel)(mlm) |
| 07/18/2018 | <u>142</u> | | TRANSCRIPT of Status Conference as to Samy Mohammed Hamzeh held on January 24, 2018, before Judge Pamela Pepper. Court Reporter/Transcriber Richard D. Ehrlich, Contact at (414) 290–2642. Tape Number: January 24, 2018. Transcripts may be purchased using the Transcript Order Form found <u>on our website</u> or viewed at the court public terminal. **NOTICE RE REDACTION OF TRANSCRIPTS:** If necessary, within 7 business days each party shall inform the Court of their intent to redact personal identifiers by filing a Notice of Intent to Redact. Please read the policy located on our website <u>www.wied.uscourts.gov</u> Redaction Statement due 8/13/2018. Redacted Transcript Deadline set for 8/23/2018. Release of Transcript Restriction set for 10/19/2018. (Ehrlich, Richard) |
| 07/18/2018 | <u>143</u> | | TRANSCRIPT of Status Conference as to Samy Mohammed Hamzeh held on March 21, 2018, before Judge Pamela Pepper. Court Reporter/Transcriber Richard D. Ehrlich, Contact at (414) 290–2642. Tape Number: March 21, 2018. Transcripts may be purchased using the Transcript Order Form found <u>on our website</u> or viewed at the court public terminal. **NOTICE RE REDACTION OF TRANSCRIPTS:** If necessary, within 7 business days each party shall inform the Court of their intent to redact personal identifiers by filing a Notice of Intent to Redact. Please read the policy located on our website <u>www.wied.uscourts.gov</u> Redaction Statement due 8/13/2018. Redacted Transcript Deadline set for 8/23/2018. Release of Transcript Restriction set for 10/19/2018. (Ehrlich, Richard) |
| 07/20/2018 | <u>144</u> | | MOTION to Compel *And Enforce Compliance With This Court's Prior Order* by Samy Mohammed Hamzeh.(Albee, Craig) |
| 07/20/2018 | <u>145</u> | | WITNESS LIST by Samy Mohammed Hamzeh. (Attachments: # <u>1</u> Exhibit A – Merrick CV, # <u>2</u> Exhibit B – Merrick Report, # <u>3</u> Exhibit C – Brauer CV, # <u>4</u> Exhibit D – Brauer Ltr, # <u>5</u> Exhibit E – Labonte CV, # <u>6</u> Exhibit F – Labonte Report, # <u>7</u> Exhibit G – Davis CV, # <u>8</u> Exhibit H – Davis Report, # <u>9</u> Exhibit I – Leslie CV, # <u>10</u> Exhibit J – Leslie Report – Redacted, # <u>11</u> Exhibit K – Danik CV, # <u>12</u> Exhibit L – Kimmel CV)(Albee, Craig) |
| 07/23/2018 | <u>146</u> | | |

| | | | |
|---|---|---|---|
| | | | NOTICE *of Intent to Offer Evidence Pursuant to Rule 404(b) of the Federal Rules of Evidence* by USA as to Samy Mohammed Hamzeh (Taibleson, Benjamin) |
| 07/24/2018 | 147 | | NOTICE OF HEARING as to Samy Mohammed Hamzeh. Review Hearing Under 18 U.S.C. §3164 set for 7/27/2018 at 1:00 PM in Courtroom 222, 517 E. Wisconsin Ave., Milwaukee, WI before Judge Pamela Pepper. Parties and defendant must appear in person. (cc: all counsel)(cb) |
| 07/24/2018 | 148 | | Minute Entry for Hearing on Motions held on 7/24/2018 before Magistrate Judge William E Duffin as to Samy Mohammed Hamzeh. Court discusses with counsel the defendant's motions and pending discovery issues. Court will issue an order. (Court Reporter John Schindhelm) (mlm) (Entered: 07/25/2018) |
| 07/25/2018 | 149 | | SEALED DOCUMENT. (mlm) |
| 07/25/2018 | 150 | | ORDER signed by Magistrate Judge William E Duffin on 7/25/2018. To the extent the Second Motion for Production of Brady Material and to Compel Discovery (ECF No. 135 ) and Motion to Compel and Enforce Compliance With This Courts Prior Order (ECF No. 144 ) are not moot, the motions (ECF Nos. 135 , 144 ) are granted. The court grants Hamzeh's Motion for a Spoliation Hearing. (ECF No. 136 .) In Court Hearing set for 8/2/2018 11:00 AM in Courtroom 242, 517 E Wisconsin Ave., Milwaukee, WI 53202 before Magistrate Judge William E Duffin. The court will hold this In Court Hearing to discuss the government's progress in completing full transcriptions of the recordings it intends to introduce at trial. Present at that hearing must be at least one of the translators who is currently assigned to perform the translation and transcription, or a supervisor of the personnel performing the translation and transcription. (SEE ORDER FOR ADDITIONAL DEADLINES/DETAILS.) (cc: all counsel) (mlm) |
| 07/26/2018 | 151 | | MOTION to Seal Document by Samy Mohammed Hamzeh. (Attachments: # 1 Text of Proposed Order)(Albee, Craig) |
| 07/26/2018 | 152 | | SEALED DOCUMENT This document is not available electronically and must be served in paper format upon opposing counsel. Modified on 7/26/2018 (mlm). |
| 07/26/2018 | 153 | | MOTION to Seal Document by Samy Mohammed Hamzeh. (Attachments: # 1 Text of Proposed Order)(Albee, Craig) |
| 07/26/2018 | 154 | | SEALED DOCUMENT This document is not available electronically and must be served in paper format upon opposing counsel. Modified on 7/26/2018 (mlm). |
| 07/26/2018 | 155 | | UPDATE FOR 7/27/18 BOND REVIEW HEARING to the Court (No action required – Sealed) filed by US Probation Office as to Samy Mohammed Hamzeh (NOTICE: Counsel for defendant is required to provide a copy of this document to the defendant. To view this document use your e–filing log–in and password.) (jb) |
| 07/26/2018 | 156 | | TRANSCRIPT of MOTIONS HEARING as to Samy Mohammed Hamzeh held on 7/24/2018, before Judge William Duffin. Court Reporter/Transcriber John Schindhelm, Contact at www.johnschindhelm.com to order directly... |

| | | | |
|---|---|---|---|
| | | | OR. Transcripts may be purchased using the Transcript Order Form found on our website or viewed at the court public terminal. **NOTICE RE REDACTION OF TRANSCRIPTS:** If necessary, within 7 business days each party shall inform the Court of their intent to redact personal identifiers by filing a Notice of Intent to Redact. Please read the policy located on our website  www.wied.uscourts.gov Redaction Statement due 8/20/2018. Redacted Transcript Deadline set for 8/30/2018. Release of Transcript Restriction set for 10/29/2018. (Schindhelm, John) |
| 07/26/2018 | 157 | | SEALED DOCUMENT. (mlm) |
| 07/27/2018 | 158 | | MOTION to Supplement Record Regarding Second Brady Motion (ECF No. 135) by Samy Mohammed Hamzeh. (Attachments: # 1 Attachment)(Albee, Craig) |
| 07/27/2018 | 159 | | NOTICE OF HEARING as to Samy Mohammed Hamzeh. The Final Pretrial Conference set for 8/6/2018 has been **CONVERTED to a Status Conference** at 9:00 by telephone before Judge Pamela Pepper. Parties wishing to appear by phone may do so by calling the court's conference line at 888−557−8511 and using access code 4893665#. (cc: all counsel)(cb) |
| 07/27/2018 | 160 | | NOTICE OF CANCELLATION OF HEARING as to Samy Mohammed Hamzeh: Trial scheduled for 8/20/2018 thru 8/31/2018 CANCELLED. (cc: all counsel) (cb) |
| 07/27/2018 | 161 | | RECEIPT FOR PASSPORT − RESTRICTED DOCUMENT (Sealed) as to Samy Mohammed Hamzeh (NOTICE: Parties allowed to view this document may do so by using their e−filing log−in and password.) (lz) |
| 07/27/2018 | 162 | | Minute Entry for Hearing to Set Conditions of Release held on 7/27/2018 before Magistrate Judge William E Duffin as to Samy Mohammed Hamzeh. Today Judge Pepper ordered defendant's release and here before this court to set the conditions of release. Govt in agreement with Pretrial Services recommendation with some additional requests. Defense concurs with Pretrial Services recommendation but not in agreement with some of the requests by the govt. Court sets conditions of release. (Tape #2:19:24 − 2:34:40) (mlm) |
| 07/27/2018 | 163 | | ORDER Setting Conditions of Release signed by Magistrate Judge William E Duffin on 7/27/2018 as to Samy Mohammed Hamzeh (1); O/R Bond. (cc: all counsel) (mlm) |
| 07/27/2018 | 164 | | RECEIPT FOR PASSPORT − RESTRICTED DOCUMENT (Sealed) as to Samy Mohammed Hamzeh (NOTICE: Parties allowed to view this document may do so by using their e−filing log−in and password.) (blr) (Entered: 07/30/2018) |
| 07/27/2018 | 165 | | Audio of Bond Hearing held on 7/27/2018 at 1:04 p.m.; File Size(63.2 MB) (kgw) (Entered: 07/30/2018) |
| 07/27/2018 | 166 | | Minute and Order Entry for proceedings held before Judge Pamela Pepper: Bond Hearing as to Samy Mohammed Hamzeh held on 7/27/2018. Defendant RELEASED under 18 USC §3164, on conditions to be set by Judge Duffin. Defendant's unopposed motion to adjourn 8/20/2018 trial GRANTED; trial REMOVED from the court's hearing calendar. 8/2/2018 hearing scheduled before Judge Duffin to remain on calendar; the court will confer with parties |

| | | | |
|---|---|---|---|
| | | | after that date regarding scheduling. Defendant's unopposed motion for full, verbatim translations of entirety of 29 conversations government plans to use at trial and handful of additional conversations defense plans to use GRANTED. (cb) (Entered: 07/30/2018) |
| 08/02/2018 | 167 | | Minute Entry for proceedings held before Magistrate Judge William E Duffin: In Court Hearing as to Samy Mohammed Hamzeh held on 8/2/2018. Discussion regarding government's progress of transcriptions of the recordings intended to be introduced at trial. In Court Status Hearing set for 9/5/2018 at 10:00 AM in Courtroom 242, 517 E Wisconsin Ave., Milwaukee, WI 53202 before Magistrate Judge William E Duffin. Court makes a speedy trial finding. Time excluded from 8/2/2018 to 9/5/2018. (Tape #11:00:47 – 11:14:36 AM) (lz) |
| 08/06/2018 | 168 | | Audio of Status Conference held on 8/6/2018 at 09:11 a.m.; File Size(17.2 MB) (kgw) |
| 08/06/2018 | 170 | | Court Minutes and Order for proceedings held before Judge Pamela Pepper: Status Conference as to Samy Mohammed Hamzeh held on 8/6/2018. The court ORDERS the time between January 10, 2018 and January 24, 2018 EXCLUDED from the Speedy Trial Act calculations. (kgw) (Entered: 08/10/2018) |
| 08/08/2018 | 169 | | MOTION for Order *Pursuant to Section 4 of the Classified Information Procedures Act and Rule 16(d)(1) of the Federal Rules of Criminal Procedure* by USA as toSamy Mohammed Hamzeh.(Haanstad, Gregory) |
| 08/21/2018 | 171 | | SEALED DOCUMENT. (cc: all counsel) (mlm) |
| 08/28/2018 | 172 | | LETTER *RE/Response to Court's Ex Parte Order (DE #171)* (Albee, Craig) |
| 09/04/2018 | 173 | | NOTICE *Notice of the Defense's Intent to File a Response to the Government's CIPA Filings* by Samy Mohammed Hamzeh (Albee, Craig) |
| 09/04/2018 | 174 | | Third MOTION to Compel *Brady and Rule 16 Material: Intercepted Communications* by Samy Mohammed Hamzeh.(Albee, Craig) |
| 09/05/2018 | 175 | | Minute Entry for In Court Hearing held on 9/5/2018 before Magistrate Judge William E Duffin as to Samy Mohammed Hamzeh. Discussion regarding pending motions and status of translations. In Court Hearing set for 11/6/2018 10:00 AM in Courtroom 242, 517 E Wisconsin Ave., Milwaukee, WI 53202 before Magistrate Judge William E Duffin. Court makes a speedy trial finding. Time excluded from 9/5/18 to 11/6/18. Excludable started. (Tape #10:04:49 – 10:26:36) (mlm) (Entered: 09/06/2018) |
| 09/06/2018 | 176 | | TRANSCRIPT of Bond Review Hearing as to Samy Mohammed Hamzeh held on July 27, 2018, before Judge Pamela Pepper. Court Reporter/Transcriber Richard D. Ehrlich, Contact at (414) 290–2642. Tape Number: July 27, 2018. Transcripts may be purchased using the Transcript Order Form found on our website or viewed at the court public terminal. **NOTICE RE REDACTION OF TRANSCRIPTS:** If necessary, within 7 business days each party shall inform the Court of their intent to redact personal identifiers by filing a Notice of Intent to Redact. Please read the policy located on our website www.wied.uscourts.gov Redaction Statement due 10/1/2018. Redacted Transcript Deadline set for 10/12/2018. Release of Transcript Restriction set |

| | | | |
|---|---|---|---|
| | | | for 12/10/2018. (Ehrlich, Richard) |
| 09/18/2018 | 177 | | Fourth MOTION to Compel *Brady and Rule 16 Material* by Samy Mohammed Hamzeh.(Albee, Craig) |
| 09/18/2018 | 178 | | MOTION for Order *for Pretrial Notice of Government's Intent to Present Certain Evidence at Trial* by Samy Mohammed Hamzeh.(Albee, Craig) |
| 09/19/2018 | 179 | | NOTICE OF ATTORNEY APPEARANCE: Adam H Ptashkin appearing for USA (Ptashkin, Adam) |
| 09/20/2018 | 180 | | Joint MOTION for Extension of Time to File by USA as toSamy Mohammed Hamzeh.(Taibleson, Benjamin) |
| 09/24/2018 | 181 | | TEXT ONLY ORDER signed by Magistrate Judge William E Duffin on 9/24/2018. For good cause, the joint motion for an extension of time (ECF No. 180 ) is granted. The government shall respond no later than September 26, 2018. (cc: all counsel) (lz) |
| 09/26/2018 | 182 | | RESPONSE by USA as to Samy Mohammed Hamzeh re 177 Fourth MOTION to Compel *Brady and Rule 16 Material* (Taibleson, Benjamin) |
| 09/26/2018 | 183 | | RESPONSE by USA as to Samy Mohammed Hamzeh re 178 MOTION for Order *for Pretrial Notice of Government's Intent to Present Certain Evidence at Trial* (Taibleson, Benjamin) |
| 09/26/2018 | 184 | | MOTION for Order *Government's Classified in Camera, Ex Parte Motion for an Order Pursuant to Section 4 of the Classified Information Procedres Act and Rule 16(d)(1) of the Federal Rules of Criminal Procedure* by USA as toSamy Mohammed Hamzeh.(Taibleson, Benjamin) |
| 09/26/2018 | 185 | | MOTION to Produce *Information Submitted Under CIPA* by Samy Mohammed Hamzeh.(Albee, Craig) |
| 10/17/2018 | 186 | | First MOTION to Modify Conditions of Release by USA as toSamy Mohammed Hamzeh.(Ptashkin, Adam) |
| 10/18/2018 | 187 | | ORDER signed by Magistrate Judge William E Duffin on 10/18/2018 denying the government's First Motion to Modify Conditions of Release as to Samy Mohammed Hamzeh. (cc: all counsel) (mlm) |
| 10/23/2018 | | | NOTICE OF HEARING: Ex Parte Hearing (Government Only) Pursuant to the Classified Information Procedures Act is set for 11/19/2018 01:00 PM in Courtroom 242, 517 E Wisconsin Ave., Milwaukee, WI 53202 before Magistrate Judge William E Duffin. (cc: counsel)(mlm) |
| 10/29/2018 | 188 | | Unopposed MOTION to Adjourn *Status Conference* by Samy Mohammed Hamzeh.(Albee, Craig) |
| 10/30/2018 | 189 | | LETTER *RE/Clarification to Motion to Adjourn Status Conference* (Albee, Craig) |
| 11/01/2018 | | | NOTICE OF HEARING as to Samy Mohammed Hamzeh. The In Court Hearing set for 11/6/2018 at 10:00 A.M. is cancelled. Telephonic Status Conference set for 11/9/2018 09:00 AM before Magistrate Judge William E Duffin. The parties shall call the court's conference line at 888–278–0296 and use access code 8322317# to join the call. (cc: all counsel)(mlm) |

| | | | |
|---|---|---|---|
| 11/08/2018 | 190 | | MOTION to Seal Document by Samy Mohammed Hamzeh. (Attachments: # 1 Proposed Order)(Albee, Craig) |
| 11/08/2018 | 191 | | SEALED DOCUMENT  *This document is not available electronically and must be served in paper format upon opposing counsel.* |
| 11/08/2018 | 192 | | MOTION to Seal Document by Samy Mohammed Hamzeh. (Attachments: # 1 Proposed Order)(Albee, Craig) |
| 11/08/2018 | 193 | | SEALED DOCUMENT  *This document is not available electronically and must be served in paper format upon opposing counsel.* |
| 11/08/2018 | 194 | | STATUS REPORT *CONCERNING STATE OF THE TRANSCRIPTS* by Samy Mohammed Hamzeh (Bugni, Joseph) |
| 11/09/2018 | 195 | | Minute Entry for Telephonic Status Conference held on 11/9/2018 before Magistrate Judge William E Duffin as to Samy Mohammed Hamzeh. Spoliation Hearing set for 12/12/2018 01:00 PM in Courtroom 242, 517 E Wisconsin Ave., Milwaukee, WI 53202 before Magistrate Judge William E Duffin. (Tape #9:00:31 – 9:07:45) (mlm) |
| 11/13/2018 | 196 | | SEALED DOCUMENT. (cc: all counsel) (mlm) |
| 11/13/2018 | 197 | | ORDER signed by Magistrate Judge William E Duffin on 11/13/2018 as to Samy Mohammed Hamzeh (1). IT IS THEREFORE ORDERED that Hamzeh's motion to seal (ECF No. 190 ) is granted and Hamzeh's motion (ECF No. 191 ) is filed under seal. IT IS FURTHER ORDERED that Hamzeh's motion for the CI's medical records (ECF No. 191 ) is denied. (cc: all counsel) (mlm) (Entered: 11/14/2018) |
| 11/16/2018 | 198 | | NOTICE OF ATTORNEY APPEARANCE: ~~Adam H Ptashkin appearing for~~ USA is now also represented by Jennifer Burke, Trial Attorney for the US Department of Justice, National Security Division, Counterterrorism Section. (Ptashkin, Adam) Modified on 11/19/2018 (mlm). |
| 12/05/2018 | 199 | | RESPONSE by USA as to Samy Mohammed Hamzeh re 136 MOTION spoliation hearing (Ptashkin, Adam) |
| 12/11/2018 | 200 | | MOTION to Seal Document *Exhibits A – E of Hamzeh's Omnibus Memorandum* by Samy Mohammed Hamzeh. (Attachments: # 1 Proposed Order)(Albee, Craig) |
| 12/11/2018 | 201 | | REPLY TO RESPONSE to Motion by Samy Mohammed Hamzeh re 136 MOTION spoliation hearing (Attachments: # 1 Ex. F)(Albee, Craig) |
| 12/11/2018 | 202 | | SEALED DOCUMENT *This document is not available electronically and must be served in paper format upon opposing counsel.* |
| 12/12/2018 | 203 | | Minute Entry for proceedings held before Magistrate Judge William E Duffin: Spoliation Hearing as to Samy Mohammed Hamzeh held on 12/12/2018. Witnesses sworn. Testimony taken. Exhibits Received. BRIEFING: Motions due by 1/18/2019. Responses due by 1/25/2019. Replies due by 2/8/2019). (NOTICE: Parties allowed to view this document may do so by using their e–filing log–in and password.) (Court Reporter John Schindhelm) (Attachments: # 1 Exhibit List) (mlm) (Entered: 12/13/2018) |
| 12/19/2018 | 204 | | |

| | | | |
|---|---|---|---|
| | | | TRANSCRIPT of IN COURT HEARING as to Samy Mohammed Hamzeh held on 9/5/2018, before Judge William Duffin. Court Reporter/Transcriber John Schindhelm, Contact at www.johnschindhelm.com to order directly... OR. Transcripts may be purchased using the Transcript Order Form found on our website or viewed at the court public terminal. **NOTICE RE REDACTION OF TRANSCRIPTS:** If necessary, within 7 business days each party shall inform the Court of their intent to redact personal identifiers by filing a Notice of Intent to Redact. Please read the policy located on our website www.wied.uscourts.gov Redaction Statement due 1/14/2019. Redacted Transcript Deadline set for 1/25/2019. Release of Transcript Restriction set for 3/22/2019. (Schindhelm, John) |
| 12/19/2018 | 205 | | TRANSCRIPT of SPOLIATION HEARING as to Samy Mohammed Hamzeh held on 12/12/2018, before Judge William Duffin. Court Reporter/Transcriber John Schindhelm, Contact at www.johnschindhelm.com to order directly... OR. Transcripts may be purchased using the Transcript Order Form found on our website or viewed at the court public terminal. **NOTICE RE REDACTION OF TRANSCRIPTS:** If necessary, within 7 business days each party shall inform the Court of their intent to redact personal identifiers by filing a Notice of Intent to Redact. Please read the policy located on our website www.wied.uscourts.gov Redaction Statement due 1/14/2019. Redacted Transcript Deadline set for 1/25/2019. Release of Transcript Restriction set for 3/22/2019. (Schindhelm, John) |
| 01/16/2019 | 206 | | ORDER re Release Status Report signed by Magistrate Judge William E Duffin on 1/16/2019 as to Samy Mohammed Hamzeh. (NOTICE: Parties allowed to view this document may do so by using their e–filing log–in and password.) (cc: all counsel) (mlm) |
| 01/16/2019 | | | NOTICE OF HEARING as to Samy Mohammed Hamzeh. Status Conference re: Conditions of Release set for 1/30/2019 09:00 AM in Courtroom 242, 517 E Wisconsin Ave., Milwaukee, WI 53202 before Magistrate Judge William E Duffin. Defendant to be present at the hearing. (cc: all counsel)(mlm) |
| 01/18/2019 | 207 | | Unopposed MOTION for Extension of Time to File *Spoliation Motions* by Samy Mohammed Hamzeh.(Albee, Craig) |
| 01/22/2019 | 208 | | TEXT ONLY ORDER: For good cause, the motion for an extension of time (ECF No. 207 ) is granted. Motions due by 1/25/2019. Responses due by 2/1/2019. Replies due by 2/15/2019. Signed by Magistrate Judge William E Duffin on 1/22/2019 (cc: all counsel) (mlm) |
| 01/25/2019 | 209 | | Fifth MOTION to Compel *Brady and Rule 16 Materials* by Samy Mohammed Hamzeh.(Albee, Craig) |
| 01/25/2019 | 210 | | MOTION to Seal Document by Samy Mohammed Hamzeh. (Attachments: # 1 Text of Proposed Order)(Albee, Craig) |
| 01/25/2019 | 211 | | SEALED DOCUMENT This document is not available electronically and must be served in paper format upon opposing counsel. |
| 01/29/2019 | | | NOTICE OF HEARING as to Samy Mohammed Hamzeh. Status Conference re Conditions of Release set for 1/30/2019 at 9:00 AM **HAS BEEN RESCHEDULED TO** 2/1/2019 10:00 AM in Courtroom 242, 517 E Wisconsin Ave., Milwaukee, WI 53202 before Magistrate Judge William E |

| | | | |
|---|---|---|---|
| | | | Duffin. (cc: all counsel)(mlm) |
| 02/01/2019 | 212 | | ORAL MOTION to Modify Conditions of Release based on Pretrial Services Release Status Report and Status Conference Hearing (ECF Nos. 206 , 212 .) re: Samy Mohammed Hamzeh.(mlm) |
| 02/01/2019 | 213 | | Minute Entry for Status Conference re: Conditions of Release held on 2/1/2019 before Magistrate Judge William E Duffin. Defendant requesting conditions of release be reduced to curfew status. Government objects. Court statements. Court denies motion. Defense to file one composite motion of all remaining pretrial/discovery issues by 2/15/2019. Government's response due 3/1/2019. Any replies due by 3/8/2019. (Tape #10:01:38 – 10:19:16.) (mlm) |
| 02/15/2019 | 214 | | MOTION for Discovery by Samy Mohammed Hamzeh.(Albee, Craig) |
| 02/15/2019 | 215 | | MOTION to Seal Document by Samy Mohammed Hamzeh. (Attachments: # 1 Proposed Order)(Albee, Craig) |
| 02/15/2019 | 216 | | SEALED DOCUMENT This document is not available electronically and must be served in paper format upon opposing counsel. |
| 03/01/2019 | 217 | | RESPONSE by USA as to Samy Mohammed Hamzeh re 214 MOTION for Discovery (Taibleson, Benjamin) |
| 03/08/2019 | 218 | | REPLY TO RESPONSE to Motion by Samy Mohammed Hamzeh re 214 MOTION for Discovery (Albee, Craig) |
| 03/25/2019 | 219 | | ORDER ON THE DEFENDANT'S DISCOVERY MOTIONS signed by Magistrate Judge William E Duffin on 3/25/2019. IT IS THEREFORE ORDERED that the following motions are dismissed as moot: Motion to Supplement Record Regarding Second Brady Motion (ECF No. 158 ); Third Motion to Compel Brady and Rule 16 Material: Intercepted Communications (ECF No. 174 ); Fourth Motion to Compel Brady and Rule 16 Material (ECF No. 177 ); Motion for Pretrial Notice of Government's Intent to Present Certain Evidence at Trial (ECF No. 178 ); Unopposed Motion to Adjourn Status Conference (ECF No. 188 ); Fifth Motion to Compel Brady and Rule 16 Material (ECF No. 209). IT IS FURTHER ORDERED that Hamzeh's motions to seal (ECF Nos. 200 , 210 , 215 ) are granted. IT IS FURTHER ORDERED that Hamzeh's "Superseding Discovery Motion" (ECF No. 214 ) is granted in part and denied in part. If either party seeks to introduce at trial any evidence obtained by use of pole cameras or any data obtained from a post–arrest search of Hamzeh's mobile phone, MacBook laptop, or PlayStation, the party shall identify the evidence not less than 45 days before trial. Aside from the matters resolved under CIPA, Hamzeh's motion is denied in all other respects. IT IS FURTHER ORDERED that Hamzeh's "Motion to Produce Information Submitted Under CIPA" (ECF No. 185 ) is denied. (cc: all counsel) (mlm) |
| 03/25/2019 | 220 | | ORDER signed by Magistrate Judge William E Duffin on 3/25/2019 re: the government's 169 Motion for Order Pursuant to Section 4 of the Classified Information Procedures Act and Rule 16(d)(1) of the Federal Rules of Criminal Procedure as to Samy Mohammed Hamzeh (1). (cc: all counsel) (mlm) |
| 03/25/2019 | 221 | | |

| | | | |
|---|---|---|---|
| | | | ORDER signed by Magistrate Judge William E Duffin on 2/25/2019, re: government's <u>184</u> Motion for Order Government's Classified in Camera, Ex Parte Motion for an Order Pursuant to Section 4 of the Classified Information Procedures Act and Rule 16(d)(1) of the Federal Rules of Criminal Procedure as to Samy Mohammed Hamzeh (1). (cc: all counsel) (mlm) |
| 03/26/2019 | | | Case as to Samy Mohammed Hamzeh no longer referred to Magistrate Judge William E Duffin. (mlm) |
| 03/27/2019 | <u>222</u> | | First MOTION To Set a Trial Date by USA as to Samy Mohammed Hamzeh.(Ptashkin, Adam) |
| 03/28/2019 | | | NOTICE OF HEARING as to Samy Mohammed Hamzeh. Status Conference (COUNSEL ONLY) set for 4/8/2019 09:00 AM By Telephone before Judge Pamela Pepper. Parties wishing to appear by phone may do so by calling the courts conference line at 888−557−8511 and using the access code 4893665#. (cc: all counsel)(kgw) |
| 04/08/2019 | <u>223</u> | | Audio of Scheduling Conference held on 04/08/2019 at 9:03 a.m.; File Size(20.4 MB) (kgw) |
| 04/08/2019 | <u>225</u> | | Court Minutes and Order for proceedings held before Judge Pamela Pepper: Status Conference as to Samy Mohammed Hamzeh held on 4/8/2019. (Motion to Preclude a Defense of Entrapment or if the Defendant Wishes to File an Affirmative Motion for Leave to Present the Defense and for an Entrapment Instruction due by 8/21/2019 with Responses due by 9/4/2019 and Replies due by 9/110/2019; Motions in limine due by 9/13/2019 with Responses due by 9/20/2019. Final Pretrial Conference set for 9/25/2019 09:30 AM in Courtroom 222, 517 E. Wisconsin Ave., Milwaukee, WI 53202 before Judge Pamela Pepper. Status Conference to address last minute issues ahead of trial set for 10/17/2019 10:30 AM in Courtroom 222, 517 E. Wisconsin Ave., Milwaukee, WI 53202 before Judge Pamela Pepper.) Jury Trial set for 10/21/2019 08:30 AM in Courtroom 222, 517 E. Wisconsin Ave., Milwaukee, WI 53202 before Judge Pamela Pepper. (kgw) (Entered: 04/12/2019) |
| 04/10/2019 | <u>224</u> | | OBJECTIONS by Samy Mohammed Hamzeh. *RE/Consolidated Objections to Magistrate Judge's Discovery and CIPA Orders* (Albee, Craig) |
| 04/22/2019 | <u>226</u> | | First MOTION for Extension of Time to File *Response* by USA as toSamy Mohammed Hamzeh.(Taibleson, Benjamin) |
| 04/23/2019 | 227 | | TEXT ONLY ORDER signed by Judge Pamela Pepper on 4/23/2019 re <u>226</u> the government's First Motion for Extension of Time to File Response. The court **GRANTS** the government's unopposed motion for an extension of time. The court **ORDERS** that the time for the government to file its response to the defendant's objections is **EXTENDED** until the end of the day on May 1, 2019. The time for the defendant to file a reply brief, if he chooses to do so, is **EXTENDED** until the end of the day on May 8, 2019. **Note: there is no document associated with this text only order.** (cc: all counsel) (cb) |
| 05/01/2019 | <u>228</u> | | RESPONSE by USA as to Samy Mohammed Hamzeh *'s Objections To The Magistrate Judge's Discovery and CIPA Orders* (Taibleson, Benjamin) |
| 05/01/2019 | <u>229</u> | | RESPONSE by USA as to Samy Mohammed Hamzeh *'s Objections To The Magistrate Judge's Order* (Taibleson, Benjamin) |

| | | | |
|---|---|---|---|
| 05/08/2019 | 230 | | REPLY by Samy Mohammed Hamzeh *in support of objections to the Magistrate Judge's discovery and CIPA orders* (Bugni, Joseph) |
| 06/05/2019 | | | EXHIBITS received. (cms) |
| 07/31/2019 | 231 | | Unopposed MOTION to Set Pretrial Dates by Samy Mohammed Hamzeh.(Albee, Craig) |
| 08/02/2019 | 232 | | TEXT ONLY ORDER signed by Judge Pamela Pepper on 8/2/2019 re 231 Motion to Set Pretrial Dates. The court **GRANTS** the defendant's unopposed motion to set pretrial dates. The court **ORDERS** that the parties will disclose experts no later than the end of the day on September 4, 2019; the parties will file their joint pretrial report no later than the end of the day on September 20, 2019; and the government will turn over any grand jury transcripts that must be disclosed no later than the end of the day on October 14, 2019. The court will issue a separate order addressing the juror questionnaire proposal. **Note: there is no document associated with this text only order.** (cc: all counsel) (cb) |
| 08/06/2019 | 233 | | ORDER re Release Status Report as to Samy Mohammed Hamzeh signed by Magistrate Judge William E Duffin on 8/6/2019 issuing a Notice to Appear for a bond review hearing.  (NOTICE: Parties allowed to view this document may do so by using their e–filing log–in and password.) (cc: all counsel) (lz) |
| 08/08/2019 | | | NOTICE OF HEARING as to Samy Mohammed Hamzeh. Hearing to Review Conditions of Release set for 8/23/2019 01:30 PM in Courtroom 242, 517 E Wisconsin Ave., Milwaukee, WI 53202 before Magistrate Judge William E Duffin. (cc: all counsel)(mlm) |
| 08/15/2019 | 234 | | First MOTION in Limine *: Entrapment* by Samy Mohammed Hamzeh.(Albee, Craig) |
| 08/16/2019 | | | Case as to Samy Mohammed Hamzeh Referred to Magistrate Judge William E Duffin. (mlm) |
| 08/16/2019 | 235 | | MOTION to Seal Document by Samy Mohammed Hamzeh. (Attachments: # 1 Text of Proposed Order)(Albee, Craig) |
| 08/16/2019 | 236 | | SEALED DOCUMENT This document is not available electronically and must be served in paper format upon opposing counsel. |
| 08/19/2019 | 237 | | SEALED DOCUMENT. (cc: all counsel) (mlm) (mlm). |
| 08/21/2019 | 238 | | MOTION to Seal Document by Samy Mohammed Hamzeh. Modified on 8/22/2019 (blr). |
| 08/21/2019 | 239 | | SEALED DOCUMENT This document is not available electronically and must be served in paper format upon opposing counsel. |
| 08/21/2019 | 240 | | MOTION to Seal Document by Samy Mohammed Hamzeh. Modified on 8/22/2019 (blr). |
| 08/21/2019 | 241 | | SEALED DOCUMENT This document is not available electronically and must be served in paper format upon opposing counsel. Modified on 8/22/2019 (blr). |
| 08/22/2019 | 242 | | |

| | | | |
|---|---|---|---|
| | | | ORDER signed by Judge Pamela Pepper on 8/22/2019 requiring defendant to file revised proposed jury questionnaire. (cc: all counsel) (cb) |
| 08/22/2019 | 243 | | BRIEF by Samy Mohammed Hamzeh *Memorandum in Support of Modification of Bond* (Bugni, Joseph) |
| 08/22/2019 | 244 | | Additional MOTION to Compel *Sixth Motion to Compel Re: Steve* by Samy Mohammed Hamzeh.(Bugni, Joseph) |
| 08/23/2019 | 245 | | SEALED DOCUMENT. (mlm) (mlm). |
| 08/23/2019 | 246 | | Minute Entry for Hearing to Review Conditions of Release held on 8/23/2019 before Magistrate Judge William E Duffin as to Samy Mohammed Hamzeh. Court will follow Pretrial Services recommendation and reduce Mr. Hamzeh to curfew status. (Tape #1:29:19–1:43:24) (mlm) |
| 08/28/2019 | 247 | | SEALED DOCUMENT.(mlm) (mlm). |
| 08/29/2019 | 248 | | RESPONSE by USA as to Samy Mohammed Hamzeh re 244 Additional MOTION to Compel *Sixth Motion to Compel Re: Steve* (Taibleson, Benjamin) |
| 08/30/2019 | 249 | | MOTION to Seal Document by Samy Mohammed Hamzeh. (Attachments: # 1 Proposed Order)(Bugni, Joseph) |
| 08/30/2019 | 250 | | SEALED DOCUMENT  This document is not available electronically and must be served in paper format upon opposing counsel. |
| 08/30/2019 | 251 | | LETTER *RE/Proposed Juror Questionnaire* (Bugni, Joseph) |
| 08/30/2019 | 252 | | PROPOSED VOIR DIRE by Samy Mohammed Hamzeh. (Bugni, Joseph) |
| 09/03/2019 | 253 | | SEALED DOCUMENT. (mlm) (mlm). |
| 09/03/2019 | 254 | | REPLY TO RESPONSE to Motion by Samy Mohammed Hamzeh re 244 Additional MOTION to Compel *Sixth Motion to Compel Re: Steve* (Albee, Craig) |
| 09/04/2019 | 255 | | RESPONSE by USA as to Samy Mohammed Hamzeh re 234 First MOTION in Limine *: Entrapment* (Taibleson, Benjamin) |
| 09/04/2019 | 256 | | WITNESS LIST by Samy Mohammed Hamzeh. (Attachments: # 1 Ex. A – CV Dr. Robbins, # 2 Ex. B – CV Dr. Sageman)(Albee, Craig) |
| 09/04/2019 | 257 | | Second MOTION in Limine *: Attorney Conducted Voir Dire* by Samy Mohammed Hamzeh.(Albee, Craig) |
| 09/04/2019 | 258 | | MOTION to Seal Document by USA as toSamy Mohammed Hamzeh. (Attachments: # 1 Text of Proposed Order)(Ptashkin, Adam) |
| 09/04/2019 | 259 | | RESTRICTED DOCUMENT NOTICE: Parties allowed to view this document may do so by using their e–filing log–in and password. Modified on 9/5/2019 (blr). |
| 09/05/2019 | 260 | | TEXT ONLY ORDER signed by Judge Pamela Pepper on 9/5/2019 RE: 258 Motion to Seal Document as to Samy Mohammed Hamzeh (1). The court **GRANTS** the ~~defendant's~~ government's motion to seal and **ORDERS** that the document at Dkt. No. 259 is restricted to the parties until further order of the court. **NOTE: There is no document associated with this text–only order.** |

| | | | |
|---|---|---|---|
| | | | (cc: all counsel) (kgw) . |
| 09/05/2019 | 261 | | MOTION to Seal Document by Samy Mohammed Hamzeh. (Attachments: # 1 Proposed Order)(Bugni, Joseph) |
| 09/05/2019 | 262 | | SEALED DOCUMENT This document is not available electronically and must be served in paper format upon opposing counsel. |
| 09/06/2019 | 263 | | ORDER Denying Defendant's Sixth Motion to Compel (ECF No. 244 ). Signed by Magistrate Judge William E Duffin on 9/6/2019. (cc: all counsel) (mlm) |
| 09/06/2019 | 264 | | TEXT ONLY ORDER signed by Judge Pamela Pepper on 9/6/2019 as to Samy Mohammed Hamzeh. On August 30, 2019 the defendant filed a revised proposed juror questionnaire to fit within the six–page limit allowed for juror questionnaires. Dkt. No. 252. The court **ORDERS** that the government file any objections to the revised questionnaire by the end of the day on September 10, 2019. **Note: there is no document associated with this text only order.** (cc: all counsel) (cb) |
| 09/06/2019 | 265 | | RESTRICTED BRIEF by Samy Mohammed Hamzeh *In Support of Objection (R.224)* (Bugni, Joseph) NOTICE: Parties allowed to view this document may do so by using their e–filing log–in and password. Modified restriction pursuant to #303 on 10/3/2019 (blr). |
| 09/06/2019 | 266 | | MOTION to Seal Document by Samy Mohammed Hamzeh. (Attachments: # 1 Proposed Order)(Bugni, Joseph) |
| 09/06/2019 | 267 | | SEALED DOCUMENT This document is not available electronically and must be served in paper format upon opposing counsel. |
| 09/06/2019 | 268 | | BRIEF by USA as to Samy Mohammed Hamzeh (Ptashkin, Adam) |
| 09/09/2019 | 269 | | RESPONSE by USA as to Samy Mohammed Hamzeh re 257 Second MOTION in Limine *: Attorney Conducted Voir Dire* (Ptashkin, Adam) |
| 09/11/2019 | 270 | | REPLY TO RESPONSE to Motion by Samy Mohammed Hamzeh re 234 First MOTION in Limine *: Entrapment* (Albee, Craig) |
| 09/12/2019 | 271 | | SEALED DOCUMENT. (mlm) (mlm). |
| 09/13/2019 | 272 | | MOTION in Limine *regarding Hamzeh's Recorded Statements* by USA as toSamy Mohammed Hamzeh. (Attachments: # 1 Exhibit A – Hamzeh Recorded Statement Excerpts)(Taibleson, Benjamin) |
| 09/13/2019 | 273 | | MOTION to Seal Document by USA as toSamy Mohammed Hamzeh. (Attachments: # 1 Text of Proposed Order)(Taibleson, Benjamin) |
| 09/13/2019 | 274 | | SEALED DOCUMENT This document is not available electronically and must be served in paper format upon opposing counsel. (Additional attachment(s) added on 9/13/2019: # 1 Sealed Document – **(DO NOT DISCARD – HARD COPY ONLY)** (lz). |
| 09/13/2019 | 275 | | MOTION to Compel *Reciprocal Discovery and Motion in Limine to Exclude Evidence not Produced in Discovery* by USA as toSamy Mohammed Hamzeh.(Taibleson, Benjamin). Added MOTION in Limine on 9/16/2019 (blr). |

| 09/13/2019 | 276 | | MOTION in Limine *Consolidated Motions in Limine* by USA as toSamy Mohammed Hamzeh.(Ptashkin, Adam) |
|---|---|---|---|
| 09/13/2019 | 277 | | Third MOTION in Limine *limiting statements and arguments* by Samy Mohammed Hamzeh.(Albee, Craig) |
| 09/13/2019 | 278 | | Fourth MOTION in Limine *to exclude Dr. Levitt's testimony* by Samy Mohammed Hamzeh.(Albee, Craig) |
| 09/16/2019 | 279 | | RESTRICTED BRIEF by Samy Mohammed Hamzeh *in Support of Objections (R.224)* (Albee, Craig) Modified on 9/19/2019 (lz). NOTICE: Parties allowed to view this document may do so by using their e−filing log−in and password. Modified restriction pursuant to #304 on 10/3/2019 (blr). |
| 09/16/2019 | 280 | | REPLY TO RESPONSE to Motion by Samy Mohammed Hamzeh re 257 Second MOTION in Limine *: Attorney Conducted Voir Dire and jury questionnaire* (Albee, Craig) |
| 09/17/2019 | 281 | | BRIEF by USA as to Samy Mohammed Hamzeh (Taibleson, Benjamin) |
| 09/18/2019 | 282 | | MOTION to Seal Document by USA as toSamy Mohammed Hamzeh. (Attachments: # 1 Text of Proposed Order proposed order)(Ptashkin, Adam) |
| 09/18/2019 | 283 | | Juror Questionnaire as to Samy Mohammed Hamzeh. The questionnaire will be mailed to prospective jurors on September 23, 2019. At the final pretrial conference the court will discuss with the parties its selection of the final form of the questions included in the questionnaire.(cb) |
| 09/20/2019 | 284 | | RESPONSE by USA as to Samy Mohammed Hamzeh re 278 Fourth MOTION in Limine *to exclude Dr. Levitt's testimony* (Ptashkin, Adam) |
| 09/20/2019 | 285 | | RESPONSE by USA as to Samy Mohammed Hamzeh re 277 Third MOTION in Limine *limiting statements and arguments* (Attachments: # 1 Exhibit A)(Ptashkin, Adam) |
| 09/20/2019 | 286 | | REPLY by Samy Mohammed Hamzeh *in Support of the Supplemental Objections (R.265, 279) to the Magistrate Judge's CIPA Ruling (R.224)* (Albee, Craig) |
| 09/20/2019 | 287 | | OBJECTIONS by Samy Mohammed Hamzeh. *of Magistrate's Denial of the Sixth Motion to Compel* (Albee, Craig) |
| 09/20/2019 | 288 | | TEXT ONLY ORDER signed by Judge Pamela Pepper on 09/20/2019 as to Samy Mohammed Hamzeh re 266 MOTION to Seal Document filed by Samy Mohammed Hamzeh: The court **GRANTS** the defendant's motion to restrict the document at Dkt. No. 267, and **ORDERS** that the document at Dkt. No. 267 is restricted to viewing by the court and the parties until further order of the court. **NOTE: There is no document associated with this text−only order.** (cc: all counsel) (Pepper, Pamela) |
| 09/20/2019 | 289 | | MOTION to Seal Document by USA as toSamy Mohammed Hamzeh. (Attachments: # 1 Text of Proposed Order)(Ptashkin, Adam) |
| 09/20/2019 | 290 | | RESTRICTED DOCUMENT NOTICE: Parties allowed to view this document may do so by using their e−filing log−in and password. Modified 9/23/2019 (blr). |

| | | | |
|---|---|---|---|
| 09/20/2019 | 291 | | RESPONSE by Samy Mohammed Hamzeh re 275 MOTION to Compel *Reciprocal Discovery and Motion in Limine to Exclude Evidence not Produced in Discovery* MOTION in Limine, 272 MOTION in Limine *regarding Hamzeh's Recorded Statements*, 276 MOTION in Limine *Consolidated Motions in Limine* (Albee, Craig) |
| 09/23/2019 | 292 | | TEXT ONLY ORDER signed by Judge Pamela Pepper on 9/23/2019 as to Samy Mohammed Hamzeh 289 Motion to Seal Document as to Samy Mohammed Hamzeh: The court **GRANTS** the defendant's motion to restrict the document at Dkt. No. 290, and **ORDERS** that the document at Dkt. No. 290 is restricted to viewing by the court and the parties until further order of the court. **NOTE: There is no document associated with this text–only order.** (cc: all counsel) (kgw) |
| 09/23/2019 | 293 | | Unopposed MOTION to Continue *Pretrial Conference* by Samy Mohammed Hamzeh.(Bugni, Joseph) |
| 09/23/2019 | 294 | | TEXT ONLY ORDER signed by Judge Pamela Pepper on 9/23/2019 re 293 Motion to Continue. The court **GRANTS** the defendant's unopposed motion to continue the final pretrial conference. The court **ORDERS** that the final pretrial conference is **re–set for 9/27/2019 at 9:30 AM** in Courtroom 222, 517 E. Wisconsin Ave., Milwaukee, WI before Judge Pamela Pepper. **Note: there is no document associated with this text only order.** (cc: all counsel) (cb) |
| 09/24/2019 | 295 | | ORDER signed by Judge Pamela Pepper on 9/24/2019 GRANTING 234 defendant's motion *in limine* requesting leave to present entrapment defense. (cc: all counsel) (cb) |
| 09/24/2019 | 296 | | RESPONSE by USA as to Samy Mohammed Hamzeh *'s Objection to the Magistrate Judge's Denial of Hamzeh's Sixth Motion to Compel* (Taibleson, Benjamin) |
| 09/25/2019 | 297 | | RESPONSE by USA as to Samy Mohammed Hamzeh *Response to Defendants Proposed Non–Pattern Jury Instructions* (Ptashkin, Adam) |
| 09/26/2019 | 298 | | REPLY TO RESPONSE to Motion by USA as to Samy Mohammed Hamzeh re 275 MOTION to Compel *Reciprocal Discovery and Motion in Limine to Exclude Evidence not Produced in Discovery* MOTION in Limine, 272 MOTION in Limine *regarding Hamzeh's Recorded Statements*, 276 MOTION in Limine *Consolidated Motions in Limine* (Taibleson, Benjamin) |
| 09/26/2019 | 299 | | Joint STIPULATION by USA by Samy Mohammed Hamzeh (Taibleson, Benjamin) |
| 09/27/2019 | 307 | | Court Minutes and Order for proceedings held before Judge Pamela Pepper Final Pretrial Conference as to Samy Mohammed Hamzeh held on 9/27/2019: granting in part and denying in part 257 Motion in Limine as to Samy Mohammed Hamzeh (1); deferring ruling on 272 Motion in Limine as to Samy Mohammed Hamzeh (1); denying 275 Motion to Compel as to Samy Mohammed Hamzeh (1); deferring ruling on 275 Motion in Limine; granting in part, denying in part and deferring ruling on 276 Motions in Limine as to Samy Mohammed Hamzeh (1); granting in part and deferring ruling on 277 Motions in Limine as to Samy Mohammed Hamzeh (1); deferring ruling on 278 Motion in Limine as to Samy Mohammed Hamzeh (1). The court approves the 299 joint stipulation. The court orders the defendant to file the |

| | | | |
|---|---|---|---|
| | | | excerpts of text messages and phone conversations by the end of the day on October 4, 2019. Please see the minute order for details on the rulings. (kgw) (Entered: 10/04/2019) |
| 09/30/2019 | 300 | | BRIEF by USA as to Samy Mohammed Hamzeh *regarding the relevance of evidence of positional predisposition to commit the charged crime* (Taibleson, Benjamin) |
| 10/01/2019 | 301 | | RESPONSE by Samy Mohammed Hamzeh *to Government's Brief Regarding Relevance of Evidence of Positional Predisposition R.300* (Albee, Craig) |
| 10/02/2019 | 302 | | BRIEF by USA as to Samy Mohammed Hamzeh *Regarding the Admissibility of Hamzehs Statements About Acquiring Weapons Abroad; Israel and Hamas; ISIS; and Dr. Levitts Testimony* (Taibleson, Benjamin) |
| 10/02/2019 | 303 | | TEXT ONLY ORDER signed by Judge Pamela Pepper on 10/02/2019 as to Samy Mohammed Hamzeh re 273 MOTION to Seal Document filed by USA: The court **GRANTS** the government's motion to restrict. The court **ORDERS** that the document at Dkt. No. 265 is **RESTRICTED** to viewing by the court and the parties until further order of the court. **NOTE: There is no document associated with this text−only order.** (cc: all counsel) (Pepper, Pamela) |
| 10/02/2019 | 304 | | TEXT ONLY ORDER signed by Judge Pamela Pepper on 10/02/2019 as to Samy Mohammed Hamzeh re 282 MOTION to Seal Document filed by USA: The court **GRANTS** the government's motion to restrict. The court **ORDERS** that the document at Dkt. No. 279 is **RESTRICTED** to viewing by the parties and the court until further order of the court. **NOTE: There is no document associated with this text−only order.** (cc: all counsel) (Pepper, Pamela) |
| 10/02/2019 | 305 | | MOTION for Leave to File *a Response to the Government's Brief R.302* by Samy Mohammed Hamzeh.(Albee, Craig) |
| 10/03/2019 | | | NOTICE of Electronic Filing Error re 305 MOTION for Leave to File *a Response to the Government's Brief R.302* filed by Samy Mohammed Hamzeh ; All documents should contain the s/signature of the attorney who files the document. This document does not need to be re−filed; Please refer to the user manuals on electronic case filing found at www.wied.uscourts.gov (blr) |
| 10/03/2019 | 306 | | TEXT ONLY ORDER signed by Judge Pamela Pepper on 10/03/2019 as to Samy Mohammed Hamzeh re 305 MOTION for Leave to File *a Response to the Government's Brief R.302* filed by Samy Mohammed Hamzeh: The court **GRANTS** the defendant's motion for leave to file a responsive brief, and **ORDERS** that the defendant may file a brief responding to Dkt. No. 302 by the end of the day on October 7, 2019. **NOTE: There is no document associated with this text−only order.** (cc: all counsel) (Pepper, Pamela) |
| 10/04/2019 | 308 | | BRIEF by USA as to Samy Mohammed Hamzeh *Regarding the Expert Testimony of ATF Special Agent Lindeman* (Ptashkin, Adam) |
| 10/04/2019 | 309 | | MOTION to Seal Document *Exhibits* by Samy Mohammed Hamzeh. (Attachments: # 1 Proposed Order)(Albee, Craig) |
| 10/04/2019 | 310 | | RESPONSE by Samy Mohammed Hamzeh *Supplemental Response in Support of Defense's Proposed Transcripts* (Albee, Craig) |
| 10/04/2019 | 311 | | |

| | | | |
|---|---|---|---|
| | | | RESTRICTED DOCUMENT NOTICE: Parties allowed to view this document may do so by using their e–filing log–in and password. Modified restriction pursuant to ECF No. 319 on 10/11/2019 (blr). |
| 10/07/2019 | 312 | | MOTION to Seal Document by USA as toSamy Mohammed Hamzeh. (Attachments: # 1 Text of Proposed Order)(Ptashkin, Adam) |
| 10/07/2019 | 313 | | RESTRICTED DOCUMENT NOTICE: Parties allowed to view this document may do so by using their e–filing log–in and password. Modified restriction pursuant ECF No. 320 on 10/11/2019 (blr). |
| 10/07/2019 | 314 | | RESPONSE by Samy Mohammed Hamzeh *to Government's Brief R. 302* (Attachments: # 1 Ex. A)(Bugni, Joseph) |
| 10/08/2019 | 315 | | REPLY by USA as to Samy Mohammed Hamzeh *Reply Regarding Recorded Statements* (Taibleson, Benjamin) |
| 10/09/2019 | 316 | | TRANSCRIPT of Final Pretrial Conference as to Samy Mohammed Hamzeh held on September 27, 2019, before Judge Pamela Pepper. Court Reporter/Transcriber Susan Armbruster, Contact at 414–290–2641. Transcripts may be purchased using the Transcript Order Form found on our website or viewed at the court public terminal. **NOTICE RE REDACTION OF TRANSCRIPTS:** If necessary, within 7 business days each party shall inform the Court of their intent to redact personal identifiers by filing a Notice of Intent to Redact. Please read the policy located on our website www.wied.uscourts.gov Redaction Statement due 11/4/2019. Redacted Transcript Deadline set for 11/15/2019. Release of Transcript Restriction set for 1/10/2020. (Armbruster, Susan) |
| 10/09/2019 | 317 | | MOTION for Leave to File *a Sur–Reply to Government's Brief Concerning Hamzeh's Statements (R.315)* by Samy Mohammed Hamzeh.(Albee, Craig) |
| 10/10/2019 | 318 | | ORDER as to Samy Mohammed Hamzeh signed by Judge Pamela Pepper on 10/10/2019. 224 Defendant's objections to Judge Duffin's discovery and CIPA orders OVERRULED. (cc: all counsel) (cb) |
| 10/10/2019 | 319 | | TEXT ONLY ORDER signed by Judge Pamela Pepper on 10/10/2019 as to Samy Mohammed Hamzeh re 309 MOTION to Seal Document *Exhibits* filed by Samy Mohammed Hamzeh: The court **GRANTS** the defendant's motion to restrict. The court **ORDERS** that the clerk's office shall **RESTRICT** the documents at Dkt. No. 311 to the parties, counsel and the court until further order of the court. **NOTE: There is no document associated with this text–only order.** (cc: all counsel) (Pepper, Pamela) |
| 10/10/2019 | 320 | | TEXT ONLY ORDER signed by Judge Pamela Pepper on 10/10/2019 as to Samy Mohammed Hamzeh re 312 MOTION to Seal Document filed by USA: The court **GRANTS** the government's motion to restrict. The court **ORDERS** that the clerk's office shall **RESTRICT** the document at Dkt. No. 313 to the parties, counsel and the court until further order of the court. **NOTE: There is no document associated with this text–only order.** (cc: all counsel) (Pepper, Pamela) |
| 10/10/2019 | 321 | | TEXT ONLY ORDER signed by Judge Pamela Pepper on 10/10/2019 as to Samy Mohammed Hamzeh re 317 MOTION for Leave to File *a Sur–Reply to Government's Brief Concerning Hamzeh's Statements (R.315)* filed by Samy |

| | | | |
|---|---|---|---|
| | | | Mohammed Hamzeh: At 4:11 p.m. on October 9, 2019, the defense filed this motion for leave to file a sur–reply in support of the statements from the defendant and the confidential human sources that he seeks to have admitted at trial. The defendant proposed to file the sur–reply by the next day––October 10, 2019. The court does not receive electronic notifications whenever a party files a motion on the docket; the court learns of motions when it reviews the docket activity report the following day. The defendant didn't contact the court to notify it that he had filed this motion, so the court did not become aware of it until mid–morning on October 10, 2019. In future, if a party files something that the parties believes should receive immediate attention, it would be helpful if the party gave the court a courtesy call. At any rate, the court **GRANTS** the defendant's motion for leave to file a sur–reply, and **ORDERS** that the defendant file his sur–reply as soon as possible. **NOTE: There is no document associated with this text–only order.** (cc: all counsel) (Pepper, Pamela) |
| 10/10/2019 | 322 | | SUR–REPLY by Samy Mohammed Hamzeh *to Government's Brief Concerning Hamzeh's Statements (R.315)* (Albee, Craig) |
| 10/10/2019 | 323 | | MOTION to Seal Document by Samy Mohammed Hamzeh. (Attachments: # 1 Text of Proposed Order)(Albee, Craig) |
| 10/10/2019 | 324 | | RESTRICTED DOCUMENT NOTICE: Parties allowed to view this document may do so by using their e–filing log–in and password. Modified restriction level pursuant to ECF 340 on 10/16/2019 (blr). |
| 10/14/2019 | 325 | | MOTION to Seal Document by Samy Mohammed Hamzeh. (Attachments: # 1 Text of Proposed Order)(Albee, Craig) |
| 10/14/2019 | 326 | | RESTRICTED DOCUMENT NOTICE: Parties allowed to view this document may do so by using their e–filing log–in and password. Modified restriction level pursuant to ECF 341 on 10/16/2019 (blr). |
| 10/14/2019 | 327 | | Unopposed MOTION to Reschedule Status Conference by Samy Mohammed Hamzeh.(Albee, Craig) |
| 10/14/2019 | 328 | | MOTION to Seal Document by USA as toSamy Mohammed Hamzeh. (Attachments: # 1 Text of Proposed Order)(Ptashkin, Adam) |
| 10/14/2019 | 329 | | SEALED DOCUMENT This document is not available electronically and must be served in paper format upon opposing counsel. |
| 10/14/2019 | 330 | | MOTION in Limine *: Post Arrest Statements* by Samy Mohammed Hamzeh.(Albee, Craig) |
| 10/14/2019 | 331 | | MOTION to Seal Document by Samy Mohammed Hamzeh. (Attachments: # 1 Text of Proposed Order)(Albee, Craig) |
| 10/14/2019 | 332 | | SEALED DOCUMENT This document is not available electronically and must be served in paper format upon opposing counsel. |
| 10/15/2019 | 333 | | ORDER signed by Judge Pamela Pepper on 10/15/2019 GRANTING defendant's motion *in limine* VI. Dkt. No. 277 at 18. (cc: all counsel) (cb) |
| 10/15/2019 | 334 | | NOTICE by Samy Mohammed Hamzeh (Bugni, Joseph) |
| 10/15/2019 | | | |

| | | | |
|---|---|---|---|
| | | | NOTICE OF HEARING as to Samy Mohammed Hamzeh. Status Conference (COUNSEL ONLY) set for 10/16/2019 03:00 PM in Courtroom 222, 517 E. Wisconsin Ave., Milwaukee, WI 53202 before Judge Pamela Pepper. (This hearing was originally scheduled for 10/17/2019 but rescheduled to 10/16/2019 at 3:00 p.m. by agreement of the parties.) (cc: all counsel)(kgw) |
| 10/15/2019 | 335 | | TEXT ONLY ORDER signed by Judge Pamela Pepper on 10/15/2019 as to Samy Mohammed Hamzeh (1). The court **GRANTS** the 327 Motion To Reschedule Status Conference. The status conference scheduled for 10/17/2019 has been rescheduled to 10/16/2019 at 3:00 p.m. in Room 222. **Note: There is no document associated with this text only order.** (cc: all counsel) (kgw) |
| 10/15/2019 | 336 | | RESPONSE by USA as to Samy Mohammed Hamzeh re 330 MOTION in Limine *: Post Arrest Statements* (Taibleson, Benjamin) |
| 10/15/2019 | 337 | | NOTICE *of Filing Exhibit and Witness List* by Samy Mohammed Hamzeh (Albee, Craig) |
| 10/15/2019 | 338 | | MOTION to Seal Document by Samy Mohammed Hamzeh. (Attachments: # 1 Text of Proposed Order)(Albee, Craig) |
| 10/15/2019 | 339 | | SEALED DOCUMENT This document is not available electronically and must be served in paper format upon opposing counsel. |
| 10/15/2019 | 340 | | TEXT ONLY ORDER signed by Judge Pamela Pepper on 10/15/2019 as to Samy Mohammed Hamzeh re 323 MOTION to Seal Document filed by Samy Mohammed Hamzeh: The court **GRANTS** the defendant's motion to restrict the document at Dkt. No. 324. The court **ORDERS** that the clerk's office shall restrict the document at Dkt. No. 324 to the court, the parties and counsel until further order of the court. **NOTE: There is no document associated with this text–only order.** (cc: all counsel) (Pepper, Pamela) |
| 10/15/2019 | 341 | | TEXT ONLY ORDER signed by Judge Pamela Pepper on 10/15/2019 as to Samy Mohammed Hamzeh re 325 MOTION to Seal Document filed by Samy Mohammed Hamzeh: The court **GRANTS** the defendant's motion to restrict the document at Dkt. No. 326. The court **ORDERS** that the clerk's office shall restrict the document at Dkt. No. 326 to the court, the parties and counsel until further order of the court. **NOTE: There is no document associated with this text–only order.** (cc: all counsel) (Pepper, Pamela) |
| 10/16/2019 | 342 | | ORDER signed by Judge Pamela Pepper on 10/16/2019. 272 Government's consolidated motions *in limine* regarding defendant's recorded statements GRANTED IN PART AND DENIED IN PART. 277 Motion I, defendant's motion *in limine* to exclude or limit evidence and argument related to conversations about Israel and the Masons GRANTED IN PART AND DENIED IN PART. 276 Motion X, pp. 18–21, that portion of government's motions *in limine* asking the court to exclude Dr. Sageman's testimony GRANTED. 278 Defendant's fourth motion *in limine* to exclude Dr. Levitt's testimony GRANTED. (cc: all counsel) cb) |
| 10/16/2019 | 343 | | MOTION to Seal Document filed by USA ~~SEALED DOCUMENT This document is not available electronically and must be served in paper format upon opposing counsel.~~ Modified on 10/17/2019 (blr). |

| 10/16/2019 | 344 | | SEALED DOCUMENT This document is not available electronically and must be served in paper format upon opposing counsel. |
|---|---|---|---|
| 10/16/2019 | 345 | | EXHIBIT LIST by USA as to Samy Mohammed Hamzeh (Ptashkin, Adam) |
| 10/16/2019 | 346 | | MOTION to Seal Document by Samy Mohammed Hamzeh. (Attachments: # 1 Text of Proposed Order)(Albee, Craig) |
| 10/16/2019 | 347 | | SEALED DOCUMENT This document is not available electronically and must be served in paper format upon opposing counsel. |
| 10/16/2019 | 349 | | Court Minutes and Order for proceedings held before Judge Pamela Pepper on 10/16/2019. Status Conference as to Samy Mohammed Hamzeh held. The court **GRANTS** the government's 313 motion for a protective order pertaining to the testimony of the undercover employees at trial. (kgw) (Entered: 10/18/2019) |
| 10/17/2019 | | | NOTICE of Electronic Filing Error re 343 Sealed Document; Motions to Seal a Document are not to be filed under seal. Please refer to the user manuals on electronic case filing found at www.wied.uscourts.gov (blr) |
| 10/17/2019 | 348 | | Court's proposed draft *venire* orientation and *voir dire* questions. (cb) |
| 10/18/2019 | 350 | | MOTION to Seal Document by USA as toSamy Mohammed Hamzeh. (Attachments: # 1 Text of Proposed Order)(Ptashkin, Adam) |
| 10/18/2019 | 351 | | SEALED DOCUMENT This document is not available electronically and must be served in paper format upon opposing counsel. |
| 10/18/2019 | 352 | | BRIEF by Samy Mohammed Hamzeh *Re: Statements* (Albee, Craig) |
| 10/18/2019 | 353 | | MOTION to Seal Document by Samy Mohammed Hamzeh. (Attachments: # 1 Text of Proposed Order)(Albee, Craig) |
| 10/18/2019 | 354 | | SEALED DOCUMENT This document is not available electronically and must be served in paper format upon opposing counsel. |
| 10/18/2019 | 355 | | RESPONSE by USA as to Samy Mohammed Hamzeh *to the Defendants Omnibus Memorandum Re: Statements* (Ptashkin, Adam) |
| 10/18/2019 | 357 | | MOTION in Limine *Barring Steve's Statements to the Agents* by Samy Mohammed Hamzeh.(Albee, Craig) |
| 10/18/2019 | | | Set/Reset Hearings as to Samy Mohammed Hamzeh: Jury Trial set for 10/23/2019 08:30 AM in Courtroom 222, 517 E. Wisconsin Ave., Milwaukee, WI 53202 before Judge Pamela Pepper. Trial estimated to last through November 1, 2019. (kgw) |
| 10/20/2019 | 358 | | MOTION in Limine *relating to the Court's orders 333 and 342* by Samy Mohammed Hamzeh.(Albee, Craig) |
| 10/21/2019 | 359 | | ORDER signed by Judge Pamela Pepper on 10/21/2019 ruling on parties' proposed entrapment jury instructions. (cc: all counsel) (cb) |
| 10/21/2019 | 360 | | ORDER signed by Judge Pamela Pepper on 10/21/2019 GRANTING IN PART AND DENYING IN PART 33 defendant's sixth motion *in limine* regarding post arrest statements. (cc: all counsel) (cb) |

| 10/21/2019 | 361 | | ORDER signed by Judge Pamela Pepper on 10/21/2019 SUPPLEMENTING 342 10/16/2019 ruling on government's motion *in limine* regarding defendant's recorded statements. (cc: all counsel) (cb) |
|---|---|---|---|
| 10/21/2019 | 362 | | ORDER signed by Judge Pamela Pepper on 10/21/2019 CLARIFYING oral order granting government's motion for protective order. (Parties allowed to view this document may do so by logging in.) (cc: all counsel) (cb) |
| 10/21/2019 | 363 | | BRIEF by USA as to Samy Mohammed Hamzeh *Regarding the Defendants Out of Court Statements with the CHSs* (Ptashkin, Adam) |
| 10/21/2019 | 364 | | MOTION in Limine *re: Agent Lindeman's Testimony* by Samy Mohammed Hamzeh.(Albee, Craig) |
| 10/22/2019 | 365 | | NOTICE OF APPEAL by USA as to Samy Mohammed Hamzeh (Taibleson, Benjamin) |
| 10/22/2019 | 366 | | DOCKETING STATEMENT by USA as to Samy Mohammed Hamzeh re 365 Notice of Appeal (Taibleson, Benjamin) |
| 10/22/2019 | | | NOTICE OF HEARING as to Samy Mohammed Hamzeh. Status Conference set for 10/22/2019 10:30 AM in Courtroom 222, 517 E. Wisconsin Ave., Milwaukee, WI 53202 before Judge Pamela Pepper. Parties wishing to appear by phone may do so by calling the courts conference line at 888–557–8511 and using the access code 4893665#. (cc: all counsel)(kgw) |
| 10/22/2019 | 367 | | Attorney Cover Letter re: 365 Notice of Appeal and 368 Amended Notice of Appeal (Attachments: # 1 Docket Sheet)(jv) Modified on 10/22/2019 (jv). |
| 10/22/2019 | 368 | | NOTICE OF APPEAL *Amended* by USA as to Samy Mohammed Hamzeh (Taibleson, Benjamin) |

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

        v.                                    Case No. 16-CR-21

SAMY MOHAMMED HAMZEH,

        Defendant.

## NOTICE OF APPEAL

The United States of America hereby appeals, to the United States Court of Appeals for the Seventh Circuit, from the orders of this Court entered on October 15, 16, and 21, 2019, which excluded from evidence at trial certain information regarding the availability of machineguns and many of the defendant's recorded statements.

The United States Attorney certifies that this appeal is not taken for purpose of delay and that the evidence is substantial proof of facts material in the proceeding pending in the district court. The further prosecution of this appeal is conditional upon the approval of the Solicitor General of the United States.

Dated at Milwaukee, Wisconsin this 22nd day of October, 2019.

Respectfully submitted,

s/ Matthew D. Krueger
MATTHEW D. KRUEGER
United States Attorney

s/ Benjamin Taibleson
Benjamin Taibleson
Adam Ptashkin
Assistant United States Attorneys
United States Attorney's Office
Eastern District of Wisconsin
517 East Wisconsin Avenue
Milwaukee, Wisconsin 53202
(414) 297-1700
benjamin.taibleson@usdoj.gov
adam.ptashkin@usdoj.gov

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

   v.                                  Case No. 16-CR-21

SAMY MOHAMMED HAMZEH,

        Defendant.

## AMENDED NOTICE OF APPEAL

The United States of America hereby appeals, to the United States Court of Appeals for the Seventh Circuit, from the orders of this Court entered on October 15 (Dkt. No. 333), 16 (Dkt. No. 342), and 21 (Dkt. Nos. 360, 361), 2019, which excluded from evidence at trial certain information regarding the availability of machineguns and many of the defendant's recorded statements.

The United States Attorney certifies that this appeal is not taken for purpose of delay and that the evidence is substantial proof of facts material in the proceeding pending in the district court. The further prosecution of this appeal is conditional upon the approval of the Solicitor General of the United States.

Dated at Milwaukee, Wisconsin this 22nd day of October, 2019.

Respectfully submitted,

s/ Matthew D. Krueger
MATTHEW D. KRUEGER
United States Attorney

s/ Benjamin Taibleson
Benjamin Taibleson
Adam Ptashkin
Assistant United States Attorneys
United States Attorney's Office
Eastern District of Wisconsin
517 East Wisconsin Avenue
Milwaukee, Wisconsin 53202
(414) 297-1700
benjamin.taibleson@usdoj.gov
adam.ptashkin@usdoj.gov

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

v.                           Case No. 16-CR-21

SAMY MOHAMMED HAMZEH,

        Defendant.

---

## DOCKETING STATEMENT

---

      The United States of America has filed a Notice of Appeal from three written orders of this Court excluding evidence from trial, and hereby files its Docketing Statement for that appeal:

      1.      The District Court's orders, which were entered on October 15, 16, and 21, 2019, excluded from evidence at trial certain information regarding the availability of machineguns and many of the defendant's recorded statements.

      2.      Pursuant to Title 18, United States Code, Section 3731, the United States has filed a timely notice of appeal on today's date. The notice of appeal specifies that the prosecution of the appeal is conditional upon the approval of the Solicitor General of the United States, which approval is being sought by the United States Attorney's Office for the Eastern District of Wisconsin.

3.      The District Court has jurisdiction over this federal criminal case pursuant to Title 18, United States Code, Section 3231.

4.      The United States Court of Appeals for the Seventh Circuit has jurisdiction over this appeal pursuant to Title 18, United States Code, Section 3731.

Dated at Milwaukee, Wisconsin this 22nd day of October, 2019.

Respectfully submitted,

*s/ Matthew D. Krueger*
MATTHEW D. KRUEGER
United States Attorney
Eastern District of Wisconsin
517 East Wisconsin Avenue
Milwaukee, Wisconsin 53202
(414) 297-1700
matthew.krueger@usdoj.gov
*Counsel of Record*

*s/ Benjamin Taibleson*
Benjamin Taibleson
Adam Ptashkin
Assistant United States Attorneys
United States Attorney's Office
Eastern District of Wisconsin
517 East Wisconsin Avenue
Milwaukee, Wisconsin 53202
(414) 297-1700
benjamin.taibleson@usdoj.gov
adam.ptashkin@usdoj.gov

UNITED STATES OF AMERICA,

        Plaintiff,

    v.                                     Case No. 16-cr-21-pp

SAMY M. HAMZEH,

        Defendant.

**ORDER GRANTING DEFENDANT'S MOTION *IN LIMINE* VI (DKT. NO. 277 at 18) PRECLUDING GOVERNMENT FROM SPECULATING AS TO DEFENDANT'S POSITIONAL PREDISPOSITION**

A little over two months prior to the scheduled October 21, 2019 trial date, the defendant filed a motion *in limine* seeking leave to present the affirmative defense of entrapment. Dkt. No. 234. The government filed a lengthy response, objecting to the request. Dkt. No. 255. In that objection, the government argued that under the Seventh Circuit's decision in <u>United States v. Hollingsworth</u>, 27 F.3d 1196 (7th Cir. 1994), the Seventh Circuit held that predisposition—one of the elements the government must prove to defeat the entrapment defense—requires a showing that the defendant "was not merely mentally predisposed to commit a crime but also in a position to potentially actually commit that crime or some similar crime." <u>Id.</u> at 34. The government noted that in asking to present the entrapment defense, the defendant had asserted that he wasn't in a position to obtain a machinegun at the time the government informants started talking with him. <u>Id.</u> The government disagreed.

1

It first asserted that "machineguns are available for street purchase," claiming that such weapons "are seized in Milwaukee, Chicago, in Texas, and nationwide all the time." Id.

The government made another argument regarding the defendant's "positional disposition," however, one that the court informed government counsel at the final pretrial conference it was inclined to reject. The government argued in its opposition to the entrapment defense that

> Second, and perhaps even more importantly, aftermarket parts that convert semiautomatic guns that a person can buy at any sporting goods store into automatic weapons, like bump stocks and Glock switches, are gallingly inexpensive and accessible. Contrary to [the defendant's] claim in his motion, he could easily have acquired a simple, fully-automatic converter. These parts are *still* available for purchase online (not merely on the dark web, but) on websites like wish.com. For $16, [the defendant] could have converted a cheap semiautomatic handgun into precisely the small automatic weapon he wanted. *See* High Quality Semi Full Auto Switch for Handgun Glock G17 G19 G22 G23 (*available at* https://www.wish.com/product/high-quality-semi-full-auto-switch-for-handgun-glock-g17-g19-g22-g23-5b0f8e805cfaae22ceaa73fa?&hide_login_modal=true).

> At the time of the charged offense, [the defendant] could quite literally have bought one on Amazon.com. Thousands and thousands of them have been shipped into the United States, for under $20 each. *See* Scott Glover, CNN, ATF ON THE HUNT FOR THOUSANDS OF ILLEGAL MACHINE GUN CONVERSION DEVICES SMUGGLED INTO US (*available at* https://www.cnn.com/2019/05/23/us/atf-agents-hunting-down-illegal-machine-gun-device-invs/index.html). Just because [the defendant] had not yet available himself of this possibility does not mean he was entrapped under *Hollingsworth.* You cannot buy a nuclear weapon on Amazon.com for $16.

Id. at 34-35.

In his reply in support of the request to present an entrapment defense, the defendant characterized the government's "he could've gotten conversion

2

parts online" argument as "troubling." Dkt. No. 270. The defendant asserted that in both <u>Hollingsworth</u> and <u>United States v. Mayfield</u>, 771 F.3d 417 (7th Cir. 2014), the Seventh Circuit had held that the government had to demonstrate the probability that the defendant was in a position to commit the crime with which he was charged, "not a matter of what other dangerous uses of weapons the government can conjecture about [the defendant] getting . . . ." <u>Id.</u> at 12-13.

The defense was concerned enough about this argument that it filed its own motion *in limine*, asking the court to prevent the government from "speculating about [the defendant's] positional predisposition." Dkt. No. 277 at 18 (motion *in limine* VI). The defendant asked the court to preclude the government from making arguments "about any steps [the defendant] could have taken—such as acquiring a kit to convert a semi-automatic rifle into a machine gun." <u>Id.</u> The defendant asked the court to confine the government to presenting evidence that the defendant was positioned to purchase a machinegun, because that was the crime with which he has been charged. <u>Id.</u>

The government responded by asserting again that "for under $20, anyone with an internet connection could buy a device online that qualifies as a 'machinegun' under the charging statute *in this case* at the time of the charged offense." Dkt. No. 285 at 10. The government recounted that the indictment alleged that the defendant had violated 26 U.S.C. §5861(d); that statute refers the reader to 26 U.S.C. §5845 for the definition of "machinegun." <u>Id.</u> at 16. The government pointed out that included in §5845's definition of a

3

"machinegun" is "any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun." Id. (quoting 26 U.S.C. §5845). The government then repeated—verbatim—its argument from its brief in opposition to the entrapment defense. Id. at 17.

Next, the government argued that the statutory definition of machineguns includes the conversion parts that the government asserts are "universally accessible for $20 . . . ." Id. For that reason, the government asserted, the defendant was, "as we all disturbingly are, in a position to buy a machinegun." Id. at 18.

The government went on to say that

> [p]ositional predisposition analysis sometimes focuses on training and experience because those issues are relevant in cases where training and experience are actually necessary to commit an offense (like setting up an international financial transaction, as in *Hollingsworth*). Buying an item on amazon.com or wish.com, or borrowing one from a friend, or stealing one, does not take any training. [The defendant], an American in his early 20s who had some college education, cannot credibly claim he could not himself, and did not know a single acquaintance who could, buy an item on Amazon.com. The defense asks the Court to extend *Hollingsworth* very substantially without any guidance from the Seventh Circuit that it should. *United States v. Hall*, 608 F.3d 340, 345 (7th Cir. 2010).

> "In *Hollingsworth*, [the Seventh Circuit] explained that *Jacobson* [*v. United States,* 503 U.S. 540 (1992)] did not . . . add an "ability" element to the entrapment formulation. 27 F.3d at 1199. But even if it had, [the defendant] most certainly had the ability to possess a machinegun. A converter *is* a machinegun. And this is to say nothing of the plain fact that there are fully functional machine guns in Milwaukee at this very second, and it is perfectly plausible that [the defendant] could have bought, borrowed, or stolen one.

This is not a farmer and a complex international financial transaction, it was a man who wanted a weapon.

Id.

As noted, at the final pretrial conference, the court opined that the government's argument stretched the positional character of predisposition out of recognizable shape. The court observed that if the fact that converter kits are available online for $15 or $20 makes one positionally predisposed to possess a machinegun, then the court itself was positionally predisposed to possess a machinegun. The prosecutor responded that the court would not be positionally predisposed to buy a machinegun, because the court did not *want* to buy a machinegun. Concerned that the court wasn't grasping his argument, the prosecutor asked leave to file yet more briefing on the topic. The court allowed the parties to submit further briefs.

In its *third* brief on the topic, the government reiterated the statutory definition of machinegun, and argued that possessing any of a variety of weapons that fit that definition—from 9mm weapons that "automatically shoot more than one shot with each trigger pull" to 10mm weapons that do the same to "Glock switches" that convert a weapon into a machinegun—would violate the statute. Dkt. No. 300 at 2-3. It asserted that possessing any of those things was not just a *similar* crime to the offenses with which the defendant has been charged, "but the very same crime." Id. at 3. It insisted that this argument wasn't just a technicality, reproducing—for the third time—a citation to the CNN article about the ATF hunting down conversion devices. Id.

5

The government concluded this way:

> If the defense will stipulate that [the defendant] was positionally predisposed to possess a machinegun—not that he necessarily wanted one, merely that it was likely he could get one if he wanted to—and does not intend to call expert witnesses to testify otherwise, then the United States might not need to put this evidence to the jury. The same would be true if this Court rules that the defense testimony on this topic is inadmissible because it too is irrelevant (though that might also create appellate issues). But, otherwise, evidence that machineguns were inexpensive and accessible at the time of the charged offense is relevant (no matter which shape or size the machinegun comes in) in light of [the defendant's] entrapment defense. Glock switches are machineguns under the definition of the charged offense.

Id. at 3-4.

The defendant responded first by reiterating that under Hollingsworth and Mayfield, the government had to show predisposition to commit the *charged* crime, not some hypothetical iteration of the crime. Dkt. No. 301 at 2-4. Second, the defense argued that there was no evidence that the defendant had attempted to buy conversion kits or component parts, and questioned whether such parts were as ubiquitous and easy to obtain in the fall of 2015 and early 2016 (the period the defendant was talking with the confidential informants) as the government insists they are today. Id. at 5-7.

The court remains convinced that the government's argument goes too far. The indictment alleges that on January 25, 2016, the defendant received and possessed two Heckler & Koch MP-5 machineguns—one a 9mm and one a 10mm. It also alleges that on the same date, the defendant received and possessed an H&K silencer. It alleges that none of these weapons were registered to the defendant. Dkt. No. 2.

6

The government has not alleged, either in the indictment or in any of numerous pleadings filed over the past forty-four months, that the defendant tried to obtain component parts for a machinegun or expressed a desire for component parts for a machinegun. The government has not referenced any evidence that prior to the date the government began recording the defendant's conversations with Steve (and later with Mike), the defendant had tried to obtain component parts for a machinegun or converter kits to make a machinegun. The government has not identified any portions of the hours of taped conversations among the defendant and the two informants where the defendant spoke of obtaining a converter kit or component parts. The government has not identified a single item of evidence indicating that the defendant wanted component parts or converter kits, much less that he tried to obtain them.

Even viewing the evidence in the light most favorable to the government, the evidence indicates two things—that early in the conversations between the defendant and the informants, the defendant expressed a desire to obtain a handgun, and that the defendant spoke of going to Israel and relieving Israeli soldiers of their Kalashnikovs. As time passed and the conversations among the three continued, they spoke of "machineguns," and the defendant further talked about Kalashnikovs—he appears to have believed that informant "Mike" owned a Kalashnikov, and he spoke of Israeli soldiers having them and of taking Kalashnikovs from Israeli soldiers. There were conversations about buying guns from "Mike's" source in Texas. There was a trip to Gander

7

Mountain, a sporting goods store that sells firearms, where the defendant appears to have looked at a 9mm pistol. Throughout these discussions, the defendant spoke and acted as if he (a) wanted a firearm, not parts with which to build a firearm, and (b) needed to obtain that fully-formed firearm from someone else, whether by taking it off a soldier or buying it from a store or on the black market.

The court noted at the final pretrial conference that if buying a converter kit and making a machinegun had been as cheap and simple as the government has argued, and if the defendant had known it was that cheap and simple, one wonders why he would have argued and discussed and speculated and mulled over buying a gun (of any kind) with the informants for four months before finally purchasing the items with which he is charged. Why go through all of this—arguing with Mike that he wants a handgun for self-protection due to his job, visiting Gander Mountain, talking about getting guns through Mike's connection in Texas, even talking of stealing the guns of Israeli soldiers rather than providing his own? The very nature of the protracted discussions and negotiations is circumstantial evidence that if the defendant did want a machinegun, he wasn't aware that he could have gotten one quickly, cheaply and easily by obtaining a handgun and then buying a cheap conversion kit. As the Seventh Circuit noted when discussing Jacobson, "[a]s far as the government was aware, over the period of more than two years in which it was playing cat and mouse with [Jacobson] he did not receive any other solicitations to buy pornography," so "had he been 'left to his own

8

devices,' in all likelihood he would 'have never run afoul of the law.'"

Hollingsworth, 27 F.3d at 1199 (quoting Jacobson, 503 U.S. at 554). There is no indication that during the four months or so that the defendant was interacting with Steve and Mike, the defendant tried to obtain a conversion kit or component parts (or, in fact, guns) through anyone else, or received offers from anyone else to help him obtain conversion kits, component parts or guns.

The government's reading of Hollingsworth is somewhat tortured. In analyzing the impact of the Supreme Court's decision in Jacobson on the law of entrapment, the Seventh Circuit explained that

> [p]redisposition is not a purely mental state, the state of being willing to swallow the government's bait. It has positional as well as dispositional forced. The dictionary definitions of the word include "tendency" as well as "inclination." The defendant must be so situated by reason of previous training or experience or occupation or acquaintences that it is likely that if the government had not induced him to commit the crime some criminal would have done so; only then does a sting or other arranged crime take a dangerous person out of circulation. A public official is in a position to take bribes; a drug addict to deal drugs; a gun dealer to engage in illegal gun sales. For these and other traditional targets of stings all that must be shown to establish predisposition and thus defeat the defense of entrapment is willingness to violate the law without extraordinary inducements; ability can be presumed. It is different when the defendant is not in a position without the government's help to become involved in illegal activity. The government "may not provoke or create a crime, and then punish the criminal, its creature." *Casey v. United States*, 276 U.S. 413, 423 . . . (1928) (Brandeis, J., dissenting). Such cases, illustrated by *Jacobson* . . are rare . . . .

Hollingsworth, 27 F.3d at 1200.

There is no evidence that the defendant was situated by reason of previous training, experience or occupation to obtain a machinegun, or to know that he could buy parts to build one. The defendant had had a series of jobs

9

working at restaurants. He had no prior criminal history. He lived with his mother at the time of his arrest. The government argues that one doesn't need training or experience to purchase a machinegun—it is not as if the defendant is charged with committing a complex securities fraud, where he would have had to know something of securities trading in order to pull it off. The court agrees, but Hollingsworth also directed the court to consider whether the defendant was so situated by *acquaintances* that if the government hadn't provided him with the opportunity to buy a machinegun, some other criminal would have. Again, the defendant appears to have believed—even if he was wrong—that in order to get a gun, whether a handgun or a machinegun, he needed help from someone else. He needed to steal it from someone (like an Israeli soldier) or buy it from someone (whether a gun store or a black market dealer). There appears to be no evidence that the defendant had relationships with anyone he believed could have facilitated his receipt or purchase of such a gun prior to the government's investigation. There is no evidence that the defendant was a gun user or gun owner prior to the government's investigation, so this is not a situation in which "ability"—or, in this case, knowledge—can be presumed," as Hollingsworth put it. There is no evidence that, even if converter kits and component parts were available from well-known web retailers such as Amazon in the fall of 2015, the defendant would have known that. All manner of illegal and nefarious things are available on-line and in retail stores that law-abiding citizens wouldn't think of looking or asking for (parents of teens and young adults confront their own ignorance when offspring land in hot water for

10

possessing contraband that, to the parents' shock, the offspring were able to purchase or obtain without going to black market dealers or back-door suppliers).

The government implies that because the defendant expressed a desire for a handgun, and because conversion kits for turning such a legal weapon into a machinegun arguably were cheap and easy to obtain, the defendant's desire for the legal gun made him predisposed to obtain the parts (which meet the statutory definition of a prohibited machinegun) to create the illegal gun. This is a bit like saying that because someone expresses a desire for quick and easy money, and because nail polish remover, fertilizer, lithium batteries, drain cleaner, pseudophedrine diet pills, lye and road flares are available in any drug or home supply store, the person is predisposed to manufacture meth.

The government argued at the final pretrial conference that there was more to the defendant's expressed desire than the desire for a handgun. The government argued that the defendant had stated in the recorded conversations that he wanted a *machinegun*, and that because he had stated a desire for a *machinegun*, the fact that items meeting the statutory definition of a machinegun are cheap and easily obtained shows positional predisposition. This argument again ignores the evidence in the case—that the defendant didn't express a desire for machinegun parts, didn't express a desire to build a machinegun and didn't evidence knowledge that he could do so. The government's argument seems to contradict another of its assertions—that the defendant wanted a Kalashnikov. The government has repeatedly pointed to

11

recorded conversations in which the defendant spoke with the informants about going to Israel and taking Kalashnikovs from Israeli soldiers, because Kalasnikovs were the best. The defendant seems to have thought that Mike owned a Kalashnikov. If the defendant wanted to steal or buy a Kalashnikov, the fact that "Glock switches" are available from online retailers wouldn't help him much.

The government argues that under Seventh Circuit law, it must show that the defendant was predisposed to commit "the charged crime" in order to defeat the entrapment defense, and it asserts that possessing convertor kits or component parts would have constituted "the charged crime." The government challenges the defendant's argument that he wasn't positioned to commit the charged crime given the difficulty of buying machineguns on the street; the government asserts that it is easy to commit the charged crime because it is easy to buy converter kits and component parts online. The government's "charged crime" language comes straight from the Seventh Circuit's decision in Mayfield: "To summarize, then, a defendant is predisposed to commit *the charged crime* if he was ready and willing to do so and likely would have committed it without the government's intervention, or actively wanted to but hadn't yet found the means." Mayfield, 771 F.3d at 438 (emphasis added).

The government is correct that the statute defines converter kits as items which, if possessed and not registered, would constitute a violation of the statute the defendant is charged with having violated. But possessing conversion kits or component parts is *not*, in the defendant's case, "the charged

12

crime." The government cannot defeat the entrapment defense by showing that it would have been easy for the defendant to commit a version of the crime that he never expressed a desire to commit, that he may have been unaware he could have committed and that he did not try to commit during the government's investigation (or, it appears, at any other time).

The government has expressed from day one its belief that the defendant is a dangerous person who intended to commit a horrifying crime. That belief may or may not be well-founded. But that belief does not drive the question of what the law of the Supreme Court and the Seventh Circuit requires the government to show in order to defeat an entrapment defense. The government may present evidence to rebut the defendant's assertion that it is not easy to buy machineguns on the street. But the court will not allow the government to present evidence about the availability of devices that convert semi-automatic firearms to automatic weapons, the cost of these devices or the ease of obtaining them through online retailers.

To that end, the court has reviewed another recent government filing, the government's brief regarding the expert testimony of ATF Special Agent Lindeman. Dkt. No. 308. In that brief (which doesn't request any action from the court, but notifies the defense of the anticipated topics of Agent Lindeman's trial testimony), the government states that

> [w]e expect that Special Agent Lindeman will testify about ATF's seizures' [sic] of machineguns from 2015-**2019** in the United States, in the Midwest, and in Wisconsin. We expect that he will also testify that he has personally worked on cases in Wisconsin during which machineguns were seized**. *We expect that he will testify about ATF seizures of "Glock switches" and other devices that***

13

Case 2:16-cr-00021-PP Filed 10/22/19 Page 55 of 149 Document 369
Case 2:16-cr-00021-PP FILED Document 333 Filed 10/18/19 Page 13 of 15

***convert semi-automatic firearms to fully automatic firearms nationally and in Wisconsin and which are, under the charging statute in this case and per ATF definitions, themselves machineguns.*** We expect that he will testify about the national system in place for registration of machineguns and why there is a requirement to register machineguns but not handguns. We expect that he will testify that machineguns, when sold illegally on the street, are regularly sold below the market value of the machineguns when they are legally sold and registered. ***We expect that he will testify about what Glock switches, auto sears, and other types of converters functionally accomplish. We also expect him to testify to the ease with which any person with access to YouTube can convert a semi-automatic weapon to a machinegun. We expect that he will testify as to the availability of these devices over the internet, on the street, and regarding ATF seizures of these devices.*** We expect that he will testify than the Milwaukee Police department also seizes significantly more machineguns annually than the ATF in Milwaukee. Absent a stipulation, we expect that he will testify that the defendant did not register the machineguns and silencer relevant to the indictment prior to January 25, 2016.

Id. at 1-2.

The court concludes that Agent Lindeman may provide the testimony outlined above in regular font. He may not, however, provide the testimony that appears in bold, italicized font. (The court notes that it has bolded and italicized the year "2019" in the second line of the above paragraph. While the number of machineguns seized in the fall of 2015 and January 2016 is relevant to the availability of machineguns on the street during the defendant's interactions with the informants, the number of machineguns seized from

February 2016 through the present is not.)

The court **GRANTS** the defendant's motion *in limine* VI. Dkt. No. 277 at

p. 18.

Dated in Milwaukee, Wisconsin this 15th day of October, 2019.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

                Plaintiff,

                                                    Case No. 16-cr-21-pp

        v.

SAMY M. HAMZEH,

                Defendant.

**ORDER GRANTING IN PART AND DENYING IN PART GOVERNMENT'S
CONSOLIDATED MOTIONS *IN LIMINE* REGARDING DEFENDANT'S
RECORDED STATEMENTS (DKT. NO 272), GRANTING IN PART AND
DENYING IN PART DEFENDANT'S THIRD MOTION *IN LIMINE* TO EXCLUDE
OR LIMIT EVIDENCE AND ARGUMENT RELATING TO CONVERSATIONS
ABOUT ISRAEL AND MASONS (DKT. NO. 277, MOTION I), GRANTING THAT
PORTION OF SECTION X OF GOVERNMENT'S MOTIONS *IN LIMINE* WHICH
ASKS THE COURT TO EXCLUDE DR. MARC SAGEMAN AS EXPERT
WITNESS (DKT. NO. 276, MOTION X, PP. 18-21) AND GRANTING
DEFENDANT'S FOURTH MOTION *IN LIMINE* TO EXCLUDE DR. LEVITT'S
TESTIMONY (DKT. NO. 278)**

In less than a week, the defendant faces a trial at which a jury will decide

whether the government can prove beyond a reasonable doubt that on January

25, 2016, the defendant possessed two unregistered machineguns and one

unregistered silencer in violation of 26 U.S.C. §5861(d). One would think that

such a trial would be brief and straightforward—the government might present

a couple of witnesses to testify that the defendant possessed the items, and a

witness to testify about registration requirements and whether the items were

registered to the defendant. One might think that such a trial would be the

work of two, perhaps three days.

1

In this case, one would be incorrect in such thoughts. Because of events that occurred in the months leading up to January 25, 2016, the defendant has asked to present the affirmative defense of entrapment, and the court has granted that request. Because of events that occurred in the months leading up to January 25, 2016, the government seeks to present evidence that it believes shows that the defendant wanted to obtain the machineguns and the silencer for the purpose of committing mass murder; the government asserts that this evidence is relevant and is necessary for the government to rebut the entrapment defense. The defendant argues that the court should exclude the evidence because it shows only that the defendant had bad judgment, a desire to impress his friends and a wild imagination, and because admitting the evidence would be more prejudicial than probative.

Determining whether a piece of evidence is "relevant" to the question of whether the defendant committed the charged crimes is more complicated in this case than it might be in others. Some of the events that occurred prior to January 25, 2016 reveal a possible motive for the defendant to have possessed the charged items. Some arguably reveal that it wasn't the defendant, but undercover informants working with the government, who suggested and pushed the idea of obtaining the charged items. If one credits the government's view of the evidence, some show that the defendant was disturbingly interested in committing acts of mass violence; if one credits the defense view, those same facts show that the defendant had a misguided sense of religious and political zeal that caused him to bloviate and talk big about things he had no intent or

2

ability to do. The evidence resembles the paintings of the Dutch graphic artist M.C. Escher; what you see depends on where you stand.

The parties have filed several pretrial motions asking the court to allow, or to restrict or preclude, evidence. This order resolves those motions, to enable the parties to complete preparations for trial.

A.    Background

The following factual summary comes from the court's review of various pleadings, transcripts of recorded conversations filed by the parties and the court's own decision granting the defendant leave to present an entrapment defense. The court has not cited to pleadings and transcripts, and it cites to its own decision only occasionally.

As the court recounted in its order regarding the entrapment defense, the defendant is an American of Pakistani descent in his late twenties who lived in Jordan from the time he was little until he was eighteen. Dkt. 295 at 2. He is Muslim. Id. He had no criminal history prior to being charged in this case. Dkt. No. 2. The defendant came to law enforcement's attention in August or September of 2015, when a friend of the defendant's contacted the FBI, reporting that the defendant had been talking about going to Egypt for "terrorist training," getting a commercial driver's license to commit a terrorist attack in the name of ISIS[1] and getting a pistol. Id. at 2. Whether the defendant had said these things to his friend—referenced in the evidence as "Steve"—and

_____

[1] The Islamic State of Iraq and Syria, also sometimes known as ISIL (Islamic State of Iraq and the Levant). https://www.rand.org/topics/the-islamic-state-terrorits-organization.html.

3

whether he meant them even if he did say them, is questionable; even Steve appears subsequently to have told law enforcement that the defendant had changed his mind, and that the defendant was a liar. Id.

Regardless, in late September 2015, the FBI placed an informant, referred to as "Mike" in the evidence, at the restaurant where the defendant and Steve worked. Id at 3. The defendant and Mike saw each other frequently over the next three and a half to four months. Id. In early October 2015, Mike showed the defendant and Steve a gun, and the defendant appears to have believed that Mike owned a "Kalashnikov"—a term often used to refer to an AK-47 automatic assault rifle, although the Kalashnikov company manufactures other weapons, including semi-automatic sporting weapons. Id. See https://kalashnikov-usa.com. The parties don't dispute that the defendant, Mike and Steve used the word "Kalashnikov" interchangeably with the word "machinegun." Id.

Starting November 2, 2015, Mike began recording the conversations he had with the defendant; Steve recorded some of his conversations as well. Id. The recorded conversations include more than one instance of the defendant talking about going to Israel and taking Kalashnikovs from Israeli soldiers and shooting Jews, or "spraying" Jews and trying to kill as many people as possible. Id. The conversations were, at time, detailed. The defendant spoke of how he could get into Israel because he had an American passport, of how the "Al Buraq" wall—also known as the Western Wall, or the Wailing Wall—in Jerusalem would be a good target because of how many people visit the

4

location, of how killing many people would make the defendant a martyr. He spoke of the difficulty in leaving his mother, and how upset she was over his plans. He spoke of wearing an explosive vest. Conversations in this vein took place between November 2 and December 14, 2015, and at times, it sounded as if the defendant was on the cusp of going overseas—he talked about having gotten a plane ticket and having to leave his mother.

During this same period, however, the defendant talked about his desire to obtain a handgun for self-protection. There are multiple conversations in which he talks about wanting a handgun, and there is more than one conversation in which the defendant rejects Mike's suggestion that he might want a machinegun. Id. at 4-5. On December 7, 2015, the defendant and Mike traveled together to Gander Mountain sporting goods store to look at handguns. Id. at 4.

Finally, during this period the defendant talked about purchasing "Kalashnikovs" from a contact Mike allegedly had in Texas. The men went to a shooting range more than once, and on one such trip on December 14, 2015, the defendant questioned why Mike hadn't brought his Kalashnikov to the shooting range. Id. at 5.

After the December 14, 2015 trip to the shooting range, Mike stopped recording conversations with the defendant; the evidence sheds no light on why. Id. at 6. The men continued to talk, but by January 8, 2016, Mike reported that the defendant was no longer talking about jihad, and he'd mentioned traveling to Jordan only in the context of taking a vacation. Id.

5

On January 19, 2016, Mike resumed recording conversations with the defendant, after Mike reported to the agents that the defendant had started talking about attacking a Masonic lodge in Milwaukee. Id. at 7. When Mike resumed recording, the defendant was recorded discussing the Masons as enemies of Islam. Id. at 7-8. There was more than talk; on January 19, the defendant, Mike and Steve toured the Masonic Center in downtown Milwaukee, and the conversations that followed that tour involved the defendant discussing with precision how the three man might carry out a shooting attack at that location. Id. at 8-9. No one disputes that the conversations were chilling, with the men—including the defendant—talking about shooting the receptionist first, then moving to the people meeting upstairs, as well as discussing whether to avoid shooting children.

Over the next five or six days, the men continued to talk, but the conversations took various turns. At one point, it appears that the defendant may have suggested conducting an attack on a Masonic temple in Texas, rather than in Milwaukee. In other conversations, he notifies Mike and Steve that he has talked with an Imam, who advised him that it would not be a good idea to attack the Masons because it would make Muslims look bad. By January 24, 2016, the defendant had indicated that he no longer wished to go through with the attack, but that he still wanted weapons for protection. The next day, the defendant and Mike purchased the machineguns and silencer from undercover FBI agents for far below retail price; the defendant was arrested after putting the guns in the car.

6

B.    <u>Motions</u>

The government filed a motion *in limine* asking the court to deem the recorded in-person conversations authentic, to admit them as evidence and to admit the English language transcripts of the conversations. Dkt. No. 272. The government also asked the court to rule that the *defendant's* attempt to use any of the recorded statements should be deemed hearsay in advance of trial. <u>Id.</u> The government attached to the motion the portions of the conversations it wished to present at trial. Dkt. No. 272-1. The parties have resolved the authenticity issue and the issue of the admissibility of the English translations of any conversations the court allows the parties to present. They have agreed that for each conversation the court admits into evidence, the government will play the Arabic language recordings and will simultaneously display the English-language translations to the jury. What is left is for the court to decide which conversations to admit and which to exclude.

The defendant has asked the court to exclude, or at the least limit, "evidence and arguments related to conversations about Israel and the Masons." Dkt. No. 277, Motion I.

The defendant has asked the court to exclude the testimony of the government's proposed expert, Dr. Matthew Levitt, who would testify about the Arab-Israeli conflict, the relationships among organizations such as Hamas and ISIS and the significance of certain events or locations to the conflict. Dkt. No. 278. In turn, the government has asked the court to exclude the defendant's expert on the same topic, Dr. Marc Sageman. Dkt. No. 276, Motion X.

7

C.    <u>Conversations about Killing People in the Middle East</u>

The defendant argues that the court should preclude the government from presenting to the jury any of the conversations where the defendant talked about killing people in Israel. It argues that these conversations are not relevant to the question of whether the defendant possessed the three items charged in the complaint, and that the nature of the conversations would be more prejudicial than probative and would inflame the jury. The government responds that the conversations are relevant, because they show that the defendant was interested in obtaining machineguns and that he wanted them so that he could kill a lot of people at once.

The indictment alleges only unlawful possession of unregistered machineguns and a silencer, on a single date, and it charges only the defendant with possessing those items. The indictment does *not* allege that the defendant planned or conspired to commit a terrorist act. There are reasons for this. Federal law prohibits and criminalizes international terrorism, terrorist acts against U.S. nationals that "occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum . . . ." 18 U.S.C. §§2331, 2332. Even if the defendant was plotting or planning a terrorist act in Israel, such an act would have violated 18 U.S.C. §2332 only if its target was "a national"—or nationals—"of the United States." 18 U.S.C. §2332(b). The law also prohibits the use, threat, attempt or

conspiracy to use a weapon of mass destruction against United States nationals if a facility of interstate commerce is used in the offense, or the perpetrator travels in interstate commerce to commit the offence or the offense affects interstate commerce. 18 U.S.C. §2232a. But it defines "weapons of mass destruction" by referring to the definition of "destructive device" in 18 U.S.C. §921(a)(4)—"any explosive, incendiary, or poison gas—bomb, grenade, rocket having a propellant charge of more than four ounces, missile having an explosive or incendiary charge of more than one-quarter ounce, mine, or device similar to any of the devices described in the preceding clauses." Machineguns do not meet the definition of "weapons of mass destruction."

Even if there were a criminal statute prohibiting acts of international terrorism against citizens of other countries, the evidence suggests that the government could not have charged the defendant with conspiring to commit such an act. As far as the court can tell, the evidence shows that the defendant talked with *Steve and Mike* about going to Israel and shooting people. Steve and Mike were government informants. "[A]n agreement must exist among *conconspirators*, that is, those who actually intend to carry out the agreed-upon criminal plan. A defendant is not liable for conspiring solely with an undercover government agent or a government informant." United States v. Corson, 579 F.3d 804, 811 (7th Cir. 2009) (citing United States v. Mahkimetas, 991 F.2d 379, 383 (7th Cir. 1993)). The evidence may not even have supported an attempt charge; a defendant is not guilty of "attempt" unless he both intended to commit the crime and "committed an overt act qualifying as a substantial

9

step toward completion of his goal." <u>United States v. Resendiz-Ponce</u>, 549 U.S. 102, 107 (2007).[2]

While there are valid reasons why the government did not charge the defendant with planning or conspiring to commit an act of terrorism in Israel, the fact that the law currently does not provide criminal penalties for the sorts of actions the defendant was discussing does not require the conclusion that the government ought to be able to use the offense it *could* charge—possession of the two guns and the silencer—as a round-about way to introduce evidence of, and seek conviction of the defendant for, the crimes with which it could not charge him. While the defendant's descriptions of killing people in Israel were arguably racist, violent and disturbing, the court must try to ensure that a jury would not be tempted to convict the defendant for racist, violent and disturbing talk, rather than focusing on whether the government proved the elements of possession of unregistered firearms and a silencer beyond a reasonable doubt.

The government implies that the court should allow it to present the conversations about killing people in Israel because those conversations show why the defendant wanted a machinegun. In other words, the government argues that the conversations show motive. Motive, however, is not an element of a §5261(d) violation. A transferee of an item prohibited under §5261(d) "may . . . be held criminally liable if he takes possession of the weapon before

---

[2] The government asserts that the defendant "purchased a one-way ticket to Jordan in the fall of 2015." Dkt. No. 302 at 7, n.3. Arguably this may have constituted an "overt act" in support of an attempt, but the defendant also had lived in Jordan for much of his life and presumably has family there.

receiving official approval of the registration; this liability attaches regardless of the motives of either party to the transaction. Thus, it is irrelevant what the transferor did or why he did it or *why the transferee wanted the gun*." United States v. Brown, 548 F.2d 204, 209 (7th Cir. 1977) (emphasis added); see also United States v. Khatib, 706 F.2d 213, 216 (7th Cir. 1983) (citing Brown).

The evidence of the talk about going to Israel, taking Kalashnikovs and shooting people also smacks uncomfortably of prohibited "other acts" evidence under Fed. R. Evid. 404(a)(1). Under that rule, "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Rule 404(b)(1) prohibits the use of evidence of any "crime, wrong, or other act" to "prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." There are exceptions for proving motive, opportunity, intent, preparation, plan, knowledge, absence of mistake or lack of accident, and the government might respond that the defendant's talk about Israel showed his motive for obtaining the machineguns and silencer, or his intent to obtain a machinegun, or his plan to do so. But the conversations about Israel do not involve the defendant stating that he is going to obtain a machinegun *here* and take it overseas to commit a crime. He talks of going there and either taking a gun from an Israeli soldier or obtaining a weapon when he is there.

The government also argues that the court should admit the conversations about killing people in Israel because it rebuts the defendant's

11

defense that he was entrapped by Steve and Mike. The government asserts that the defendant's talk of taking "Kalashnikovs" from Israelis and Israeli soldiers, and his talk of "spraying" people (presumably with bullets) shows that in his earliest conversations with Steve and Mike, he was expressing a desire for a machinegun—in other words, that the defendant was predisposed to the offense of obtaining an unregistered machinegun, and wasn't induced to commit the crime by Steve and Mike.

This argument has more purchase. In United States v. Mayfield, the Seventh Circuit held that a defendant is predisposed to commit "the charged crime if he was ready and willing to do so and likely would have committed it without the government's intervention, or actively wanted to but hadn't yet found the means." Mayfield, 771 F.3d 417, 438 (7th Cir. 2014). A jury might find that the defendant's statements about taking Kalashnikovs from Israelis showed that he was "ready and willing" to obtain a machinegun. The defendant argues that the statements the defendant made to Steve and/or Mike after the investigation began cannot show predisposition, pointing to the Mayfield court's emphasis on the fact that "predisposition is measured *prior* to the government's attempts to persuade the defendant to commit the crime." Id. at 436 (citing United States v. Theodosopoulos, 48 F.3d 1438, 1444 (7th Cir. 1995)). But the Seventh Circuit followed that statement by clarifying that "[w]e are not suggesting that the defendant's conduct after he encountered the government's agents is irrelevant to the determination of predisposition." Id. at 437. The court explained that the defendant's "response to the government's

offer may be important evidence of his predisposition." Id. (citing United States v. Kaminski, 703 F.2d 1004, 1008 (7th Cir. 1983)). In Kaminski, the court discussed the "peculiar nature" of the inducement prong of the entrapment defense, noting that "[i]n many cases . . . there is little direct evidence of the defendant's state of mind prior to interaction with Government agents and we must instead rely upon indirect proof available through examination of the defendant's conduct after contact with the agents." Kaminski, 703 F.2d at 1008. A jury could conclude that the defendant made the statements about taking Kalasnikovs from Israelis on his own, without being induced. It could conclude that by engaging in this talk, rather than refuting it, the defendant showed a willingness—separate and apart from any inducement by Steve or Mike—to obtain a machinegun.

The defendant asserts that even if the statements about going to Israel and obtaining a gun and shooting people bear some relevance to predisposition—and the defendant vehemently maintains that they do not—the probative value of the statements are outweighed by the unfair prejudice to the defendant. Fed. R. Evid. 403 allows the court to exclude evidence despite its relevance "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

To determine whether to exclude relevant evidence because of the risk of unfair prejudice, a court must "weigh whether the evidence's probative value is substantially outweighed by the danger of unfair prejudice to the defendant."

13

United States v. Gorman, 613 F.3d 711, 718 (7th Cir. 2010) (citing Fed. R. Evid. 403). "[T]o warrant exclusion under Rule 403, the 'probative value [of evidence] must be insignificant compared to its inflammatory nature so that the evidence *unfairly* prejudices the defendant." Id. (quoting United States v. Gougis, 432 F.3d 735, 743 (7th Cir. 2005)).

The following is the result of the court's weighing of these factors in relation to the excerpts of the recorded statements which the government asked the court to admit. The court notes that all the statements in all the transcript excerpts were made *after* the defendant met government informant Mike, and after Steve began working with the government. The court is mindful of the defendant's insistence that any statements that he made after inducement are not probative of predisposition. When the court opines below that a particular statement is probative of the defendant's predisposition, it means that the statement is relevant for the jury to consider in determining whether the statement shows predisposition or was the result of inducement.

Disk 11, page 3 line 18 to page 16 line 46:

The portion of the conversation on page 3 appears to have little probative value; the court will exclude it.

Page 4, lines 1-7 have little probative value regarding the defendant's predisposition to obtain a machinegun; the court will exclude those lines.

Page 4, lines 8-30 have some probative value, because they indicate the defendant's intent to obtain a weapon; a machinegun is a weapon. They are not

particularly inflammatory and admitting them would not cause undue prejudice to the defendant. The government may present them.

Page 4, lines 31-38 are not probative; the court will exclude them.

Page 4, lines 39-41 may have some probative value, but that value is insignificant relative to their unquestionably inflammatory nature. The court will exclude them.

Page 4, lines 42-46: Line 42 is probative of predisposition, because it is Steve, not the defendant, who mentions a machinegun. While lines 42-44 are somewhat inflammatory, they are necessary to understand the context in which line 46 occurs. The government may present lines 42-46.

Pages 5-6: the danger of unfair prejudice outweighs any probative value the statements on these pages of the transcript may have. The court will exclude them.

Page 7, lines 1-3: The defendant's statement of his intention to buy a weapon is somewhat probative, as it shows the defendant's intent to obtain a weapon. While the other statements on these lines are prejudicial, they provide context for the statement about the weapon. The government may present them.

Page 7, lines 4-26, pages 8-10: The statements on these pages either are not probative or carry the risk of undue prejudice that would outweigh any probative value. The court will exclude them.

Page 11, lines 1-11: These statements either are not probative of predisposition or carry the risk of substantial prejudice. The court will exclude them.

Page 11, lines 12-13: These lines are probative of predisposition. The defendant has argued that he wanted only a handgun, and here he indicates that he will try to buy a handgun. The reference to an explosive belt is prejudicial, but it is not clear that the risk of unfair prejudice outweighs the probative value of the statement about the handgun. The court will allow the government to present these lines.

Page 11, lines 14-46, page 12: These statements either are not probative of predisposition or carry a risk of unfair prejudice that would outweigh any probative value. The court will exclude them.

Page 13, lines 1-4: These lines are probative of disposition, as they imply that the defendant wanted to obtain a handgun, not a machinegun. The court will allow the government to present these lines.

Page 13, lines 5-46: These statements either are not probative of predisposition or carry a risk of unfair prejudice that would outweigh any probative value. The court will exclude them.

Page 14, lines 1-44: These statements either are not probative of predisposition or carry a risk of unfair prejudice that would outweigh any probative value. The court will exclude them.

Page 14, lines 45-46, page 15, lines 14-17: These lines are probative on the question of whether the defendant had the ability to purchase a

16

machinegun—so-called "positional predisposition." The defendant talks about how his uncle has offered to give him money to buy a weapon. The lines do not carry the risk of unfair prejudice. The government may present these lines.

Page 15, lines 18-46: These statements either are not probative of predisposition or carry a risk of unfair prejudice that would outweigh any probative value. The court will exclude them.

Page 16, lines 1-32: These statements either are not probative of predisposition or carry a risk of unfair prejudice that would outweigh any probative value. The court will exclude them.

Page 16, lines 33-36: Steve's statement is probative of predisposition, given the defendant's argument that it was Steve, not the defendant, who brought up machineguns. The defendant's response is arguably inflammatory and prejudicial to him, but necessary to avoid the impression that Steve brought up the idea of a machinegun and the defendant said nothing. The government may present these lines.

Page 16, lines 37-46: These lines either are not probative of predisposition or carry a risk of unfair prejudice that would outweigh any probative value. The court will exclude them.

Disk 11, page 18 line 5 to page 26 line 41:

This entire excerpt is a discussion of the defendant's views on Israel and his plans to go to Israel and fight with Hamas against Jews. None of it is probative of the defendant's predisposition to obtain a machinegun, and all of it

carries the risk of unfair prejudice that would outweigh any probative value. The court will exclude it.

Disk 11, page 32 line 43 to page 33 line 18:

This entire excerpt is a discussion of the defendant's views on Israel and his plans to go to Israel and fight with Hamas against Jews. None of it is probative of the defendant's predisposition to obtain a machinegun, and all of it carries the risk of unfair prejudice that would outweigh any probative value. The court will exclude it.

Disk 11, page 39 line 10 to page 39 line 12:

These lines discuss how the defendant's martyrdom will motivate people. They are not probative of the defendant's predisposition to obtain a machinegun and it carries the risk of undue prejudice that would outweigh any probative value. The court will exclude them.

Disk 14, page 4 line 17 to page 8 line 25:

This entire excerpt is a discussion of how the defendant's mother became ill and went to the hospital, discouraging him from any plans to martyr himself at that time, as well as further discussion about traveling to Israel/Palestine to join the fight there. It is not probative of the defendant's predisposition to obtain a machinegun and it carries the risk of undue prejudice that would outweigh any probative value. The court will exclude it.

Disk 14, page 15 line 15 to page 15 line 17:

These lines are somewhat probative, as the last line discusses the fact that if the defendant cannot get to Gaza, he will buy a weapon "or something

18

and that's it." They are not unfairly prejudicial. The government may present these lines.

Disk 22, page 16 line 6 to page 16 line 43:

This excerpt concerns plans to travel to Palestine and the logistics of that travel. It is not probative of the defendant's predisposition to obtain a machinegun and it carries the risk of undue prejudice that would outweigh any probative value. The court will exclude it.

Disk 22, page 19 line 16:

This single line is inflammatory, carries a high risk of undue prejudice and is not probative of the defendant's predisposition to obtain a machinegun. The court will exclude it.

Disk 22, page 20 line 5 to page 20 line 24:

This excerpt relates to the defendant's purported plans to shoot people in Israel. It is inflammatory, carries a high risk of undue prejudice and is not probative of the defendant's predisposition to obtain a machinegun. The court will exclude it.

Disk 22, page 34 line 30 to page 34 line 35:

This excerpt contains statements by the defendant about his prayer for martyrdom. It is inflammatory, carries a high risk of undue prejudice and is not probative of the defendant's predisposition to obtain a machinegun. The court will exclude it.

<u>Disk 22, page 36 line 4 to page 37 line 26:</u>

This excerpt is a discussion of the postponement of the defendant's alleged plans to go to Israel/Palestine and the logistics of getting there when the defendant does go. It is not probative of the defendant's predisposition to obtain a machinegun, and it carries the risk of undue prejudice. The court will exclude it.

<u>Disk 22, page 38 line 12 to page 38 line 16:</u>

This excerpt relates to fighting in the West Bank and the presence of spies there. It is not probative of the defendant's predisposition to obtain a machinegun. The court will exclude it.

<u>Disk 22, page 39 line 18 to page 39 line 20:</u>

In this excerpt, the defendant says that if Hamas tells him to blow himself up, he will do so. It is not probative of the defendant's predisposition to obtain a machinegun and is highly inflammatory and prejudicial. The court will exclude it.

<u>Disk 22, page 40 line 13 to page 40 line 21:</u>

This excerpt again discusses the plaintiff's view that if one kills more people, one is less afraid. It is not probative of the defendant's predisposition to obtain a machinegun and is unduly prejudicial. The court will exclude it.

<u>Disk 22, page 42 line 7 to page 42 line 30:</u>

In this excerpt, the plaintiff discusses martyrdom, and the logistics of getting into Palestine (using an American, rather than a Jordanian, passport).

It is not probative of the defendant's predisposition to obtain a machinegun and is unduly prejudicial. The court will exclude it.

Disk 22, page 43 line 8 to page 43 line 42:

Page 43, lines 8-14: The lines relate to the type of passport needed to get into an unnamed place—presumably Palestine or Israel. They are not probative of the defendant's predisposition to obtain a machinegun. The court will exclude them.

Page 43, lines 15-40: The statements in these lines are probative of positional predisposition—whether the defendant had the means to obtain a machinegun. He and Mike discuss the amounts of money they have or expect to have by travel time. The statements carry some risk of prejudice, but not enough to outweigh their probative value. The government may present these lines.

Page 43, line 42: Mike tells the defendant not to mention anything to anyone. This isn't probative of the defendant's predisposition, and the court will exclude it.

Disk 22, page 52 line 40 to page 52 line 46:

In this excerpt, the defendant opines that Palestine is a difficult country in which to obtain weapons. Mike responds by mentioning a Kalashnikov. The defendant responds that if you don't join a resistance group, the most you will get is a pistol. While there is mention of both a Kalashnikov (by Mike, supporting the defendant's argument that he was not the one who brought up firearms) and the ability to obtain weapons, this excerpt isn't particularly

21

probative of the defendant's predisposition to obtain a machinegun or weapon. It appears to be nothing more than an opinion. The court will exclude it.

Disk 22, page 53 line 4 to page 55 line 20:

Page 53, lines 1-33: These lines contain a discussion of resistance groups and Hamas and how to get into Hamas. They are not probative of the defendant's predisposition to obtain a machinegun. The court will exclude them.

Page 53, lines 34-45, page 54, lines 1-14: In this exchange, the defendant mentions "spraying" several people at once, and Mike responds by bringing up a machinegun; the defendant confirms Mike's statement. The defendant talks about shooting people and getting their weapons and shooting two people and taking their Kalashnikovs. The statements have some probative value as to the defendant's desire to obtain and use a machinegun, but also support the defendant's argument that it is Mike who brings up machineguns, not the defendant. The references to killing several people are prejudicial, but the prejudice does not outweigh the probative value. The government may present these statements.

Page 54, lines 15-46, page 55: These statements are not probative of the defendant's predisposition to obtain a machinegun and are unduly prejudicial. The court will exclude them.

Disk 22, page 78 line 15 to page 78 line 32:

This excerpt is a discussion of going to Palestine to wage jihad. It is not dispositive of the defendant's predisposition to obtain a machinegun and is unduly prejudicial. The court will exclude it.

Disk 22, page 79 line 1 to page 79 line 24:

This excerpt contains a discussion of how to avoid detection while in Israel/Palestine. It is not probative of the defendant's predisposition to obtain a machinegun and is unduly prejudicial. The court will exclude it.

Disk 22, page 81 line 30 to page 81 line 36:

In this excerpt, the defendant and Mike discuss the desirability of being martyred in Jerusalem. It is not probative of the defendant's predisposition to obtain a machinegun and is unduly prejudicial. The court will exclude it.

Disk 25, page 15 line 1 to page 17 line 27:

Page 15, lines 1-11: The defendant and Mike discuss going to "shoot"— presumably going to the shooting range, because they talk about "training." The defendant appears to be the person who brings up the idea of going shooting. This exchange is probative of the defendant's predisposition to obtain a weapon (albeit not necessarily a machinegun). The government may present these lines.

Page 15, lines 13-46, page 16: This portion of the excerpt contains more discussion about the logistics of getting into Jerusalem (at least, it appears that they are discussing entry into Jerusalem, because they discuss the Western Wall and the nearby gates). It is not probative of the defendant's predisposition

23

to obtain a machinegun and is unduly prejudicial. The court will exclude these lines.

Page 17, lines 1-9: In this portion of the excerpt, the defendant and Mike discuss going in with handguns and taking Kalashnikovs from the guards, then spraying the people inside, all of whom are Jews. This exchange is inflammatory and prejudicial, but it also is probative of the defendant's intent to obtain a machinegun, and he is the one who raises the issue of Kalashnikovs. The court will allow the government to present these lines.

Page 17, lines 10-27: In this portion of the excerpt, the defendant and Mike discuss the people who pray at the wall, and the defendant's belief that they want to tear something down. It is not probative of the defendant's predisposition to obtain a machinegun and is unduly prejudicial. The court will exclude it.

Disk 30, page 25 line 5 to page 27 line 13:

Page 25: This highly inflammatory and prejudicial conversation about killing large numbers of Jewish people is not probative of the defendant's predisposition to obtain a machinegun. The court will exclude it.

Page 26, lines 1-8: This is a continuation of the conversation on the previous page. The court will exclude these lines for the same reason.

Page 26, lines 9-21: This portion of the excerpt is another conversation about the defendant and Mike taking handguns and killing people, then taking their machineguns or Kalashnikovs. It is prejudicial, but also probative of the

defendant's predisposition to obtain a machinegun. The government may present these lines.

Page 26, lines 22-31, page 27: This is a continuation of the discussion about how many people the two will shoot and whether they will get on the news or go to Paradise as a result. It is not probative of the defendant's predisposition to obtain a machinegun and is unduly prejudicial. The court will exclude it.

Disk 30, page 29 line 1 to page 30 line 22:

The defendant does not object to the court's admission of this excerpt. The government may present it.

Disk 34, page 27 line 12 to page 27 line 34:

This excerpt involves further discussion of going to Palestine. It is not probative of the defendant's predisposition to obtain a machinegun. The court will exclude it.

Disk 34, page 31 line 16 to page 31 line 18:

It is not clear what the defendant meant by this statement. It appears that the government seeks its admission only because the defendant talks about being an American and shooting. It is not probative of the defendant's predisposition to obtain a machinegun—it isn't clear that it's probative of anything. The court will exclude it.

Disk 34, page 35 line 27 to page 36 line 21:

This excerpt appears to be a rant against people of various races, including "whites," "Jews" and a "Mexican." It is not probative of the

25

defendant's predisposition to obtain a machinegun and is unduly prejudicial and inflammatory. The court will exclude it.

Disk 37, page 11 line 13 to page 13 line 6:

This excerpt is a discussion of the defendant's and Mike's opinions about whether women should try to attack soldiers, and what happens to them when they do. It is not probative of the defendant's predisposition to obtain a machinegun and is inflammatory and unduly prejudicial. The court will exclude it.

Disk 45, page 5 line 36 to page 6 line 45:

The topic of this discussion is unclear, at least without further context. In the first six lines or so (page 5, lines 36 to 41), the defendant and Mike talk about going shooting, and they could be talking about going to the shooting range to practice. The rest of the conversation, however, is about shooting people and not caring about it, and the reasons for shooting people. Overall, the conversation does not appear to be probative of the defendant's predisposition to obtain a machinegun and is unduly prejudicial and inflammatory. The court will exclude it.

Disk 45, call #4, page 9 line 2 to page 9 line 14:

This is a discussion of whether it is better to conduct jihad in the United States than in Palestine. It is not probative of the defendant's predisposition to obtain a machinegun and is unduly prejudicial. The court will exclude it.

<u>Disk 45, call #5, page 9 line 1 to page 9 line 35:</u>

Lines 1-11: In this portion of the excerpt, the defendant instructs Mike to stop telling people, and to find him a good weapon. This portion is probative of the defendant's predisposition to obtain a machinegun through Mike. The government may present these lines.

Lines 12-35: The remainder of the excerpt is about jihad, what to do if someone shows disrespect for Islam and how to defend the faith. It is not probative of the defendant's predisposition to obtain a machinegun and is unduly prejudicial. The court will exclude these lines.

<u>Disk 51, page 20 line 23 to page 22 line 26:</u>

Page 20, lines 23-26, page 21, lines 1-2: This conversation occurred during a trip to the shooting range on December 14, 2015. It is not clear whether these lines refer to shooting people or objects. Because of the lack of clarity, the court will exclude these lines.

Page 21, lines 3-26, page 22, lines 1-26: The defendant does not object to the court admitting this portion of the excerpt, and it appears relevant to the offense, as the defendant and Mike are discussing shooting at the shooting range and there is mention of Mike's Kalashnikov. The government may present this portion.

In making the above rulings, the court has excluded several conversations that involve the politics of the Israeli-Palestinian conflict, the geography of the region and the logistics of travel in the region. The defendant asked the court to preclude the government from calling as an expert witness

Dr. Matthew Levitt. Dkt. No. 278. In its response to that motion, the government argued that it needed Dr. Levitt's testimony to "provide the jury with expert background knowledge it needs to understand the defendant's own statements about Hamas, Israel, ISIS and the Masons." Dkt. No. 284 at 1. The government argued, for example, that the defendant made statements about joining Hamas (the militant Islamic Palestinian nationalist group that seeks to establish an independent Islamic state in disputed territories of Israel/Palestine), and argues that Dr. Levitt's testimony is necessary to explain what Hamas is and the importance (in the government's view) of the defendant's desire to join it. Id. at 1-2. It argues that Dr. Levitt's testimony will help the jury understand the defendant's statements about the ease (or lack of ease) of getting into Israel or Palestinian territories with certain passports and to understanding why a person might want to join Hamas but have an antipathy toward ISIS. Id. at 2.

After the final pretrial conference, the government submitted another brief (without seeking the court's permission to do so), asserting that the jury would need an expert to answer the following questions:

1.    What is Hamas?
2.    What are the Gaza Strip and West Bank?
3.    Why do the different security stations in the Gaza Strip and West Bank have different appeals to someone that wants to commit a mass killing there?
4.    How is it possible a person would sympathize with one designated foreign terrorist organization in the Middle East (Hamas), but oppose the values of another designated terrorist organization in the Middle East (ISIS)?

5. Do Masonic conspiracy theories exist in the Middle East (the United States anticipates asking Dr. Levitt this one question on this topic)?[3]

Dkt. No. 302 at 4.

The defendant sought leave to respond to this brief, dkt. no. 305, and the court granted that leave, dkt. no. 306. In his response, the defendant argued that Dr. Levitt's testimony was irrelevant and unnecessary, and that the government could accomplish its purpose "with a stipulation or the Court taking judicial notice of the definition of certain terms." Dkt. No. 314 at 11-13.

The court's exclusion of most of the statements that referenced terms or issues the government claims needed illuminating (the Western, or "Al Buraq," Wall, Hamas, the West Bank) renders any expert testimony on these terms, or on Israeli-Palestinian geography, unnecessary. The court expressed concern at the final pretrial conference that allowing such testimony would create the possibility of a mini-trial on the Israeli-Palestinian conflict. It didn't see the need for that risk at the final pretrial conference and sees less need now. The court will grant the defendant's motion to exclude Dr. Levitt as an expert witness on the topics of the geography of Israel, Jordan and the Palestinian territories; the Israeli-Palestinian conflict and the political/religious issues in the region. It also will grant the government's motion to exclude the defendant's expert on the same topic, Dr. Marc Sageman.

---

[3] The last two issues are more relevant to the conversations about Masons, which the court addresses in a separate section below.

29

The parties are free to discuss a stipulation to the definition of any terms in statements the court has allowed (Gaza, for example), or to ask the court to take judicial notice of certain geographical facts. But the court will not allow expert testimony on an issue that is peripheral to the question of whether the defendant was predisposed to obtain a machinegun—the issue of the defendant's alleged plans to travel to the Middle East to participate in the conflict there in the fall of 2015.

D.    Conversations about Masons

Just as the indictment did not charge the defendant with conspiracy to commit an act of international terrorism, it did not charge him with conspiring or attempting to commit an act of domestic terrorism at the Masonic Center. Again, there is a reason for this. While the statute defines domestic terrorism, 18 U.S.C. §2331(5), it does not impose criminal penalties for domestic terrorism, 18 U.S.C. §2332. See *All Things Considered*, Federal Prosecutors Are Treating El Paso Shooting as Incident of 'Domestic Terrorism' (NPR radio broadcast Aug. 5, 2019 (accessible at https://www.npr.org/2019/08/05/ 748387322/federal-prosecutors-are-treating-el-paso-shooting-as-incident-of- domestic-terrorism). Even if it did, the defendant could not have "conspired" with Steve and Mike to commit such an act, because they were government agents.

The defendant argues that the January 18-25 conversations involving Masons contain "fabulist and disgusting (but abandoned) talk," that they occurred months after the defendant was approached by the informants and so

aren't relevant to predisposition, and that they aren't relevant to inducement. Dkt. No. 277 at 11. The defendant asserts that anything he may have said about the Masons doesn't show that it is more or less likely that Steve and Mike induced him to buy machineguns. Id. at 12. He reminds the court that even after making the statements about the Masons, the defendant "disavow[ed] any violence toward them," saying the day before the purchase that he wouldn't go through with the alleged planned shooting at the Masonic Center. Id. The defendant admits that his statements about Masons would be relevant if "the night before he had not convinced Mike and Steve to abandon the plan" to commit the Masonic Center shooting. Id. at 13. But he argues that the fact that he abandoned the plan makes any statements he made about it irrelevant, and he argues that allowing the government to introduce the statements "threatens to lure the fact-finder into declaring guilt on a ground different from proof specific to the offense charged." Id. The defendant concludes that "whatever marginal relevance the government could propose is substantially outweighed by the risk of having [the defendant] convicted for his lack of character and nothing more." Id. He asked the court to "either exclude or greatly limit much of the violent statements that the government intends to introduce into evidence." Id.

If the government seeks to admit the January 2016 conversations about Masons and the Masonic Center to prove motive, the court already has concluded that they are not admissible for that purpose. Motive is not an

element of the charged offenses and is not relevant to whether the defendant committed the charged offenses.

If the government seeks to admit the January 2016 conversations about Masons and the Masonic Center to prove that the defendant was a violent, vengeful person bent on committing acts of incomprehensible violence, the statements are not admissible for that purpose. That is the kind of character evidence Rule 404(a) prohibits.

If the government seeks to admit the discussion of the plan to shoot people at the Masonic Center as evidence of the defendant's intent to obtain machineguns, his preparation to do so or his plan to do so, the government would be required to give the defendant notice of that fact under Rule 404(b). As far as the court is aware, the government has not done so.

The court is less convinced than the defendant that some of the conversations about Masons and the plan to shoot people at the Masonic Center couldn't be relevant to predisposition. The defendant's view is that as of January 18-25, 2016—the dates of the conversations about Masonic conspiracy theories and committing a shooting in a Masonic center or temple—the defendant had been talking with Steve and Mike for around four months, during which he had been subject to consistent pressure, indoctrination and inducement. Under this view, nothing the defendant said in the week before the purchase was said pre-inducement, and therefore none of the conversations are relevant as to whether he was predisposed to obtain a machinegun before the informants started inducing him to do so.

32

But that view begs the question that is up to the jury to answer: did Steve and Mike induce the defendant to purchase the charged items, and if so, *when* did they induce him? The defendant believes that the inducement started in August or September of 2015, with Steve mentioning machineguns during conversations about the defendant going to Israel, and when Mike showed the defendant a gun and began talking about guns and shooting with the defendant. If the jury agrees that Steve and Mike engaged in a prolonged indoctrination program, easing the defendant into a culture of guns and working him toward agreeing to buy a machinegun, then the defendant's statements in January 2016 aren't relevant to predisposition because by that time the defendant already had been subject to extensive inducement.

But the jury could conclude that what passed between the defendant and the informants in the fall and winter of 2015 was just three guys talking trash (albeit bigoted, violent trash). A jury could note that something seems to have happened in mid-January 2016, when Mike went from informing the agents that the defendant was no longer talking jihad and planned to visit Jordan only for a vacation to talking about going to Texas and shooting in the desert. A jury could reasonably wonder whether the inducement began sometime after Mike resumed recording, and if so, could consider whether any of the statements in the days leading up to the purchase reflected on predisposition. The question of whether the statements about Masons and the shooting are relevant to predisposition depend on whether the jury concludes that the informants induced the defendant and if so, when they conclude that inducement began.

33

For better or for worse, there is also the fact that before Mike stopped recording in mid-December 2015, the Masons never came up. All the talk about committing violent acts was related to Israel and Palestine, and the defendant traveling there. In mid-December 2015, Mike stopped recording his conversations with the defendant. The defense doesn't know why, although it suspects that Mike may have stopped recording to hide the fact that he was putting ever more increasing pressure on the defendant, or perhaps to hide the fact that agents were encouraging him to put increasing pressure on the defendant. The court does not know why Mike stopped recording and has seen no evidence to support the defendant's speculative theories. But the evidence does show that when Mike resumed recording on January 19, 2016, the topic of conversation had changed from Israel to the Masons.

If the court were to grant the defendant's request that it exclude all conversations that mentioned the Masons, it would leave a gaping and misleading hole in the chronology of events. The defendant has asked to present an entrapment defense, which requires evidence of the history of the relationship between the informants and the defendant. Part of the history of that relationship is that Mike stopped recording, and that he resumed at a time when the focus of the defendant's interest and energy had shifted dramatically. Mike also resumed recording only days after telling the agents that the defendant had stopped talking about jihad and going to the Middle East to join the conflict there. The existence of the Masons and the fact that the defendant appears to have become aware of conspiracy theories about them appear to be

the reason for the resumption of recording and the resumption of discussions about going to Texas and obtaining weapons. The defendant himself has suggested that it was the informants who planted the idea of the Masons as enemies of Islam in the defendant's head. Whether that is true or not, scrubbing all discussions of the Masons and prohibiting argument about the Masons would present the jury with false facts.

Perhaps realizing this, the defendant suggests that the court should "curtail" the statements and argument regarding the Masons. The court assumes that this is the defendant's way of saying that the court should conduct the Rule 403 balancing. What follows is the result of that balancing.

Disk 73, page 17 line 1 to page 21 line 3:

The defendant does not object to the admission of this excerpt, which is a discussion that took place on January 19, 2016 between the defendant and Mike. It relates to going to Texas, and to going shooting, as well as to a third person the men refer to as "Mo." The discussion appears to relate to the previously-discussed plan to purchase guns from Mike's "source" or "connection" in Texas. The government may present this excerpt.

Disk 73, page 25 line 22 to page 28 line 39:

Pages 25-26 and page 27 lines 1-5: The court will exclude these statements. They are probative of the defendant's intent to obtain weapons, but the danger of unfair prejudice exceeds the probative value.

Page 27, lines 6-40, page 28: This part of the conversation relates to going to Texas and obtaining guns and how to conceal them on the trip back.

35

The defendant argues that this conversation doesn't bear on whether the defendant was induced. As the court has indicated, that depends on the jury's view of whether he was induced and when. If the jury finds that the defendant wasn't induced, this portion of the conversation is relevant to the defendant's intent to obtain guns. Arguably, it is also relevant to the defendant's argument that he thought he was getting handguns, not machineguns—the defendant talks about putting the guns "inside" the spare tire for the return trip. The government may present this portion of the excerpt.

<u>Disk 73, page 31 line 3 to page 35 line 6:</u>

Pages 31-33: This portion of the excerpt is a discussion of using Molotov cocktails to burn the Center after the shooting. It is not probative of the defendant's intent to obtain the *means* to commit the shooting. It is highly inflammatory (in the emotional sense) and carries a high risk of undue prejudice. The court will exclude this portion of the excerpt.

Page 34, lines 1-35: In this conversation, the defendant talks about having silencers and about the weapons not being licensed. This statement is relevant to the defendant's intent to obtain a silencer and unregistered weapons. The statements at lines 23-25 are highly prejudicial; the defendant speaks of each man grabbing a group, shooting them and then walking out. In light of the probative value of the statements that surround it, however, the court will allow the government to present this portion of the excerpt.

Page 34, lines 36-40; page 35: The court will exclude this portion of the excerpt, which talks about cameras in the temple and wearing masks. It is not probative of the defendant's intent to obtain a machinegun.

Disk 73, page 76 line 2 to page 77 line 4:

The court will exclude this excerpt. The defendant appears to be relating a dream that he had about the alleged planned shooting. The defendant asserts that it is "bizarre." That isn't a reason to exclude evidence. The fact that the statement isn't relevant to the defendant's intent to obtain machineguns is a reason to exclude the excerpt.

Disk 73, page 81 line 18 to 88 line 7:

This excerpt records the defendant and Mike finding a parking place at the Masonic Center in Milwaukee, and the three men receiving information about Freemasonry by a Freemason who introduces himself as "Pete." The conversation is not relevant to the defendant's intent to obtain a machinegun. The court will exclude this excerpt.

Disk 73, Part 8, page 5 line 8 to page 25 line 28:

Pages 5-6, page 7 lines 1-41: The defendant does not object to the government presenting this discussion about getting machineguns and silencers from the man in Texas, as well as a discussion of the attack on the Masonic Center. The government may present this excerpt.

Page 7 line 42, pages 8-13, page 14 lines 1-42: The defendant objects to this portion of the excerpt. It is a detailed discussion of how the planned shooting will take place, from who will participate, who will stand where,

whether to avoid children and elderly people, whether the shooting will bring the men notoriety with groups like Hamas. The statements are not probative of the defendant's intent to obtain a machinegun or silencers and are unquestionably unduly prejudicial. They raise the risk that the jury will convict the defendant for his cold, calculating and chilling words, and not because he possessed the charged items. The court will exclude this portion of the excerpt.

Page 14, lines 42-45; page 15: The defendant does not object to the government presenting this discussion of purchasing machineguns and silencers from the person in Texas. The government may present this portion of the excerpt.

Page 16: The defendant objects to this discussion of what the men will do with the weapons after the shooting. The court agrees that this portion of the conversation is not relevant to the defendant's intent to obtain a machinegun. The court will exclude this portion of the excerpt.

Pages 17-20, page 21, lines 1-33: **The defendant did not state whether he objected to any of this portion of the excerpt**. Without ruling, the court notes that some of it relates to going to Texas to get the guns (page 17, lines 1-33), which the court believes are relevant; some to plans about the shooting (page 17, lines 34-44; page 18, lines 1-2), which the court believes are not relevant and are inflammatory; some to strange information (or misinformation) about Masons and Mo and someone's sister and going on a trip to Jordan (page 18, lines 3-45; pages 19-20; page 21, lines 1-33), which do not appear to be relevant.

Page 21, line 35; pages 22 and 23: The defendant does not object to the presentation of this discussion about buying guns from the man in Texas, the trip to Texas and the cost of the guns. The government may present this portion of the excerpt.

Pages 24-25: The defendant objects to this portion of the conversation. The men are talking about the defendant quitting his use of marijuana. The defendant also talks about changing the date of the shooting, and how many people will be there. This portion is not relevant to the defendant's intent to obtain a machinegun and carries a high risk of undue prejudice. The court will exclude it.

Disk 79, page 6 line 30 to page 10 line 2:

Pages 6 and 7; page 8, lines 1-42: The defendant objects to the presentation of this discussion of Mo and the men's views of Mo. The court agrees that this portion of the excerpt is not relevant to the defendant's intent to obtain a machinegun. It isn't necessarily unduly prejudicial; it simply doesn't seem to relate to the charges. The court will exclude this portion of the excerpt.

Page 8, lines 42-47: This brief excerpt is the defendant talking about getting the guns. The government may present this excerpt.

Page 9, lines 1-45; page 10: This excerpt appears to be a continuation of the conversation about Mo. It is irrelevant. The court will exclude it.

Case 2:16-cr-00021-PP-WED Document 342-9 Filed 10/18/19 Page 39 of 51

<u>Disk 79, page 27 line 22 to page 28 line 14:</u>

This excerpt is a discussion of Mo and what is in Mo's heart. It is irrelevant and confusing, and the court will exclude it.

<u>Disk 79, page 32 line 20 to page 32 line 46:</u>

This excerpt is more discussion of Mo and what Mo has said about Mike. It is irrelevant and the court will exclude it.

<u>Disk 79, page 48 line 37 to page 49 line 31:</u>

This excerpt is yet more discussion about the men's opinion of Mo and what Steve told Mo about talking about Mike. It is irrelevant and the court will exclude it.

<u>Disk 79, page 78 line 32 to page 80 line 42:</u>

The defendant has no objection to the government presenting this excerpt. The conversation took place on January 20, 2016—the day after the visit to the Masonic Center. The defendant, Steve and Mike appear to begin by talking about an "eye," which the defendant insists is a Masonic symbol but Mike says is "the eye of jealousy." The men then root around to find a dollar bill, then discuss the image of George Washington on the bill. The conversation then shifts to talk of whether any of the men will get out of the "temple" and whether they will be martyred. Because the defendant does not object, the government may play this excerpt but the court has difficulty seeing the relevance of this conversation to the charged conduct.

<u>Disk 84, page 16 line 40 to page 17 line 37:</u>

In this excerpt from January 21, 2016, the three men discuss Masonic symbolism, the defendant asserts that Masons kidnap people to offer them to the devil, they discuss a video that either the defendant or Mike showed Steve the night before, the assertion by the defendant that ISIS is Masonic and that the Masons destroyed the world. The defendant says that if the court grants its motion *in limine* to exclude or curtail statements about the Masons, it should exclude this statement as irrelevant, but "if the government can introduce it, no objection." Dkt. No. 291 at 21. The court isn't sure what the defendant means by that objection.

The first part of the conversation—page 16, lines 40-46 and page 17 lines 1-19—is irrelevant, in the court's view, and the court will exclude it.

Page 17, lines 21-37 may explain why the defendant's attention shifted to the Masons. The jury will be aware that the defendant and the informants had discussed an attack on the Masonic Center. These statements provide context and are not unduly prejudicial. The government may present page 17, lines 21 through 37.

<u>Disk 84, page 35 line 38 to page 52 line 12:</u>

Pages 35-37; page 38, lines 1-2: The defendant objects that this portion of the excerpt is not relevant and is confusing. It appears in this conversation that the defendant is proposing to change the location of the planned shooting from Milwaukee to Texas, due to his fear that the plan has leaked. The court agrees that the conversation is not relevant to the defendant's intent to obtain

a machinegun, although it notes that the defendant himself has argued that this change in plan was evidence of the defendant trying to find a way to back out of the plan to attack the Milwaukee Masonic Center. But the court will exclude this portion of the excerpt as irrelevant.

Page 38, lines 5-46; pages 39-40; page 41, lines 1-28: The defendant does not object to this portion of the conversation, and it is relevant to the defendant's intent to obtain machineguns. The government may present this portion of the excerpt.

Page 41, lines 29-46; pages 42-48; page 49, lines 1-36: The defendant objects to this portion (and an additional line) because it is a detailed description of how the mass shooting at a Masonic location (possibly in Texas) will be carried out. The court agrees that the risk of unfair prejudice far outweighs any probative value this portion of the excerpt may have, and the court will exclude it.

Page 49, lines 37-46: This is a discussion of the silencers. It is relevant, the defendant does not object, and the government may present it.

Pages 50-52: **The defendant did not indicate whether he objects to this portion of the excerpt**. On these pages the conversation returns to a detailed discussion of how the shooting will be carried out, and telling people to take their kids out, and whether there will be kids present. This portion of the excerpt is irrelevant and carries a very high risk of undue prejudice. The court will exclude it.

Disk 84, page 45 line 27 to page 47 line 20: The defendant objects that these statements are unduly prejudicial and irrelevant. The court agrees, but notes that it is confusing that this conversation purportedly appears on Disk 84, Part 2, pages 45-47, and that the previous excerpt purported to be on that same disk at pages *38 through 52*. It appears there may be some numbering confusion. Regardless, the court will exclude this conversation, in which Steve says that he told the defendant to postpone due to Mo and some other person named 'Umar, and the men talk about a shooting in Texas and how it will go down.

Disk 84, Parts 3&4, page 34 line 40 to page 37 line 5:

The defendant does not object to this excerpt. The majority of the conversation relates to the cost of the guns and the kind of guns the men plan to buy and how they'll carry them. The court will allow the government to present this excerpt.

Disk 86, page 18 line 9 to page 19, line 26:

This is a discussion of the cost of the guns. The defendant says, "No objection as it stands. If the Court allows in the other contested statements or a fair amount, then under the doctrine of completeness it should go to page 23, line 31." Dkt. No. 291 at 21. The court doesn't know what to make of this assertion; the defendant does not appear to have provided the court with the additional excerpt it believes is necessary for completeness. The court will allow the government to present this excerpt, **and if the defendant provides the court with the remaining statements it believes are necessary, the court**

**will consider whether to require the government to include those statements.**

Disk 86, page 40 line 31 to page 41 line 4:

The defendant objects that these comments about finding a temple close to a highway, then shooting everyone inside, are irrelevant and inflammatory. The court agrees, and will exclude this excerpt.

Disk 90, page 10 (portion) to page 13 (portion):

This conversation took place on January 23, 2016 and appears to be a discussion of a possible attack on a Masonic location in Indiana on the coming Friday. While there is a relevant reference to having Mike arrange to get the guns before the following Thursday, the court agrees with the defendant that the high risk of undue prejudice carried by the entire exchange outweighs the probative value of that one sentence. The court will exclude this excerpt.

Disk 90, Part 2, page 29 (entire) to page 33 (portion):

The defendant objects to the first nine segments, from the defendant's statement beginning "Exactly" through the defendant's statement "Nice." The defendant argues that this section is highly inflammatory and not relevant to the defendant's intent to obtain a machinegun. The court agrees—this is another discussion of what to do with any children who may be in the building and a discussion of whether the location is near a highway. The court will exclude this portion.

The defendant has no objection to the rest of page 29 (starting with Mike's statement, "I mean, when you were talking . . . ."). This portion of the excerpt is relevant, and the government may present it.

The defendant objects to the remainder of the excerpt—pages 30-33. The court will exclude this portion of the excerpt; it contains more detailed discussions of how the shooting will be carried out, and the risk of undue prejudice outweighs any possible probative value.

Disk 90, Part 2, page 35 (portion) to page 39 (portion):

**The defendant did not indicate whether he objected to this excerpt**.

Again, without ruling, the court notes that page 35 and page 36 from the first line to the paragraph where the defendant says, "And the situation is under control . . ." do not appear to the relevant.

Page 36 starting with Mike saying, "Did everyone has his money ready" through page 38, the paragraph where the defendant starts with "I mean, you are not asking for a big amount . . ." appears to be relevant, because the men are talking about how they are going to come up with the money and the exact items they'll buy with the money. The remainder of the excerpt appears either irrelevant or carries a high risk of prejudice relative to any probative value.

Disk 92, Part 3, page 13 line 13 to page 13 line 15:

The defendant objects to this excerpt and the court agrees. Any slight probative value this statement may have is outweighed by the inflammatory nature of the racist comment. The court will exclude it.

Case 2:16-cr-00021-PP WED Document 342-9 Filed 10/16/19 Page 45 of 51

<u>Disk 95, Part 1, page 12 line 20 to page 13 line 9:</u>

The defendant objects on relevance grounds. This appears to be another conversation about Mo, and how he came to the defendant and reported that he had heard about the plan to shoot at a Masonic temple. The statement is irrelevant to the defendant's intent to obtain a machinegun. The court will exclude it.

**The defendant next states that he has no objection to the court admitting Disk 97, p. 15. The government did not provide the court with a Disk 97, p. 15.**

<u>Disk 99, page 15 line 2 to page 16, line 19:</u>

In this excerpt from a January 24, 2016 conversation, the defendant appears to be reporting that he learned from an Imam that attacking the Masons would be wrong, but that he still wanted to buy the guns and was ready to get them the next day. The court suspects that the defense meant to indicate that it did not object to the admission of this excerpt. It is relevant, and the government may present it.

<u>Disk 104, page 15 line 22 to page 16 line 25:</u>

The defendant does not appear to object to this excerpt, and it is relevant. The defendant says, however, that as to page 15, "[u]nder Rule of Completeness there also needs to go back to page 12, line 22, all the way through." Dkt. No. 291 at 21. Page 15 contains only one line: the defendant says, "The fear is regarding the issue that the weapon is not licensed."

The defendant provided in his proposed transcript excerpts of what the court assumes is the portion of the conversation he believes should be added. Dkt. No. 324 at 72-75 (defense exhibit 3150). The court agrees that this portion of the conversation is relevant to explain why the defendant is concerned about the fact that the gun would be unlicensed. The government does not appear to object to the added portion; it did not list this among the transcripts to which it either objected or felt that modifications were necessary.

The court will allow the government to present this excerpt, as long as it starts at page 12, line 22.

Disk 104, page 35 line 6 to page 35 line 11:

The first four lines of this conversation are relevant, with the defendant, Mike and Steve discussing the unlicensed guns. The defendant objects to the last two lines, where the defendant states that if they are caught, they will be considered terrorists. The court agrees that the last two lines should be excluded (starting with the defendant saying "Because if we are caught in this . . ."). The government may present the first four lines of the conversation.

Disk 104, page 46 line 2 to page 46 line 6:

The government's last proposed excerpt is from January 25, 2016. Dkt. 285-1 at 187. It consists of a five-line exchange between the defendant and Mike about the guns, in which the defendant asserts that he thought "they would be like yours, *man*." The defendant indicated that he had no objection to the statement, but "the whole video should be played." Dkt. No. 291 at 21.

47

Case 2:16-cr-00021-PP-WED Document 342 Filed 10/16/19 Page 47 of 51

The defendant has asked the court to allow him to present a transcript which he has marked defense exhibit 3153. Dkt. No. 311-5 at 1. A review of this transcript reveals that it is the recording of the defendant's, Mike's and Steve's meeting with the undercover agents on January 25, 2016—the meeting where the men bought the guns. Given that this is the very event that gives rise to the charges, the conversation is relevant.

The government does not appear to dispute that, because in its response to the defendant's t proposed excerpts, the government says that "[t]he parties will be able to play the full undercover sale." Dkt. No. 315 at 4. Strangely, however, the government *objects* to the *defendant* seeking to admit the very five lines at the end of the meeting that the government itself proposed to admit. In its objection, the government asserts that the defendant is seeking to admit these five lines for the truth of the matter asserted, that they do not fall under any hearsay exception and that they're not legally relevant because they're a complaint about the physical size of the guns, which the defendant discusses during the earlier parts of the conversation. Id. The court will require the government to play the entire conversation that appears in defendant's exhibit 3153.

In making these rulings, the court has excluded some statements regarding the Masons and the reason the defendant may have focused on them. The court concludes that the jury does not need Dr. Levitt's testimony about whether Masonic conspiracy theories exist in the Middle East (the court didn't understand the relevance of that information before ruling on this

motion) or testimony about how someone might sympathize with Hamas but
not ISIS. The discussion of the video the defendant and Steve saw that caused
the defendant to conclude that ISIS was Masonic could raise questions, but the
parties could stipulate to, or the court could take notice of, the fact that
"Da'ish" is another acronym for ISIS. Dr. Levitt's testimony is not necessary on
this point. The court will grant the defendant's motion to preclude Dr. Levitt
from testifying.

E.    Evidence and Argument About the Plans to Commit a Shooting at the
      Milwaukee Masonic Center

      The parties' arguments focused on admission of the government's
proposed transcript excerpts, and the court has addressed them in that
fashion. The transcripts are not the only evidence the government wishes to
present, however. The government has provided an extensive witness list which
includes Mike, Steve and the undercover agents. These witnesses will testify
about their interactions with the defendant. The jury will hear that the three
men discussed a plan for conducting a shooting at the Masonic Center, and
that discussions about purchasing guns took place as part of the discussions
of those plans. In excluding some of the recorded conversations about those
plans, it is not the court's intent to bar witnesses from testifying about the
chronology of events that unfolded leading up to January 25, 2016. The court
has tried to exclude those portions of the conversations that are so irrelevant or
inflammatory that the jury would be hard-pressed to heed this court's
instructions to focus only on the charged offenses. The court realizes that
knowing the defendant was involved in conversations about a planned shooting

at the Masonic Center could make it hard for the jurors to focus on the charged offenses. But the plans are a fact and are part of the series of events that the defendant says resulted in his entrapment, and the government says led to his purchase of illegal items. In making these rulings, the court has tried to balance the government's right to present its case and to try to rebut the entrapment defense with the need to protect the defendant from being convicted for uncharted conduct. The need to continue that attempt at balancing will continue through the trial.

F.    Conclusion

The court **GRANTS IN PART AND DENIES IN PART** the government's consolidated motions *in limine* regarding the defendant's recorded statements. Dkt. No. 272.

The court **GRANTS IN PART AND DENIES IN PART** the defendant's motion *in limine* to exclude or limit evidence and argument related to conversations about Israel and the Masons. Dkt. No. 277, Motion I.

The court **GRANTS** that portion of Section X of the government's motions *in limine* which asks the court to exclude Dr. Marc Sageman's testimony. Dkt. No. 276, Motion X, pp.18-21.

The court **GRANTS** the defendant's fourth motion *in limine* to exclude Dr. Levitt's testimony. Dkt. No. 278.

Dated in Milwaukee, Wisconsin this 16th day of October, 2019.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

                                          Case No. 16-cr-21-pp

   v.

SAMY M. HAMZEH,

        Defendant.

**ORDER RULING ON DEFENDANT'S SIXTH MOTION *IN LIMINE*: POST
ARREST STATEMENTS (DKT. NO. 330)**

On October 14, 2019—the day before the final status conference, six days before trial, and a month after the September 13, 2019 deadline for filing motions *in limine*—the defendant filed this motion, asking the court to admit portions of the defendant's post-arrest statements under Fed. R. Evid. 106 ("Remainder of or Related Writings or Recorded Statements), and to exclude one excerpt as irrelevant, inflammatory and unduly prejudicial. Dkt. No. 330. The government responded, it did not object to some of the defendant's proposals but argued that others were hearsay as to the defendant. Dkt. No. 336. In its reply, the defense asked to admit two additional excerpts of the second interview. Dkt. No. 352. The government responded that given the court's exclusion of many of its proposed excerpts of the recorded conversations among Steve, Mike and the defendant, it now objected to the admission of any of the defendant's post-arrest statements presented if offered by the defense. Dkt. No. 355 at 2. The government argued that where the

1

*defendant* sought to admit his own statements, those statements "are instead hearsay, offered for their truth, and offered as substantive evidence to support an entrapment defense." Id.

The court agrees that if a party such as the government seeks to admit a statement made by that party's opponent—in this case, the defendant—against that opponent, the statement is not hearsay under Rule 801(d)(2). If the opponent—the defendant—seeks to admit his own statements, the Rule 801(d)(2) exception doesn't apply, and if the opponent is seeking to admit the statements for the truth of the matters they assert, the statements meet the definition of hearsay under Rule 801(c). That is not, however, the end if the inquiry. The court still must consider whether the defendant offers the statement for the truth, and whether there are any exceptions to the hearsay rule that might apply.

In United States v. Norwood, 798 F.2d 1094 (7th Cir. 1986), the Seventh Circuit held that "[t]estimony" "not offered to prove the truth of the matter asserted, but to establish the statements' effect upon [the defendant's] state of mind" was "not hearsay." Norwood, 798 F.2d at 1097. In United States v. Branham, 97 F.3d 835, 851 (7th Cir. 1996), the court held that "conversations concerning [the defendant's] entrapment defense would not constitute hearsay." The Branham court stated,

> "Hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Red. R. Evid. 801(c). However, "if the significance of a statement lies 'lies solely in the fact that it was made,' rather than in the veracity of the out-of-court declarant's assertion, the statement is not hearsay because it is not

2

offered to prove the truth of the matter asserted." *United States v. Cantu*, 876 F.2d 1134, 1137 (5th Cir. 1989) (quoting *United States v. Bobo*, 586 F.2d 355 (5th Cir. 1978), *cert. denied*, 440 U.S. 976 . . . (1979)). Here, defense counsel was attempting to offer the parties' conversations as evidence of [the defendant's] state of mind in support of his entrapment defense. Accordingly, the truth of the conversations would be irrelevant for purposes of the defense, because the conversations' significance would exist solely by the fact that they were made. *Id.*

Id. See also, United States v. Partyka, 561 F.2d 118, 125 (8th Cir. 1977);

United States v. Lopez, 147 F.3d 1, 6 (1st Cir. 1998).

The court understands that the government may not have objected to—or may even have agreed to—some of the defendant's proposed excerpts because it assumed that the court would allow it to present more of the recorded conversations than turned out to be the case. The fact that the court has excluded some of the government's evidence does not necessarily mean that any of his own post-arrest statements the defendant asks the court to admit are *per se* inadmissible hearsay.

A.    Fed. R. Evid. 106

Rule 106 of the Federal Rules of Evidences provides that "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." The advisory committee notes to the rule explain that it "is an expression of the rule of completeness."

"Generally, when part of a defendant's post-arrest statement is introduced into evidence, the defendant has the right to have the entire

3

statement introduced." <u>United States v. Smith</u>, 794 F.2d 1333, 1335 (7th Cir. 1986) (citing <u>United States v. Kaminski</u>, 692 F.2d 505, 522 (8th Cir. 1992) (quoting <u>United States v. Wenzel</u>, 311 F.2d 164, 168 (4th Cir. 1962)). "This rule is sometimes referred to as the rule of completeness." <u>Id.</u> The Seventh Circuit has noted, however, that there are limitations on this rule. For example, if portions of a non-testifying defendant's post-arrest statement inculpate a co-defendant, those portions must be excluded to avoid violating the co-defendant's right to confrontation. <u>Id.</u> (citing, among others, <u>Bruton v. United States</u>, 391 U.S. 123 (1968)).

> A further limitation on the rule of completeness, applicable in all cases, arises when the prosecution seeks only to introduce a portion of the defendant's statement. There, the defendant still has the right to introduce additional portions of his statement. But, this right does not entitle the defendant to introduce portions of his statement that are neither explanatory of nor relevant to those portions of the statement introduced by the prosecution. *United States v. Marin*, 669 F.2d 73, 84-85 (2d Cir. 1982) (citing *United States v. McCorkle*, 411 F.2d 482, 486-87 (7th Cir.), *cert. denied*, 423 U.S. 826 . . . (1975)).

<u>Id.</u> at 1335.

<u>United States v. LeFevour</u>, 798 F.2d 977 (7th Cir. 1986) involved the appeal of one of the state-court judges convicted in "Operation Greylord," Richard Lefevour. Among other things, LeFevour proposed a scheme by which police officers, including one named McCauslin, would serve arrest warrants on people with ten or more unpaid parking tickets, then offer to settle with the person for half the fine and pay the "settlement" to LeFevour, who would dismiss the charges and recall the warrant. <u>Id.</u> at 979. McCauslin made a recording of a conversation he had with LeFevour, in which he told LeFevour

4

that he'd been subpoenaed by a grand jury and asked LeFevour's advice. Id. at 980. LeFevour told McCauslin not to worry and to get in touch with McCauslin's lawyer, a man named Seymour Vishny; McCauslin suggested that he and LeFevour communicate through Vishny. Id. After McCauslin left LeFevour, he spoke with the FBI and said he'd "put on his best scare act" with LeFevour; the recorder was still running, and this statement was recorded. Id. Defendant LeFevour asked the trial court to admit McCauslin's statement about putting on his "scare act," but the trial judge found the statement inadmissible "because it would confuse the jury and was not relevant to impeaching McCauslin's testimony." Id.

On appeal, LeFevour argued that the trial judge should have allowed him to pay the rest of the recording under Rule 106. Id. at 981. The Seventh Circuit first discussed the government's reason for playing the recording:

> The government's purpose in placing the tape recording in evidence was to show that LeFevour knew that McCauslin's lawyer was Seymour Vishny; this was relevant in light of evidence . . . connecting Vishny with LeFevour's efforts to conceal his corrupt practices. If the government had excised portions of the conversation between McCauslin and LeFevour and as a result had conveyed a misleading impression, Rule 106 would have entitled LeFevour to play the rest of the taped conversation to the jury—and to do so right after the government had played its portion of the tape ("contemporaneously"), so that the jury would not be left with a false impression that might prove indelible. But the government played the whole conversation; what it left out was a separate conversation between McCauslin and the agents. If the separate conversation had been on a different tape, the weakness of LeFevour's argument under Rule 106 would be transparent—though not just because of the accident of there being two reels of tape rather than one; a letter and the reply to it are a unit for the purposes of Rule 106, see 21 Wright & Graham [Federal Practice and Procedure], § 5078, at p. 372 and n. 6. But there is no logical connection between the two

5

conversations that McCauslin had, at least given the very limited use that the government made of the first one.

Id.

The court went on to explain,

The purpose of the "completeness" rule codified in Rule 106 is merely to make sure that a misleading impression created by taking matters out of context is corrected on the spot, because of "the inadequacy of repair work when delayed to a point later in the trial." Notes of Advisory Comm. on Proposed Rule 106. An example would be accusing the Biblical David of blasphemy for saying, "There is no God," his full statement being, "The fool hath said in his heart, there is no God." *Trial of Algernon Sidney*, 9 Howell's State Trials 818, 868-69 (K.B. 1683). We are far from that paradigmatic case here. No misleading impression was corrected by stopping the tape before McCauslin told the agents that he had "put on his best scare act." If he had scared LeFevour into saying something incriminating, there might be some point to allowing the jury to hear McCauslin admit having tried to manipulate the conversation. But really the only point of placing the recording of the conversation in evidence was to show that LeFevour knew of Vishny's representation of McCauslin and acceded to the latter's suggestion that Vishny be their go-between; and to that purpose the talk of a "scare act" was irrelevant. If the purpose of the scare act was to get LeFevour to make incriminating statements, if failed.

Although an argument can be made that McCauslin's inability to frighten LeFevour into making incriminating statements is evidence that LeFevour was innocent, the argument is too tenuous to require the admission of the end of the tape. LeFevour himself argues only that the conversation with the agents should have been put into evidence for the sake of completeness. But the only thing the conversation with LeFevour showed—that McCauslin would be dealing with LeFevour through Vishny—was complete in itself, without reference to the "scare act." *See United States v. Garrett,* 716 F.2d 257, 271-72 (5th Cir. 1982).

Id. at 981-82.

Just under a year later, the Seventh Circuit issued an *en banc* decision in United States v. Sweiss, 814 F.2d 1208 (7th Cir. 1987). The defendant was charged with conspiracy to commit arson and aiding and abetting arson. Id. at

6

1209. His co-conspirator Faraj was arrested, and after his arrest, wore a wire

and recorded two conversations with the defendant—one in August and one in

September 1984. Id. At trial, the government introduced the recording of the

September conversation, but when the defense offered the August

conversation, the district court refused to admit it. Id.

> . . . During the September conversation, Faraj and Moses [Sweiss]
> discussed how Faraj could flee to Mexico and how Faraj had been
> solicited to bomb the One Stop grocery store. Although Sweiss did
> not say anything in the conversation that directly incriminated
> himself, the government argued to the jury that his statements
> implicated him in the crime.
>
> In his opening and rebuttal arguments the prosecutor stressed the
> importance of the September conversation. He told the jury that "the
> big evidence against Moses Sweiss is his own words" from the
> September tape. The prosecutor argued that the September
> conversation showed that: (1) Moses Sweiss had solicited Faraj to
> commit the arson; (2) by implication Sweiss admitted that the
> solicitation conversation occurred; and (3) because Sweiss knew the
> details of Faraj's plans to flee the country he was a participant in
> those plans. The government also argued that an individual named
> Adnan [Eddie] Al-Abbasi had witnessed the solicitation
> conversation. Abbasi was a key government witness. His testimony
> fully corroborated Faraj's . . . testimony. Moreover, Abbasi testified
> that he witnessed Sweiss' offer of $5,000 to destroy the One Stop.
> Abbasi also testified as to another conversation with Sweiss
> concerning the destruction of the One Stop.
>
> The defense argues that the conversation recorded on August 14,
> 2918, shows that these contentions are not true. First, the defense
> argues that when Faraj initially told Sweiss during the August
> conversation that "everyone," including his "lawyer and all the
> Arabs," were pressuring him to name Moses Sweiss as the one who
> solicited Faraj to commit the arson, Sweiss clearly was shocked and
> strongly denied any involvement. Second, the defendant protests the
> prosecution's assertion that in the September conversation when
> Faraj mentioned a witness who would corroborate the solicitation
> conversation and Sweiss responded, "Do you mean Adnan?"
> (referring to Eddie Al-Abbasi's formal name), that this meant Sweiss
> knew of a witness. The defense argues that it was Faraj who
> volunteered Eddie as the corroborating witness, and that when he

did, Sweiss did not know whom Faraj was talking about. The defense also argues that in the August tape-recorded conversation, when Faraj first told Sweiss he would say there was a solicitation conversation, Sweiss strongly denied that such a conversation had occurred. Finally, the defense argues that in the September conversation Sweiss had knowledge of Faraj's plans to flee the country only because Faraj had told Sweiss of his travel plans during the August conversation. Sweiss' defense was, therefore, partly based on a theory that the information concerning the bombing solicitation, and the escape that he discussed in the September conversation, were told to him by Faraj during the August conversation.

Id. at 1209-10.

On appeal, the defendant argued that Rule 106 required the trial court to admit the recording of the August conversation. Id. at 1211. The court noted that the rule was "circumscribed by two qualifications," which were that "[t]he portions sought to be admitted (1) must be relevant to the issues and (2) only those parts which qualify or explain the subject matter of the portion offered by the opponent need be admitted." Id. at 1211 (quoting United States v. Walker, 652 F.2d 708, 710 (7th Cir. 1981)). Noting that the Second and Third Circuits had "adopted and amplified" the test it had articulated in Walker, the court stated that

> [u]nder the doctrine of completeness, another writing or tape recording is "required to be read [or heard] if it is necessary to (1) explain the admitted portion, (2) place the admitted portion in context, (3) avoid misleading the trier of fact, or (4) insure a fair and impartial understanding." [United States v.] Soures, 736 F.2d [87,] 91 [(3d Cir. 1984), cert. denied, 469 U.S. 1161 . . . (1985)] (citing [United States v.] Marin, 669 F.2d [73,] 84 [(2d Cir. 1982)].

Id. at 1211-12.

Applying this test, the court held that the excluded August 1984 conversation, "while perhaps useful to the jury, was not *necessary to explain*

evidence already admitted," and thus that "Rule 106 was not implicated." Id. at 1212.

LeFevour and Sweiss involved recorded conversations. The Seventh Circuit's decision in United States v. Velasco, 953 F.2d 1467 (7th Cir. 1992) turned to facts more like the defendant's—Rule 106 applied to a post-arrest statement. In Velasco, the defendant sought to admit his entire post-arrest statement, in contrast to the government's request to admit portions of it, and cited Rule 106. Id. at 1474. The Seventh Circuit concluded that the portions of the statement which the defendant wanted to admit were not relevant to the issues in the case. It explained,

> Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. A fact of consequence critical to the government's case was defendant's guilty knowledge that he possessed cocaine. The prosecution had the testimony of the surveillance team members who observed Garcia-Caban and Velasco look into Garcia-Caban's trunk after Velasco had placed the booster cable box in it, but that alone would not establish that Garcia-Caban knew he possessed cocaine. Thus, the government offered that portion of the defendant's post-arrest statement wherein he stated, "The kilo of coke. [*Bruton* material deleted]. I opened the trunk [*Bruton* material deleted] there was a kilos [sic] there then I locked the trunk." . . . There is nothing in the portions of the defendant's post-arrest statement that he tried to admit under Rule 106 that make the fact of his guilty knowledge more probable or less probable. The unadmitted portions deal solely with the involvement of others, none of whom, with the except of Velasco, were relevant to the government's case. Indeed, the mention of those others might have confused or mislead the jury, which is in fact contrary to Rule 106's purpose to explain, qualify, or place the admitted portion in context.

> Our facts are not unlike those in *United States v. Dorrell*, 758 F.2d 427 (9th Cir. 1985). There, the defendant made a post-arrest statement in which he confessed to the acts charged and explained

his political and religious motivations for committing those acts. At his trial, Dorrell was precluded from offering the necessity defense, after which the trial court granted the government's motion to redact from his statement his explanation for his conduct. All that was left was his confession. Holding that the complete text of Dorrell's post-arrest statement was not required under Rule 106, the Ninth Circuit stated that "removing Dorrell's explanation of the political and religious motivations for his actions did not change the meaning of the portions of his confession submitted to the jury. The redaction did not alter the fact that he admitted committing the acts with which he was charged." *Id.* at 435. Here, the defendant argues that the unadmitted portions were necessary to explain his theory of the case. But as in *Dorrell*, these portions were neither relevant, nor necessary to explain his statement that he knew there was cocaine in his trunk. *See also United States v. Smith*, 794 F.2d 1333, 1336 (8th Cir.), *cert. denied,* 479 U.S. 938 . . . (1986) (Rule 106 inapplicable because unadmitted portions of defendant's post-arrest statement did not explain the facts disclosed through the admitted portion). We conclude, therefore, that the trial judge did not abuse her discretion to disallow the unadmitted portions of Garcia-Caban's post-arrest statement under Rule 106.

Id. at 1475-76.

United States v. Paladino, 401 F.3d 471 (7th Cir. 2005) involved the government's use of a redacted deposition—arguably like a redacted version of a post-arrest statement. A jury convicted Paladino and others of "a variety of federal crimes arising out of a scheme to defraud investors that succeeded in fleecing $11 million from the victims." Id. at 474. Years prior to being charged, the defendant had been deposed in an SEC proceeding, and "in the criminal trial the judge allowed the government to present a severely cropped version of the deposition in an effort to demonstrate his guilty knowledge." Id. at 476. On appeal, the Seventh Circuit found that in allowing the government to present the edited deposition, the trial judge violated Rule 106. Id. The court explained:

> . . . An issue of great importance to Paladino's guilt or innocence was whether he knew that money in a certain account was money of

investors ("invested money" or "investment money")—which as soon as it was received was checked out to him and the other defendants without ever being invested—or proceeds of legitimate transactions ("trade money"). Asked at the deposition about his knowledge of the invested money, he said: "I learned that this money that's been coming in was investment money, and I was totally surprised because I assumed this whole time that this was trade money." The government put a period after "investment money" and deleted the rest of Paladino's answer. The difference between "I learned" and "I was surprised to learn" is subtle but potentially important; if Paladino wasn't surprised to learn that investor money was being misapplied, this would suggest that he had previous knowledge of the fraud, which he denied.

There were other harmful deletions. For example, handed during his deposition a "secured investor program agreement," Paladino said it "looks familiar" but added that he hadn't seen it until after the scheme had ended and the SEC had filed suit. The judge allowed the government to delete the addition even though, since Paladino's guilt depended on what he knew when, the date on which he first saw the document was crucial.

In permitting the government to make this and other misleading deletions, the trial judge violated Fed. R. Evid. 106, which provides, so far as bears on this case, that when one party introduces in evidence a part of a writing, his opponent "may require the introduction . . of any other part . . which ought in fairness to be considered contemporaneously with it."

Id. (citations omitted).

Six years later, the court again addressed Rule 106 in the context of a post-arrest statement. In <u>United States v. Lewis</u>, 641 F.3d 773 (7th Cir. 2011), an agent testified at trial about the defendant's post-arrest statement. On cross-examination, the defendant tried to ask the agent about portions of the statement to which the agent had not testified, to show that he'd not mentioned certain alleged co-actors in the statement. <u>Id.</u> at 784. The government objected on hearsay grounds, to which the defendant responded that he wasn't trying to admit the statements for the truth of the matter they

asserted. Id. "The judge upheld the government's objection, and pointed out

that if [the defendant] wanted to advance a defense theory about what he knew

or didn't know at the time, he was certainly welcome to do so by taking the

stand." Id.

On appeal, the defendant argued that Rule 106 required the trial judge to

overrule the government's objection and admit the statements. Id. at 785. The

Seventh Circuit explained that

> Under [the doctrine of completeness], a complete statement is
> required to be read or heard when "it is necessary to (1) explain the
> admitted portion, (2) place the admitted portion in context, (3) avoid
> misleading the trier of fact, or (4) insure a fair and impartial
> understanding. *United States v. Sweiss*, 814 F.2d 1208, 1211-12
> (7th Cir. 1987). "The completeness doctrine does not, however,
> require introduction of portions of a statement that are neither
> explanatory of nor relevant to the admitted passages." *United States
> v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982).

Id.

The Lewis court concluded that the agent had not indicated on direct

exam that the defendant had interacted with the co-actors about whom he was

concerned, and that his effort to argue that certain portions of the agent's

testimony might lead a jury to conclude that he had was "merely explanatory of

his theory of the case." Id. The court disagreed that the doctrine of

completeness required the trial judge to allow the defendant to elicit hearsay on

cross. Id.

In early 2012, the court returned to the context of recorded statements.

In United States v. Reese, 666 F.3d 1007 (7th Cir. 2012), the jury found the

defendant (a building inspector for the City of Chicago) guilty of conspiracy to

commit bribery and making false statements to federal agents. The government

presented recordings of conversations in the fall of 2006 between the defendant

and a confidential informant. Id. at 1013. It also introduced "a month-by-

month summary of the number and duration of calls between [the defendant]

and his alleged coconspirators during 2005, 2006, and part of 2007." Id. On

appeal, the defendant argued that the trial court should have admitted

recordings from conversations he had in 2007 with one of his co-conspirators,

Romasanta, under Rule 106. Id. at 1019. After reciting the rule, the Seventh

Circuit explained that

> . . . [t]he purpose of the rule is "to prevent a party from misleading
> the jury by allowing into the record relevant portions of the excluded
> testimony which clarify or explain the part already received." *United
> States v. Wilkerson*, 84 F.3d 692, 696 (4th Cir. 1996); *see also United
> States v. LeFevour*, 798 F.2d 977, 981 (7th Cir. 1986) (otherwise
> inadmissible evidence may be admissible under Rule 106 to correct
> a misleading impression or else the misleading impression must be
> excluded). Rule 106 also applies to oral, nonrecorded statements.
> [*United States v.*] *Price*, 516 F.3d [597,] 604 [(7th Cir. 2008)].

> To admit evidence under Rule 106, a court must find that the
> evidence is relevant to the issues of the case. *United States v.
> Velasco*, 953 F.2d 1467, 1474-75 (7th Cir. 1992). If the evidence is
> relevant, the court considers the following factors: whether (1) the
> proposed evidence explains the admitted evidence; (2) the proposed
> evidence places the admitted evidence in context; (3) admission of
> the proposed evidence will avoid misleading the trier of fact; and (4)
> admitting the proposed evidence will insure a fair and impartial
> understanding of all of the evidence. *Id.* at 1475; *see also United
> States v. Sweiss*, 814 F.2d 1208, 1211-12 (7th Cir. 1987).

Id.

Finally, in United States v. Vargas, 689 F.3d 867 (7th Cir. 2012)

(*abrogated on other grounds*, Burton v. City of Zion, 901 F.3d 772 (7th Cir.

2018)), the defendant evoked the rule of completeness in asking the court to rule that the trial court had erred by refusing to admit part of the video of his arrest in which, in the wake of being caught with a large sum of money at the site of a planned drug deal, he blurted out to arresting officers that he was there buying a truck. Id. at 871, 876. After discussing the rule of completeness, the Seventh Circuit stated that "a party cannot use the doctrine of completeness to circumvent Rule 803's exclusion of hearsay testimony." Id. at 876 (citing Lewis, 641 F. 3d at 785).[1]

B.    The Defense Requests

    Against this backdrop, the defense asks the court to admit more of the content of the defendant's post-arrest interviews than the government seeks to admit. Dkt. No. 330. The defendant gave two statements after his arrest. The first began around 3:40 p.m. on January 25, 2016—the day of the machinegun/silencer purchase—as FBI agents Jonathan Adkins and Eric Frazier were driving the defendant from Pleasant Prairie, Wisconsin to Milwaukee. Dkt. No. 332. The second took place around 4:20 p.m. on the following day, January 26, at the FBI office in Milwaukee. Dkt. No. 332-1. Neither party asks to admit the entire transcripts of the interviews. Rather, the

---

[1] The defendant encourages the court to disregard this statement from Vargas, because the Seventh Circuit didn't decide the defendant's argument on Rule 106 grounds, but on whether the defendant's statement was an excited utterance under Fed. R. Evid. 803(2). Dkt. No. 352 at 4 n.1. The defendant is correct that the court didn't rely on Rule 106 to decide whether the defendant's statement about the truck should have come in, but that doesn't render inapplicable the court's observation that a party can't use Rule 106 to get around the fact that hearsay isn't admissible.

government has proposed those excerpts it seeks to admit, and the defendant has asked the court to supplement those excerpts, citing Rule 106 as the basis for its request. This decision addresses only the defendant's requests and how they relate (or do not) to the government's proposed excerpts.

> 1.   *January 25, 2016 interview*

From pages 9 and 25 of the recording of the January 25 interview in the car, the government has asked to present four short excerpts. The defendant asserts that Rule 106 requires that all seventeen pages—pages 9 through 25—should be played to the jury. Dkt. No. 330 at 7. He argues that if the court admits only the four excerpts the government proposes, it would leave the jury with the impression that the defendant wanted the guns for "offensive" purposes and for a reason other than "having fun," that the idea to obtain the machineguns was "all three of theirs," that the defendant was "in control of Steve and Mike" and that the defendant wanted an automatic rifle. Id. He also says that playing all seventeen pages "goes to why [the defendant] tried to buy the weapons through his friend 'Mike's' connections instead of a store." Id.

The government responds that the majority of the seventeen pages the defense seeks to admit consist of the defendant walking the agents through the gun purchase transaction; the government argues that the excerpts it has proposed are not incomplete, misleading or distorted and that the defendant's additions aren't necessary to explain or clarify its excerpts. Dkt. No. 336 at 3-4. The government did not object to the proposal that it add a few lines to the first excerpt on page 11. Id. at 4.

15

The first excerpt the government proposes is the following:

> MR. HAMZEH: Because I just like weapons. I like carrying weapons. Like, just having fun, like shooting range and stuff like that. That's it.
>
> MR. ADKINS: Okay.
>
> MR. HAMZEH: That's all we planning on doing.
>
> MR. ADKINS: All right.
>
> MR. HAMZEH: Like, he told us—Moneser told us, like, we can go somewhere clear, nobody over there, we can shoot, we can just have fun. That's all the—what the idea about. I know we—we bought unlegally weapons, but this is the only bad thing we did.
>
> MR. ADKINS: What you—so you knew it was not legal to buy it?
>
> MR. HAMZEH: Yeah.

Dkt. No. 332 at 11, lines 1-17.

The government stated in its response that it had no objection to the defense request to add the next six lines:

> MR. ADKINS: Why—why do it that way?
>
> MR. HAMZEH: Why?
>
> MR. ADKINS: Yeah?
>
> MR. HAMZEH: Because it's cheaper and I don't have money to buy, like, legally one.

Id. at lines 18-23.

The defense asks to add page 9, lines 6-25 and all of page 10 that preceded this conversation. On those pages, the defendant tells Adkins that he didn't know anything about the men he bought the weapons from, that

16

"Moneser"—Mike—had the whole idea, but that he and Steve bought the weapons. The defendant also says that Mike has a gun, and that he, Mike and Steve went shooting. He reiterates that he and Steve bought the guns, although in response to Adkins' question about what kind of guns they were, the defendant says he didn't know.

These statements are relevant to the issue of whether the defendant intentionally purchased a machinegun. Most of the statements the defendant seeks to admit are relevant, given that most of the interview was about the purchase of the machineguns. The question is whether these preceding statements (1) explain the admitted evidence; (2) place the admitted evidence in context; (3) will avoid misleading the trier of fact; and (4) will insure a fair and impartial understanding of all the evidence.

The statements on pages 9 and 10 do not explain the portion the government will present. The government's proposed statements are clear—the defendant wanted the guns for fun, Mike said they could go shoot them somewhere "clear," the defendant admits buying them illegally, and says he did so because he couldn't afford to purchase them legally. The statements on pages 9 and 10 don't necessarily place those facts in context. The government's proposed statements are not misleading.

The defendant argues that the jury needs to know that buying the machineguns was Mike's idea, and that Mike was the one who had the connections. It argues, therefore, that the defendant's statement that buying

17

the guns was Mike's idea is necessary for the jury to have a fair and impartial understanding of all the evidence.

If the court had not allowed the defendant to present an entrapment defense, the defendant's argument might carry less weight. But because the court has allowed that defense, the parties will be asking the jury to determine whether it was the defendant's idea or Mike's (or Steve's) to buy machineguns, in the context of determining whether the defendant was predisposed to commit the charged offenses. That makes the defendant's assertion that buying guns was Mike's idea both relevant and necessary to a fair and impartial understanding of all the evidence.

***The court grants the defendant's request to include Dkt. No. 332, page 9, lines 6-23. It denies the defendant's request as to Dkt. No. 332, page 9, lines 24-25 and page 10.***

The defendant also asks the court to include page 11, lines 24-25, pages 13 and 14 and page 15, lines 1-12. Much of this is irrelevant (the agent encouraging the defendant to tell the truth) or consists of the defendant describing the transaction step by step. There are some bits, however, that are relevant and necessary to a fair and impartial understanding of the evidence. Page 12, lines 13-25, page 13 and page 14, line 1 include the defendant stating how much he paid for the guns, describing the gun he believed he was purchasing, stating that "we" weren't going to buy automatic weapons but admitting that "he"—presumably, the undercover agent who sold the guns— had explained what automatic weapons and silencers do. ***The court grants***

***the defendant's request as to Dkt. No. 332, page 12, lines 13-25, page 13***

***and page 14, line 1. The court denies the defendant's request as to page***

***14, lines 2-25 and page 15, lines 1-10.***

The next excerpt the government proposes is on page 15.

| | |
|---|---|
| MR. HAMZEH: | Because that's what we have. That's all the money we had. |
| MR. ADKINS: | Oh, you gave him every— |
| MR. HAMZEH: | Yea. That's (overlapping dialogue) that's all the money we have and we gave him all. |

Dkt. No. 332 at 15, lines 13-19.

The court notes that the government left out the question Agent Adkins asked that solicited this answer. That question is at lines 11-12, and would be helpful for the jury to understand why the defendant said, "Because that's all we have." ***The court grants the defendant's request as to Dkt. No. 332, page 15, lines 11-12.***

On the pages that follow, the agent asks the defendant about what the gun seller explained to him about how the guns worked. In the process, the defendant described how Mike got into the gun seller's truck and checked the weapon because "he—he's the only one who knows about weapons . . . ." Dkt. No. 332 at 17, lines 4-5. The defendant also indicates—contrary to what he'd said before—that it was Mike who'd explained about how the machineguns worked, not the seller. These portions of the statement are relevant and necessary to the jury's understanding of all the evidence as it relates to the entrapment defense. The lines that follow are a discussion of the undercover

19

agents and their truck, which is not relevant. ***The court grants the defendant's request as to Dkt. No. 332, page 15, lines 21-25; page 16; and page 17, lines 1-25 (the first word of line 25, "right," which is the end of Agent Adkins' statement, "All right."). The court denies the defendant's request as to Dkt. No. 332, page 17, line 25 (the remainder of the line after "right.") and page 18, lines 1-21.***

Starting at the bottom of page 18, the interview turns again to Mike being the "weapons expert," suggesting the purchase, going shooting, training. This is, of course, the defense—that it was all Mike's idea, and that the defendant was entrapped. If the court had not allowed the defendant to present this defense, arguably these lines would constitute inadmissible hearsay as to the defendant and would not be relevant to the question of whether he was guilty of buying the unregistered guns and silencer. But because the court has allowed the entrapment defense, these statements are relevant and necessary to a jury's understanding of all the evidence. ***The court grants the defendant's request as to Dkt. No. 332, p. 18, lines 22-25; page 19; and page 20, lines 1-13.***

The next portion of the interview is the defendant describing how the guns got into a bag, how he put them in the car, explaining how many weapons were in the bag. There also is an interruption when one of the agents receives a phone call. This portion does not clarify prior or upcoming statements. ***The court denies the defendant's request as to Dkt. No. 332, p. 20, lines 14-25; page 21; and page 22, lines 1-4.***

20

The next portion the government proposes to admit is on page 22.

MR. FRAZIER:      So you carried to the—to Moneser's car?

MR. HAMAZEH:    Yeah.

MR. FRAZIER:      And then where did you put it in the car?

MR. HAMZEH:      In the trunk.

MR. FRAZIER:      In the trunk?

MR. HAMZEH:      In the trunk.

MR. FRAZIER:      Okay. And then what happened?

MR. HAMZEH:      Then you guys came.

MR. FRAZIER:      Okay.

MR. HAMZEH:      Surprised us. Surprised us.

MR. FRAZIER:      Yeah. That is quite a surprise, isn't it?

MR. HAMZEH:      That's a good job, actually.

Dkt. No. 332 at page 22, lines 5-21.

The defendant has asked to present the remainder of page 22, pages 23 and 24 and the portion of page 25 that precedes the government's last proposed portion. In these pages, the defendant explains to the agents that Mike has a gun—a small one, like a handgun—that he carries when he does deliveries, to protect himself from robberies. The defendant denies he was buying machineguns to protect himself, and says that he was buying them to go shooting up north for fun. The agent asks the defendant about training, and the defendant denies that he is training for anything other than learning to shoot. These statements are relevant to the entrapment defense and put the

21

Case 2:16-cr-00021-PP WED Document 369 Filed 10/24/19 Page 21 of 39

admitted statements in context. ***The court will grant the defendant's request as to Dkt. No. 332, page 22 lines 23-25; pages 23 and 24; and page 25, lines 1-12.***

This covers all the defendant's requests regarding the January 25, 2016 interview in the car on the way to Milwaukee. The government will admit two other portions. One immediately follows the portion the court allowed in the prior paragraph; in it, the defendant explains how he knows Steve and Mike, and what his relationship is with them. Dkt. No. 332 at p. 25, lines 13-25 and p. 26, lines 1-3. The other is a discussion of the defendant's fitness, or workout, routine. Dkt. No. 332 at p. 35, lines 20-25 and page 36, lines 1-3. (The government also will present the first fourteen lines of the recorded interview, dkt. no. 332 at p. 3, lines 1-14, to set the scene and introduce the participants.)

2. *January 26, 2016 interview*

The defendant has proposed several additional portions of the January 26, 2016 interview that took place in the FBI office in Milwaukee. Some of these portions are adjacent to the government's proposed excerpts. Others are not. Particularly regarding the non-adjacent portions, the government argues that these excerpts can't provide context.

The defendant responded as follows:

> When it comes to the government's argument that these statements don't provide context, this point can't be lost: the government is using the statements in [the post-arrest interviews] to paint a picture of [the defendant], where he appears to take responsibility for the Masons and the weapons. Often the language used by [the defendant] and [Agent] Adkins in the government's

excerpts is vague or ambiguous about what they're talking about—so it's not clear what they are talking about when they refer to the idea or plan; was that idea Steve's, Mike's or [the defendant's] or all three of them? And more importantly what is the "idea" or "plan" that Adkins and [the defendant] are referring to—the Masons, the guns, or both? To clarify what [the defendant's] statement concerning those points mean, we need the audio statements and video statements that the gun idea was Mike's. [The defendant] was clear on that in the beginning and then again throughout. But the government's excerpts could be construed as him claiming equal responsibility or taking sole responsibility for the guns. Since this case is about entrapment for a machine gun and not entrapment as to the Masons's, the additional statements that the defense seeks to admit are critical to avoid a misimpression about what [the defendant] was admitting to.

Dkt. no. 352 at 4-5.

The government plans to put in the first eight lines, setting the scene, and five lines in which the defendant explains to Agent Adkins why he wanted an automatic weapon. The defendant proposed to add the lines between those two segments, as well as twenty-one lines after, in which the defendant explains why he didn't buy the guns from a gun store, states that the "other guys" would also say they were buying the guns for fun, and asserts that they were not going to shoot the guns in the city but were going to take them up north. As noted, the government originally did not object to these additions, but after the court's October 16, 2019 ruling excluding certain recorded conversations proposed by the government (dkt. no. 342), the government objected to the court admitting any of the defendant's statements from the two interviews if offered by the defendant. Dkt. No. 355 at 2.

The court doesn't know whether this means that the government now objects to the inclusion of Dkt. No. 332-1, page 2 lines 4-22 and page 3, lines

3-24—portions to which it previously had not objected. But the court will grant the defendant's request as to these portions. One of them—the one on page 2— is another instance of the defendant asserting that he didn't have the money to buy guns legally. The other is a repetition of his claim that he wanted the guns for fun, for shooting out in the woods, and a denial that he was going to shoot them in the city. The government is right that these statements are substantive as they relate to the defendant's theory of the defense, and that the defendant likely is going to argue that the statements are true. But they relate to the defendant's state of mind regarding entrapment. The government is free to argue—as it undoubtedly will—that the statements were untruthful and self-serving and were contradicted by other record evidence.

**The court will grant the defendant's request as to Dkt. No. 332-1, page 2, lines 4-22 and page 3, lines 3-24.**

The government next will admit a portion where the defendant says that he bought the guns because he liked weapons, but tells the agent that his mother would never see it because she would throw it out. The defense proposed to include several lines prior—not completely adjacent, because the parties leave out three lines in between, but on the same topic. In the lines the defense proposes, the agent asks the defendant where he was going to keep the guns. The defendant first says he was going to keep them at Mike's (because Mike has his own house and car), but then says that to be honest, he was going to keep them in his basement. The government objects to the admission of these lines, arguing that they do not clarify the defendant's statements about

24

his mother never seeing the gun. The court agrees. The jury does not need to know where the defendant first proposed to keep the guns, or that he changed his mind, or that he was talking about putting the guns in the basement. The agent asked only how the defendant's mother would react if he brought a weapon "into the house." ***The court will deny the defendant's request as to Dkt. No. 332-1, page 4 lines 19-25 and page 5, lines 1-3.***

The government's next portion involves the defendant telling the agents that he had applied to work for the Army; the defendant has not proposed any additions.

The government next proposes a portion in which the defendant discusses where he went to school and what he studied. The defendant proposed the addition of two lines before the section and five lines after, to clarify that the defendant didn't finish school or earn the degrees or certificates he sought. The government did not object in the first instance, and the court agrees that these statements provide a more complete picture of the defendant's educational situation (relevant because of the defendant's argument that he was particularly susceptible to inducement, given his cognitive abilities and educational level). ***The court will grant the defendant's request as to Dkt. No. 332-1, page 13 lines 21-22; page 14, lines 22-25; and page 15, lines 1-3.***

The government's next excerpt consists of the agent making sure the defendant was comfortable and had water. The defendant proposed no additions.

The defendant asks to admit an excerpt that is not adjacent to any of the government's proposed portions. When the agent enquires whether he's ever purchased a gun before, the defendant says that the first time he shot was with Mike, that Mike took him to the range, that they used Mike's gun, and that the defendant didn't have any weapons of his own. These statements are relevant to predisposition and inducement. The government is correct that they are substantive. It is likely correct that the defendant wants them admitted for the truth, to support his theory of the defense. It may be correct that they are "falsely" exculpatory. If the court had not allowed the entrapment defense, these statements would be irrelevant. Because it has, the statements are relevant and allow the jury to fairly and impartially view all the evidence. **The court will grant the defendant's request as to Dkt. No. 332-1 at p. 20, lines 21-25; page 21; and page 22, lines 1-6.**

In its October 16, 2019 ruling on the government's proposed portions of the recorded conversations, the court excluded most, if not all, conversations in which the defendant talked about traveling to Jordan, Israel or Palestine using his American passport, and how it was easier to get to those countries with an American passport. The government proposed a segment of the interview that discusses the defendant's passport, and the defendant proposed an additional portion (to which the government did not originally object). Given the court's rulings on the recorded conversation, these portions of the post-arrest statement are no longer relevant. **The court will exclude Dkt. No. 332-1,**

26

Case 2:16-cr-00021-PP Filed 10/22/19 Page 134 of 149 Document 369
Case 2:16-cr-00021-PP WED Document 360 Filed 10/21/19 Page 26 of 39

***page 23 lines 2-25 and page 24, lines 1-13. The court will deny the
defendant's request as to Dkt. No. 332-1, page 25 lines 15-25.***

From pages 26 through 56, the government proposes only a few short
segments where the agents ensure the defendant's comfort—giving him a
restroom break, ensuring that he's still speaking voluntarily and adjusting his
handcuffs. The defendant proposed no additions to these portions.

The government proposed a short segment where the agent asked the
defendant if he felt "close to Palestine," and the defendant responded that he
did because it was his nationality, that "we" lived there since 1948 but left to
go to Jordan but that Jordan was not "our" country and that "we" were living
here. It is not clear whether by "we" the defendant means his family or people
of Arab descent. It is not clear whether his reference to 1948 means that his
family lived in Palestine in 1948, or whether he means to refer to people of Arab
descent living in the area since 1948 (during the first war of the Arab-Israeli
conflict). The court has excluded some conversations in which the defendant
talked of going to the Middle East, but not all of them. The court allowed some
conversations where the defendant discussed going to Palestine. This comment
provides some context for those conversations. The court will not exclude this
statement, but it notes that the parties have argued that they need to present
expert witnesses to educate the jury on the Israeli-Palestinian conflict and the
relationship between persons of Arab descent and Israelis and/or Jewish
people. The fact that the court is allowing this brief statement to remain does

not change the court's ruling barring the parties from presenting expert witness testimony on this topic.

The defense asks to present another non-contiguous segment in which the defendant says that Mike put the idea of guns in his head, that he wanted a gun because he saw Mike's, that he asked Mike a lot about the gun and how to buy a gun, and about what Mike told him about buying guns. The defendant includes in this segment the agent's acknowledgment of the defendant's admission that buying the guns was his fault and that he made a mistake. The government reiterates that these statements do not explain anything that comes before or after, and that this is nothing more than a "false exculpatory" statement. While this statement is separated by a page from the next segment the government seeks to admit, it is relevant to that statement. In the next segment the government seeks to admit, the agent asks the defendant why the men didn't just go to a gun store and buy a cheap, legal gun. The defendant responds in the same vein as he does in the segment the defendant asks to admit (albeit without stating that Mike put the idea in his head), talking about the cost of buying legal weapons and the fact that he liked the guns. It is true that the defendant appears to "talk out of different sides of his mouth" in these two excerpts—in one, he says this was Mike's idea and the defendant just wanted a gun to protect him on deliveries, but in the other says he bought the guns on the 25th because he liked them. It will be up to the jury to decide which, if either, of those statements is true. ***The court will grant the***

Case 2:16-cr-00021-PP WED Document 369 Filed 10/21/19 Page 28 of 39

***defendant's request as to Dkt. No. 332-1, page 57 lines 17-25 and page 58, lines 1-11.***

Over pages 59-65, the government proposes two excerpts in which the agent tells the defendant that he's heard rumors that the defendant, Mike and Steve were "planning something." The defendant denies this and reiterates that they wanted the guns to go up north and have fun. The defendant proposed to add six adjacent lines in which the defendant explained that the men were planning to go up north right after buying the guns, and that Mike told them they'd be traveling over six hours north. The government did not object to this addition originally. The additional lines are necessary under Rule 106 to make clear that the defendant wasn't talking about (or claims he wasn't talking about) some hypothetical future someday. ***The court will grant the defendant's request as to Dkt. No. 332-1, page 65 lines 1-6***.

The defendant next proposes a non-adjacent excerpt in which the defendant explains to the agent how he talked to the Imam, related to Steve and Mike what the Imam had told him, how Steve and Mike didn't believe him, how he contacted his uncle on Facebook and how his uncle said going to the Masonic Center was not good. The government argues that this excerpt doesn't complete or explain anything that comes before or after and that it is hearsay that the defendant seeks to admit for the truth. The government sought to present a recorded conversation in which the defendant discusses what he learned from the Imam. See Dkt. No. 342 at 46 (relating to Disk No. 99, page 15 line 2 to page 16 line 19), and the court did not exclude that conversation.

The defendant has argued that the fact that the refused to participate in an attack on the Masonic Center after talking to the Imam goes to predisposition.

This portion raises a tangle of issues. The court discussed in its October 16, 2019 ruling (dkt. no. 342) that the government believes that the defendant plotted to commit a mass murder at the Masonic Center, but that the government did not charge the defendant with that plot. It discussed the fact that the government's failure to charge the defendant with the Masonic Center plot was not error or negligence or accident on the government's part; due to the state of federal criminal law the government *could not* charge the defendant with the plot. Acknowledging that, the court nonetheless concluded in the October 16 order that many of the conversations the government sought to admit may have showed predisposition to commit a mass attack, but did not necessarily show a predisposition to commit the *charged* offenses of possessing unregistered machineguns and a silencer. The court also concluded that some of the recorded statements in which the defendant, Steve and Mike discussed the details of the proposed plot were so unduly prejudicial and inflammatory that they would tempt a jury to convict him of an offense with which he had not been charged.

The defendant's argument that he backed out of the attack plot on the advice of the Imam is relevant to whether he was predisposed to go through with the attack. But it is less relevant to whether he was predisposed to buy the machineguns. This is a thin line—the government asserts that the defendant wanted the machineguns so that he could attack the Masonic

30

Center. But the court has ruled that motive isn't a necessary element and is irrelevant to the charged offenses, so the defendant having changed his mind about the attack is also less relevant to the charged offenses.

That said, the government also seeks to present portions of the interview in which the defendant explains why the men targeted a Masonic center, who made the plan. The government also did not object to the defendant's request to put in a discussion of what the defendant told the Imam, and how the Imam responded. And, as the court noted in its October 16 decision, the jury will know that the defendant participated in plans to attack the Masonic Center, even though the jury will not hear some of the more inflammatory discussions of the details of that plan.

While a plan to attack a Masonic Center may not necessarily show predisposition to buy machineguns, the facts are related. Because the jury will hear—and should hear—that the defendant's participation of the purchase of machineguns related in some way to his discussion of an attack on the Masonic Center, the facts relating to his discussions with the Imam are relevant. There is also far more about the discussion with the Imam in the interview than either party seeks to admit. The discussion starts at page 74, when the defendant explains that before going through with the attack, he wanted to find out whether it was "against our religion" and he decided to go to his mosque. Dkt. No. 332-1 at 74 lines 1-12. It continues through page 90, then comes up again on pages 94 through 99. Throughout these same pages, the defendant discusses the YouTube videos he saw where he learned (he says)

31

that the Masons kidnapped people and were associated with the devil and killed people. Between them, the parties seek to introduce only portions of this extensive discussion that go to the heart of what the government says is the defendant's clear intention to commit the attack, and what the defense says is a wild, misbegotten scheme based on misinformation that the defendant abandoned after talking to a religious leader.

The jury is going to hear about the attack on the Masonic Center, the videos and the defendant's purported change of heart. The excerpts he proposes relate to those issues. They are exculpatory—they may be falsely exculpatory. The government may seek to introduce more of the post-arrest statement given the court's ruling on this issue, and the court will entertain such a request. But the court will allow some of the defendant's additions.

**The court will grant the defendant's request as to Dkt. No. 332-1, page 76 lines 18-25; page 77; and page 78 lines 1-13.**

**The court will deny the defendant's request as to Dkt. No. 332-1, page 79 lines 2-12.** (This segment is adjacent to a segment in which the agent asks the defendant, "Why a Masonic Center?" In the preceding lines, the agent asks the defendant "Why—first of all, what Masonic Center?" and the defendant responds, "In Indiana." Id. at lines 2-12. In its October 16 ruling the court excluded the conversation about a possible attack on a Masonic Center in Indiana, at the defendant's request.)

**The court will grant the defendant's request as to Dkt. No. 332-1, page 82 lines 7-16 and lines 22-25, as well as page 83, lines 1-8.**

32

***The court will deny the defendant's request as to Dkt. No. 332-1,***
***page 85 lines 7-25 and page 85, lines 1-6; this is a cumulative repetition***
***of the above portions.***

***The court will deny the defendant's request as to Dkt. No. 332-1,***
***page 88 lines 17-23.***

***The court will grant the defendant's request (to which the***
***government did not object when first proposed) as to Dkt. No. 332-1, page***
***88, lines 24-25; page 89; and page 90 lines 1-13.***

In its "omnibus memorandum re: statements" filed on October 18, 2019, the defense proposed another addition that it had not proposed originally. Dkt. No. 352 at 6. It proposed to add several lines from pages 94-95 of the interview, in which the defendant says that he thought if he committed the attack he'd go to heaven, but that he later concluded that it was wrong, and that even if the Imam told him to do it, he wouldn't do it. Id. The defendant says that this is necessary "to clarify the government's Exhibit 16Q, where Adkins asks about the Masons and Hamzeh says 'if we kill it, this is legal.'" Id. The defendant defines "16Q" as "Ex. B. to R. 300 at 79." Id.

Dkt. No. 300 is the government's brief regarding positional predisposition. There are no exhibits attached to it. The government's exhibit list, Dkt. No. 290-2, identifies Exhibit 16Q as "clip #15" of the defendant's post-arrest interview. This portion of the interview appears at page 79, lines 13-22. In this excerpt (which the government will present), the defendant explains that the Masons are the ones who believed in the devil and that that was against

33

Islam. He tells the agent that "what we thought about the devil in the [Qu'ran] and they talked about it a lot, and if we kill it, this is legal, like, in our—in our religion." Dkt. No. 332-1 at 79, lines 20-22.

The court first notes that the government's proposed segment ends in the middle of a sentence, before a comma. Rule 106 requires that the government put in the full sentence—". . . this is legal, like, in our—in our religion"—rather than ending at "this is legal." Id. at line 22.

Given that, the excerpt the defendant proposes at pages 94 and 95 is cumulative. It is additional explanation for why he originally thought the attack was "legal" in the religious sense—he explains that he thought he'd go to heaven if he did it and he died. Dkt. No. 332-1 at p. 94 lines 14-19. More to the point, however, if the court allows the presentation of this excerpt, it opens a can of worms that the defense itself has asked the court to keep firmly closed. On page 95 at lines 4-5, the defendant tells the agent, "Like even if Iman [sic] told me, like even if he told me go do it, I'm not going to do it." Two pages later, the agent asks the defendant what he thinks would have happened if the Imam had said "that was okay." Dkt. No. 332-1 at 97, lines 11-14. The defendant responds, "I'm going to do it." Id. at line 15. The agent states, "You would have done it." Id. at line 16. The defendant then tells the agent that because the Imam said no, he believed him. The defendant explains that he prays five times a day, tries to live his life in a way that will get him to heaven, and that he would have believed the Imam because the Imam knows more about religion. Id. at lines 17-25; page 98 at lines 1-6.

The defendant objects to the admission of the defendant's statement that if the Imam had said it was okay, the defendant would have "do[ne] it." He argues that it is speculative, highly inflammatory and unduly prejudicial. The government says there is no legal basis for excluding the statement, that it goes to predisposition and motive to acquire weapons and that "Hamzeh's desires and plans (even if not brought to fruition) are central to this case." Dkt. No. 336 at 10. The government says that the defendant has put his own predisposition at issue. Id. It also asserts that this statement shows that the earlier statement that the defendant *wouldn't* have done it had the Imam told him to was a lie (even though the government didn't propose to introduce that portion of the interview). Id. at 11. The government says this statement will rebut the defendant's attempt to show that he has cognitive disfunction, and to rebut the claim that the defendant was not serious about committing the attack. Id.

The court will not allow either party to wade into the quagmire of the defendant's post-arrest speculation as to whether he would or would not have committed the attack if the Imam had told him not to. The government will produce evidence supporting its position that the defendant planned to commit the attack. The defendant may try to rebut that evidence, or may produce evidence in rebuttal showing either that he didn't plan to participate in an attack, or that he did but changed his mind. After-the-fact speculation about what the defendant might or might not have done if circumstances had been

different is irrelevant to predisposition or inducement or to whether the defendant is guilty of the offenses with which he's been charged.

**The court will deny the defendant's request as to Dkt. No. 332-1, page 94 lines 14-25 and page 95 lines 1-8.**

**The court will deny the defendant's request as to Dkt. No. 332-1, page 96 lines 20-25 and page 97 lines 1-10.** (This information is cumulative—the defendant again explaining that he was worried about going to hell or heaven, and the Imam and his uncle told him he'd go to hell and his friends didn't believe him.)

**The court will exclude Dkt. No. 332-1, page 97 lines 11-16.**

**Because the court has excluded page 97 lines 11-16, the court will not grant the defendant's request as to page 97 lines 17-25 and page 98 lines 1-6.**

The government will put in an excerpt in which the defendant says that nobody told him "to do this." Dkt. No. 332-1, page 98 lines 7-11. The defendant seeks to put in bookending statements (one of which is not strictly adjacent) where the defendant explains that he decided on the Masonic Center because of videos he saw on YouTube. The government originally did not object to one of these statements—the one on pages 98-99. These statements are relevant to, and provide context for, the defendant's answer that no one told him to attack the Masonic Center.

**The court will grant the defendant's request as to Dkt. No. 332-1, page 95 lines 18-25 and page 96, lines 1-16.**

Case 2:16-cr-00021-PP Filed 10/22/19 Page 144 of 149 Document 369
Case 2:16-cr-00021-PP WED Document 366 Filed 10/21/19 Page 36 of 39

***The court will grant the defendant's request as to Dkt. No. 332-1,
page 98 lines 12-25 and page 99, line 1.***

The government will introduce several lines in which the defendant tells
the agent that Mike and Steve were listening to him, that he was more religious
than they were and that they believed him and did anything he wanted; the
defendant told the agent that he "controlled" Steve and Mike. Dkt. No. 332-1 at
pages 103-104. The defendant asks to put an extended excerpt in which the
defendant again explains about going to the mosque, talking to the Imam,
reporting back to Mike and Steve what the Imam said, Mike and Steve not
believing him, and the fact that if one Imam had told him to do it, he'd ask
another Imam.

The court agrees with the government that the excerpt the defendant
wishes to admit doesn't really address or explain the defendant's statement
that he controlled the informants. The statement the defendant seeks to admit
is repetitive of portions the court already has allowed. Finally, the next portion
the government seeks to admit addresses this issue.

***The court will deny the defendant's request as to Dkt. No. 332-1,
page 104 lines 15-25; page 105; and page 106 lines 1-7.***

The government proposes to admit a segment in which the defendant
says he was a "regular person" before seeing the YouTube videos, then he got
ideas, he told Steve and Mike about the ideas, then he stopped it. He says he
watches videos about how extremist groups kill people and shoot children and
mentions that the videos show a link between ISIS and the Masons. Dkt. No.

37

332-1 at pages 108-109. The defense asks to add eight additional lines, where the defendant says he's seen a lot of videos and that he's 100% against ISIS. The government didn't object originally, and under Rule 106, the additional lines give the defendant's complete statement on the issue.

**The court will grant the defendant's request as to Dkt. No. 332-1, page 109 lines 18-25.**

Finally, the government will admit six lines where the agent questions the defendant about spending his hard-earned money to buy bigger, better guns only for the purpose of going up north. Id. at page 114. These questions were in response to the defendant denying that an attack was ever going to happen and that he just wanted the guns to go shooting up north, and the defendant seeks to add those statements. The government did not originally object, and the statements the defendant seeks to admit put the agent's questions, and the defendant's answers, in context.

**The court will grant the defendant's request as to Dkt. No. 332-1, page 114 at lines 11-17.**

C.    Conclusion

The government asked to adjourn the start of the trial by two days, to give it the opportunity to determine whether it would seek leave to appeal some of the court's earlier evidentiary rulings, particularly the October 16, 2019 ruling. The court provides this ruling pretrial so that the government can consider whether it impacts the decision about whether to seek leave to appeal;

the court assumes that if the government does seek, and receive, such leave, it will include any challenges to this ruling in that appeal.

Dated in Milwaukee, Wisconsin this 21st day of October, 2019.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**

Case 2:16-cr-00021-PP Filed 10/22/19 Page 147 of 149 Document 369
Case 2:16-cr-00021-PP-WED Document 360 Filed 10/21/19 Page 39 of 39

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

       Plaintiff,

                            Case No. 16-cr-21-pp

   v.

SAMY M. HAMZEH,

       Defendant.

**ORDER SUPPLEMENTING OCTOBER 16, 2019 ORDER RULING ON
GOVERNMENT'S MOTION *IN LIMINE* REGARDING DEFENDANT'S
RECORDED STATEMENTS (DKT. NO. 342)**

In its October 16, 2019 order ruling on the government's motion *in limine*
at Dkt. No. 272 (and related motions at Dkt. Nos. 277, 276, 278), the court
noted that the defendant had not indicated one way or the other whether he
objected to a handful of the government's proposed submissions. Dkt. No. 342
at 38, 41, 42, 43, 45. The defendant has clarified its objections/requests. Dkt.
No. 352 at 7. To close this loop, the court issues this supplemental order.

The court will exclude Disk 73, Part 8, page 17, lines 34-44; page 18,
lines 1-45; pages 19-20; and page 21, lines 1-33.

The court already has ruled that it will exclude Disk 84, Part 2, page 16
lines 40-46 and page 17 lines 1-19. Dkt. No. 342 at 41. The court already has
ruled that it will allow the government to present Disk 84, Part 2, page 17 lines
21-37. Id.

The court already has ruled that it will exclude Disk 84, Part 2, pages 50-52. Id. at 42.

The court already has ruled that the government may present Disk 86, page 18 line 9 to page 19 line 26. Id. at 43.

The court will exclude Disk 90, Part 2, page 35 and page 36 from the first line to the paragraph that begins with the defendant saying, "And the situation is under control . . . ."

The government may present Disk 90, Part 2, page 36 from the line beginning with Mike saying, "Did everyone have his money ready" through page 38, the paragraph starting with the defendant saying, "I mean, you are not asking for a big amount . . . ."

The court will exclude the remainder of the excerpt on page 38 and the portion on page 39.

Dated in Milwaukee, Wisconsin this 21st day of October, 2019.

BY THE COURT:

HON. PAMELA PEPPER
United States District Judge

Case 2:16-cr-00021-PP-WEB Document 361 Filed 10/22/19 Page 149 of 149 Document 369